UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KEILEE FANT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 4:15-CV-00253-AGF |
| | ) | |
| THE CITY OF FERGUSON, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiffs in this putative class action claim that they were repeatedly jailed by the City of Ferguson (the "City") for being unable to pay fines owed to the City from traffic tickets and other minor offenses, without being afforded an attorney and without any inquiry into their ability to pay.   The City has moved to dismiss the complaint for failure to state a claim, and has also moved for a more definite statement and to strike redundant or immaterial matter.   (Doc. No. 8.)   For the reasons set forth below, the City's motion shall be granted in part and denied in part.

## BACKGROUND

The named Plaintiffs are 11 individuals who allege that they have been jailed by the City on numerous occasions because they were unable to pay fines owed from traffic and other minor offenses, were not afforded counsel or any inquiry into their ability to pay, and were held in jail indefinitely, in overcrowded and unsanitary conditions, and denied access to basic hygiene products and medical care.   They filed this action pursuant to 42 U.S.C. § 1983 on February 8, 2015, asserting claims under the Fourth, Sixth, and Fourteenth

Amendments.[1]   They seek to represent a declaratory and injunctive class of "[a]ll persons who currently owe or who will incur debts to the City . . . from fines, fees, costs, or surcharges arising from cases prosecuted by the City," and a damages class of "[a]ll persons who, from February 8, 2010, until the present, were held in jail by the City because of their non-payment of a monetary sum required by the City."   (Doc. No. 1 at 44-45.)

Count One of the complaint alleges that the City violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment by jailing and threatening to jail Plaintiffs indefinitely for their inability to pay debts owed from traffic and other minor offenses, without conducting any inquiry into Plaintiffs' ability to pay and without considering alternatives to imprisonment.   Plaintiffs allege that, as a matter of policy and practice, when arrestees are booked at the City's jail, they are told by jail staff that they can be released immediately but only if they pay cash to the City.   Thus, Plaintiffs allege that "[a]t any moment, a wealthier person in the Plaintiffs' position could have paid a sum of cash and been released from jail."   (Doc. No. 1 at 51.)

Count Two alleges that the City violated Plaintiffs' rights under the Sixth and Fourteenth Amendments by jailing Plaintiffs without affording them the benefit of counsel or obtaining a knowing, intelligent, and voluntary waiver of counsel.   Plaintiffs allege that the City has a policy and practice of not informing people of their right to counsel and not

---

[1]     Paragraph 16 of Plaintiffs' complaint also references the First and Eighth Amendments in the list of constitutional provisions this case "aris[es] under."   (Doc. No. 1 at 5.)   However, in their response to the City's motion to dismiss, Plaintiffs explicitly disclaim any reliance on these Amendments and describe the First Amendment reference as an "oversight."   *See* Doc. No. 13 at 15, 25 n.12.   Therefore, the Court will grant the City's motion to strike as it relates to paragraph 16's references to the First and Eighth Amendments.

appointing counsel "in proceedings in which indigent people are ordered to be imprisoned in the City jail for non-payment, which are, in turn, based on payment plans arising from traffic and other violations at which the person was also unrepresented."   (Doc. No. 1 at 52.)   Plaintiffs contend that they were not provided any hearing prior to their incarceration for non-payment of fines, and at the hearings on their traffic and other offenses at which the fines were first imposed, they were also unrepresented while the City was represented by experienced prosecutors.

Count Three alleges that the City's use of indefinite and arbitrary detention violates the Due Process Clause.   Plaintiffs allege that the City has a policy and practice of jailing indigent persons owing debts to the City "indefinitely and without any meaningful legal process through which they can challenge their detention by keeping them confined . . . unless or until they could make arbitrarily determined cash payments."   (Doc. No. 1 at 52.)   Plaintiffs further allege that "inmates routinely do not even have future court dates set and are held indefinitely without being brought to court"; that "[i]f a person . . . misses any future payment, the City, without any legal process confiscates any previous amounts paid by the person to secure their release from jail and resets the person's debts"; and that the City also adds "warrant fee[s]" for any missed payments, which increases the total debt owed by Plaintiffs.   *Id.* at 37.   The complaint alleges specific instances of City jail staff and supervisors holding Plaintiffs in jail for days or weeks, without setting future court dates or bringing Plaintiffs to court, and then gradually and incrementally reducing the amount of money required to buy a Plaintiff's release, not through any formal court process, but by negotiating or bargaining with Plaintiffs or their families regarding the

amount of money they are able to pay.   For example, the complaint alleges that named

Plaintiff Keilee Fant was on one occasion "held in jail by the City of Ferguson for nearly 50

days . . . for unpaid traffic tickets because she could not afford to buy her release."   (Doc.

No. 1 at 9.)   Plaintiffs further allege that "[i]n many cases, after significant jail time, the

City will release the person for free if it is clear that the City cannot extract any money from

the person during that jail stay."   *Id.* at 23, 35.

Count Four alleges that the totality of the conditions of the City's jail amount to

punishment of the pre-trial detainee and post-judgment debtor Plaintiffs, in violation of the

Due Process Clause.   Plaintiffs allege that while in jail, they were kept in "materially the

same . . . conditions," though for different amounts of time.   *See, e.g.*, Doc. No. 1 at 10, 14,

16, 18, 21, 23, 30, 32.   Plaintiffs allege they were forced to sleep on the floor in

overcrowded cells smeared with feces, blood, and mucus; denied toothbrushes, toothpaste,

soap, and feminine hygiene products; kept in the same clothes for days without access to a

shower, laundry, or clean undergarments; kept in cold temperatures and forced to share

thin blankets; routinely denied medical care and prescription medication; provided only

honeybuns and potpies to eat; provided only a single source of water connected to the top

of the toilet, which produced warm water with an "unpalatable stench"; and deprived of

books, legal materials, exercise, television, internet, and natural light.   *Id.* at 41.

