IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |
|---|---|
| KEILEE FANT et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 4:15-cv-253-AGF |
| THE CITY OF FERGUSON | ) (Class Action) |
| Defendant. | ) |

## MOTION FOR RECONSIDERATION

On May 26, 2015, this Court issued a lengthy and well-reasoned opinion granting in part and denying in part the City's Motion to Dismiss. *See* Doc. 19. On two discrete issues, however, this Court's order relied on errors of law and fact. The Plaintiffs respectfully submit this short motion urging limited reconsideration of the Court's ruling with respect to Counts Five and Six because of the law and facts overlooked by the Court.

**I.  Count Five: The Debt in this Case Relates to Civil Judgments**

The Court disposed of Count Five with the following statement:

> The City asserts, and *Plaintiffs do not dispute*, that Plaintiffs' fines are not merely court costs but fines imposed pursuant to criminal judgments. Accordingly, the Court finds that Plaintiffs cannot state an equal protection claim ….

Doc. 19 at 31-32 (emphasis added). This statement is incorrect and legally insufficient for three reasons: (1) the Plaintiffs clearly and unequivocally *did* dispute that assertion; (2) not even the City has actually argued that municipal court traffic and ordinance judgments in Missouri are "criminal judgments;" and (3) the City could not argue that the debts in this case were somehow "criminal judgments" because the law is clear that they are civil judgments.

The Court stated that the Plaintiffs had conceded this important question and therefore did not analyze the issue or cite any state law authority.  However, the Plaintiffs explicitly alleged and argued that the debts at issue were civil judgments.  *See* Doc. 13 at 21 ("Unpaid court fines and costs are civil judgments…."); *see also* Complaint, Doc. 1 at ¶ 179; ¶ 182 n.16; ¶ 189.[1]

The City's Motion never actually argued this point.  The City was careful not to say that municipal ordinance violations and traffic cases are criminal.  Instead, the City simply stated, without a single citation to authority or even an explanation, that the debts are "not similar" to and "entirely different" from other civil debt.[2]  Doc. 9 at 16.  Because this conclusory assertion did not cite to authority or otherwise explain itself, the Plaintiffs treated it as waived.  Doc. 13 at 18.

To the extent this issue is not waived for its lack of argumentation, it is clear why the City did not cite any authority: overwhelming Missouri precedent establishes that the cases are "civil" and not "criminal."  *See, e.g., State ex rel. Kansas City v. Meyers*, 513 S.W.2d 414, 416 (Mo.1974) ("Proceedings in municipal courts against persons for violations of city ordinances are civil actions… such proceedings are not prosecutions for crime in a constitutional sense.") (citation omitted).  As the Missouri appellate courts have repeatedly explained: "[V]iolations of municipal ordinances are civil matters but, because of the quasi-criminal nature of an ordinance, are subject to the criminal standard of proof beyond a reasonable doubt." *City of Dexter v. McClain*, 345

---

[1] Earlier in this Court's opinion, the Court explained that the parties have so far been vague about whether the proceedings that led to their incarceration (which the City has publicly stated it views as prosecution for the municipal ordinance of "failure to appear") were civil or criminal.  Doc. 13 at 22.

[2] For the first time in its Reply Brief, the City argued that the problem was that the Plaintiffs did not "plead" that their debts were from civil judgments.  This assertion is demonstrably false.  *See* Complaint, Doc. 1 at ¶ 179; ¶ 182 n.16; ¶ 189.  In the short and mostly nonsensical argument that follows this assertion, the City alleges for the first time that the matters in this case are "criminal," but it does not cite any authority in support of that incorrect proposition.  Instead, the City confusingly focuses on whether the Plaintiffs have alleged the deprivation of specific "exemptions."  Again, the Plaintiffs alleged in detail an entire municipal debt-collection scheme that ignored *every* relevant Missouri statutory exemption and that routinely employed methods unavailable to and unlawful for private creditors.

Moreover, to the extent the City complains that the civil nature of the judgments was not adequately plead, the Plaintiffs would be happy to amend the Complaint, although this is a question of law and not one of fact.

