UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KEILEE FANT, et al.          )
                          )
      Plaintiffs,       )
                          )
vs.                     )  Case No.: 4:15-cv-253
                          )
THE CITY OF FERGUSON,   )
                          )  JURY TRIAL DEMANDED
      Defendant.      )

# *DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO PARTIALLY DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT*

COMES NOW Defendant, the City of Ferguson ("Defendant"), and for its Memorandum in Support of its Motion to Dismiss Plaintiffs' Class Action Complaint (Doc. No. 53), pursuant to Federal Rules of Civil Procedure 8, 10, 12(b)(6), 12(e), and 12(f), states as follows:

## I. INTRODUCTION

In addition to arguments previously raised,[1] Defendant states that pursuant to Missouri law, the legal distinction between the Ferguson Municipal Court and the City of Ferguson mandate that several of Plaintiffs' Counts be dismissed as a matter of law.  Further Plaintiffs have failed to sufficiently allege they are entitled to declaratory and equitable relief.

Plaintiffs have purported to raise seven counts:

---

[1] Defendant incorporates its arguments raised in its Motion and Memorandum to Dismiss Plaintiffs' Complaint, and, for the arguments stated therein, Plaintiffs' First Amended Complaint should be dismissed.  Doc. No. 8 and 9. Defendant does not attach the previously considered memorandum to waste time, but to preserve their arguments, preserve the record, and to allow the Court to reconsider such arguments should this Court deem appropriate. Further, the Court will be able to modify any such interlocutory order throughout his matter.

- Count I – The City allegedly violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment by jailing and threatening to jail Plaintiffs indefinitely for their inability to pay debts owed from traffic and other minor offenses and pertaining to the bond issued, without conducting any inquiry into Plaintiffs' ability to pay and without considering alternatives to imprisonment;

- Count II – The City allegedly violated Plaintiffs' rights under the Sixth and Fourteenth Amendments by jailing them without affording them the benefit of counsel or obtaining a knowing, intelligent, and voluntary waiver of counsel;

- Count III – The City allegedly violated the Due Process Clause by incarcerating Plaintiffs without allowing a meaningful legal process through which they can challenge their detention or until they could make arbitrarily determined cash payments;

- Count IV – The City allegedly violated the Due Process clause rights of Plaintiffs due to the conditions of confinement in the City of Ferguson jail;

- Count V – The City allegedly violated the Equal Protection Clause rights of Plaintiffs by imposing unduly harsh and punitive restrictions on debtors whose creditor is the government compared to those who owe money to private creditors;

- Count VI – The City allegedly violated the Fourth and Fourteenth Amendments rights of Plaintiffs by serving invalid warrants regarding failure to appear charges; and

- Count VII – The City allegedly violated the Fourth and Fourteenth (via incorporation) rights of Plaintiffs for failing to finding probable cause within forty-eight hours of their arrest and because detention was not related to any legitimate government interest.

2

*See* Doc. No. 19, pp. 2–5.

With the exception of Count IV, Defendant is entitled to dismissal because Plaintiffs cannot show the City of Ferguson had any policy which was the motivating factor behind any violation, as the Ferguson Municipal Court is a division of the Circuit Court of St. Louis County, Missouri, and thus an arm of the state.

## II.  STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989)).  "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 at 678).  The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678.  In support of any type of cause of action, a plaintiff is required to plead more than a mere "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. This tenet is especially true in cases involving government entities given the potential application of an immunity defense. *Id.* at 685.

## III.  ARGUMENT REGARDING DISTINCTION BETWEEN COURT AND CITY

Defendant will present to this Court the issue of law, the rules set forth both under federal law and Missouri law, an explanation of the rules, application of the rules, application of the rules to each of Plaintiffs' counts (with the exception of Count IV), and the conclusion that all counts (with the exception of Count IV) must be dismissed as a matter of law for failure to state a claim upon which relief may be granted.

## A. Issue: Municipal Divisions and Liability Under 42 U.S.C. § 1983

The issue before this Court with respect to Defendant's Motion to Partially Dismiss is whether the conduct of which Plaintiffs complain, in a light most favorable to Plaintiffs for purposes of this motion, may be legally attributable to the City of Ferguson with respect to municipal liability under 42 U.S.C. § 1983.[2]

## B. Rule: Federal and Missouri Law

Federal and Missouri law inform this Court of the rules relevant to this Court's determination whether the alleged conduct is attributable to the City of Ferguson. Defendant will discuss, in this order: 1) Municipal liability under 42 U.S.C. § 1983; 2) Missouri Law Regarding Municipal Divisions of Circuit Courts of Missouri; and 3) federal law analyzing the interplay between municipal liability and municipal courts.

### 1. Municipal Liability Under 42 U.S.C. § 1983

Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979). The first step in any such claim is to identify the specific constitutional right allegedly

---

[2] Closely related to this issue is whether Eleventh Amendment immunity is available. *See Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir.2003) (superior courts and their employees are considered arms of the state for Eleventh Amendment purposes and are not liable under § 1983). This Court need not apply immunity or question whether Defendant is a "person" under 42 U.S.C. § 1983, as the reasons in this Memorandum show no liability may attach under *Monell*. In the alternative, Defendant sets forth a good faith request that the Eleventh Amendment be extended to the conduct alleged by Plaintiffs for the reasons described below (municipal court alleged action and inaction).

{01632682.DOCX;1}

infringed. *Graham v. Connor*, 490 U.S. 386, 394, (1989); *Baker v. McCollan*, 443 U.S., at 140. It is not sufficient for Plaintiffs to merely identify conduct attributed to the municipality, but they must demonstrate that, through the municipality's deliberate conduct, the municipality was the "moving force" behind the alleged injury. *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown (Bryan County)*, 520 U.S. 397, 404 (1997); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (a municipality cannot be held vicariously liable under 42 U.S.C. § 1983 on a *respondeat superior* theory).

It is well settled that municipalities may only be held liable for a municipal employee's alleged violation of another's constitutional rights when the employee's actions are in "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694; *see also Turner v. Mull*, 784 F.3d 485, 489 (8th Cir. 2015) (citing *Monell*, 436 U.S. at 694); *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (internal citation omitted).

Accordingly, to establish municipal liability against Defendant, Plaintiffs must not only show that their rights were violated, but that Defendant has or had a custom or policy that infringed upon or constituted deliberate indifference to their rights, and that such custom or policy actually caused the violation. While negligently inflicted harm is beneath the protections of the U.S. Constitution (*County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)), constitutional torts, like common law torts, still require proximate cause. *See Carey v. Piphus*, 435 U.S. 247, 257–58 (1978) (recognizing that the tort rules defining elements of damages and the prerequisites for the recovery of damages provide the appropriate starting point under § 1983 as well); *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 409 (1970). Plaintiffs can establish this requisite "official custom or policy," a necessary element in bringing claims

5

under § 1983, in one of two ways: (1) by identifying an officially promulgated policy of Defendant, or (2) by identifying an unofficial custom or practice, usually shown through the repeated acts of the final policymaker of Defendant. *See St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988); *Monell*, 436 U.S. at 690–91; *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999); *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998); *Marchant v. City of Little Rock, Arkansas*, 741 F.2d 201, 2014 (8th Cir. 1984). "[W]hether an official had final policymaking authority is a question of state law." *Copeland v. Locke*, 613 F.3d 875, 882 (8th Cir. 2010) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). This determination is "dependent on the definition of the official's functions under relevant state law. *McMillian v. Monroe County, Alabama*, 520 U.S. 781, 786 (1997).

### 2. Law: Missouri Law Regarding Municipal Divisions of Circuit Courts of Missouri

The Constitution of 1945 of the State of Missouri provides "[t]he circuit courts shall have original jurisdiction over all cases and matters, civil and criminal." MO. CONST. ART. V, § 14(A). It further provides, "Each circuit may have such municipal judges as provided by law and the necessary non-judicial personnel assisting them. The selection, tenure and compensation of such judges and such personnel shall be as provided by law, or in cities having a charter form of government as provided by such charter." MO. CONST. ART. V, § 23. "Violations of municipal ordinances shall be heard and determined only before divisions of the circuit court as hereinafter provided in this chapter." R.S.Mo. § 479.010.

Missouri's Constitution further stated, as of January 2, 1979:

> The jurisdiction of municipal courts shall be transferred to the circuit court of the circuit in which such municipality or major geographical area thereof shall be located and, such courts shall become divisions of the circuit court. When such

> courts cease to exist, all records, papers and files shall be transferred to the circuit
> court which may designate the place where such records may be maintained.

Mo. Const. Art. V, § 27.2.d; *see Tupper v. City of St. Louis*, 468 S.W.3d 360, 369 (Mo. banc 2015). "The judges of these municipal divisions shall be subject to the rules of the circuit court which are not inconsistent with the rules of the supreme court," and "[t]he presiding judge of the circuit shall have general administrative authority over the judges and court personnel of the municipal divisions within the circuit." R.S.Mo. § 479.020.5; *see also* Mo. Sup. Ct. R. 37.04 ("The presiding judge of the circuit shall have general administrative authority over the judges and court personnel of all divisions of the circuit court hearing and determining ordinance violations within the circuit. The judges of all such divisions shall be subject to the rules of the circuit court that are not inconsistent with this Rule 37."). An aggrieved party is entitled to a trial de novo, as of right, wherein the matter shall be heard by the Circuit Court. R.S.Mo. § 479.200; *see also* Mo. Const. Art. V, § 18 (orders of municipal court subject to direct review by courts); Mo. Const. Art. V, § 27.5 (right to de novo review of appealable order by municipal judge). "The municipal judge shall have the power to administer oaths and enforce due obedience to all orders, rules and judgments made by him, and may fine or imprison for contempt committed before such judge while holding court, in the same manner and to the same extent as a circuit judge." R.S.Mo. § 479.070. The Missouri Supreme Court is responsible developing model rules and requirements, and the presiding judge of the circuit is responsible for determining standards to guide the municipal court in determining indigence. R.S.Mo. § 479.353(4).[3]

---

[3] Though this was enacted on August 28, 2015, it reaffirms the pre-existing role of the municipal court judge in determining indigence. *See, e.g., Sullivan v. Dalton*, 795 S.W.2d 389, 390–91 (Mo. banc 1991) (citing Mo. Sup. Ct. R. 37.50); *see also* Mo. Const. Art. V, § 5) (giving all rules established by Supreme Court the force and effect of law).

