UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KEILEE FANT, et al. | ) |  |
|---|---|---|
| Plaintiffs, | ) | |
| vs. | ) | Case No.: 4:15-cv-253 |
| THE CITY OF FERGUSON, | ) | |
| Defendant. | ) | |

# *DEFENDANT'S REPLY IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT*

COMES NOW, Defendant, City of Ferguson ("Defendant"), and for its Reply in Support of its Partial Motion to Dismiss Plaintiffs' Amended Complaint, states:

## INTRODUCTION

Defendant will not repeat the arguments raised in its Motion to Partially Dismiss (Doc. No. 57) and Memorandum in Support (Doc. No. 58), but submits the following joint reply in response to the arguments of Plaintiffs in the order raised in Plaintiffs' Response (Doc. No. 62).

## ARGUMENT

*I. CONSTRUING ALL MATTERS ALLEGED IN THE AMENDED COMPLAINT IN A LIGHT MOST FAVORABLE TO PLAINTIFFS, DEFENDANT IS ENTITLED TO DISMISSAL AS A MATTER OF LAW REGARDING ALL COUNTS EXCEPT COUNT IV.*

Plaintiffs contend Defendant makes "unremarkable propositions" regarding the state judicial review process and state law. *See* Doc. No. 62, p. 2. However, this Court must consider Missouri Constitutional law, statutory law, case law, and procedural rules to answer the issue of law before this Court concerning *Monell*. *St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) ("Thus the identification of policymaking officials is not a question of federal law and it is not a

question of fact in the usual sense. The States have extremely wide latitude in determining the form that local government takes, and local preferences have led to a profusion of distinct forms."); *see also Granda v. City of St. Louis*, 472 F.3d 565, 568–69 (8th Cir. 2007).

Plaintiffs attempt to distinguish *Granda* and argue the actions are not judicial decisions, but reflect the City's own policies and practices. Doc. No. 62, p. 2. However, merely denominating policies and practices as the City's are legally insufficient to meet Plaintiffs' burden of pleading. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiffs assert the following, which recurs throughout their Response:

> To be clear: the fact that, like any court in Missouri, the Ferguson Municipal Court is subject to certain rules and procedures and that its judge can be reversed by higher courts does not mean that the City plays no role in the policies and practices followed by its police department, its prosecutors, and its jail in processing arrestees and collecting money judgments owed to the City.

Doc. No. 62, pp. 2–3. However, whether the City plays a role regarding the alleged conduct is not the issue before this Court—rather it is whether the decisionmaker regarding said conduct "possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."). Under *Granda*, *Eggar*, *Moore*, and the litany of cases Defendant has cited, the answer is in the negative.

**A. Count One**

Plaintiffs initially contend Defendant argues the municipal judge is the final policymaker, although stating the municipal judge is subject to the supervision of the presiding judge of St. Louis County and Missouri appellate courts. Doc. No. 62, p. 3 n.2. In a sense, Plaintiffs are

2

correct. The Ferguson municipal court is a policymaker when it comes to the fines, imprisonment, bonds, and inquiries with respect to the ability to pay (*See* Mo. Const. Art. V, § 27.5 (right to de novo review of appealable order by municipal judge), though the "final" policymaker may very well be the Missouri Supreme Court (or even the U.S. Supreme Court in the event certiorari is granted). Plaintiffs' argument of distinction is without import, as these judicial decisions are not made by any final policymaker *of Defendant*.

Plaintiffs' remaining arguments regarding Count I attempt to shift the language of their allegations away from judicial decisions and toward the police and prosecuting attorney of the City. However, as Plaintiffs have cited to R.S.Mo. § 470.080, the municipal court transferred funds not otherwise required to be transmitted elsewhere to Defendant's treasury (not directly from an individual). Further, this money was paid pursuant to a fine (result of a judicial decision) or a bond payment (result of a judicial decision unless a correctional officer accepted less to satisfy the full bond amount).[1] It is not the prosecutor or any officer who makes a final policymaking decision with respect to fines or bonds, but the state court procedure and system. Whether "[n]one of these debt-collection cases, warrants, arrests, or indefinite detentions would exist without the City's exercise of that prosecutorial discretion" (Doc. No. 62, p. 6) is irrelevant (even assuming as true, *arguendo*) regarding the issue before this Court, as *Monell* does not require a but-for causation analysis regarding the imputation of liability to a municipality. The question is whether the City was the final policymaker when it came to warrants, bonds, fines, etc. *See Praprotnik*, 485 U.S. at 124. It was not. *See Granda*, 472 F.3d at 568–69.