Count Five alleges that the City's use of jail and threats of jail to collect debts owed

to the City violates the Equal Protection Clause because it imposes "unduly harsh and

punitive restrictions on debtors whose creditor is the government compared to those who

owe money to private creditors."   (Doc. No. 1 at 53.)   Plaintiffs allege that the "City takes

4

advantage of its control over the machinery of the City jail and police systems to deny debtors the procedural and substantive statutory protections that every other Missouri debtor may invoke against a private creditor."   *Id.*

Count Six alleges that the City has a policy and practice of issuing and serving invalid warrants, in violation of the Fourth and Fourteenth Amendments.   Plaintiffs allege that the City regularly issues and serves arrest warrants for "failure to appear," even when there was no court appearance scheduled[2] or when the City has not provided adequate notice of a court date, for example, because the City has moved a person's hearing date without informing that person.   Plaintiffs further allege that the City informs people that they can immediately remove outstanding warrants by paying a sum of money or by retaining a lawyer, but the City does not offer a way for unrepresented, indigent persons to remove arrest warrants.

As relief, Plaintiffs seek a declaration that the City's policies and practices, as outlined above, violate Plaintiffs' constitutional rights; a permanent injunction preventing the City from enforcing these policies and practices; and an award of compensatory damages, attorneys' fees, and costs.

On March 2, 2015, the City moved to dismiss, or alternatively to strike and for a more definite statement of, Plaintiffs' complaint, pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(e), and 12(f).   (Doc. No. 8.)

---

[2]   Plaintiffs allege, for example, that the City "routinely gives inmates paperwork crossing out a court date and telling them instead to make payments at the police department or to drop money off at the night deposit slot."   (Doc. No. 1 at 43.)

5

## ARGUMENTS OF THE PARTIES

### The City's Arguments

The City first argues that Plaintiffs' 55-page complaint violates Federal Rules of Civil Procedure 8 and 10, which require a "short and plain" statement of the claims, set forth in "numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 8, 10. The City argues that if the Court does not dismiss Plaintiffs' complaint for the reasons stated below, it should order Plaintiffs to replead their complaint with more definiteness, pursuant to Federal Rule of Civil Procedure 12(e), and should strike from Plaintiffs' pleading any redundant, immaterial, impertinent, or scandalous matter, pursuant to Rule 12(f).

Next, the City argues that all six counts of Plaintiffs' § 1983 action are barred by two federal court doctrines. The first, derived from *Heck v. Humphrey*, 512 U.S. 447 (1994), bars § 1983 plaintiffs from recovering damages "for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless they prove that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . , or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck*, 512 U.S. at 486-87. The City argues that because Plaintiffs have failed to satisfy *Heck*'s so-called "favorable-termination" requirement by pleading that their convictions or sentences have been reversed, expunged, declared invalid, or called into question by a writ of habeas corpus, their claims must be dismissed under *Heck*.

6

The second doctrine the City invokes is *Rooker-Feldman*, which bars unsuccessful state court parties from seeking what amounts to appellate review of the state judgment in a federal district court.   *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).   The City argues that Plaintiffs' claims are barred under this doctrine because Plaintiffs "ultimately state that their damages sustained pursuant to each and every count resulted in unconstitutional judgments," and "state proceedings allow for their own administrative review and appellate processes for such constitutional assertions."   (Doc. No. 9 at 10.)

Turning to the merits of Plaintiffs' claims, the City contends that Plaintiffs fail to plead sufficient facts in support of any constitutional violation.   With respect to their claim in Count One, regarding jailing those who are unable to pay fines, the City argues that Plaintiffs fail to state an equal protection violation because Plaintiffs have not pleaded that similarly situated persons were treated differently.

Regarding Count Two's right-to-counsel claim, the City argues that "at least one Plaintiff, Alfred Morris, alleges that he was informed of the 'need[]' of obtaining an attorney," and it is "unclear" if this claim is asserted on behalf of all Plaintiffs, including Morris.   (Doc. No. 9 at 12.)   The City also notes that Plaintiffs have a right to self-representation in state court proceedings.

The City argues that Plaintiffs' due process claims in Counts Three and Four, regarding indefinite and arbitrary detentions and conditions of confinement, should be dismissed or repleaded with more specificity because "Plaintiffs do not delineate which of many alleged detentions are constitutionally significant (and upon which detentions

7

Plaintiffs seek recovery of damages)," and because "Plaintiffs do not . . . specify which alleged deprivation listed in their Complaint [was] experienced by which Plaintiff and which[] of these serves as their basis for this cause of action."   (Doc. No. 9 at 12-13, 15.)

With respect to Count Five's equal protection claim comparing the treatment of Plaintiffs to the treatment of debtors owing money to private creditors, the City argues that Plaintiffs are not similarly situated to private debtors as a matter of law.

Regarding Count Six's claim that the City's warrant procedures are unconstitutional, the City argues that this claim should be stricken as duplicative of Count One, and that, in any event, Plaintiffs offer no authority for the proposition that the City's warrant procedures violate the Fourth and Fourteenth Amendments.

Finally, the City argues that Plaintiffs' request for declaratory and injunctive relief should be denied for lack of an actual controversy and lack of ripeness.   The City argues that Plaintiffs' claims for declaratory and injunctive relief are not justiciable because Plaintiffs allege only past harm and have not pleaded a reasonable likelihood that they will again be arrested and subject to any of the City's allegedly unlawful policies and practices.

**Plaintiffs' Response**

Plaintiffs respond, first, that the City misunderstands the federal pleading rules. Plaintiffs argue that their complaint satisfies Federal Rules of Civil Procedure 8 and 10 and that, although lengthy, it provides background information necessary to give context to the City's policies and practices.

Next, Plaintiffs argue that neither the *Heck* nor *Rooker-Feldman* doctrines apply in this case.   Plaintiffs argue that they do not challenge their underlying convictions and

sentences imposed for those convictions—i.e., the underlying traffic and other minor offenses and resulting fines.   Instead, Plaintiffs describe their claims as "freestanding civil rights violations" arising out of *post*-judgment municipal procedures to collect money. (Doc. No. 13 at 7.)   Plaintiffs note that the constitutionality of this post-judgment scheme has "no bearing on the validity of guilt in a traffic case or the propriety of the amount of fine originally assessed."   *Id.* at 6.   Indeed, Plaintiffs argue, "one of the central claims of this case is that the Plaintiffs were detained and ransomed entirely apart from any judicial process, let alone pursuant to a valid conviction and sentence."   *Id.*   Plaintiffs contend that because their complaint does not challenge any state court judgment, *Heck* and *Rooker-Feldman* are inapplicable.