2

S.W.3d 883 (Mo.App. S.D. 2011); *see also, e.g.,*; *City of Strafford v. Croxdale*, 272 S.W.3d 401, 404 (Mo.App. S.D.2008); *City of Kansas City v. Oxley*, 579 S.W.2d 113, 114 (Mo. 1979). Missouri law is therefore clear that the traffic and ordinance cases resulting in the money judgments at issue in this case are "civil" in nature. Although Missouri rightly provides the extra procedural protections associated with criminal prosecution, the judgments issued in municipal cases are civil judgments. The Court should not dismiss Count Five on that basis, especially where the City has not acknowledged any of this state law and where further discovery could shed significant light on the details of the City's onerous debt-collection scheme.

More glaringly, even if the City had adequately made the argument that the debts at issue in this case were "criminal judgments," and even if that argument were correct, the City's arguments and the Court's opinion would still overlook a critical feature of this case: The City uses the term "criminal fines," and the Court, throughout its opinion, refers to "fines." This ignores the court costs, surcharges, and fees that were *separately* assessed to the Plaintiffs and that cannot even arguably be considered a "criminal punishment."[3] This is no debatable basis that the City's recoupment of court costs and its assessment of administrative fees are "criminal fines."

Finally, in addition to the matters being civil under state law, the Court also overlooked the clear statutory authority cited by the Plaintiffs allowing criminal judgments in state courts to be collected in accordance with standard civil debt collection procedures. Mo. Stat. § 560.031 (5). The State of Missouri has chosen to allow all of the civil statutory tools and obligations to be applied to money judgments from even criminal prosecutions in state courts. It would indeed be

---

[3] In an actual criminal prosecution brought in Missouri state court, the state may very well have different fundamental interests in enforcing a criminal punishment such as a fine or a restitution payment to a victim. For example, that is the implication of the Iowa case cited by the Court. Doc. 19 at 31, and such a designation might affect the balancing of interests in *Strange* depending on how onerous the collection methods were. But the separate assessment of the costs of court or administrative fees has never been considered part of an offender's punishment.

3

strange (and unconstitutional) if the Missouri legislature, in authorizing state court debts to be treated like all other civil debts, silently intended to deprive those debtors with court debts from all of the protections of other debtors while granting the government (and the private collection agents with whom many local Missouri governments often contract) all of the corresponding civil tools.  Thus, even if the City is right and the Missouri Supreme Court is wrong about the "civil" nature of these proceedings, the Missouri legislature has nonetheless settled the question on whether civil debt collection tools and protections are available to indigent defendant debtors.

Because the City did not properly argue for dismissal of Count Five, because the Plaintiffs correctly alleged that the debt at issue is civil under Missouri law, and because any arguments available to the City concerning the claim about the disparate treatment of municipal judgment debtors could clearly benefit from further factual development, the Court should not dismiss Count Five at this juncture.[4]

## II. Count Six: The Complaint Clearly States a Fourth Amendment Violation

As the Plaintiffs explained in the Response, the City failed to make any argument or provide a single citation to legal authority for why the Fourth Amendment claim should be dismissed.  The Motion should have been denied for that reason alone pursuant to precedent and local rule.  *See* Doc. 13 at 4.  The Plaintiffs did not have occasion to anticipate or address the

---

[4] Moreover, because it treated the issue as conceded, the Court's opinion did not explain why "criminal fines" should be exempt from the equal protection principles outlined in *James v. Strange*, 407 U.S. 128 (1972).  Instead of dismissing the claim on the pleadings, the Court, even if it believed that the proceedings only involved "criminal" judgments and not "merely costs," Doc. 19 at 31-32, should allow for further factual development so that the Plaintiffs can make the case that the treatment of municipal judgment debtors, whether labeled "civil" or "criminal," is so different from the way that Missouri provides for money judgments to be collected that it amounts to an equal protection violation given Missouri's statutory commitment that civil debt protections and tools may apply equally to the collection of criminal money judgments.  The concern underlying *Strange* was the government taking advantage of its position to create and collect debts in a way deemed contrary to public policy for how money judgments should be collected and in a way that oppresses the poor.  The Supreme Court's concerns for indigent defendants in Kansas is not wholly vitiated by formalistically labeling the court costs "criminal" or "civil."

arguments relied on by the Court.  It would be fundamentally unfair to dismiss this claim on the basis of arguments never made by the City and without the opportunity to develop and brief them.