Similarly, a municipality shall provide by ordinance for a clerk and other non-judicial personnel (as enabled by the Missouri Constitution to the circuit courts under MO. CONST. ART. V, § 23):

> as may be required for the proper functioning of the municipal division or divisions and shall provide a suitable courtroom in which to hold court.  The salaries of the judges, clerks and other nonjudicial personnel and other expenses incidental to the operation of the municipal divisions shall be paid by the municipality.

R.S.Mo. § 479.060.1.  "Municipal clerks shall constitute the clerical staff of the circuit court to perform the recordkeeping functions in the municipal divisions."  R.S.Mo. § 483.241.3.  "The clerk shall tax and subscribe all bills of costs arising in any cause or proceedings instituted or adjudged in the court of which he is the clerk, agreeably to fees which shall, for the time being, be allowed by law, and shall in no case allow any item or charge, unless the service for which it was made was actually performed in the cause."  R.S.Mo. § 514.260.  "[T]he clerk of each court of this state responsible for collecting court costs shall collect the court costs. . ."  R.S.Mo. § 488.012.  The circuit clerk shall not be accountable or responsible for or under a duty to collect court costs in a case while it pends in a municipal division of the circuit court.  R.S.Mo. § 483.550.

"In the prosecution of violations of municipal ordinances before a municipal judge, all fines and costs shall be paid to and deposited not less frequently than monthly into the municipal treasury."  R.S.Mo. § 479.080.1.  "The official collecting fines shall. . . pay to the municipal treasurer the full amount of all fines collected by him during the preceding month if not previously paid to the municipal treasurer."  R.S.Mo. § 479.080.3.

### 3.  Law: Municipal Divisions and Liability Under 42 U.S.C. § 1983

The Eighth Circuit, whose law is binding upon this Court (*Hood v. U.S.*, 342 F.3d 861, 864 (8th Cir. 2003)) has found the actions of a municipal judge in his or her judicial capacity to enforce state law do not act as a municipal official or lawmaker for purposes of municipal liability under 42 U.S.C. § 1983.[4]  The Fifth Circuit has "repeatedly held" and reinforced this tenet of law.  *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992).  Other circuits[5] and district courts[6] have followed this rule.  The rationale invoked is supported by Supreme Court precedent.[7]

## C. Explanation: Controlling Law Regarding Municipal Divisions and Liability Under 42 U.S.C. § 1983

In *Williams*, the Eighth Circuit (en banc) analyzed whether a municipal judge's termination of two former clerks could be seen as policy attributable to the municipality.  *Id.* at 1399–1402.  The *Williams* Court stated

---

[4] *Granda v. City of St. Louis*, 472 F.3d 565, 569 (8th Cir. 2007) (distinguishing *Williams* and finding a "judicial decision that is subject to review or reversal by higher state courts" is "not a final policy decision of a type creating municipal liability under § 1983"); *Williams v. Butler*, 863 F.2d 1398, 1402 (8th Cir. 1988) (en banc); *see also Granda v. City of St. Louis*, 2006 1026978, at *8 (E.D. Mo. 2006) (The District Court, later affirmed by the Eighth Circuit, rejected the claim that municipal judges are policy makers, as "[i]t goes without saying that judges are members of the judicial branch of government, not the policy making executive or legislative branches.").

[5] *Ledbetter v. City of Topeka, Kansas*, 318 F.3d 1183, 1190 (10th Cir. 2003) (finding no municipal liability under *Monell* when a judge's clerk issued warrants the judge himself did not personally review using the judge's rubber stamp because it was not done under the auspices of the city and could not be interpreted as promulgating city policy); *Eggar v. City of Livingston*, 40 F.3d 312, 315 (9th Cir. 1994) (finding "lamentable," "cattle-call" method of municipal judge in advising indigents of their rights did not transform conduct into "municipal policymaking"); *Woods v. City of Michigan City, Ind.*, 940 F.2d 275, 279 (7th Cir. 1991) (judge issuing bond schedule was not final policymaker for county or city following said schedule); *Anela v. City of Wildwood*, 790 F.2d 1063, 1070–71 (3d Cir. 1986) (Becker, J., dissenting).

[6] *Bliven v. Hunt*, 478 F. Supp. 2d 332, 337 n.2 (E.D.N.Y. 2007) (citing several of the above cases with parentheticals), aff'd, 579 F.3d 204 (2d Cir. 2009) ; *Dellutri v. Village of Elmsford*, 895 F. Supp. 2d 555, 567 (S.D.N.Y. 2012) ("[M]unicipal judges do not act as policymakers and therefore a municipality cannot be liable ... for a Section 1983 claim based solely on the actions of its judges."); *Mitchell v. Randolph*, 155 F.Supp. 2d 1057, 1068 (N.D. Ind. 2001) ("Mitchell has not directed this court to any Indiana statutory or case law which would suggest that municipal judges are considered policy makers for the cities in which they sit. Rather, this would be counter-intuitive to the Constitutional and statutory makeup of the State of Indiana."); *Rodriguez v. Bexar County Hospital District*, 2015 WL 77660209, at *13 (W.D. Tex. 2015) (pending appeal, citing to several Fifth Circuit decisions supporting the proposition a municipal judge does not act as the final policymaker for purposes of *Monell*).

[7] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *Michigan v. DeFillippo*, 443 U.S. 31, 39 (1979) (Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.").

9

We begin our analysis by noting that a very fine line exists between delegating final policymaking authority to an official, for which a municipality may be held liable, and entrusting discretionary authority to that official, for which no liability attaches. The distinction, we believe, lies in the amount of authority retained by the authorized policymakers. A clear message from *Praprotnik* is that an incomplete delegation of authority-i.e., the right of review is retained-will not result in municipal liability, whereas an absolute delegation of authority may result in liability on the part of the municipality.

*Id.* at 1402. As the municipal judge was delegated the authority to hire and fire employees of the municipality, the *Williams* Court found the municipal judge to be a final policymaker in that instance.

However, "[A]n official may be a final policymaker as to some issues but not as to others." *Eldridge v. Rochester City School Dist.*, 968 F.Supp.2d 546, 562 (W.D.N.Y. 2013). In 2007, the Eighth Circuit distinguished *Williams* based on function and discretion used by a municipal judge. *Granda v. City of St. Louis*, 472 F.3d 565, 569 (8th Cir. 2007). In *Granda*, plaintiffs alleged a municipal judge had a practice of incarcerating the parents of truant children. *Id.* at 566. The Eighth Circuit, as a matter of law, denied the municipal judge was a final policymaker with respect to § 1983 liability as to the City of St. Louis because "[t]he municipal court is a division of the state circuit court, and review of a judge's decisions is to be sought in that court." *Id.* at 569. Accordingly, because "Judge Turner's order was a judicial decision made in a case that came before her on a court docket. . . [w]e conclude that the judicial order incarcerating Granda was not a final policy decision of a type creating municipal liability under § 1983." *Id.*

   D. **Application: All counts of Plaintiffs' First Amended Complaint (with the exception of Count IV) should be dismissed for failure to state a claim upon which relief may be granted.**

Defendant will address each of Plaintiffs' counts in the order raised in their First Amended Complaint to demonstrate how Plaintiffs have failed to state a claim upon which relief may be granted, warranting dismissal. *See* F.R. Civ. P. 12(b)(6).

> **1. Count One should be dismissed as the setting of fines and bonds were within the powers of the Ferguson Municipal Judge operating the Ferguson Municipal Court as a division of the St. Louis County, Missouri, Circuit Court.**

Plaintiffs' first count pertains to the Fourteenth Amendment's due process and equal protection clauses with respect to the imprisonment of an individual, whether an individual was afforded an inquiry as to whether he or she has made all reasonable efforts to pay the fine,[8] and the setting of cash bonds. Doc. No. 53, ¶ 235. Plaintiffs allege city police are allowed to reduce bond amounts on a previously determined bond schedule "the longer a person remains in jail after an arrest." *Id.* at § 181, n.16.

"Missouri law is clear that the purpose of bail is to secure the defendant's appearance." *State v. Jackson*, 384 S.W.3d 208, 215 (Mo. banc 2012). "[S]ection 32 provides only that bail may be denied or special conditions imposed notwithstanding the right to bail with sufficient sureties under article I, section 20 'upon a showing that the defendant poses a danger to a crime victim, the community, or any other person.' MO. CONST. ART. I, § 32(2)." *Id.*; Mo. Sup. Ct. R. 37.15(b). "Pursuant to this provision, as well as under this Court's Rule 33.01, Missouri courts

---

[8] The Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution do not prohibit an individual for failing to pay a fine. *Cf. Bearden v. Georgia*, 461 U.S. 660, 668–69(1983) ("Similarly, a probationer's failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution may reflect an insufficient concern for paying the debt he owes to society for his crime. In such a situation, the State is likewise justified in revoking probation and using imprisonment as an appropriate penalty for the offense. But if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available.").

can impose conditions on bail to protect others as well as to secure defendant's return or even deny bail if the State shows that the defendant poses a danger to the victim or public. *Id.* at 215–16 (finding cash-only bail does not offend the Missouri Constitution); *see also* Mo. Sup. Ct. R. 37.16. As explained above, it is within the municipal judge's power to imprison or fine an individual who committed an ordinance violation. *See* R.S.Mo. § 479.070; R.S.Mo. § 560.026.1 (stating municipal court's considerations regarding issuing fine or imprisoning).