---

[1] Plaintiffs do not allege any employee of the City of Ferguson accepted *more* money than a bond amount set by the municipal judge (either specifically to the case or by the judge's issued bond schedule). *See* Doc. No. 51, ¶ 235. Plaintiffs have not developed an argument as to how accepting less money or even no money at all regarding a bond initially set pursuant to a municipal judge's order offends the U.S. Constitution, but the amount set "without any inquiry into a person's ability to pay" offends the Equal Protection and Due Process clauses. *Id.*

3

{01651870.DOCX;1}

Defendant disputes Plaintiffs' contention they have obtained discovery which "establish the City's active role in illegally detaining people on cash bond, contrary to the City's assertions to this Court," (Doc. No. 62, p. 5), and Plaintiffs have not shown to this Court how such information should be considered by this Court under the federal rules in considering a motion to dismiss. *C.f. Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010).[2]

Plaintiffs contend it was the discretion of the police and jail staff which resulted in the detention of individuals for "indeterminate periods of time." Doc. No. 62, p. 5. Plaintiffs have not contended police refused to accept payment by an individual meeting the amount of bond set.

Plaintiffs further argue arrests regarding unpaid debts were policy decisions concerning how to collect money owed to the City. Doc. No. 62, p. 6. This statement is incorrect as a matter of state law, as the municipal judge sets the bonds (*see State v. Jackson*, 384 S.W.3d 208, 215 (Mo. banc 2012) and its cited materials) and fines (R.S.Mo. §§ 479.070 and 560.026.1), the money is paid to the court (or court personnel) R.S.Mo. § 470.080, and prosecutors do not "collect debts" (*see id.*). Plaintiffs have not alleged payments were made to the prosecutor, or that the prosecutor could do anything more than recommend a fine to the municipal judge.

To be clear, as argued in its memorandum and pursuant to Missouri law Defendant has no power to control the judicial decisions of the Ferguson municipal judge. Nothing in the Consent Decree constitutes an admission (4:16-cv-00180-CDP, Doc. No. 41, ¶ 7), and the proposed plan regarding bond expressly was written not to conflict with state law (*id.* at § 350). The conduct

---

[2] In addition to editorial attacks throughout Plaintiffs' Response, Plaintiffs have made the serious accusation against Defendant's attorneys of "knowingly misleading" this Court, but turn to evidence which is not an issue before the Court regarding a Motion to Dismiss. Detaining an individual pursuant to a cash bond is not illegal. *Jackson*, 384 S.W.3d at 215. Plaintiffs have failed to show how accepting money less than the judicially set amount constitutes a violation to the U.S. Constitution. Attorneys for Defendant, as officers of the Court, will maintain full candor to the Court, however are unable to further respond to Plaintiffs' allegations of knowingly misleading remarks as such argument is not further developed or articulated. Attorney for Defendants attempted to meet and confer over the remark in good faith, but were not directed to a statement (instead were directed to the "entire argument") at the time of this filing. Ex. A. Defendants respectfully disagree, for reasons stated in the Doc. No. 58 and in this Reply.

specifically was to comply with "Missouri law" (*id.* at ¶ 325). In fact, the Consent Order expressly recognized the reporting system described by Defendant is consistent with Missouri law. *See id.* The Consent Decree did not state the Finance Director had oversight regarding the matters of which Plaintiffs now complain (judicial decisions; *see Granda*, 472 F.3d at 568–69), as opposed to administrative matters (*Williams v. Butler*, 863 F.2d 1398, 1402 (8th Cir. 1988) (en banc)). In short, the Consent Decree changes nothing with respect to the failure to Plaintiffs to state a claim for relief based on state law during the relevant time period, but only affects Plaintiffs' claim for prospective relief regarding declaratory judgment and injunctive relief.