Regarding the merits of their claims, Plaintiffs argue that it is well established that the City's practice of jailing those who are unable to pay fines, as alleged in Count One, violates both the Due Process and the Equal Protection Clauses.   Plaintiffs contend that they plead all elements of an equal protection claim because they allege facts to establish that the City jails the poor "when wealthier people avoid jail solely by virtue of their financial resources."   (Doc. No. 13 at 11.)

Likewise, Plaintiffs argue that their right-to-counsel claim in Count Two adequately alleges that Plaintiffs are entitled to counsel in any proceedings at which they are jailed for failure to pay a fine, because these proceedings are complicated and because they stem from proceedings at which the government is represented by an experienced lawyer. Plaintiffs note that the City does not raise any substantive challenges to Count Two except

to briefly mention the right to self-representation, which Plaintiffs argue is irrelevant in this case because Plaintiffs allege the City did not obtain valid waivers of counsel.

Regarding Counts Four and Five, relating to arbitrary and indefinite detentions and other conditions of confinement, Plaintiffs note that the City does not dispute that these claims are viable, but argues only that they are not pleaded with sufficient specificity. Plaintiffs argue that "[e]ach of the named Plaintiffs allege that, after they were arrested and taken to the Ferguson jail, they were told that they would be held there indefinitely, unless or until they paid enough money to get out or until their jailors decided to let them go for free," and that the City has "openly practiced this policy for years."  (Doc. No. 13 at 14.) Thus, Plaintiffs argue that they have pleaded, in detail, a due process violation resulting from arbitrary and indefinite detentions.   Likewise, Plaintiffs argue that they have pleaded with specificity "a constellation of [jail] conditions," which "feed into and reinforce each other," and which, in totality, amount to a violation of due process.   *Id.* at 16.

Plaintiffs also argue that their allegations in Count Five are sufficient to state an equal protection claim based on the differences in treatment of Plaintiffs as compared to civil judgment debtors.   Plaintiffs argue that the U.S. Supreme Court in *James v. Strange*, 407 U.S. 128 (1972) held that although a "State's claim to reimbursement may take precedence, under appropriate circumstances, over the claims of private creditors, and that enforcement procedures . . . need not be identical," this "does not mean . . . that a State may impose unduly harsh or discriminatory terms merely because the obligation is to the public treasury rather than to a private creditor."   *See* Doc. No. 13 at 18 (quoting *James*, 407 U.S. at 138).   Thus, Plaintiffs argue that by alleging that the City does not afford them the

10

protections Missouri law affords civil judgment debtors, they have sufficiently pleaded an equal protection violation.

With respect to Count Six, Plaintiffs argue that their allegations state a violation of the Fourth Amendment, which requires all warrants to be based on probable cause. Plaintiffs also argue that Count Six states an equal protection violation arising out of the City's policy of allowing wealthier and/or represented people to automatically remove warrants but not allowing indigent, unrepresented people to do the same.   Plaintiffs contend that because "freedom from physical confinement is a fundamental right, the City's disparate treatment must meet heightened scrutiny," and "[i]n any event, there is not even a rational basis for allowing represented debtors or debtors who can afford to make monetary payments to remove warrants freedom while arresting and detaining unrepresented and impoverished debtors."   (Doc. No. 13 at 23.)

Finally, Plaintiffs argue that they have adequately pleaded a basis for declaratory and injunctive relief because they have pleaded that they "*still owe* debts to the City that the City is currently attempting to collect . . . using its unlawful policies and procedures." (Doc. No. 13 at 24.)

## DISCUSSION

## Motion for More Definite Statement and to Strike

The federal pleading rules provide that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), and "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances," Fed. R. Civ. P. 10(b).   "A party may move

11

for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Together these rules permit the court and the litigants to know, at the pleading stage, who is being sued and the grounds for same, thereby facilitating the just, speedy, and inexpensive determination of the action."   *Bay Indus., Inc. v. Tru–Arx Mfg., LLC*, No. 06–C–1010, 2006 WL 3469599, at *1 (E.D. Wis. Nov. 29, 2006); *Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890, 898 (D. Minn. 2014) ("The remedy of repleader based on violation of Rules 8 and 10 has generally been reserved for egregious cases where a defendant does not know the basic facts that constitute the claim for relief against it.").

A party may also move to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."   Fed. R. Civ. P. 12(f).   Although courts enjoy "broad discretion" in determining whether to strike a party's pleadings, such an action is "an extreme measure."   *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000). Accordingly, motions to strike are "viewed with disfavor and are infrequently granted." *Id.*

Upon review of Plaintiffs' complaint, the Court finds that it satisfies Rules 8 and 10. The complaint is stated with sufficient, but not superfluous, detail, and its paragraphs are limited, as far as practicable, to discrete sets of circumstances, such that the City should be able to frame a responsive pleading.   And except for Plaintiffs' admittedly mistaken references to the First and Eighth Amendments in paragraph 16, the Court does not find any language in the complaint so redundant, impertinent, or scandalous as to warrant the extreme measure of striking.   Therefore, the Court will grant the City's Rule 12(f) motion

to strike solely with respect to Plaintiffs' references to the First and Eighth Amendments in paragraph 16, and will otherwise deny the City's motions under Rules 12(e) and 12(f).

## Motion to Dismiss

### I.     Legal Standard

To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   The reviewing court must accept the plaintiff's factual allegations as true and construe them in plaintiff's favor, but it is not required to accept the legal conclusions the plaintiff draws from the facts alleged.   *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012).   A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.   *Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 896 n.4 (8th Cir. 2010).

### II.     *Heck*'s Favorable-Termination Requirement

"*Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence."   *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005).   Although the City broadly states that *Heck* bars each of Plaintiffs' claims, the Supreme Court has "repeatedly" held that, notwithstanding *Heck*, plaintiffs may "bring § 1983 actions challenging the conditions

of their confinement."   *Wilkinson*, 544 U.S. at 84.   Thus, *Heck* clearly does not bar Count Four.