In any event, the Court's conclusion overlooked binding precedent.  The Court's opinion accurately cites cases for the principle that the Fourth Amendment is not generally violated when a police officer makes an arrest based on a facially valid warrant.  Doc. 19 at 32-33.  But the Court ends its analysis there, concluding that the Fourth Amendment cannot be violated so long as there was a "facially valid warrant."  The Court overlooked well-established case law concerning when the Fourth Amendment *is violated* notwithstanding a facially valid warrant.

The Plaintiffs have alleged that the City and its employees, agents, and officers knew that the warrants were invalid.  Indeed, for example, the City had a policy of telling people *not* to come to court but then knowingly issuing arrest warrants for "failure to appear" even though no court appearance had been missed.  Doc. 1 at ¶ 203.  The warrants issued by the municipal clerks and executed by the police and jail employees were fraudulent.  Put differently, the City knew that, as a matter of policy and practice, its agents had regularly provided false, misleading, and reckless information (and that the municipal judge was relying on false information) in order to secure warrants.

The Supreme Court long ago explained that individual government officials violate the Fourth Amendment and lose qualified immunity if they provide false or reckless information leading to a facially valid warrant.  *Franks v. Delaware*, 438 U.S. 154, 165 (1978).  If an official obtains a warrant on the basis of false or reckless assertions in the affidavit, or if the information presented was so obviously lacking in probable cause that no reasonable person would have believed that it was valid, then the Fourth Amendment has been violated.  *United States v. Leon*, 468 U.S. 897, 923 (1984); *Malley v. Briggs*, 475 U.S. 335, 346 (1986).  It is therefore well

established law in the Eighth Circuit that the issuance of a facially valid warrant *does not* preclude a Fourth Amendment violation.  *Hunter v. Namanny*, 219 F.3d 825, 829 (8th Cir. 2000) (finding the Plaintiff's Fourth Amendment claim to be meritorious even though there had been a facially valid warrant because the police had included wrong information in the warrant application).

Here, the allegations are extremely serious, detailed, and troubling. The City and its employees, officers, and agents in the City jail, City Police Department and Municipal Court constructed a system based on a profitable deception and reckless disregard for constitutional rights.  Whatever its other violations, the City's bench warrant scheme was one of the City's most insidious: City employees routinely told the Plaintiffs and Class members that they were not required to appear and then arrested them, en masse, on supposed "failure to appear" warrants. This was fraudulent and designed, the Complaint alleges, for the purpose of raising additional money through "warrant fees" and in order to get people into the City jail so that they could be further extorted to make "bond" payments.  Everyone involved in this process knew or clearly should have known that the bench warrants were based on false and reckless information.  That is the very core of the Supreme Court's jurisprudence on unreasonableness in Fourth Amendment warrant doctrine.

Just like in any Fourth Amendment claim, municipal actors can be liable for the issuance and execution of judicial warrants when they are responsible for the false, reckless, or insufficient information on which they were based.  *Leon*, 468 U.S. at 923 ("It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it *or who provided information material to the probable-cause determination*.") (emphasis added).  Of course, the heightened *Leon* and *Malley* rules (which the Plaintiffs could have met here had they sued individual officers) do not apply to cities like

6

Ferguson, who are not shielded by the good faith exception or qualified immunity.  Municipalities are liable if there is a custom, pattern, or practice of conduct that causes systemic invalidity in issuing and executing warrants.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Court rightly assumes that, if an individual police officer looked at a warrant, saw nothing "facially invalid,"[5] and then made an arrest, the Plaintiffs may not have a Fourth Amendment claim against that officer for the arrest, even if the warrant itself was based on incorrect or insufficient information.  But the problem in this case is that the Plaintiffs and thousands of other people were getting arrested without probable cause *as a matter of policy and practice* because of the City's actions.  That claim is not against an arresting officer (who merely may have executed what seemed to the officer to be a "facially valid" warrant), but against the City employees, officers, and agents routinely providing the information used to obtain false and invalid warrants.  The City cannot escape liability for its own Fourth Amendment violation by getting a judge to sign a facially valid warrant, just as an individual officer could not escape liability for providing false or reckless information to secure a warrant executed by another officer.[6]  Numerous lines of Supreme Court precedent in similar contexts confirm this basic point:

---

[5] At this stage, and given that the City did not make any Fourth Amendment arguments, dismissal is inappropriate. The parties should explore this issue in more depth through the adversarial factual development of discovery.