It is immaterial to the issue presently before this court regarding the alleged practice of *reducing*[9] bonds over time, as state law dictates the Ferguson Municipal Judge is the final policymaker with respect to fines, imprisonment, bonds, and inquiries as to the ability to pay. Further, by state law, bail amounts are to be collected by the clerk (or transferred by peace officer to the clerk) (Mo. Sup. Ct. R. 37.24) and the judge may designate a clerk to collect payment of fines and costs (Mo. Sup. Ct. R. 37.49). The *collection* of reduced amounts by peace officers based from a bond schedule does not implicate the Constitutional provisions as alleged by Plaintiffs, as the final policymaker (as determined by Missouri law) remains with the judge. As the judge has independent power and is subordinate to the supervision of the presiding judge of the circuit court in which he or she sits, the Ferguson Municipal Judge and the division are a part of the Missouri Circuit Court and are therefore arms of the state. *See McKlintic v. 36th Judicial Circuit Court*, 508 F.3d 875, 877 (8th Cir. 2007); *Harris v. Missouri Court of Appeals, Western Dist.*, 787 F.2d 427, 429 (8th Cir. 1986) (citing *Alabama v. Pugh*, 438 U.S. 781, 782 (1978)). This is not a case where the municipal judge was assigned the ability to make

---

[9] It is unclear what Plaintiffs' theory is to state a city employee's alleged reduction of bond set by a judge can violate an individual's actionable rights under the United States Constitution. *See* Mo. Sup. Ct. R. 37.17 ("When an arrest is made without a warrant, the peace officer may accept bond in accordance with a bail schedule furnished by the court having jurisdiction."); Mo. Sup. Ct. R. 33.18 ("The court that sets the conditions for release, or clerk or peace officer when authorized, may accept the conditions for release and release the accused."). Plaintiffs have not pleaded they have exhausted administrative remedies regarding challenging any alleged excessive bail amounts. *See* Mo. Sup. Ct. R. 37.22.

employment decisions as to municipal personnel (such as in *Williams*), but a case alleging a judge's improper conduct or inaction carrying out judicial functions (such as in *Granda*).

As a matter of state law and controlling Eighth Circuit precedent, Plaintiffs have failed to state a claim for municipal liability wherein the alleged conduct may be attributable to Defendant under 42 U.S.C. § 1983.

> **2. Count Two should be dismissed as advising of any right to counsel and appointing counsel are judicial functions of the Ferguson Municipal Judge, governed by the Missouri law, and reviewable by the presiding judge of St. Louis County Circuit Court.**

Plaintiffs' second count alleges Defendant violated Plaintiffs' Sixth and Fourteenth Amendment rights under the U.S. Constitution by jailing Plaintiffs without the benefit of counsel (or without a waiver of the same).  Doc. No. 53, ¶ 237.

The Ninth Circuit has addressed and rejected the contention that a municipal judge's treatment of indigent defendants and advising of their rights formed a basis of municipal liability under 42 U.S.C. § 1983.  *Eggar v. City of Livingston*, 40 F.3d 312, 313–15 (9th Cir. 1994).  The *Eggar* plaintiffs also alleged the city had an "unwritten policy of refusing to provide counsel to indigents." *Id.* at 315.  The *Eggar* Court specifically found the following:

> These arguments are not compelling. Officials can act on behalf of more than one government entity. *Owens v. Fulton County*, 877 F.2d 947, 952 (11th Cir.1989). That Judge Travis allegedly performed his duty to advise indigents of their rights in a way that makes a mockery of those rights does not make that duty administrative. The Judge's failure to follow state law or federal constitutional law does not transform his "cattle-call" method of counseling into municipal policymaking. As state law makes clear, the Judge's obligation to address the rights of defendants arises from his membership in the state judiciary. It is lamentable, but irrelevant, that he failed miserably to meet this obligation under both state and federal standards: he simply is not a municipal decision maker in this context. *See also City of St. Louis v. Praprotnik*, 485 U.S. 112, 126, 108 S.Ct.

915, 925-26, 99 L.Ed.2d 107 (1988) ("[A] federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it.")

A similar analysis defeats plaintiffs' theory of liability based on policy and custom. Because Judge Travis was functioning as a state judicial officer, his acts and omissions were not part of a city policy or custom. A municipality cannot be liable for judicial conduct it lacks the power to require, control, or remedy, even if that conduct parallels or appears entangled with the desires of the municipality. The record does not contain sufficient evidence of any conspiracy between Judge Travis and City officials to deprive indigents of their rights to make the existence of that conspiracy a genuine issue of material fact. The district court's grant of summary judgment should therefore be affirmed.

*Id.* at 315–16 (internal footnotes omitted); *see Harris v. City of Austin*, 2016 WL 1070863, at *6 (W.D. Tex. Mar. 16, 2016) (following *Eggar* and distinguishing *Williams* as "a municipal judge's illegal pronouncement does not become a non-judicial act merely because it is illegal.").

Here, as the St. Louis County Circuit Court's presiding judge had the right to oversee and review the Ferguson Municipal Court, the Ferguson Municipal Judge's actions regarding advising Plaintiffs of their Sixth and Fourteenth Amendment rights and potentially appointing counsel are not actions or omissions attributable to Defendant for purposes of municipal liability under 42 U.S.C. § 1983. *See* Mo. Const. Art. V, § 27.5 (right to de novo review of appealable order by municipal judge). Missouri Supreme Court Rules 37.47 and 37.50 inform a municipal judge of his or her responsibilities regarding defendants' right to counsel in municipal proceedings. Specifically Rule 37.50 assigns the "duty" to the judge in the following manner: "Upon a showing of indigency, it shall be the duty of the judge to appoint counsel to represent the defendant." Mo. Sup. Ct. R. 37.50.

Plaintiffs' allegations in Count II are complaints against the Ferguson Municipal Judge for his conduct pertaining to advising of or appointment of counsel to indigent individuals, which falls within the ambit of the judge's judicial function (controlled by Missouri Supreme Court

14

Rules and reviewable by the presiding judge of St. Louis County).  Plaintiffs have therefore failed to state a cause of action against Defendant upon which relief may be granted.

### 3. Count Three should be dismissed as Plaintiffs' challenges regarding orders of incarceration and conditions of incarceration fail to state a cause of action against Defendant.

In their third count, Plaintiffs allege the violation of Plaintiffs Fourteenth Amendment rights by incarcerating Plaintiffs for an arbitrary period of time or until employees decide to release individuals for free.  Doc. No. 55, ¶ 249. Plaintiffs complain there was no meaningful legal process through which they can challenge their detention.  *Id.*

As explained (*see supra*, fn. 9), Missouri law provides the municipal court to set the conditions for release (an officer may accept conditions and release the accused.  Mo. Sup. Ct. R. 37.18.  Missouri also allows an officer to release an accused based on a bond schedule furnished by the Court.  Mo. Sup. Ct. R. 37.17; *see* Doc. No. 53, ¶ 181, n.16 (alleging use of "bail schedule").  Missouri Supreme Court Rule 37.15 states:

> If an arresting officer has not released a person, the court shall order the person released upon the person's written promise to appear unless the court finds:
>
> (1) The promise alone is not sufficient reasonably to assure the appearance of the person; or
>
> (2) The person poses a danger to a crime victim, the community or any other person.

The same rule later states "[i]f the court determines that the imposition of conditions will assure that the defendant is reasonably likely to appear and will not pose a danger to a crime victim, the community or any other person, the court shall impose conditions for the release of the person." Mo. Sup. Ct. R. 37.15.  Plaintiffs have pleaded officers detained Plaintiffs pursuant to a "bail

{01632682.DOCX;1}

schedule." Doc. No. 53, ¶ 181, n.16.  The legality of a bail schedule by court order is not within the control or policymaking ability of Defendant, but is a judicial function of the Ferguson Municipal Judge.  *Cf. Granda v. City of St. Louis*, 472 F.3d 565, 569 (8th Cir. 2007).  In addition, Missouri law specifically allows a judge to issue a bail schedule under which an officer may arrest and detain an individual.

In *Anela v. City of Wildwood*, the Third Circuit found a municipality "routinely followed the repugnant bail schedule and ignored Rule 3:4-1 when booking arrestees.  790 F.2d 1063, 1067 (3d Cir. 1986).  The *Anela* Court believed the actions of the municipality, in following the bail schedule but by ignoring state law, exposed the municipality to potential liability under 42 U.S.C. § 1983.  *Id.* at 1066.

Later, the Third Circuit clarified its holding in *Anela* stating the municipality's failure to follow a summons procedure outlined in state criminal practice rules (by following the bail schedule established by the municipal judge), the city was exposed to potential liability.  *Talbert v. Kelly*, 799 F.2d 62, 68 n.3 (3d Cir. 1986).  *Anela* has been further limited in subsequent decisions.  *See Woods v. City of Michigan City, Ind.*, 940 F.2d 275, 282 (7th Cir. 1991) (Will, J., concurring and citing to dissent of *Anela*); *Woods v. City of Michigan City, Ind.*, 685 F.Supp. 1457, 1464 (N.D. Ind. 1988) (citing dissent and stating "Indeed, according to the dissent, the entire panel agreed 'that, because the Municipal Judge is not a city employee, his promulgation of the bail schedule cannot be found to be a city policy or practice.'"); *Wallace v. Powell*, 2009 WL 6850318, *14 (M.D. Penn. 2009) ("In *Anela* it was municipal conduct ratified by the judge. Here the violations were committed *by the judge*.  Because there is no unconstitutional act by the municipality which was then ratified by Ciavarella, *Anela* is inapposite given the present allegations.") (original emphasis).

16

*Anela's* dissent, as later decisions have cited, has persuasive value. Judge Becker specifically stated he did not dispute the majority's finding that the particular bail schedule was constitutionally invalid, but "the City of Wildwood cannot be held responsible for obeying the order of a Municipal Judge, a fully competent state judicial official." *Anela*, 790 F.2d at 1071. He went on to explain:

> Although it may be clear to this Court that the municipal court's schedule was invalid because it was in conflict with Supreme Court rules, it is unfair to require the Wildwood police to assess the constitutionality of the Municipal Judge's order or to discover the conflict between two state court rules.