**B. Count Two**

Plaintiffs cite to *Alabama v. Shelton*, 535 U.S. 654, 658 (2002), *United States v. Pollard*, 389 F.3d 101, 105 (4th Cir. 2004), and *United States v. Perez-Macias*, 335 F.3d 421, 428 (5th Cir. 2003) to support their contention liability under § 1983 may extend to a municipality regarding the failure to appoint counsel for an individual found to be indigent. Doc. No. 62, p. 9. Plaintiffs have not alleged any of the Plaintiffs were sentenced to imprisonment in Ferguson jail (distinct from pre-trial detention), nor do any of the above-cited cases serve for the proposition municipal liability can be so extended. Plaintiffs' attempt to distinguish *Eggar v. City of Livingston*, 40 F.3d 312, 315 (9th Cir. 1994) is unsuccessful, as state law sets forth the policymaking for appointment of counsel belongs to the municipal judge (subject to review by the state court system). Doc. No. 58, Section III.D.2.

Plaintiffs' citation to *Wilbur v. City of Mt. Vernon* is distinguishable, in that the Court expressly found "counsel are appointed in a timely manner" but that the number cases rendered the ability of the appointed counsel ((set up by the sued governmental entities) constitutionally deficient. 989 F.Supp.2d 1122, 1131–32 (W.D. Wash. 2013). Plaintiffs here do not complain

5

the appointed counsel was ineffective or constitutionally deficient due to an extreme caseload, but that "Plaintiffs did not have the benefit of counsel and did not knowingly intelligently, and voluntarily waive counsel." Doc. No. 51, ¶ 237. Similarly, Plaintiffs remaining cases do not provide assistance to this Court in determining the issues currently before it. *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 612-13 (6th Cir. 2007) (plaintiffs alleged conduct of public defender were unconstitutionally deficient for a policy regarding seeking indigency hearings); *Miranda v. Clark County*, 319 F.3d 465, 468 (9th Cir. 2003) (plaintiffs alleged inexperienced counsel was appointed and no investigation was conducted pursuant to policy); *Clay v. Friedman*, 541 F. Supp. 500, 502, 505-06 (N.D. Ill. 1982) (alleging representation by public defender was incompetent). These cases stand only for the proposition that counsel for the indigent, **once appointed**, must be constitutionally sufficient (a judge would not control litigation tactics of criminal defense counsel). Plaintiffs cite to no case to bar application of *Eggar*, nor any facet of case law, which find a municipality is the final policymaker regarding the decision to appoint counsel to the indigent in municipal ordinance violations. Under Missouri law, it is not the prosecutor's duty, but the municipal judge's, to determine indigency and appoint counsel in the event it is constitutionally required.

**C. Count Three**

Plaintiffs critique Defendant for "contest[ing] this claim on the merits," and again cite to discovery for perceived support. Doc. No. 62, p. 11. This argument is immaterial to the issues before the Court on Defendant's Motion to Dismiss. *See Mills*, 614 F.3d at 498.

6

{01651870.DOCX;1}

Plaintiffs have cited to a General Order 421.00,[3] stating it allows "'any watch commander' discretion to set and reduce bond and to release people on their own recognizance." Doc. No. 62, p. 12. This summary is incomplete, as Exhibit 2 clearly recognizes, "Bond amounts are assessed by the Judge of the Municipal Court of Ferguson and have been set in amounts as follows. . ." and that "[a]ny Watch Commander having custody of a person is authorized to set Bond as prescribed in this General Order." Doc. No. 62-2. Plaintiffs' exhibit supports dismissal as: 1) the municipal judge orders the bond amounts, 2) an arresting officer may use such amounts based on the judge's previously set amounts, and 3) the watch commander may authorize receipt of less money (pursuant to an amount obtainable by the arrested subject) or on recognizance. *Id.* In no way do exhibits 1 or 2 show the Defendant was the final policymaker regarding the determination of bonds.

Plaintiffs cite to no controlling authority disputing Defendant's main argument regarding the state law distinction between the state court system and the City of Ferguson. They cite to *Walker v. City of Calhoun*, 2016 WL 361612 (N.D. Ga. Jan. 28, 2016) and *Rodriguez v. Providence Cnty. Corr., Inc.*, No. 3:15-CV-01048, 2015 WL 9239821, at *7–8 (M.D. Tenn. Dec. 17, 2015), but have not informed this Court Plaintiffs' attorney, Alec Karakatsanis, is the lead attorney on these cases as well and but they are currently pending appeal. The *Cooper*, *Jones*, and *Pierce* (an order based on a joint motion) matters are not binding on this Court, and they do not address the issue before this Court regarding separation of the state court system and municipality. *Cooper v. City of Dothan*, 2015 WL 10013003 (M.D. Ala. 2015); *Jones v. City of Clanton*, 2015 WL 5387219 (M.D. Ala. 2015); *Thompson v. City of Moss Point*, 2015 WL 10322003 (S.D. Miss. 2015) (same); *Pierce et al. v. City of Velda City*, 2015 WL 10013006

---

[3] Defendant assume Plaintiffs offer this as a matter of public record for the basis it should be considered by this Court on the Motion to Dismiss. Defendant do not object to such consideration at this time.