As for the remaining claims, in order to decide whether *Heck*'s favorable-termination requirement applies, the Court must consider "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."   *Heck*, 512 U.S. at 487; *see also Wilkinson*, 544 U.S. at 83 ("In context, Heck uses the word 'sentence' to refer not to prison procedures, but to substantive determinations as to the length of confinement."). "But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in absence of some other bar to the suit."   *Id.*; *see also Wilkinson*, 544 U.S. at 81-82 (clarifying that a state prisoner's § 1983 action is only barred "*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration").

In this case, the Court agrees with Plaintiffs that the only state court convictions at issue are the Plaintiffs' underlying traffic and other minor offenses, which are alleged to have resulted only in fines, not sentences.   Plaintiffs allege that their incarceration resulted from post-judgment procedures to enforce non-payment of those fines, but not from any separate conviction or sentence.[3]   A judgment in Plaintiffs' favor would not necessarily

---

[3]     The City does contend that the challenged incarcerations were ordered pursuant to any state court judgment.   Indeed, the City itself argues that the Eighth Amendment is not

demonstrate the invalidity of Plaintiffs' underlying traffic convictions or fines, but only the City's procedures for enforcing those fines.   Nor would Plaintiffs' success in this case "necessarily" invalidate the fact or duration of their incarceration.   Success would mean only a change in the City's procedures prior to incarceration.   Even if these procedures were changed, Plaintiffs may still have been found to have willfully refused to pay a fine they were capable of paying and thereafter lawfully incarcerated pursuant to constitutional procedures and conditions.   *See Wilkinson*, 544 U.S. at 82 ("Success for [the plaintiff] does not mean immediate release from confinement or a shorter stay in prison; it means at most new eligibility review, which at most will speed *consideration* of a new parole application.").

The Court notes that the City's discussion of the Sixth Circuit case, *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592 (6th Cir. 2007), is misplaced and, more importantly, incomplete.   Like this case, *Powers* involved a putative class action brought by a plaintiff who was incarcerated for non-payment of a fine incurred as a result of a reckless-driving charge.   *Powers*, 501 F.3d at 597.   The municipal court in *Powers* appointed a public defender for the plaintiff at both his initial reckless driving hearing and sentencing, as well as a subsequent court hearing after his arrest for failing to pay the court-ordered fine.   *Id.* at 597.   The plaintiff pleaded no contest to both the initial reckless driving charge and the subsequent failure to pay his fine, the public defender did not seek an indigency hearing, and plaintiff served at least one day in jail for failing to pay the fine.

---

applicable to Plaintiffs precisely because they have not "alleged formal adjudications of guilt regarding their incarcerations."   (Doc. No. 9 at 13.)

15

*Id.*  He then brought a § 1983 action, alleging that the public defender's office had a policy of failing to request indigency hearings for clients facing jail time for nonpayment of court-ordered fines.  *Id.*

The Sixth Circuit found that the § 1983 action was cognizable, notwithstanding *Heck*, for two reasons.   The first was that the plaintiff's term of incarceration—one day—was too short to enable him to seek habeas relief, and the Sixth Circuit held that *Heck*'s favorable-termination requirement was excused for habeas-ineligible § 1983 plaintiffs.  *Id.* at 601.   As the City correctly notes, this issue is the subject of a circuit split, in which the Eighth Circuit has explicitly disagreed with the Sixth Circuit.  *See Newmy v. Johnson*, 758 F.3d 1008, 1011-12 (8th Cir. 2014) ("[T]he Eighth Circuit—like the First, Third, and Fifth—has interpreted *Heck* to impose a universal favorable termination requirement on all § 1983 plaintiffs attacking the validity of their conviction or sentence . . . [even] for an inmate who is detained for only a short time with limited access to legal resources[.]").   Therefore, as the City correctly notes, Plaintiffs in this case could not avoid *Heck* merely by arguing their jail terms were too short to enable them to seek habeas relief.

But Plaintiffs do not make this argument.   Rather, Plaintiffs argue that *Heck* is inapplicable for the second reason discussed in *Powers*—namely, because they do not challenge the fact or duration of their underlying convictions or sentences but only the improper procedures that culminated in their post-judgment incarceration.   *Powers*, 501 F.3d at 603 ("[The] second reason . . . that Powers need not comply with the favorable-termination requirement [is] because he alleges that his constitutional rights

16

were violated as a result of improper procedures, not that his underlying conviction or jail
sentence was improper.").   As the Sixth Circuit noted in *Powers*, "[a] conclusion that the
procedures, or rather the lack of procedures, that culminated in Powers's incarceration
violated his constitutional rights has nothing to do with the propriety of his underlying
conviction," and would only mean that "the failure to grant Powers an indigency hearing,
not that the order committing him to jail was wrongful."   *Id.* at 604.   In other words,
"Powers's incarceration is not 'necessarily invalid' because Powers may have willfully
refused to pay a fine he was capable of paying, rather than having been actually
impecunious," but "we cannot guess at [this] precisely because Powers did not get an
indigency hearing."   *Id.* at 605; *see also Ray v. Judicial Corrs. Servs.*, No. 2:12–CV–
02819–RDP, 2013 WL 5428360, at *12 (N.D. Ala. Sept. 26, 2013) (holding that *Heck* did
not apply because "Plaintiffs essentially advance procedural challenges to the Town's
conduct—e.g., the lack of an indigency hearing after failure to pay fines and/or the lack of
providing counsel prior to incarceration—rather than attacking the propriety of their
confinement or probation.").   The same is true in this case.   Accordingly, the Court
rejects the City's argument that *Heck* bars Plaintiffs' claims.

### III.   *Rooker-Feldman*

"The *Rooker–Feldman* doctrine . . . is confined to cases of the kind from which the
doctrine acquired its name: cases brought by state-court losers complaining of injuries
caused by state-court judgments rendered before the district court proceedings commenced
and inviting district court review and rejection of those judgments."   *Exxon Mobil Corp. v.
Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).   Because Plaintiffs do not complain

17

of injuries caused by the state court judgment, but rather by the post-judgment procedures employed to incarcerate persons who are unable to pay fines, *Rooker-Feldman* is also inapplicable.  *See Powers*, 501 F.3d at 606 ("The *Rooker– Feldman* doctrine has no bearing on Powers's claims because he does not allege that he was deprived of his constitutional rights by the state-court judgment, but rather by the Public Defender's conduct in failing to ask for an indigency hearing as a prerequisite to his incarceration."); *Ray*, 2013 WL 5428360, at *9 (holding that *Rooker-Feldman* was inapplicable to the plaintiffs' § 1983 claims against the municipality for jailing indigent persons unable to pay traffic fines because "Plaintiffs' suit does not challenge the merits of the municipal court's decisions," or "call into question any of the bases on which those judgments were reached," but only "challenge[s] the post-judgment probationary program").