For example, although the Court uses the term "facial validity," it is actually not clear at this stage whether that term accurately describes the facts.  The City was issuing "warrants" for "failure to appear" despite everyone involved in the process knowing that those warrants were likely based on incorrect information.  These "warrants" may be nothing more than the letter "W" handwritten on a folder followed by electronic entries in a system, discrediting the concept of "facial validity" because none of the warrants on their face described to officers their valid basis and City employees knew or should have known that the systemic flaws entirely undermined the electronic records.

[6] Even individual police officers, though, could be liable under the heightened standard of qualified immunity in a case alleging a pattern and practice of bad warrants.  *Herring v. United States*, 555 U.S. 135, 146 (2009) ("In a case where systemic errors were demonstrated, it might be reckless for officers to rely on an unreliable warrant system.") (citing *Arizona v. Evans,* 514 U.S. 1, 17 (O'Connor, J., concurring) ("Surely it would not be reasonable for the police to rely ... on a recordkeeping system ... that routinely leads to false arrests") and *Hudson v. Michigan*, 547 U.S. 586, 604 (2006) (Kennedy, J., concurring in part and consurring in judgment) ("If a widespread pattern of violations were shown ... there would be reason for grave concern.")).

7

> Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. *Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest.*  In sum, the complaint on which the warrant issued here clearly could not support a finding of probable cause by the issuing magistrate…. Therefore, petitioner's arrest violated his constitutional rights under the Fourth and Fourteenth Amendments.

*Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568-69 (1971).

If the City seeks to secure dismissal of this Fourth Amendment claim or prevail on summary judgment, it should make specific arguments supported by law.  The Court should not dismiss the claim in the absence of rigorous adversarial testing of the Fourth Amendment arguments.  As it stands, if the Plaintiffs' claims are true, they clearly establish municipal liability under a long line of binding precedent.[7]

**Conclusion:**

For the reasons stated above, the Court should not dismiss Count Five or the Fourth Amendment claim from Count Six.  The parties should be given the chance further to develop and brief these claims.

    Respectfully submitted,

    /s/ Alec Karakatsanis
    Alec Karakatsanis (E.D.Mo. Bar No. 999294DC)

    Equal Justice Under Law
    916 G Street, NW Suite 701

---

[7] The case relied on by the Court contains only one sentence on the issue and no analysis, making it difficult to understand the legal principle for which it stands. *Luckes v. Cnty. of Hennepin, Minn.*, 415 F.3d 936, 939 (8th Cir. 2005).  But, according to the sparse facts in *Luckes*, a single person had received traffic citations and inadvertently failed to satisfy the fines, leading to a facially valid bench warrant.  There was absolutely no indication or allegation that the issuance of the warrant was invalid (for example that an officer had deliberately misinformed the judge that the person had been given notice but had not been), much less that the municipal entity and its employees and agents knew that it was invalid and had constructed the invalidity as part of a scheme to increase collections through extra warrant fees and illegal arrests.  The real complaint in that case had nothing to do with the warrants but with the post-arrest booking and detention procedures.

Washington, DC 20001
(202)-681-2409
alec@equaljusticeunderlaw.org


_/s/ Thomas B. Harvey_____
Thomas B. Harvey (MBE #61734)

_/s/ Michael-John Voss_____
Michael-John Voss (MBE #61742)

ArchCity Defenders
812 N. Collins
Saint Louis, MO 63102
855-724-2489


_/s/ John J. Ammann_____
John J. Ammann (MBE #34308)

_/s/ Stephen Hanlon_____
Stephen Hanlon (MBE #19340)

_/s/ Brendan Roediger_____
Brendan Roediger (E.D.Mo. Bar No. IL6287213)

Saint Louis University School of Law
100 N. Tucker Blvd.
Saint Louis, MO 63101-1930
314-977-2778

*Attorneys for Plaintiffs*

9

**CERTIFICATE OF SERVICE**

      I certify that a copy of this Motion has, on June 1, 2015, been electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of the filing upon counsel for the Defendant in this matter:

Peter J. Dunne
Robert T. Plunkert

PITZER SNODGRASS, P.C.
100 South Fourth Street, Suite 400
St. Louis, Missouri 63102-1821
(314) 421-5545
Counsel for Defendant – City of Ferguson


                                          */s/ Alec Karakatsanis*
                                          Alec Karakatsanis

                                          Attorney for the Plaintiffs