> Policemen are not lawyers, and they have a right to rely on the considerable expertise and learning of state judges. The Municipal Judge was presumably aware of Rule 3:4–1, and the Wildwood police might well have thought that he had a reason for believing that his order was valid notwithstanding the conflict with the Supreme Court rule. At any rate, there is no evidence that the Wildwood police or any other Wildwood employee knew that the Municipal Judge's bail schedule was invalid. In my view, the police should be entitled to follow the orders of a state court without first analyzing those orders to determine whether they are constitutionally sound. *Cf. Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) ("Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.").

> In sum, Wildwood acted in compliance with a bail schedule promulgated by a judge whose court "is an integral part of a state-wide judicial system" and who exercises the judicial power of the State of New Jersey. *Kagan v. Caroselli*, 30 N.J. 371, 377, 153 A.2d 17 (1959). It can therefore not be considered responsible for a policy so as to be subject to liability under Monell. I respectfully dissent.

*Id.* The rhetoric espoused by Judge Becker is supported by the cases cited above, most importantly by *Granda.*, that the discretionary, judicial function of setting forth a bail schedule pursuant to Missouri law does not expose a municipality to municipal liability under 42 U.S.C. § 1983. A holding to the contrary, as Plaintiffs would have it, potentially exposes every

municipality in this nation detaining individuals pursuant to a bail schedule ordered by the municipal judge. This is not legally supportable within the confines of *Monell*.

Plaintiffs' complaints regarding the availability of court in a "meaningful" manner pertain to areas directly under the control of presiding judge of St. Louis County, Missouri, and are similarly complaints against the municipal division of the St. Louis County Circuit Court (as opposed to Defendant). *See supra*. Missouri Supreme Court Rule 37.10, for example, states, "The court shall be deemed always open for the purpose of filing proper papers, the issuance and return of process, and for the making of motions, applications and orders." *See also* Mo. Const. Art. I § 14; R.S.Mo. § 506.080. This aspect of Count III is an attack regarding the operation of the Missouri court system, which is not attributable to Defendant under *Monell*. *Cf. Harris v. Missouri Court of Appeals, Western Dist.*, 787 F.2d 427, 429 (8th Cir. 1986).[10]

Accordingly, Plaintiffs have failed to state a cause of action against Defendant upon which relief may be granted in Count III.

**4. Count Five should be dismissed as Plaintiffs' challenge of payment plans, fines, and fees or surcharges are challenges against the Ferguson Municipal Court and not against Defendant.**

Plaintiffs' fifth count alleges the violation of the equal protection clause of the Fourteenth Amendment to the U.S. Constitution in the fines, payment plans, and fees ordered by the Ferguson Municipal Court. Doc. No. 53, ¶ 243.

The United States District Court for the Western District of Texas has recently declined to extend liability to a municipality in connection with a plaintiff's complaints regarding

---

[10] Plaintiffs do not allege, for example, the Ferguson Municipal Court held proceedings and Plaintiffs were hidden from the Court's attention or otherwise not compliant with a judge's order to have an individual appear before the court.

indigence and the imposition of fines and fees.  *Harris v. City of Austin*, 2016 WL 1070863, *1, *8 (W.D. Tex. Mar. 16, 2016).  Specifically, the plaintiff alleged, *inter alia*:

> Before ordering Harris be incarcerated for failure to pay her fines and fees, the judge did not ask Ms. Harris about her income, her dependents, or other factors bearing on her ability to pay; nor did he inquire into her ability to complete community service, consider reducing the debts based on [her] ability to pay, or appoint counsel for Harris.

*Id.* at *1 (internal citation and quotations omitted).  The *Harris* Court distinguished *Williams*, followed *Eggar*, and held, "Harris's allegation the City of Austin has an unconstitutional policy as to municipal court proceedings conducted by a judge in the exercise of his or her judicial authority does not support a claim for relief against the City under 42 U.S.C. § 1983.  As such, the City's motion to dismiss is due to be granted."  *Id.* at *5–*8.

Pursuant to the law discussed *supra*, Section III.B.2., the municipal judge is entrusted with the power to fine individuals (R.S.Mo. § 479.070) and place individuals on payment plans (R.S.Mo. §§ 479.240, 479.360; R.S.Mo. § 560.026.1).  Plaintiffs complain of "overly onerous payment plans lasting years or decades[,]" yet the Missouri Supreme Court Rules state, "When a fine is assessed for violation of an ordinance, it shall be within the discretion of the judge assessing the fine to provide the payment of the fine on an installment basis under such terms and conditions as he may deem appropriate."  R.S.Mo. § 479.240; *see also* Mo. Sup. Ct. R. 37.65.  Further, the municipal court clerks, as members of the circuit's nonjudicial personnel (MO. CONST. ART. V, § 23), are charged with the responsibility of collecting court costs (which include "fees" and "surcharges") R.S.Mo. §§ 488.005; 488.101; 488.012.  Despite the fact Plaintiffs' allegations fail to sufficiently state which "fees" are challenged under *Ashcrof v.*

*Iqbal*, 556 U.S. 678 (2009), any allegation pertaining to the same is a challenge to policy of the circuit court system as opposed to the municipality.[11]

*Granda*, *Williams*, *Eggar*, and *Harris* all support dismissal of Plaintiffs' claims here, which challenge the municipal court's practices regarding the imposition of fines and taxation of costs. This conduct cannot be attributed to Defendant under *Monell* and Plaintiffs have therefore failed to state a claim upon which relief may be granted.

> **5. Count Six should be dismissed as Plaintiffs' challenges regarding warrants, an inquiry as to the ability to pay, and a finding of probable cause, recalling warrants, and delaying presentment are challenges against the Ferguson Municipal Court and not against Defendant.**

Plaintiffs' sixth count alleges the violation of Fourth and Fourteenth Amendments to the U.S. Constitution occur in warrants being issued without probable cause, a lack of inquiry as to the ability to pay before issuing warrants, recalling warrants to wealthy residents or those who can hire an attorney, and delaying presentment for days or weeks. Doc. No. ¶ 245.

The Tenth Circuit has addressed and rejected extending liability to municipalities regarding the issuance of warrants (and impliedly recalling warrants). *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1189–90 (10th Cir. 2003). In *Ledbetter*, the plaintiff alleged the

---

[11] In addition, ArchCity Defenders, who are co-counsel for Plaintiffs in this matter, are already challenging alleged fees of the City of Ferguson in St. Louis County Circuit Court. *See* Ex. A, which Defendant respectfully requests this Court take judicial notice that such measures have been challenged and are pending. *See McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914 (8th Cir. 2014). Accordingly, to the extent this Court believes Plaintiffs have sufficiently pleaded a challenge to any alleged "fees" or "surcharges" and that such can be attributable to Defendant (both of which Defendant denies), any challenge regarding the same is barred by the *Colorado River* doctrine as parallel state court litigation is pending. *Colorado Water Conservation District v. United States*, 424 U.S. 800 (1976); *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009). Plaintiff Roelif Carter is a Plaintiff in the pending state court action and in this action. The sole jurisdiction of reviewing any such costs is by motion to before the underlying court. R.S.Mo. §§ 514.260 and 514.270; *Wiley v. Daly*, 472 S.W.3d 257, 265 (Mo.App. E.D. 2015) (municipal court has exclusive jurisdiction to review costs).

City of Topeka should be liable for a judge's allowance of rubber stamping by the clerk arrest warrants. *Id.* at 1190. The Court specifically held:

> Thus, Judge Roach's authority to issue arrest warrants was circumscribed by his judicial duty to follow state law, and [a]ny procedural trailblazing on his part, [i.e. allowing a signature stamp to be used without personally reviewing the warrant] "was not done under the auspices of the City and could not be interpreted as promulgating municipal policy.

*Id.* (internal quotations and citations omitted). The *Ledbetter* Court specifically stated it was "persuaded by the reasoning" of several cases Defendant now cites for the proposition that the actions or inaction of municipal judges do not extend liability to municipalities under 42 U.S.C. § 1983. *Id.*; *see also Woodard v. Town of Oakman*, 885 F. Supp. 2d 1216, 1232 (N.D. Ala. 2012) (municipality was not exposed to liability as it did not have control over a municipal court magistrate's unlawful issuance of an arrest warrant).

*Ledbetter* is highly persuasive and applicable to the present case. Plaintiffs' claims regarding the issuance and recall of warrants attack the procedure and review of the municipal court judge in issuing warrants, which cannot be legally found to result in a municipal policy or custom under *Monell*. In addition, request for a hearing regarding the ability to pay *before* issuing a warrant falls within the arguments previously discussed by Defendant and rejected by courts as grounds of exposing municipalities to liability under 42 U.S.C. § 1983. *See supra*, Section III.D.2. The delay in presentment has also been thoroughly addressed by Defendant. *See supra*, Section III.D.3.

Count VI of Plaintiffs' First Amended Complaint has failed to state a cause of action upon which relief may be granted against Defendant.

**6. Count Seven should be dismissed as Plaintiffs' challenge regarding failing to find probable cause within forty-eight hours is a challenge against the Ferguson Municipal Court and not against Defendant.**

Plaintiffs, in their newly raised seventh count, have alleged Defendant has violated their Fourth Amendment rights (incorporated by the Fourteenth Amendment) to a finding of probable cause by a neutral judicial officer based on sworn evidence.  Doc. No. 53, ¶ 247.

The previous discussions by Defendant, including the discussion regarding *Ledbetter*, apply in equal strength to this count as the procedure followed or not followed by a municipal judge is not controlled by any final policymaker of a municipality.  *See supra*, Section III.D.5; *see also supra*, Section III.D.3 regarding availability of court and presentment.  Plaintiffs assert "the City does not hold probable cause hearings or preliminary hearings or make any formal probable cause findings."  Doc. No. 53, ¶ 247.  Under Missouri law, the openness of courts is not within the City's control, but a measure of the state court system.  *See supra*, Section III.D.3.

Plaintiffs have therefore failed to state a cause of action upon which relief may be granted against Defendant.