(E.D. Mo. 2015). An investigatory report issued by the Department of Justice, cited throughout the Response and the findings of which Defendant disputes, is not a judicial opinion issued after both sides have the opportunity to be heard, and similarly lacks guidance to this Court.

Plaintiffs attempt to rationalize a three-day period (maximum) of an individual necessarily means the bond was set without purpose. Doc. No. 12–13. This does not address the main issue raised by Defendant. The purpose in ordering a bond and the actual ordering of the bond must pertain to a final policymaking decision of Defendant. For the reasons fully briefed in Defendant's Memorandum in Support, they do not . *See Granda*, 472 F.3d at 568–69.

Plaintiffs cite to no case for the proposition that a standing bond order is not a judicial decision, but is an administrative order. Doc. No. 62, p. 15; *but see Woods v. City of Michigan City, Ind.*, 940 F.2d 275, 279 (7th Cir. 1991) (judge issuing bond schedule was not final policymaker for county or city following said schedule); Mo. Sup. Ct. R. 37.17 ("When an arrest is made without a warrant, the peace officer may accept bond in accordance with a bail schedule furnished by the court having jurisdiction."); *State v. Jackson*, 384 S.W.3d 208, 215 (Mo. banc 2012). Plaintiffs make no effort to distinguish *Granda*, nor any of the other cases Defendant has cited in this section. Doc. No. 58, Section III.D.3. Plaintiffs instead attempt to refer to uncited matters outside of the consideration of this Court. Defendant's Motion should be granted.

## D. Count Five

Plaintiffs argue Defendant *seeks* warrants and collects "debts" from closed municipal court cases. Doc. No. 62, p. 16. Plaintiffs cite to no case where a prosecution's seeking of a warrant is constitutionally actionable conduct, let alone imputable to municipality. As explained above, by operation of Missouri law, the municipalities do not collect fines and bonds, but are transferred a portion of the same from the municipal court. R.S.Mo. § 470.080.

8

{01651870.DOCX;1}

Plaintiffs have alleged, in part, "Not only does the City place indigent people on generic and overly onerous payment plans lasting years or decades when the cases of wealthier people would be terminated. . . ." Doc. No. 51, ¶ 243. Plaintiffs now argue, "To be clear: Plaintiffs do not challenge the initial issuance of fines or the concept of payment plans." Doc. No. 62, p. 17. Under either scenario, Plaintiffs' grievance is conclusory to the extent it alleges wrongdoing by Defendant. Missouri law (MO. CONST. Art. 1, Sec. 11; R.S.Mo. § 560.031) commands the ability and procedure regarding imprisoning an individual failing to pay a fine. Federal law does not blanketly prohibit imprisoning an individual who fails to pay a fine. *Bearden v. Georgia*, 461 U.S. 660, 668–69 (1983). Plaintiffs' claim is expressly grounded in "equal protection" and regarding the payment of money owed on judgments. Doc. No. 51, ¶ 243. Under *Iqbal*, it is insufficient for Plaintiffs to conclude Defendant collects fines pursuant to a policy, especially where state law provides differently. Under the Missouri law previously cited, Defendant is not the final policymaker regarding setting the fine, issuing a warrant concerning the nonpayment of the fine, or sentencing an individual to imprisonment for nonpayment of a fine. Concerning this main issue of separation between the state court system and Defendant, Plaintiffs attempt to distinguish *Harris v. City of Austin*, is to no avail. No. A-15-CA-956, 2016 WL 1070863, at *6 (W.D. Tex. Mar. 16, 2016) ("The key question, to be clear, is whether the judge was acting in a *judicial role* or a *non-judicial role* at the time he or she took the challenged action.").