## IV.   Sufficiency of Claims

Turning to the merits of Plaintiffs' claims, a municipality such as the City may be liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."  *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).   But municipalities are only liable for their own illegal acts; they may not be held vicariously liable for their employees' actions.  *Id.; see also Bd. of County Comm'rs of Bryan County. v. Brown*, 520 U.S. 397, 415 (1997) ("As we recognized in *Monell* and have repeatedly reaffirmed, Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights.").

Thus, plaintiffs seeking to impose § 1983 liability on local governments must prove

18

that "action pursuant to official municipal policy" caused their injury.   *Connick*, 131 S. Ct. at 1359.   "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."   *Id.*   Local governments may also be liable for failure to train employees about their legal duty to avoid violating citizens' rights, where the failure to train amounts to "deliberate indifference," meaning that "a municipal actor disregarded a known or obvious consequence of his action."   *Id.* at 1360.   "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to show deliberate indifference for purposes of failure to train."   *Id.*

   i.     *Jailing for Inability to Pay (Count One)*

   Plaintiffs have pleaded sufficient facts to state a plausible claim that the City's policy and practice of jailing Plaintiffs for their inability to pay fines violates the Due Process and Equal Protection Clauses.

   In *Tate v. Short*, 401 U.S. 395 (1971), the Supreme Court held that "the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full."   *Tate*, 401 U.S. at 398 (1971); *see also Bearden v. Georgia*, 461 U.S. 660, 667-68 (1983) ("[I]f the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it.").

   Following these rulings, federal courts have repeatedly held that jailing persons who are unable to pay a court-ordered fine, without first inquiring into their ability to pay and

19

considering alternatives to imprisonment, violates both the Due Process and Equal

Protection Clauses.   *Bearden*, 461 U.S. at 665, 674 ("Due process and equal protection

principles converge in the Court's analysis in these cases," and both principles require that

before imprisoning a probationer for failure to pay a court-ordered fine, "a sentencing court

must inquire into the reasons for the failure to pay," and "[i]f the probationer could not pay

despite sufficient bona fide efforts to acquire the resources to pay, the court must consider

alternate measures of punishment other than imprisonment" and may imprison "[o]nly if

alternate measures are not adequate to meet the State's interests"); *Tate*, 401 U.S. at 399

(holding that a state "cannot, consistently with the Equal Protection Clause, limit the

punishment to payment of the fine if one is able to pay it, yet convert the fine into a prison

term for an indigent defendant without the means to pay his fine"); *Alkire v. Irving*, 330

F.3d 802, 816-17 (6th Cir. 2003) (holding that, in order to comply with due process and

equal protection, a court must "inquire into an individual's reasons for failing to pay a fine

or courts costs," and "if the individual was simply unable to pay, that is, he was indigent,

the court is required to consider alternative measures of punishment"); *Frazier v. Jordan*,

457 F.2d 726, 728 (5th Cir. 1972) (holding that a municipal court could not constitutionally

impose a sentence requiring an indigent to pay a fine forthwith or serve a specified number

of days in jail because the "alternative fine" system unlawfully "creates two disparately

treated classes: those who can satisfy a fine immediately upon its levy, and those who can

pay only over a period of time, if then").

The Supreme Court has clarified that the Constitution does not preclude

imprisoning a person "with the means to pay a fine who refuses or neglects to do so," or

imprisoning a person "when alternative means are unsuccessful despite the [person's] reasonable efforts to satisfy the fines by those means." *Tate*, 401 U.S. at 400-401.   But "[b]y sentencing [a person] to imprisonment simply because he could not pay the fine, without considering the reasons for the inability to pay or the propriety of reducing the fine or extending the time for payments or making alternative orders, the court automatically turn[s] a fine into a prison sentence," in violation of the Fourteenth Amendment. *Bearden*, 461 U.S. at 674.

The 11 named Plaintiffs have specifically alleged that, pursuant to a City policy and practice, they were each jailed for failure to pay a fine without any inquiry into their ability to pay and without any consideration of alternative measures of punishment.   Therefore, Plaintiffs have stated due process and equal protection claims in Count One.   *See Alkire*, 330 F.3d at 818 (finding that plaintiff's evidence of ten cases, including his own, in which persons were detained by municipal court for failure to pay debt without inquiry into ability to pay was sufficient "for a reasonable trier of fact to conclude that his constitutional rights were violated by the [municipal court]"); *Doe v. Angelina County*, 733 F. Supp. 245, 257 (E.D. Tex. 1990 ) (granting plaintiff summary judgment on a § 1983 claim against a municipality because there was uncontroverted evidence that "it was the practice of jail officials immediately to incarcerate persons arrested . . . without a hearing, if they failed to raise the funds to pay [court-imposed] fines by means of telephone calls from the county jail," and "this practice of automatically converting fine-only sentences into terms of incarceration was unconstitutional"); *see also Turner v. Rogers*, 131 S. Ct. 2507, 2520 (2011) (holding that the incarceration of an indigent person in a civil contempt proceeding

violated the Due Process Clause where the person "did not receive clear notice that his ability to pay would constitute the critical question in his civil contempt proceeding[,] [n]o one provided him with a form (or the equivalent) designed to elicit information about his financial circumstances[,] [and] [t]he court did not find that [he] was able to pay" before ordering incarceration).

ii.     *Right to Counsel (Count Two)*

The parties have not addressed whether the legal proceedings in which Plaintiffs were jailed for failure to pay fines—if any proceedings were held at all—were civil or criminal in nature.   In either case, however, the Court finds that Plaintiffs have stated a plausible claim that the City's failure to appoint counsel for the indigent Plaintiffs, or to obtain waivers thereof, in connection with their incarceration violated their constitutional rights.