## IV.  ARGUMENT REGARDING DECLARATORY AND EQUITABLE RELIEF

Plaintiffs have requested declaratory and injunctive relief in their First Amended Complaint.  Doc. No. 53, p. 62 of 63.  A claim for equitable relief in this matter is improper and should be dismissed as Plaintiffs have not alleged any facts which, taken in a light most favorable to Plaintiffs, confer jurisdiction upon this court by establishing sufficient standing to assert such a claim from either a constitutional or prudential standpoint.[12]  Such relief should also be dismissed due to lack of ripeness and for the failure of Plaintiffs to allege facts which

---

[12] For a detailed and learned discussion of the principles at issue, please see *Brown v. City of Ferguson, Missouri*, No. 4:15CV00831 ERW, 2015 WL 8313796, at *4 (E.D. Mo. Dec. 9, 2015).

{01632682.DOCX;1}

establish each requirement necessary for issuance of a permanent injunction.[13] Plaintiffs' request for declaratory relief should likewise be dismissed.[14]

## A. Plaintiffs have failed to meet their burden of proof to establish Article III has conferred jurisdiction to this Court over the subject matter.

Federal courts are courts of limited jurisdiction, and may only hear matters that properly fall into their jurisdictional limits conferred by Article III of the Constitution and the statutes enacted by Congress. *Marine Equipment Management Co. v. United States*, 4 F.3d 643, 646 (8th Cir. 1993) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citing, in turn, *Marbury v. Madison*, 5 U.S. [1 Cranch] 137 (1803))). Article III, § 2 of the United States Constitution limits federal jurisdiction to the adjudication of actual cases or controversies. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of

---

[13] A federal Court may raise the issue of standing, as it is a matter of subject matter jurisdiction, *sua sponte*. *See Auto–Owners Ins. Co. v. Tribal Court of Spirit Lake Indian Reservation*, 495 F.3d 1017, 1020 (8th Cir. 2007). "It is well established that standing is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit." *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (ripeness doctrine originates from Article III's case or controversy language); *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (stating the question of standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."). The Eighth Circuit has stated "numerous times that standing is a threshold inquiry that eschews evaluation on the merits." *City of Clarkson Valley*, 495 F.3d at 569 (internal quotations and citations omitted). Since the Defendants, at this stage in the litigation,[13] have facially challenged Plaintiffs' claims for injunctive relief, "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). The Eighth Circuit reviews a decision dismissing a complaint for lack of standing de novo, (*Tarsney v. O'Keefe*, 225 F.3d 929, 934 (8th Cir. 2000)), and "[T]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion" (*eBay Inc. v. MerExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

[14] Plaintiffs request declaratory relief once in the introduction portion of their Amended Complaint (ECF No. 20, p. 2). Plaintiffs request declaratory relief regarding the violation of rights stated, and such a request is subsumed by their damages action. *See Rhodes v. Robinson*, 408 F.3d 550, 566 n.8 (9th Cir. 2005): *see also Toreres v. Allentown Police Dept.*, 2014 WL 4081477, *12 (E.D. Penn. 2014) ("Declaratory relief is not proper solely to adjudicate past conduct, nor to simply proclaim that one party is liable to another."). For the reasons stated in this brief, this should further be dismissed for failure of a case of actual controversy within this court's jurisdiction. Accordingly, Plaintiffs' request for declaratory relief should be dismissed, and Defendants will refer to the relief sought as injunctive throughout this brief. *See also City of Los Angeles v. Lyons*, 461 U.S. 95, 104 (1983); *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 243–44 (1952).

23

doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). "The doctrines of mootness, ripeness, and political question all originate from Article III's 'case' or 'controversy' language, and similarly jurisdictional in nature." *Id.* at 352. The following will demonstrate how Plaintiffs have failed to facially plead a cause of action wherein this Court may exercise jurisdiction to render equitable relief in the following order: A) standing in light of constitutional limitations; B) standing in a light of prudential limitations; and C) ripeness. Finally, Plaintiffs have failed to facially plead each and every requirement necessary for this Court to impose the requested injunctive relief and concerns of federalism prevent this court from invoking its equitable powers in the manner requested by Plaintiffs.

**1. Plaintiffs have failed to sufficiently allege each and every element of constitutional standing.**

"[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal. . ." *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *see Steel Co.*, 523 U.S. at 89–90; *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009) ("It is crucial, however, not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive."). "The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230–31 (1990). There is a

> long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record, and that it is the burden of the party who seeks the exercise of jurisdiction in his favor, clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.

*Spencer v. Kemna*, 523 U.S. 1, 10–11 (1998) (internal citations and quotations omitted).

There are three requirements to establish constitutional standing are: First, there must be injury in fact which is a harm suffered that is concrete, actual or imminent, and not hypothetical; second, there must be causation between the plaintiff's injury and the defendant's conduct; and lastly, there must be redressability which is a likelihood the requested relief will redress the alleged injury. *Steel Co.*, 523 U.S. at 103; *see also Lujan v. Defenders of Wildlife*, 504 U.S.555, 560 (1992). Defendant will address the three requirements of constitutional standing in order.

**a. Plaintiffs have not pleaded an injury in fact, as their claimed harm is hypothetical.**

Plaintiffs have failed to meet the first requirement to establish constitutional standing: they have not alleged an injury in fact requiring injunctive relief (a harm suffered that is concrete, actual or imminent, and not hypothetical). *See supra*.

"In cases of complaints for injunctive relief, the 'injury in fact' element of standing requires a showing that the plaintiff faces a threat of ongoing harm." *Park v. Forest Service of United States*, 205 F.3d 1034, 1037 (8th Cir. 2000) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–05 (1983)). The *Lyons* Court stated:

> Plaintiffs must demonstrate a "personal stake in the outcome" in order to "assure that concrete adverseness which sharpens the presentation of issues" necessary for the proper resolution of constitutional questions. Abstract injury is not enough. The plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical."

*Lyons*, 461 U.S. at 101–02 (internal citations omitted). "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief. . . if unaccompanied by any continuing, present adverse effects." *Id.* at 102 (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)); *see also Rizzo v. Goode*, 423 U.S. 362, 372 (1976) (finding no constitutional

25

standing where claim rested upon "what one or a small, unnamed minority of policemen might do to them in the future because of that unknown policeman's perception" of departmental procedures).

In *Lyons*, the U.S. Supreme Court rejected a plaintiff's argument that he would have a future unconstitutional encounter with the police. *Lyons*, 461 U.S. at 97–98. The *Lyons* plaintiff filed a complaint for damages, injunction, and declaratory relief against the City of Los Angeles and four of its police officers. *Id.* at 97. The plaintiff alleged he was stopped by the defendant officers for traffic violation, he "offered no resistance or threat whatever," and the officers, "without provocation or justification seized Lyons and applied a chokehold. . . rendering him unconscious and causing damage to his larynx." *Id.* at 97–98. The plaintiff requested a preliminary and permanent injunction to bar the City of Los Angeles from the use of control holds. *Id.* at 98.

Rejecting plaintiff's argument he had constitutional standing, the *Lyons* Court held:

> In order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner. Although Count V alleged that the City authorized the use of the control holds in situations where deadly force was not threatened, it did not indicate why Lyons might be realistically threatened by police officers who acted within the strictures of the City's policy. If, for example, chokeholds were authorized to be used only to counter resistance to an arrest by a suspect, or to thwart an effort to escape, any future threat to Lyons from the City's policy or from the conduct of police officers would be no more real than the possibility that he would again have an encounter with the police and that either he would illegally resist arrest or detention or the officers would disobey their instructions and again render him unconscious without any provocation.

{01632682.DOCX;1}

*Id.* at 105–06. The Court found "Lyons' assertion that he may again be subject to an illegal chokehold does not create the actual controversy that must exist for a declaratory judgment to be entered." *Lyons*, 461 U.S. at 105.

Importantly, the *Lyons* Court stated, "[I]t is no more than conjecture to suggest that in every instance of a traffic stop, arrest, or other encounter between the police and a citizen, the police will act unconstitutionally and inflict injury without provocation or legal excuse." *Id.* at 108; *see O'Shea*, 414 U.S. at 494–99 (finding no standing to sue for injunctive relief where plaintiffs alleged discriminatory law enforcement and inferred future harm based on a pattern of past violative conduct, not the likely enforcement of a statute).

The Supreme Court's decision in *Rizzo v. Goode* is also controlling on this issue. 423 U.S. 362 (1976). In *Rizzo*, plaintiffs raised a class action suit in federal court on behalf of minority citizens and Philadelphia residents against the Mayor, City Managing Director, and Police Commissioner. *Id.* at 367. Plaintiffs alleged "a pervasive pattern of illegal and unconstitutional police mistreatment of minority citizens in particular and Philadelphia residents in general. *Id.* at 374. Finding "that the principles of equity nonetheless militate heavily against the grant of an injunction except in the most extraordinary circumstances[,]" the Supreme Court reversed the District Court's requirement that defendants "submit to (the District) Court for its approval a comprehensive program for improving the handling of citizen complaints alleging police misconduct" in accordance with the District Court's opinion. *Id.* at 365, 379.

*Lyons* and *Rizzo* are controlling precedent cited by several other decisions where equitable relief has been requested in 42 U.S.C. § 1983 actions. *See, e.g., Whitfield v. City of Ridgeland*, 876 F.Supp.2d 779, 787 (S.D. Miss. 2012) (any allegation there was a "reasonable likelihood that in the immediate future [plaintiff] will be stopped and arrested for DUI and that

27

his driver's licenses will be suspended" for failure to submit to a breath test was "far too speculative to satisfy the injury-in-fact requirement of the standing doctrine"); *De Luna v. Hidalgo Cnty., Tex.*, 853 F. Supp. 2d 623, 639 (S.D. Tex. 2012) (denying equitable relief regarding class action where Court could not find substantial likelihood plaintiffs will be stopped and ticketed where the charge carries a fine in excess of the amount the plaintiff could pay); *Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004) ("[A] federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement are unconstitutional."); *Washington v. Vogel*, 156 F.R.D. 676, 681 (M.D. Fla. 1994) (finding *Lyons* rendered the federal courts "impotent to order the cessation of a policy which may indeed be unconstitutional and may harm many persons[,]" but finding the Eleventh Circuit is bound to follow *Lyons*).