**E. Count Six**

This Court has previously explained, on reconsideration, the Fourth Amendment as it pertains to Count Six. Doc. No. 24, pp. 6–7. Specifically, the Court was "not convinced that Plaintiffs have sufficiently pleaded that their warrants were based on knowingly or recklessly false information," but the City could have had a policy of <u>issuing</u> warrants for failure to appear

without probable cause. Doc. No. 24, p. 7 (emphasis added). The <u>issuance</u> of warrants is a function of the state court system, and is not of the final policymaking determination of the City of Ferguson. *See* Doc. No. 58, Section III.D.5. The Tenth Circuit has directly addressed the issue of the issuance of warrants. *Ledbetter v. City of Topeka, Kan.*, 318F.3d 1183, 1189–90 (10th Cir. 2003). Plaintiffs attempt to distinguish *Ledbetter v. City of Topeka* in half of a sentence, without explanation or reliance upon this Court's previous ruling on reconsideration.

## F. Count Seven

Count VII alleges: "The City routinely fails as a matter of policy and practice to make a natural finding of probable cause based on sworn evidence." Doc. No. 53, ¶ 247; *see also id.* at ¶ 203.h. Plaintiffs have attempted to clarify Count VII by pointing to a few sentences of the previous 245 paragraphs incorporated by reference.[4] However, paragraph ten does not mention "warrantless arrests," though seems to focus on indigence. Doc. No. 53, ¶ 10. Plaintiffs, next citing to footnote five, do not allege the particular arrest of Mr. Roelif Carter was warrantless. Doc. No. 53, ¶ 41, n.5. Plaintiffs' allegations seem to be to the contrary. *See* Doc. No. 53, ¶ 44 ("Mr. Carter was arrested on that warrant in August 2010."). Defendant recognizes Mr. Carter has alleged, in a footnote, a warrantless arrest occurred in June 2014 and August 2014. Doc. No. 53, ¶ 52 n.6. It appears, in reading paragraph 203, Plaintiffs (in their response) allege Mr. Carter's Fourth Amendment rights were violated by these two alleged warrantless arrests. Doc. No. 62, p. 18. Defendant requests that this Count be made so definite.

---

[4] Defendant respectfully points out the manner in which Plaintiffs have pleaded obfuscates their causes of action and hinders this Court and Defendant from determining the particular amendment allegedly violated and the individual plaintiff whose right was allegedly violated. Though the clarification in the Response may be helpful to the Court and Defendant, Defendant asserts the spirit and letter of Rule 8 calling for a short and plain statement has the purpose of preventing such uncertainty. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Federal Rule of Cirivl Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the. . . claim is and the grounds upon which it rests.").

Regardless of which Plaintiff is a named Plaintiff for purposes of construing Count VII, the commanding paragraph of Count VII purports to denominate the City as a final policymaker for the "mak[ing]" or determination of probable cause regarding a warrantless arrest. As a matter of Missouri law, this is not so (*see supra*) as the determination of probable cause and issuance of warrants is within the purview of the municipal court. *See Ledbetter*, 318F.3d at 1189–90. Count VII should be dismissed.

## II. THE JUDICIAL DECISION OF A MISSOURI MUNICIPAL JUDGE IS NOT "POLICY" UNDER MONELL UNDER EIGHTH CIRCUIT CONTROLLING LAW.

Plaintiffs cite to a district court decision from the District of Columbia for the proposition a municipal judge may take action rendering a municipality liable under *Monell*. Doc. No. 62, pp. 19– 20 (citing *Singletary v. Dist. of Colubmia*, 685 F.Supp.2d 81, 92, n.7 (D.D.C. 2010)). *Singletary* first found the claim could be stated under *Monell* regarding the determination to grant or revoke parole, as such a decision "is nonetheless one entrusted to the executive branch." *Singletary*, 685 F.Supp.2d at 92. The *Singletary* Court then stated the following:

> Second and more importantly, the cases relied upon by the District do not, as it claims, establish the overarching principle that judicial action can never give rise to municipal liability. Rather, these cases stand for the much more limited proposition that a municipality may not be held liable under Section 1983 for actions taken by a municipal judge pursuant to his or her authority under state law, as the judge's actions in such a case are properly attributed to the state rather than the municipality. That is, that the judges are not acting as final policymakers for the local governmental entities. *See* Def.'s Resp. to Pl.'s Surreply at 4-6. These cases are consistent with the Supreme Court's recognition that local government officials may in some cases be treated as acting on behalf of the state rather than the local governmental entities. *See, e.g., McMillian v. Monroe Co., Alabama*, 520 U.S. 781, 117 S. Ct. 1734, 138 L. Ed. 2d 1 (1997) (finding that "Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties"). Quite clearly, given the unique nature of the District of Columbia's status, such concerns are not present in this case. Moreover, as noted previously, the District has ***not*** challenged Singletary's allegation that the Board was the District's final policymaker with respect to the issue of parole revocation. Accordingly, as the District has provided no other legal authority or case law in support of its argument that it cannot be held liable for the Board's quasi-judicial

11

> decision to revoke Singletary's parole, the Court finds that the District has not shown that Singletary's Section 1983 claim must fail.

*Id.* at 92–93 (original emphasis). Given Defendant is a municipal corporation within the State of Missouri (not a federal district) and Defendant challenges the allegation Defendant is the final policymaker with respect to these theories of liability, *Singletary* is distinguished and does not change the controlling case law that a judicial decision by a municipal judge in Missouri does not expose the municipality to liability under *Monell*. *Grandas*, 472 F.3d at 568–69.

Plaintiffs' additionally cited cases are inapposite, as Missouri law does not allow a municipality to review or amend the judicial decisions of a municipal judge. Thus, any action or inaction cannot be the moving force behind any alleged constitutional violation. *See Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) ("(3) The plaintiff['s] injury by acts pursuant to the governmental entity's custom, *i.e.*, [proof] that the custom was the moving force behind the constitutional violation"). This argument has been rejected in decisions cited by Defendant. *See, e.g., Eggar*, 40 F.3d at 315 ("Most importantly, the [district] court emphasized that because the City had no control over Judge Travis in his judicial capacity, it had no power to authorize or ratify his conduct and thus could not be responsible for his acts."); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (defining official policy as including a custom and stating, "We have repeatedly held, however, that a municipal judge acting in his or her judicial capacity to enforce state law does not act as a municipal official or lawmaker.").

Plaintiffs cite to *Coleman v. Watt* in a footnote for the proposition adoption of an order renders the order official policy of the municipal policy. 40 F.3d 255, 262 (8th Cir. 1994). In *Coleman*, a municipal court judge issued an "Order" directing police officers to impound vehicles stopped for violation of state statutes, mandating the hold of such vehicles until

payments of fees, costs, and fines, that officers should assist in allowing operators phone calls to arrange for alternative modes of transportation, to advise operators of the procedures to obtain return of their vehicles. *Id.* at 257–58. The Court found Plaintiff had adequately alleged a substantive and procedural due process (post-deprivation) violation against the municipality for failure to return the impounded vehicle (at least) while providing a "less-than-prompt hearing." *Id.* at 261. In *Coleman*, however, there was an issue to be determined regarding whether the chief of police, in fact, adopted the court's order in execution of policing duties causing any constitutional violation of plaintiff. *Id.* at 262.

*Coleman* must be understood in the context of Supreme Court precedent on the topic of municipal liablity. It is immaterial whether Defendant may hire and fire the municipal judge (allowed by MO. CONST. ART. V, § 23). The issue for this court is the specific function of which Plaintiffs dispute. *McMillian v. Monroe County, Alabama*, 520 U.S. 781, 789–790 (1997) (despite sheriff compensated and equipped by county treasury, was acting as policymaker of state and not municipality). Likewise,

> [T]he trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue. Once those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether *their* decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur, or by acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity.

*Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 739 (1989) (internal citation to *Monell* omitted, original emphasis). Under *Coleman*, if state law determined a police chief constituted the final policymaker with respect to procedure regarding impounding cars upon citing the operator with an offense, then an adoption of a judge's order of the same (to the extent the

13

adoption is possible under state law, policing, and municipalities) may constitute municipal policy. However, the conduct of which Plaintiffs complain are within the specific function of the municipal judge under Missouri law pertaining to the issuance of warrants, ordering of bonds and bond schedules, sentencing of fines, and holding inquiries with respect to the ability to pay. Accordingly, *Coleman* is of little instruction, and *Granda* remains controlling in light of the specific function subject of Plaintiffs' complaints (a judicial determination pursuant to state law). To the extent *Coleman* runs afoul of Supreme Court precedent and *Williams* (heard en banc), and *Granda* (determined over a decade later), it must be limited to its facts.