The Supreme Court has held that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial."  *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972).   In *Argersinger*, the Court noted that its holding was applicable to "prosecutions for violations of municipal ordinances," and that "[t]he denial of the assistance of counsel will preclude the imposition of a jail sentence."  *Id.*   Then in *Scott v. Illinois*, 440 U.S. 367 (1979), the Supreme Court clarified that the right to counsel applies only when a person is actually sentenced to imprisonment and not merely when imprisonment is an authorized penalty.   *Scott*, 440 U.S. at 370-74.   The Court reasoned that "actual imprisonment is a penalty different in kind from fines or the mere threat of

imprisonment," and "actual imprisonment [is] the line defining the constitutional right to appointment of counsel."   *Id.* at 373.   Moreover, "a suspended sentence that may end up in the actual deprivation of a person's liberty may not be imposed unless the defendant was accorded the guiding hand of counsel in the prosecution for the crime charged."   *Alabama v. Shelton*, 535 U.S. 654, 658 (2002).

But the right to counsel does not automatically attach to all proceedings involving the possibility of imprisonment.   For example, the Supreme Court has held that there is not an automatic right to counsel in probation revocation hearings or in civil contempt proceedings; instead, the right to counsel in these proceedings is evaluated on a case-by-case basis, according to due process principles.   *See Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973) ("Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees."); *Turner*, 131 S. Ct. at 2517-20 (2011) (holding that "the Due Process Clause does not *automatically* require the provision of counsel at civil contempt proceedings to an indigent individual . . . fac[ing] incarceration," and instead the right to counsel must be determined by balancing traditional due process factors, such as the indigent defendant's liberty interest, the state's opposing interest, the risk of erroneous deprivation, and the probable value of additional or substitute procedural safeguards).   In *Turner*, the Court found that due process would "not require the provision of counsel where the opposing [party] (to whom support funds are owed) is not represented by counsel and the State

23

provides alternative procedural safeguards equivalent to those we have mentioned (adequate notice of the importance of ability to pay, fair opportunity to present, and to dispute, relevant information, and court findings)," but because the petitioner in that case received "neither counsel nor the benefit of alternative procedures," his incarceration violated the Due Process Clause.   *Id.* at 2520.

Missouri Supreme Court Rule 31.02 also provides some considerations for determining when counsel is required:

> If any person charged with an offense, the conviction of which would probably result in confinement, shall be without counsel upon his first appearance before a judge, it shall be the duty of the court to advise him of his right to counsel, and of the willingness of the court to appoint counsel to represent him if he is unable to employ counsel. Upon a showing of indigency, it shall be the duty of the court to appoint counsel to represent him. If after being informed as to his rights, the defendant requests to proceed without the benefit of counsel, and the court finds that he has intelligently waived his right to have counsel, the court shall have no duty to appoint counsel. If at any stage of the proceedings it appears to the court in which the matter is then pending that because of the gravity of the offense charged and other circumstances affecting the defendant, the failure to appoint counsel may result in injustice to the defendant, the court shall then appoint counsel.

Mo. Sup. Ct. R. 31.02(a).

Plaintiffs allege that they were not afforded counsel at the initial hearings on their underlying traffic and other offenses, nor prior to their incarceration for failing to pay the court-ordered fines for these offenses.   The Court notes that because Plaintiffs allege they were only fined, not sentenced to imprisonment, at their initial hearings for their traffic and other offenses, a right to counsel may not have attached at that time.   But a more difficult

question arises regarding Plaintiffs' claimed right to counsel at the time they were incarcerated for failing to pay the court-ordered fines.

A similar claim was addressed by the District of Maine in *Colson v. Joyce*, 646 F. Supp. 102 (D. Me. 1986).   In that case, too, the petitioner was arrested for failing to pay a court-ordered fine arising out of a conviction for driving with a suspended license, and the petitioner was not represented by counsel or advised of a right to counsel prior to incarceration.   *Colson*, 646 F. Supp. at 104.   However, in *Colson*, the petitioner was at least afforded a court hearing prior to his incarceration, at which he was asked to show cause why he should not be committed for failing to pay the fine.[4]   *Id.*   Nevertheless, the court found, and the Fifth Circuit affirmed, that the petitioner had a due process right to counsel at this show cause hearing prior to incarceration, because the petitioner's liberty interest clearly outweighed the state's interest in enforcing its penalties without incurring the costs of court-appointed counsel.   *Id.* at 108, *aff'd*, 816 F.2d 29 (5th Cir. 1987).

Although the Court believes further development of the record will shed light on the nature of the proceedings, if any, by which Plaintiffs allege they were incarcerated, the Court finds at this stage, Plaintiffs have stated a plausible claim that the City's failure to appoint counsel or obtain waivers thereof violated Plaintiffs' due process rights, particularly in light of their allegations that they were also not afforded any hearing, inquiry into ability to pay, or alternative procedural safeguards in connection with their incarceration.

---

[4]     The petitioner in *Colson* also waived the issue of whether the court adequately inquired into his ability to pay before incarcerating him.   *Colson*, 646 F. Supp. at 104.

Indeed, the City does not dispute that appointment of counsel, or waivers thereof, were required in this case; the City merely argues that it is unclear if Count Two is asserted on behalf of all Plaintiffs.   The City points to Plaintiffs' allegations that at least one Plaintiff, Alfred Morris, was informed of the "need" for counsel.   Upon review of the complaint, the Court finds that Plaintiffs have alleged that they were neither informed of a right to counsel nor appointed counsel in connection with their incarcerations.[5]   Moreover the Plaintiffs allege that the failure to appoint counsel or obtain waivers for indigent debtors was a policy and practice of the City.   The Court finds that these allegations are sufficiently specific to put the City on notice that Count Two is asserted on behalf of all Plaintiffs, and that Plaintiffs sufficiently state a claim on behalf of all Plaintiffs, including Morris.   Plaintiffs' allegation that Morris was informed of a "need" for counsel does not demonstrate that Morris knowingly and intelligently waived a right to counsel, and therefore does not defeat Count Two.

     iii.    *Indefinite and Arbitrary Detentions (Count Three)*

The City acknowledges that its only argument for dismissal of Count Three is the "Plaintiffs' failure to specify which detention it claims is constitutionally significant (or which detention each Plaintiff intends to raise a claim upon which relief may be granted)." (Doc. No. 15 at 6.)   A review of Plaintiffs' complaint reveals that they have specifically alleged that they were each detained for days or weeks without a court appearance through

---

[5]      Plaintiff Roelif Carter alleges that he had the assistance of a lawyer from the Veterans Administration prior to pleading guilty and being assessed a fine in connection with one of his traffic violations, but he alleges that the City never appointed him an attorney in connection with his incarceration for failure to pay fines.   *Compare* Doc. No. 1 at 11, *with id.* at 13.

which to challenge their detention, and that the City has a policy and practice of holding people in jail indefinitely until they or their families pay arbitrarily determined cash payments. *See* Doc. No. 1 at 6-32, 34-38, 52.   Although Count Three overlaps with the other counts to some extent, the Court finds that Plaintiffs' allegations are sufficient to state a due process claim.