Plaintiffs have not alleged that (1) anyone within the control of Ferguson always engages in the alleged misconduct, or (2) that the City ordered or authorized anyone within its control to act in the same manner. *See Lyons*, 461 U.S. at 105–06. Plaintiffs have not alleged there is sufficient likelihood individuals within the City of Ferguson's control will engage in the complained of conduct at some undetermined point in the future. *See Allen v. Wright*, 468 U.S. 737, 755 (1984) (abrogated on other grounds by *Lexmark Intern., Inc. v. State Control Components, Inc.*, 134 S.Ct.1377, 1387–88 (2014)), finding *Allen* plaintiffs did "not allege a stigmatic injury suffered as a direct result of having personally been denied equal treatment."); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1039 (9th Cir. 1999) (*see infra*) (insufficient likelihood of future injury to warrant equitable relief shown regarding Hispanic and nighttime drivers to be stopped by border patrol).

Accordingly, because Plaintiffs have not alleged an injury in fact, Plaintiffs have failed to meet their burden to sufficiently allege constitutional standing with this Court pursuant to *Lyons* and its progeny.

> **b. Plaintiffs have not alleged a fairly traceable connection between Plaintiffs' injury and the complained of conduct, and therefore do not meet the causation requirement of standing.**

Assuming *arguendo* that Plaintiffs pleaded an injury in fact, Plaintiffs have failed to meet the second requirement to establish constitutional standing in that they have not shown any causation between their alleged injury and the Defendants' conduct.

Causation is the "fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Steel Co v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (citing *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)). "If there is no 'actual' harm, then there must at least be 'imminent' harm." *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014). "Mere speculation" that an injury has or will occur "cannot satisfy the requirement that any injury in fact must be fairly traceable to" the source of the injury. *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1148 (2013). The causation analysis and the facts that must be alleged to show causation must be asserted when one is challenging the legality of government action or inaction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). The extent of the facts that should be alleged will turn on whether the plaintiff himself is the objection of the government action or if the injury is a result of the government action against someone other than the plaintiff. *Id.* at 561–62. Where it is the former, there is "little question" that the government action or inaction has caused injury and that an injunction will redress it. *Id.* Where it is the

29

latter, the burden is much higher, and while "standing is not precluded, it is ordinarily more difficult to establish. *Id* at 562 (internal citation omitted); *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 44-45 (1976); *Warth v. Seldin*, 422 U.S. 490, 504 (1975). The Supreme Court "repeatedly has rejected claims of standing predicated on the right, possessed by every citizen, to require that the Government be administered according to law." *Smith v. Jefferson Cty. Bd. of School Comm'rs*, 641 F.3d 197, 206 (6th Cir. 2011) (quoting *Valley Forge Christian Coll. V. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 482–83 (1982)). A plaintiff must demonstrate standing for each form of relief sought, as a plaintiff may have standing to pursue damages but not injunctive relief, depending on the circumstances. *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 890 (7th Cir. 2013).

In *Clapper*, the plaintiffs who raised suit were United States persons whose work required them to engage in sensitive international communications with individuals who they believe were likely targets of surveillance under Section 702 of the Foreign Intelligence Surveillance Act of 1978, 50 U.S.C. § 1881a (2006 ed., Supp. V). *Clapper*, 133 S.Ct. at 1142. The *Clapper* plaintiffs asserted "they can establish injury in fact that is fairly traceable to § 1881a because there is an objectively reasonable likelihood that their communications with their foreign contacts will be intercepted under § 1881a at some point in the future. *Id.* at 1447. The *Clapper* plaintiffs sought a declaration that § 1881a was unconstitutional as well as an injunction against § 1881a surveillance. *Id.* at 1442. The U.S. Supreme Court stated, "The question before us is whether respondents have Article III standing to seek this prospective relief." *Id.* The *Clapper* Court rejected plaintiffs' standing arguments, stating as follows:

> As an initial matter, the Second Circuit's "objectively reasonable likelihood" standard is inconsistent with our requirement that "threatened injury must be certainly impending to constitute injury in fact. Furthermore, respondents'

argument rests on their highly speculative fear that: (1) the Government will decide to target the communications of non-U.S. persons with whom they communicate; (2) in doing so, the Government will choose to invoke its authority under § 1881a rather than utilizing another method of surveillance; (3) the Article III judges who serve on the Foreign Intelligence Surveillance Court will conclude that the Government's proposed surveillance procedures satisfy § 1881a's many safeguards and are consistent with the Fourth Amendment; (4) the Government will succeed in intercepting the communications of respondents' contacts; and (5) respondents will be parties to the particular communications that the Government intercepts. As discussed below, respondents' theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending. Moreover, even if respondents could demonstrate injury in fact, the second link in the above-described chain of contingencies—which amounts to mere speculation about whether surveillance would be under § 1881a or some other authority—shows that respondents cannot satisfy the requirement that any injury in fact must be fairly traceable to § 1881a.

*Id.* at 1147–48 (internal citations omitted).

Plaintiffs here have failed to allege any injury in fact (*see supra*), nor any connection between such injury and Defendant's alleged conduct. That the Plaintiffs may be arrested by a City of Ferguson police officer *and then* subjected to the alleged misconduct in the future cannot be stated as "fairly traceable" to the complained of conduct pursuant to *Clapper*.

Accordingly, Plaintiffs have failed to establish the connection between an injury in fact and Defendant's conduct, and have therefore insufficiently alleged constitutional standing.

      c.      **Plaintiffs cannot demonstrate this Court can remedy the claimed injury, and therefore do not meet the redressability requirement of standing.**

Assuming Plaintiffs can show an injury in fact and causation, Plaintiffs cannot demonstrate that an injunction will redress the claimed injury.

To meet the redressability requirement of standing, Plaintiffs must demonstrate a favorable judicial decision would likely prevent or redress the complained of injury. *See*

*Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009); *see, e.g., City of Hugo v. Nichols (Two Cases)*, 656 F.3d 1251, 1264 (10th Cir. 2011). "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). A showing that the relief requested might redress the plaintiff's injuries is generally insufficient to satisfy the redressability requirement. *See, e.g., Utah v. Babbitt*, 137 F.3d 1193, 1213 (10th Cir. 1998). When requesting injunctive relief, a party must show "continuing, present adverse effects" to establish redressability. *Steel Co.*, 523 U.S. at 109; *see also O'Shea v. Littleton*, 414 U.S. 488, 496–497 (1974). Where a plaintiff only alleges past injury, and not a continuing injury or the likelihood of a future injury, injunctive relief will not redress its injury. *Steel Co.*, 523 U.S. 108. Simply having an interest in deterrence of future injury is insufficient for the purposes of Article III. *Id.* at 108–09.

Here, Plaintiffs have neither alleged any injury in fact (*see supra*) nor a fairly traceable connection between any injury and the complained of conduct (*see supra*) as it pertains to the injunctive relief sought. Plaintiffs have not, therefore, laid any groundwork to support the position that the relief sought will redress any harm. Plaintiffs have not alleged how any injunctive relief can redress the injuries alleged. *See O'Shea v. Littleton*, 414 U.S. at 496–497.

Accordingly, Plaintiffs have failed to sufficiently allege the redressability requirement of constitutional standing, and their request for injunctive relief should be dismissed.

### 2. Plaintiffs have failed to sufficiently allege each and every element of standing in light of prudential concerns.

In addition to these constitutional requirements, "the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." *Valley Forge College v.*

*Americans United*, 454 U.S. 464, 474 (1982). The elements of prudential standing have been explained as follows:

> First, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claims to relief on the legal rights or interests of third parties." *Warth v. Seldin*, [422 U.S. 490, 499 (1975)]. The Supreme Court has acknowledged, however, the propriety of allowing a litigant to bring an action, on behalf of a third party, when the following three criteria are satisfied:
>
>> 1. The litigant must have suffered an "injury in fact," thus providing him with a "sufficiently concrete interest" in the outcome of the issue in dispute;
>>
>> 2. The litigant must have a close relation to the third party; and
>>
>> 3. There must exist some hindrance to the third party's ability to protect his or her own interest.
>
> Second, even when the plaintiff has alleged a redressable injury which is sufficient to meet the requirements of Article III, the Federal Courts will not adjudicate " 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." *Valley Forge College v. Americans United*, supra at 474–75, 102 S.Ct. at 760, quoting *Warth v. Seldin*, supra at 499–500, 95 S.Ct. at 2205–06. Finally, the plaintiff's claim must "fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.' " *Valley Forge College v. Americans United*, supra at 475, 102 S.Ct. at 760, quoting *Association of Data Processing Service Orgs. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970).

*Allnew v. City of Duluth*, 983 F. Supp. 825, 833 (D. Minn. 1997); *see also Lexmark Intern., Inc. v. State Control Components, Inc.*, 134 S.Ct.1377, 1387–88 (2014).

Plaintiffs' claims for equitable relief are abstract questions of wide significance, amounting to a general grievance with the City of Ferguson, which has been the subject of a Consent Order on April 19, 2016. Case: 4:16-cv-00180-CDP, Doc. No. 41; *see also Lujan*, 504 U.S. 575 (stating a suit cannot rest upon a "generalized grievance" where "the impact on [plaintiff] is plainly undifferentiated and common to all members of the public") (internal

quotations and citations omitted); *United States v. Richardson*, 418 U.S. 166, 176–77 (1974); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217, 220 (1974). For, as the Supreme Court has stated in *Lujan*, the Supreme Court has held that

> an injury amounting only to the alleged violation of a right to have the Government act in accordance with law was not judicially cognizable because assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning."

*Lujan*, 504 U.S. at 575–76. Plaintiffs' claims for injunctive relief fall squarely within the generalized-grievance limitations imposed upon courts explained in *Lujan*, and is better left for the representative branches. *See* R.S.Mo. § 479.350, *et seq.* (commonly referred to as "Senate Bill Five").

Pursuant to the above, this Court should exercise prudential restraint and dismiss Plaintiffs' equitable claims as they are generalized-grievances.