### III. CLAIMS FOR EQUITABLE AND DECLARATORY RELIEF SHOULD BE DISMISSED.

Plaintiffs have not sufficiently alleged, pursuant to *Iqbal*, which (if any) were exposed to ongoing harm (outstanding debt, for example) at the time the suit was filed. Plaintiffs cannot show they will, with any certainty, as it is "to be assumed that [plaintiffs] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by" Defendant. *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). Plaintiffs' attempt to distinguish this requirement is to no avail. *See id.* at 109 ("Lyons' lack of standing does not rest on the termination of the police practice but on the speculative nature of his claim that he will again experience injury as the result of that practice even if continued."). The Ninth Circuit has rejected standing based on a hypothetical, speculative injury in detail. *Eggar*, 40 F.3d at 316–17 ("However, even if this claim had been properly raised, it basically overlooks that the City has no control over the state judicial functions

{01651870.DOCX;1}

of Judge Travis. . . Whether Eggar or Nuttbrock will commit future crimes in the City, be indigent, plead guilty, and be sentenced to jail is speculative.").[5]

Plaintiffs argue the federal Consent Decree is not final due to outstanding deadlines, and Defendant may voluntary cease compliance. Defendant disagrees that a federal court order in this regard allows a voluntary cessation without recourse. Plaintiffs seek a competing order by this Court without mentioning what equitable relief remains unaddressed in the Consent Decree. Plaintiffs do not address or dispute the majority of the case law and arguments raised by Defendant in Section IV of its Memorandum.

Plaintiffs fail to sufficiently address Defendant's argument regarding federalism. First, concerns of federalism were not only applied in *Rizzo*, but also in *O'Shea* and *Lyons*. *See Brown v. City of Ferguson*, No. 4:15CV00831 ERW, 2015 WL 8313796, at *7–8 (E.D. Mo. Dec. 9, 2015). The Supreme Court's considerations of federalism are not limited, as Plaintiffs suggest, to "a general right held by the citizenry[,]" and Plaintiffs' contention they "assert their own constitutional and statutory rights," is not dispositive on this issue. Doc. No. 62, p. 26–27. For example, the Supreme Court has held:

> It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution.

*Elizabeth M. v. Montenez*, 458 F.3d 779, 787–88 (8th Cir. 2006) (quoting *Lewis v. Casey*, 518 U.S. 343, 349 (1996)).

## CONCLUSION

WHEREFORE, Defendant requests that this Court grant its Motion to Dismiss and dismiss all counts except Count IV, and for such further relief this Court deems just and proper.

---

[5] Defendant, in Doc. No. 58, n.14, mistakenly cited to ECF 20 instead of the conclusion of Doc. No. 53.

/s/Peter J. Dunne
Peter J. Dunne  #31482MO
Robert T. Plunkert   #62064MO
PITZER SNODGRASS, P.C.
Attorney for Defendant
100 South Fourth Street, Suite 400
St. Louis, Missouri 63102-1821
(314) 421-5545
(314) 421-3144 (Fax)

    I hereby certify that a copy of the foregoing filed electronically with the Clerk of the Court this 25th day of May, 2016, to be served by operation of the Court's electronic filing system upon the following or U.S. mail for parties not registered with CM/ECF:

| | |
|---|---|
| Mr. Alec Karakatsanis<br>Equal Justice Under Law<br>916 G Street, NW Suite 701<br>Washington, DC 20001<br>alec@equaljusticeunderlaw.org<br>Attorneys for Plaintiffs | Mr. Thomas B. Harvey<br>Mr. Michael-John Voss<br>Mr. Stephen M. Ryals<br>ArchCity Defenders<br>812 N. Collins Alley<br>St. Louis, Missouri 63102<br>tharvey@archcitydefenders.org<br>mjvoss@archcitydefenders.org<br>sryals@archcitydefenders.org<br>Co-Counsel for Plaintiffs |

Mr. John J. Ammann
Mr. Stephen Hanlon
Mr. Brendan Roediger
Saint Louis University School of Law
100 N. Tucker Blvd.
St. Louis, Missouri 63101
ammannjj@slu.edu
stephen.hanlon@publicdefenders.us
broedige@slu.edu
Co-Counsel for Plaintiffs

/s/ Peter J. Dunne