In determining whether an extended detention following an arrest violates due process, courts must consider "the totality of the circumstances," including "(1) whether the Due Process Clause prohibits an extended detention, without an initial appearance, following arrest by a valid warrant; (2) whether the defendants' conduct offended the standards of substantive due process; and (3) whether the totality of circumstances shocks the conscience." *Hayes v. Faulkner County*, 388 F.3d 669, 673 (8th Cir. 2004).   The Eighth Circuit has held that "the Due Process Clause forbids an extended detention, without a first appearance, following arrest by warrant," and has recognized that "[t]he consequences of prolonged detention may be more serious than the interference occasioned by arrest [because] [p]retrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships." *Id.*

The Eighth Circuit has not delineated with precision "the duration and circumstances of detention that might result in a substantive due process violation." *Luckes v. County of Hennepin*, 415 F.3d 936, 939 (8th Cir. 2005).   However, it has found that a county's 38-day pre-appearance detention of a person arrested by warrant for failure to appear at a municipal court hearing in connection with a ticket for not having automobile tags and vehicle insurance violated due process. *Hayes*, 388 F.3d at 675.   It has also cited

27

with approval the Seventh Circuit's ruling that an 18-day pre-appearance detention violated due process.   *Id.* at 673 (citing and discussing with approval *Coleman v. Frantz*, 754 F.2d 719, (7th Cir. 1985)); *but see Luckes*, 415 F.3d at 940 (finding, on summary judgment, that a 24-hour detention of a person arrested by warrant for failing to pay traffic fine did not violate due process).

At this early stage in the case, the Court finds that the Plaintiffs' allegations of pre-appearance detentions lasting days, weeks, and in one case, nearly two months, in the conditions described below, which are alleged to have been connected only to a municipal code violation that did not warrant incarceration in the first instance, and which are alleged to have continued until an arbitrarily determined payment was made, plausibly state a pattern and practice of due process violations for which the City may be held liable.

### iv.    *Conditions of Confinement (Count Four)*

As discussed above in connection with Count Three, courts must examine the "totality of the circumstances" of a pretrial detainee's confinement to determine whether the conditions rise to the level of a due process violation.   *Morris v. Zefferi*, 601 F.3d 805, 810 (8th Cir. 2010).   Pretrial detainees are "entitled to at least as great protection" as convicted prisoners are entitled under the Eighth Amendment.   *Stickley v. Byrd*, 703 F.3d 421, 423 (8th Cir. 2013).   "Hence, pretrial detainees are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time."   *Id.* "Conditions of confinement, however, constitute cruel and unusual punishment only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise."   *Whitnack v. Douglas*

28

*County*, 16 F.3d 954, 957 (8th Cir. 1994).   The Eighth Circuit has also held that

"deliberate indifference is the appropriate standard of culpability for all claims that prison

officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical

care, and reasonable safety."   *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006); *see

also Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) ("[A]s applied to a

municipality in the Fourteenth Amendment context, deliberate indifference is purely

objective: liability may be premised on obviousness or *constructive* notice.").

While reviewing the totality of circumstances of Plaintiffs' confinement, the Court

focuses on the nature of the conditions and the length of Plaintiffs' exposure to these

conditions.   *See Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003); *see also

Whitnack*, 16 F.3d at 958 ("Conditions, such as a filthy cell, may be tolerable for a few days

and intolerably cruel for weeks or months.") (citation omitted).

Although Plaintiffs have alleged they were exposed to materially the same

conditions,[6] the length of exposure differed among Plaintiffs and among different

instances of incarceration, and these differences may impact the merits of each Plaintiff's

claim.   *Compare Smith v. Copeland*, 87 F.3d 265, 268–69 (8th Cir. 1996) (finding no

constitutional violation where pretrial detainee was subjected to overflowed toilet for four

days), *Williams v. Delo*, 49 F.3d 442, 444–47 (8th Cir. 1995) (finding inmate's deprivation

---

[6]      The Court disagrees with the City that by alleging they were exposed to "materially
the same conditions," Plaintiffs' allegations are too vague for the City to respond.   Upon
review of the complaint, it appears that Plaintiffs have sufficiently alleged the duration of
their different instances of incarceration and the conditions to which they were exposed
during those incarcerations.   As discussed below, whether these conditions amount to a
due process violation is a fact-intensive question that will benefit from further
development of the record.

of clothes, running water, hygiene supplies, blanket, and mattress for four days did not

violate Eighth Amendment), *Whitnack*, 16 F.3d at 958 (finding no constitutional violation

arising from dirty cell with excrement and vomit because conditions lasted only for 24

hours before cleaning supplies were distributed), *and Stickley*, 703 F.3d at 423-24 (finding

denial of pretrial detainee's requests for additional toilet paper did not violate constitution

because of the limited amount of time he went without toilet paper and because "[w]hen he

did run out of toilet paper, he was able to clean himself by taking a shower"), *with Owens*,

328 F.3d at 1027 (finding question of fact raised regarding due process violation where

pretrial detainee spent five weeks sleeping on mattress on floor approximately a foot and a

half away from toilet, where urine splashed on blankets and blankets were cleaned less than

once a month), *and Morris*, 601 F.3d at 811 (holding that transporting pretrial detainee "in

a small, unsanitary dog cage for [a] ninety-minute drive" to the courthouse, "with no

compelling urgency and other options available, was excessive in relation to the goal of

preventing escape, and thus, an inference may be reasonably made that [this] conduct

amounted to [unconstitutional] punishment").