### 3. This Court lacks jurisdiction over Plaintiffs' equitable claims for relief due to ripeness

The Court should not decide cases "in advance of the necessity of deciding them." *Rescue Army v. Mun. Court of Los Angeles*, 331 U.S. 549, 569 (1947). In order for a case to be ripe, it must have a claim of a "specific present objective harm" or a "threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 14 (1972) (finding allegation of a "chilling" effect or speculation that the Army may misuse surveillance information in a harmful way was insufficient to support injunctive intervention). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. U.S.*, 523 U.S. 296, 300 (1998) (citing *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 581 (1985)); *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344

U.S. 237, 243–44 (1952).  As courts may adjudicate concrete legal issues, federal courts do not render advisory opinions of abstractions.  *United Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947).

The two plaintiffs in *Hodgers-Durgin v. De La Vina* alleged that Border Patrol agents stopped their vehicle, searched them, and allowed them to leave after the did not find anything in the vehicle.  *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1039 (9th Cir. 1999). The plaintiffs sought equitable relief for Hispanic drivers and nighttime drivers. *Id.* at 1040. Because both plaintiffs frequently drove past Border Patrol agents, yet were very infrequently stopped, the court ruled that it was not sufficiently likely that the plaintiffs would be stopped again by Border Patrol. *Id.* at 1044. Their claims were not ripe because they rested upon contingent future events that may not occur as anticipated, or at all. *Id.* Whether the plaintiffs would be stopped by the Border Patrol was too speculative to warrant an equitable remedy requiring Border Patrol to change its practices. *Id.*

Here, United States District Chief Judge Catherine Perry has issued a Consent Order reached between the United States Department of Justice and the City of Ferguson, addressing, *inter alia*, municipal court procedures.  Case: 4:16-cv-00180-CDP, Doc. No. 41; *see also* R.S.Mo. § 479.350, *et seq.* (municipal reform in effect August, 2015).[15]  Whether the alleged unconstitutional practices (even if they were still in effect) would affect Plaintiffs in the future is far too speculative to warrant an equitable remedy requiring changes to the alleged practices and procedures.

---

[15] Judge Perry's Consent Order addresses the determination of indigence and the imposition of fines (¶¶ 340–42), payment plans and community service (¶¶ 343–46), the issuance of warrants in connection with a hearing to determine payment  (¶¶ 347–48), and bond schedules, bond, payment of bond, and pretrial detention (¶¶ 349–50). Defendant does not anticipate Plaintiffs believe Judge Perry's Consent Order was inadequate with respect to equitable relief from the counts subject to this Motion to Partially Dismiss.  Defendant suggests to this Court the Consent Order has addressed Plaintiffs' concerns fully, and no equitable relief is necessary from this Court regarding all counts (except for Count IV).

{01632682.DOCX;1}

Accordingly, this Court should refrain from issuing injunctive relief due to a lack of ripeness and should therefore dismiss Plaintiffs' request for equitable relief.

**B. Plaintiffs' claims for equitable relief should be denied because they cannot meet each and every requirement to support issuance of a permanent injunction.**

The law is clear that an "injunction should issue only if the traditional four-factor test is satisfied." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157 (2010). In determining whether an injunction is appropriate, a court may not only consider "whether there is a good reason why an injunction should not issue; rather, a court must determine that an injunction should issue under the traditional four-factor test set out above." *Id.* at 157–58. It also important to note however that a court should consider whether "a less drastic remedy" is adequate to redress injury. *Id.* at 165–66 (citing *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311–12 (1982)). If there exists a less drastic remedy, then the "extraordinary relief" afforded by an injunction is unwarranted. *Id.*

Plaintiffs seeking a permanent injunction must demonstrate that: (1) they suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering balance of hardships between plaintiffs and defendants, remedy in equity is warranted; and (4) public interest would not be disserved by permanent injunction. ECF No. 19 (citing *Monsanto*, 561 U.S. at 156 (citing, in turn, *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006))). "The law is well settled that federal injunctive relief is an extreme remedy." *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995). Defendant will address how Plaintiffs cannot meet each of these requirements in this order.

**1. Plaintiffs have not shown a likelihood of substantial and irreparable injury, and are therefore not entitled to equitable relief.**

The rule of equitable restraint dictates an "equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and irreparable injury.'" *City of Los Angeles v. Lyons*, 461 U.S. 97, 111 (1983); *see O'Shea v. Littleton*, 414 U.S. 488, 499 (1974).

A federal court is not the proper forum to press claims against local authorities unless the requirements for entry and the prerequisites for injunctive relief are satisfied. *Lyons*, 461 U.S. at 111-12. "[T]he need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the States' criminal laws in the absence of irreparable injury which is both great and immediate." *Id.* at 112. More generally, whenever a court is asked to exercise its equitable powers to oversee state law enforcement authorities, it must be especially mindful of "[t]he special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." *Id.* (citing *Stefanelli v. Minard*, 342 U.S. 117, 120 (1951). Individual States may permit their courts to use injunctions to oversee the conduct of law enforcement authorities on a continuing basis, but this is not the role of a federal court. *Id.* at 113.

*Lyons*, discussed *supra*, is on point and controlling. Plaintiffs have not alleged the failure to grant an injunction will result in irreparable harm. The speculative future exposure of Plaintiffs to the complained of conduct is remote, at best. *Lyons*, 461 U.S. at 112.

Accordingly, Plaintiffs have not shown a likelihood of substantial and irreparable injury, and their claims for injunctive relief should therefore be dismissed.

**2. Plaintiffs have an adequate remedy at law, and are therefore not entitled to equitable relief.**

37

"It is a 'basic doctrine of equity jurisprudence that courts of equity should not act…when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.'" *Morales v. TWA*, 504 U.S. 374 (1992) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974)).

To the extent an individual has "suffered an injury barred by the Federal Constitution, [that individual] has a remedy for damages under § 1983. Furthermore, those who deliberately deprive a citizen of [that citizen's] constitutional rights risk conviction under the federal criminal laws." *Lyons*, 461 U.S. at 113 (citing *O'Shea*, 414 U.S. at 503); *see also Virginia Petro. Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) (cited with approval in *Sampson v. Murray*, 415 U.S. 61, 90 (1974)); *Travelers Social Club v. City of Pittsburgh*, 685 F.Supp. 929, 936 (W.D. Penn. 1988); *Brown v. City of Ferguson, Missouri*, 2015 WL 8313796, at *5 (E.D. Mo. 2015).

*Lyons* is again on point and controlling. Plaintiffs here have an adequate remedy at law in 42 U.S.C. § 1983 for their causes of action regarding use of lethal force and equal protection. Further, as explained in *Lyons*, criminal law provides a forum of further potential intervention.

Accordingly, as Plaintiffs have an adequate remedy of law, this Court should dismiss Plaintiffs' request for an injunction.

### 3. Plaintiffs have not shown the balance of hardships between the Plaintiffs and Defendant warrant a remedy in equity.

When considering balance of hardships between plaintiffs and defendants to determine whether remedy in equity is warranted (*see Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156 (2010)), "the court balances the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction"

38

(*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (internal quotations and citation omitted)).

Here, Plaintiffs have not set forth any allegations where, if the requested injunctive relief is denied, they will endure any hardship.[16] Plaintiffs' request, however, imposes a substantial hardship on the City of Ferguson by requesting the City of Ferguson to attempt to exercise control over individuals which it lacks legal authority under state law, and that it potentially contravening Judge Perry's Consent Order. Case: 4:16-cv-00180-CDP, Doc. No. 41; *see supra* fn. 15.

Accordingly, Plaintiffs have not met their burden to allege that the balance of hardships weigh in their favor, and this Court should dismiss their equitable claims.

**4.    Plaintiffs have not established that the public interest would not be disserved by a permanent injunction.**

In order to obtain such extraordinary relief as an injunction, Plaintiffs must show the public interest "would not be disserved by a permanent injunction." *Monsanto*, 561 U.S. at 156. Determining whether the public interest would or would not be disserved is discussed in *Winter v. Natural Resources Defense Council Inc*. 555 U.S. 7, 12 (2008). In *Winter*, the Supreme Court reviewed the decision of the lower court to issue a preliminary injunction against the Navy in its use of sonar technology. *Id.* at 370. A preliminary injunction, similar to a permanent injunction, requires a Plaintiff show "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008); *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero–*

---

[16] *See supra* regarding injury in fact, and no concrete injury.

*Barcelo*, 456 U.S. 305, 311–312 (1982). Therefore, the only difference between the burden on a Plaintiff in a request for a preliminary injunction to that of a permanent injunction, is the Plaintiff success on the merits. *Id*.; *see also Monsanto*, 561 U.S. at 157. In addition, "the balance of equities and consideration of the public interest—are pertinent in assessing the propriety of any injunctive relief, preliminary or permanent." *Id*. at 381.

The *Winter* Court found the plaintiffs did not establish an irreparable injury where their claim rested on the "possibility" of harm. *Id*. 375–81. In weighing the interests of the Navy, the court examined how an injunction could affect the Navy's training exercises regarding sonar use. *Id* at 378. In particular, the court found an injunction would impose a burden on the Navy's training operation and that it would likely disrupt training activities for days at a time. *Id*. at 379. The plaintiffs' claim of harm rested on the possible disruption of marine life caused by the sonar, which could disrupt scientific research and also the ability to observe marine life. *Id* at 377. Ultimately, the court found that the interests of the Navy (national security) outweighed the interests of the plaintiff (possible harm to "ecological, scientific and recreational interests"). *Id* at 378.

Courts have also examined public consequences and its effect on non-parties. *See Sammartano v. First Judicial District Court, in and for County of Carson City*, 303 F.3d 959 (9th Cir. 2002) (abrogated on other grounds by *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 129 S. Ct. 365, (2008) *see also Aventure Commc'ns Tech., L.L.C. v. Iowa Utilities Bd*., 734 F.Supp.2d 636, 666 (N.D. Iowa 2010). In *Aventure*, the court noted that examining the economic harm to the parties and third parties is a relevant factor in deciding whether to grant an injunction. *Aventure*, 734 F.Supp.2d at 666 (citing *Baker Elec. Co-op., Inc. v. Chaske,* 28 F.3d

40

1466, 1472 (8th Cir. 1994). In addition, *Aventure* stated a court may examine the public interest by determining the purpose of any underlying legislation. *Id.*

This Court must determine whether the drastic remedy of a permanent injunction over the City of Ferguson would result in a disservice to the public interest. Here, based on Plaintiffs' allegations, a permanent injunction would result in a disservice to the public. Subjecting the City of Ferguson to attempt to contravene state law and potentially violate Judge Perry's Consent Order. As discussed repeatedly, Plaintiffs have and have invoked a redressable remedy at law under 42 U.S.C. § 1983. *See supra.* The interests of the public are not served where the actions of a municipality's entire police department are under the control of the court to ensure compliance with the Constitution. *See Lyons*, 461 U.S. at 113 (stating such a task is not the role of a federal court).