Nevertheless, at this early stage, the Court finds that Plaintiffs' allegations of

repeated detentions lasting days, weeks, and in one case, nearly two months, during which

Plaintiffs allege they were forced to sleep on the floor in dirty cells with blood, mucus, and

feces; were denied basic hygiene and feminine hygiene products; were denied access to

shower, laundry, and clean undergarments for several days at a time; were denied

medications; and were provided little or inadequate food and water, are sufficient to state a

plausible claim for a due process violation attributable to the City.

v.      *Treatment of Plaintiffs as Compared to Civil Judgment Debtors (Count Five)*

In *James v. Strange*, 407 U.S. 128 (1972), the Supreme Court held that a Kansas recoupment statute that permitted the state to recoup court-appointed attorney fees for indigent criminal defendants without permitting the criminal defendant to raise any of the defenses permitted to other civil judgment debtors, including certain protections from wage garnishment, violated equal protection.  *James*, 407 U.S. at 142.   The Court stated that the Equal Protection Clause "imposes a requirement of some rationality in the nature of the class singled out" and that such rationality "is lacking where, as in the instant case, the State has subjected indigent defendants to such discriminatory conditions of repayment" not imposed on other judgment debtors.  *Id.* at 140.

As the City correctly notes, however, the debtors afforded disparate treatment in *James* were similarly situated because all of their debts were civil in nature.  *See U.S. v. Cunningham*, 866 F. Supp. 2d 1050, 1058 (S.D. Iowa 2012) ("Although the statute in *James* dealt with indigent criminal defendants, the debts involved—and afforded disparate treatment—were all civil in nature.").   And at least one district court evaluating *James* has held that "discriminating against criminal judgment debtors by denying them state law exemptions does not violate . . . equal protection" because criminal judgment debtors are not similarly situated to civil judgment debtors.  *Id.* (holding that prohibiting a criminal defendant owing restitution from invoking exemptions afforded civil judgment debtors did not violate equal protection).

The City asserts, and Plaintiffs do not dispute, that Plaintiffs' fines are not merely court costs but fines imposed pursuant to criminal judgments.   Accordingly, the Court

31

finds that Plaintiffs cannot state an equal protection claim for being treated differently with respect to their fines than civil judgment debtors because they have not adequately alleged that they are similarly situated to civil judgment debtors.   *See Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 820 (8th Cir. 2011) ("To establish a violation of [the Equal Protection Clause], a plaintiff must show that she was treated differently than other persons who were in all relevant respects similarly situated.") (citation omitted).   The Court will grant the City's motion to dismiss Count Five.

      vi.    *Warrant Procedures (Count Six)*

"By virtue of its incorporation into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty."   *Baker v. McCollan*, 443 U.S. 137, 142 (1979).   But if a person is arrested pursuant to a facially valid warrant, even if the circumstances of his detention may have been wrongful or constitute false imprisonment under a tort-law analysis, the person fails to state a violation of his Fourth Amendment rights.   *Id.* at 142-43; *see also Luckes*, 415 F.3d at 939 ("Because Luckes was named in a valid bench warrant, however, probable cause for his arrest pursuant to that warrant was established, and his Fourth Amendment argument is thus without merit.").

In this case, the Court finds that Plaintiffs fail to allege that their arrest warrants were facially invalid, and therefore fail to state a claim for violation of their Fourth Amendment rights.   Plaintiffs' allegations that they were arrested for "failure to appear" without being provided adequate notice of a court appearance may give rise to a tort claim but do not establish that their arrest warrants were facially invalid.   *See Heard v. City of*

*Blytheville*, No. 3:10CV00272 SWW, 2011 WL 1639231, at *2 (E.D. Ark. May 2, 2011)

(holding that a plaintiff arrested pursuant to warrant for failure to appear, who alleged that

the city "had at its disposal officers and actual data which would have and should have

established that Plaintiff had not been given notice of a requirement to appear as a witness

in the aforementioned court proceeding," failed to "allege facts sufficient to support a

claim that the warrant for her arrest was facially invalid").   Therefore, the Court will

dismiss Plaintiffs' Fourth Amendment claim in Count Six.

However, Plaintiffs state an additional claim in Count Six that the City has an

allegedly unconstitutional policy and practice of affording wealthier individuals who are

able to pay a fine and individuals represented by counsel an opportunity to immediately

clear warrants, while not allowing unrepresented, indigent individuals to do the same.

Like Count One, this claim appears to allege, effectively, that the City automatically turns

fines into prison sentences for indigents lacking the funds to pay, in violation of *Tate*.

Although this claim appears to be duplicative of Count One, at this point in the proceeding,

the Court declines to dismiss it for failure to state a claim.   However, duplicative damages

will not be recoverable.

     vii.   *Declaratory and Injunctive Relief*

Finally, the Court finds the City's objection to Plaintiffs' requests for declaratory

and injunctive relief to be without merit.   Contrary to the City's assertions, Plaintiffs have

adequately pleaded a reasonable likelihood of future harm because they have pleaded they

still owe debts to the City, which the City may enforce by using the allegedly unlawful

methods and procedures described above.   *See, e.g.*, Doc. No. 1 at 10, 14, 16, 19, 22, 24,

25, 28, 30; *see also Ray*, 2013 WL 5428360, at *14 (holding that plaintiffs' allegations that they "still owe[d] various fines and fees," demonstrated they were "under the present and constant threat of being subject to the allegedly illegal methods and procedures utilized . . . to collect municipal fines," and their claims for "prospective injunctive relief" were therefore appropriate).   Whether Plaintiffs can demonstrate that the factors governing injunctive relief weigh in their favor may be determined at a later stage.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant City of Ferguson's motion to dismiss, or alternatively to strike or for a more definite statement, is **GRANTED in part** and **DENIED in part**.   (Doc. No. 8.)   The motion is **GRANTED** as follows:   the words "First" and Eighth" in Paragraph 16 of the complaint are **STRICKEN**; Count Five is **DISMISSED**; and Plaintiffs' Fourth Amendment claim in Count Six is **DISMISSED**. Except as set forth above, the motion is **DENIED**.


_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 26th day of May, 2015.