Accordingly, this Court should find that imposing an injunction upon the City of Ferguson would serve as a disservice to the public, and dismiss Plaintiffs' request for equitable relief.

**C. Issues of federalism prevent this Court from granting the requested injunctive relief.**

The United States Supreme Court has directly addressed the issue of federalism and the ability of this Court to extend its power to provide equitable relief in an action raised pursuant to 42 U.S.C. § 1983. The *Rizzo* Court stated:

> Going beyond considerations concerning the existence of a live controversy and threshold statutory liability, we must address an additional and novel claim advanced by respondent classes. They assert that given the citizenry's "right" to be protected from unconstitutional exercises of police power, and the "need for protection from such abuses," respondents have a right to mandatory equitable relief in some form when those in supervisory positions do not institute steps to reduce the incidence of unconstitutional police misconduct. The scope of

41

federal equity power, it is proposed, should be extended to the fashioning of prophylactic procedures for a state agency designed to minimize this kind of misconduct on the part of a handful of its employees. However, on the facts of this case, not only is this novel claim quite at odds with the settled rule that in federal equity cases "the nature of the violation determines the scope of the remedy," ibid., but important considerations of federalism are additional factors weighing against it. Where, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the "special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." *Stefanelli v. Minard*, 342 U.S. 117, 120, 72 S.Ct. 118, 120, 96 L.Ed. 138 (1951), quoted in *O'Shea v. Littleton*, 414 U.S., at 500, 94 S.Ct., at 678.

Section 1983 by its terms confers authority to grant equitable relief as well as damages, but its words "allow a suit in equity only when that is the proper proceeding for redress, and they refer to existing standards to determine what is a proper proceeding." *Giles v. Harris*, 189 U.S. 475, 486, 23 S.Ct. 639, 642, 47 L.Ed. 909 (1903) (Holmes, J.). Even in an action between private individuals, it has long been held that an injunction is "to be used sparingly, and only in a clear and plain case." *Irwin v. Dixion*, 9 How. 10, 33, 13 L.Ed. 25 (1850). When a plaintiff seeks to enjoin the activity of a government agency, even within a unitary court system, his case must contend with "the well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs,' *Cafeteria and Restaurant Workers Union Local 473 A.F.L.-C.I.O. v. McElroy*, 367 U.S. 886, 896, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230 (1961)," quoted in *Sampson v. Murray*, 415 U.S. 61, 83, 94 S.Ct. 937, 950, 39 L.Ed.2d 166 (1974). The District Court's injunctive order here, significantly revising the internal procedures of the Philadelphia police department, was indisputably a sharp limitation on the department's "latitude in the 'dispatch of its own internal affairs.'"

When the frame of reference moves from a unitary court system, governed by the principles just stated, to a system of federal courts representing the Nation, subsisting side by side with 50 state judicial, legislative, and executive branches, appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928, 95 S.Ct. 2561, 2566, 45 L.Ed.2d 648 (1975).

So strongly has Congress weighted this factor of federalism in the case of a state criminal proceeding that it has enacted 28 U.S.C. s 2283 to actually deny to the district courts the authority to issue injunctions against such proceedings unless the proceedings come within narrowly specified exceptions. Even though an action brought under s 1983, as this was, is within those exceptions, *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), the underlying notions of federalism which Congress has recognized in dealing with the

42

relationships between federal and state courts still have weight. Where an injunction against a criminal proceeding is sought under s 1983, "the principles of equity, comity, and federalism" must nonetheless restrain a federal court. 407 U.S., at 243, 92 S.Ct., at 2162.

But even where the prayer for injunctive relief does not seek to enjoin the state criminal proceedings themselves, we have held that the principles of equity nonetheless militate heavily against the grant of an injunction except in the most extraordinary circumstances. In *O'Shea v. Littleton*, supra, 414 U.S., at 502, 94 S.Ct., at 679, we held that "a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state criminal proceedings is in sharp conflict with the principles of equitable restraint which this Court has recognized in the decisions previously noted." And the same principles of federalism may prevent the injunction by a federal court of a state civil proceeding once begun. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

Thus the principles of federalism which play such an important part in governing the relationship between federal courts and state governments, though initially expounded and perhaps entitled to their greatest weight in cases where it was sought to enjoin a criminal prosecution in progress, have not been limited either to that situation or indeed to a criminal proceeding itself. We think these principles likewise have applicability where injunctive relief is sought, not against the judicial branch of the state government, but against those in charge of an executive branch of an agency of state or local governments such as petitioners here. Indeed, in the recent case of *Mayor v. Educational Equality League*, 415 U.S. 605, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974), in which private individuals sought injunctive relief against the Mayor of Philadelphia, we expressly noted the existence of such considerations, saying: "There are also delicate issues of federal-state relationships underlying this case." *Id.*, at 615, 94 S.Ct., at 1331.12 Contrary to the District Court's flat pronouncement that a federal court's legal power to "supervise the functioning of the police department . . . is firmly established," it is the foregoing cases and principles that must govern consideration of the type of injunctive relief granted here. When it injected itself by injunctive decree into the internal disciplinary affairs of this state agency, the District Court departed from these precepts.

*Rizzo v. Goode*, 423 U.S. 362, 377–80 (1976) (internal footnote omitted); *see also O'Shea v. Littleton*, 414 U.S. 488, 501 (1974) ("An injunction of the type contemplated by respondents and the Court of Appeals would disrupt the normal course of proceedings in the state courts via resort to the federal suit for determination of the claim ab initio, just as would the request for injunctive relief from an ongoing state prosecution against the federal plaintiff which was found to be

unwarranted in *Younger*."); *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009) (stating where there is no real need to exercise the power of judicial review in order to protect the interests of the complaining party, allowing courts to oversee legislative or executive action "would significantly alter the allocation of power. . . away from a democratic form of government.").

The Eighth Circuit and its District Courts have favorably cited the principles espoused in *Rizzo*, stating, "The courts, of course, should refrain from micromanaging the state and its agencies." *United States v. Missouri,* 535 F.3d 844, 851 (8th Cir. 2008); (citing to *Angela R. Cliton*, 999 F.2d 320, 326 (8th Cir. 1993) ("Federal courts operate according to institutional rules and procedures that are poorly suited to the management of state agencies.")). "'[A]ppropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief.'" *Id.* (quoting *Rizzo v. Goode*, 423 U.S. 362, 379 (1976)). "'A federal court may not lightly assume this power.'" *Carson P. ex rel. Foreman v. Heineman*, 240 F.R.D. 456, 491 (D. Neb. 2007) (citing *Elizabeth M. v. Montenez*, 458 F.3d 779, 783–84 (8th Cir.2006)); *Brown v. City of Ferguson, Missouri*, No. 4:15CV00831 ERW, 2015 WL 8313796, at *4 (E.D. Mo. Dec. 9, 2015).

Plaintiffs have failed to plead or show concerns of federalism and the requirements for injunctive relief (including a reasonable likelihood of future harm) outweigh the need for injunctive relief. Further, the scope of the proposed injunctive relief requests this Court to exceed its judicial authority because the relief is overly broad and not tailored to remedy the specifically alleged constitutional violations at issue. *See Rizzo*, 423 at 377–80. In addition, it requests Defendant to attempt to exercise control contrary to state law. *See supra*. Pursuant to *Lyons*,

such a basis has been insufficient to overcome concerns of federalism and the heavy weight of a state's administration of its own law. *Lyons*, 461 U.S. at 112.

Accordingly, concerns of federalism prevent this Court from granting the requested equitable relief.

## V. CONCLUSION

For the aforementioned reasons, this Court should grant Defendant's Motion to Partially Dismiss Plaintiffs' First Amended Complaint (dismissing all counts with the exception of Count IV). Defendant also requests this Court dismiss all declaratory and equitable relief claimed by Plaintiffs due to lack of Article III standing, prudential standing, failure to meet each element required to invoke equitable relief, and because of the consent order already declared (ripeness).

/s/Peter J. Dunne
Peter J. Dunne   #31482
Robert T. Plunkert   #62064
PITZER SNODGRASS, P.C.
Attorneys for Defendant
100 South Fourth Street, Suite 400
St. Louis, Missouri 63102-1821
(314) 421-5545
(314) 421-3144 (Fax)

{01632682.DOCX;1}

I hereby certify that a copy of the foregoing filed electronically with the Clerk of the Court this 27th day of April, 2016, to be served by operation of the Court's electronic filing system upon the following or U.S. mail for parties not registered with CM/ECF:

Mr. Alec Karakatsanis
Equal Justice Under Law
916 G Street, NW Suite 701
Washington, DC 20001
alec@equaljusticeunderlaw.org
Attorneys for Plaintiffs

Mr. Thomas B. Harvey
Mr. Michael-John Voss
Mr. Stephen M. Ryals
ArchCity Defenders
812 N. Collins Alley
St. Louis, Missouri 63102
tharvey@archcitydefenders.org
mjvoss@archcitydefenders.org
sryals@archcitydefenders.org
Co-Counsel for Plaintiffs

Mr. John J. Ammann
Mr. Stephen Hanlon
Mr. Brendan Roediger
Saint Louis University School of Law
100 N. Tucker Blvd.
St. Louis, Missouri 63101
ammannjj@slu.edu
hanlonsf@slu.edu
broedige@slu.edu
Co-Counsel for Plaintiffs

/s/Peter J. Dunne

{01632682.DOCX;1}