# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| KEILEE FANT et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE CITY OF FERGUSON ) <br> ) <br> Defendant. ) | Case No. 4:15-cv-253-AGF <br><br> (Class Action) |

## SUR-REPLY IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS

The City continues to misunderstand the legal issues relevant to this case. Its Reply, Doc. 64, fails to engage with the decisive points made by Plaintiffs in their Response, Doc. 62. The Complaint alleges that City officials routinely set and reset money bonds and used them, together with the threat of indefinite detention, to collect judgments owed to the City, routinely without providing impoverished arrestees judicial process of any kind. These practices were not forced on the City by Missouri or by a bad judge. The City chose to pursue these unconstitutional policies, and it has always had the power to set them right, as its recent consent decree with the United States government recognizes. If the City eventually fulfills its agreement with the federal government, it may then argue that much of the injunctive relief Plaintiffs seek is moot. For now, however, the City remains liable under the facts alleged in the Complaint for both prospective and compensatory relief, and its Motion to Dismiss should be denied.

### I. Count One: The City Used Money Bonds to Collect Money Owed to It

The City makes a confused argument with respect to Count One, the most charitable reading of which is that the City is not liable because the Ferguson Municipal Judge is the "final

policymaker" for all matters relating to money bond.[1] This argument is unfounded and beside the point. Plaintiffs have alleged (and the City admits in its briefing) that a host of other City employees and officials routinely set and reset money bonds in an extra-judicial negotiation process with impoverished arrestees. The Complaint alleges not only that this practice was pervasive and entrenched on a daily basis, but also that it was sanctioned and designed at the highest levels of the City government — pursuant to a *City ordinance* giving the Chief of Police power to set money bonds and pursuant to general orders by the Chief of Police giving his commanding staff discretion to decide when to release inmates and how much bond, if any, to require of them. That is reason enough to deny the City's Motion with respect to Count One; the Court need not reach any of the City's other arguments. It is difficult to conceive how the City can maintain that it is not responsible under *Monell* for these policies of its municipal officials.

Although the Court need not reach the rest of the City's arguments, the City's position on the policymaking status of its Municipal Judge remains hard to understand. The City's confusion on this score may help account for its mistaken belief that cases like *Granda v. City of St. Louis*, 472 F.3d 565 (8th Cir. 2007), govern this case. As Plaintiffs have noted, these are cases in which courts reason from the fact that a judge's decision in an individual case is subject to normal state judicial review, to the conclusion that the judge is not a municipal policymaker with respect to the matter decided. *Granda* itself is unclear about the basis for its conclusion that the City of St. Louis was not liable for a municipal judge's single order incarcerating a truant student's parent. *See Granda* 472 F.3d at 569 ("We conclude that the judicial order incarcerating Granda was not a final policy decision of a type creating municipal liability under § 1983."). The court does not specify

---

[1] Plaintiffs again have difficulty discerning what the City is arguing throughout its Reply brief. In the event the Court concludes that Plaintiffs have not addressed an argument made by the City, Plaintiffs renew their request for either oral argument or supplemental briefing on that point.

2

whether the order is not a *policy* decision (but rather a one-off judicial decision), not a *final* policy decision (because it is subject to judicial review), not a *municipal* policy decision (because it is subject to *state* judicial review), or some combination of the three. But whatever the basis for the court's decision was, it was clearly not that municipal courts never have final municipal policymaking authority with respect to any conceivable issue, or that their actions immunize their municipalities from liability for the local ordinances, local prosecutorial decisions, and local managerial policies that govern police and jail employees.

Even if the Ferguson Municipal Judge is a "final" policymaker for someone other than the City when it comes to establishing an administrative bail schedule for the City, the judge is surely not the municipal policymaker when it comes to deciding which cases to prosecute, which ordinance violations to allege, and which methods the City chooses to use to collect outstanding money judgments. (If the Municipal Judge were to make policy on these matters, the judge would then be acting in a prosecutorial and law enforcement role and would count as a final policymaker for the City as to those matters.) Nor could the judge possibly be the relevant policymaker responsible for the extra-judicial negotiation of money bond amounts *different from* those listed on any bail schedule — negotiation policies used by the City and devised and implemented by City employees pursuant to an ordinance and a general order of the Chief of police. Nor could the judge possibly be responsible for the Police Chief's decisions about how long to keep people in jail who cannot afford to pay. So again, cases concerning the policymaking status of municipal judges do nothing to undermine Plaintiffs' claims of constitutional violations by Ferguson's prosecutors and law enforcement officials.

The City's arguments regarding its actual prosecutors are similarly nonsensical. The City hires a prosecutor to pursue cases in its name. The Complaint alleges that the City, through its

3

prosecutor, used its discretion to create a policy of charging people with "failure to appear" under an ordinance — passed (and only repealed after the City came under scrutiny for these issues) by the City Council — whenever the person simply failed to pay a money judgment from an old municipal court case to the Ferguson Police Department. *See* Doc. 62 at 3, 14, 17. The Complaint also alleges that City prosecutors chose to use new charges and corresponding detention for uncertain periods of time in the City jail as the means of collecting those money judgments, rather than pursuing the judgments through other lawful means of civil debt collection, as other cities in Missouri do. *Id.* at 5, 11. These are basic principles in Missouri and throughout the American adversarial system: prosecutors have authority to decide which cases to prosecute, and lawyers representing the City have discretion to decide how to collect judgments owed to the City.

In other words, no judge or state law forced Ferguson to prosecute people under a "failure to appear" ordinance when they missed a monetary payment; no judge or state law forced Ferguson to pass an ordinance allowing the Chief of Police to set bond; no judge or state law forced the Chief of Police to select 72 hours as the time period for which Ferguson would hold all arrestees too poor to pay; no judge or state law forced the Chief of Police to allow watch commanders and jail guards to negotiate bond amounts with desperate prisoners and their families outside of any legal process during that 72 hour window; and no judge or state law forced Ferguson to pursue old money judgments using its police and jail and its municipal court instead of filing civil collection cases like other creditors. These are discrete municipal prosecutorial policy decisions, and inasmuch as they caused constitutional violations (which the City does not dispute in its current motion), the City is clearly liable for them.

The City's discussion of the United States Department of Justice Consent Decree is puzzling as well. *See* Doc. 64 at 4-5. Plaintiffs do not contend that the Consent Decree is an

4

"admission" of constitutional violations *on the merits*. This Court has already held that Plaintiffs state valid constitutional claims, and the City's second motion does not contest those claims on the merits. The Consent Decree is, however, an assertion that Ferguson has the power to make the changes set forth in the decree itself. Plaintiffs cite the Consent Decree to confirm what the Complaint alleges: that the City has control, through its ordinances, prosecutors, and police, over the policies and practices alleged in the Complaint and challenged as unconstitutional.[2]

## II. Count Two: The City Had Its Own Duty to Provide Effective Counsel, and It Failed in This Duty by Providing No Counsel at All

The City's argument on Count Two is also unpersuasive. The City apparently believes that although it would be liable if it provided attorneys who were deficient, it can somehow escape liability *by choosing not to provide attorneys at all* in cases it prosecutes in its municipal court. *See* Doc. 64 at 5-6. On the contrary, Ferguson's failure to provide counsel altogether is just as much a failure to provide effective counsel as were the failures that established municipal liability (or potential municipal liability) in the cases cited by Plaintiffs in their Response: the faulty case management in *Wilbur v. City of Mount Vernon*, 989 F. Supp. 2d 1122, 1132-33 (W.D. Wash. 2013); the failure to seek indigency hearings in *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501

---

[2] The City "disputes" Plaintiffs' allegations concerning the active role of City employees in setting and negotiating money bond. But it offers no explanation for that denial, nor can Plaintiffs imagine what the explanation could be given the evidence in the City's possession. In any event, as Plaintiffs explained in their Response, the important point at this stage is that *the Complaint alleges that City employees and officials* set, negotiated, and unilaterally modified money bond with inmates who were desperate to get out of jail and totally outside of any court proceedings. *See* Doc. 62 at 5, 12-15.

The City objects to the Plaintiffs' characterization of its arguments as "knowingly misleading." Plaintiffs noted in their response that the City is aware that the allegations in the Complaint concerning the role of City officials and employees in the money bond setting and release and detention process without judicial involvement are true. Armed with documents and sworn testimony from City employees and officials, the City chose to make arguments that it could have, but did not, raise in its previous motion to dismiss even *after* discovery had revealed that the City's arguments were untrue. The City contests the truth of the factual allegations in the Complaint, essentially making an argument that it should make at trial to a jury. Accordingly, Plaintiffs merely noted for the Court that discovery had actually confirmed the Complaint's allegations.

The City also attaches an email chain between counsel for the parties, purporting to support a quotation made in a footnote to the City's reply brief. Bizarrely, the quotation used by the City in its footnote is a quotation from an email sent *by the lawyer for the City*.

F.3d 592, 612-13 (6th Cir. 2007); and the training and case assignment policies at issue in *Miranda v. Clark County*, 319 F.3d 465 (9th Cir. 2003). *Cf.* Doc. 62 at 10.

The City continues to rely on *Eggar v. City of Livingston*, 40 F.3d 312 (9th Cir. 1994), for the proposition that the appointment of counsel is solely a matter of state policy administered in the first instance by the Municipal Judge. Doc. 64 at 5. But that case is inapposite, as Count Two focuses not on the actions of "a municipal judge acting in his or her judicial capacity to enforce state law" (the sort of action at issue in *Eggar*, see 40 F.3d at 315), but rather on the actions of non-judicial City officials who "jail[ed] Plaintiffs during proceedings initiated by City prosecutors at which Plaintiffs did not have the benefit of counsel and did not knowingly, intelligently, and voluntarily waive counsel," and who maintained a "policy of not providing adequate counsel in proceedings in which indigent people are ordered to be imprisoned in the City jail for non-payment, which are, in turn, based on payment plans arising from traffic and other violations at which the person was also unrepresented." Doc. 62 at 9-10 n.9 (quoting Doc. 53 at ¶ 237). The City cannot escape its constitutional duties simply by pointing to other officials with independent duties to protect overlapping constitutional rights by different means.

**III.    Count Three: The City Was Not Forced to Detain People Unconstitutionally**

The City highlights the fact that General Order 421.03, cited by Plaintiffs in their Response, Doc. 62 at 12, not only gives City Watch Commanders discretion to set and reduce bond and to release people on their own recognizance, but also "authorize[s]" them to set bonds in the amounts assessed by the Municipal Judge. Doc. 64 at 7 (mistakenly citing General Order 421.00). The City's suggestion appears to be that because this *municipal* General Order *permits* City Watch Commanders to take the unconstitutional course of simply setting money bonds at the amounts assessed administratively by the Municipal Judge without regard for a person's ability to pay, the

6

City is not liable when its Watch Commanders act accordingly. But this is doubly mistaken. First, the General Order permits but does not require the City Watch Commanders to act unconstitutionally. On the contrary, it empowers them to "authorize a reduction in the prescribed bond to an amount obtainable by the arrested subject, or" to "authorize a recognizance if the circumstances require such action." Doc. 62-2 at 1. Plaintiffs allege that "the circumstances" — which in every case include the Constitution — required not detaining people because they could not afford to pay and did not permit using days of indefinite detention to negotiate frequently changing amounts of payments from desperate arrestees and their families. Second, even if the General Order *required* unconstitutional action, which it does not, the City would still be liable for it because it was issued by the City's Chief of Police and pursuant to ordinance. In either case, the City's failure to pursue the constitutional option open to it was "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

**IV.     Count Five: Municipalities Are Liable for Unconstitutional Warrant-Seeking**

The City complains of a lack of citations to cases where the "seeking of a warrant is constitutionally actionable conduct." Doc. 64 at 8. Such cases are ubiquitous. The Supreme Court and every federal circuit to publish a decision on the question have held that government officials who seek arrest warrants are liable if the information used to seek the warrant is false or made in

reckless disregard for the truth,[3] if the warrant is based on their own unconstitutional conduct,[4] or if their conduct was otherwise objectively unreasonable such that a competent officer should have known that the warrant was not valid.[5] In its Order granting Plaintiffs' Motion to Reconsider, this Court recognized the possibility of municipal liability under the Fourth Amendment and concluded that Plaintiffs had adequately pleaded such a claim against the City. *See* Doc. 27 at 7-8 (citing *Berg v. County of Allegheny*, 219 F.3d 261, 277 (3d Cir. 2000), and *Johnson v. City of Philadelphia*, No. 13-CV-02963, 2013 WL 4014565, at *3 (E.D. Pa. Aug. 7, 2013)).

> **V.    Count Six: This Court Has Not Confused "Issuing" Warrants with Seeking and Enforcing Them**

The City now argues, in effect, that this Court erred in finding, Doc. 27 at 7, "that Plaintiffs have plausibly pleaded that the City has a policy of issuing warrants for 'failure to appear' without probable cause." *See* Doc. 64 at 9-10 (claiming that "[t]he issuance of warrants is a function of the state court system"). This argument reflects a basic misunderstanding of the Court's Memorandum, which clearly used the term "issuing" as shorthand for obtaining and enforcing warrants. *See* Doc. 27 at 6-7 (explaining Plaintiffs' argument that the City may "violate the Fourth Amendment by having a policy *that leads to* the issuance of warrants based on knowingly or

---

[3] *See, e.g.*, *Franks v. Delaware*, 438 U.S. 154, 165 (1978); *Miller v. Prince George's Cnty.*, 475 F.3d 621, 632 (4th Cir. 2007); *Burke v. Town of Walpole*, 405 F.3d 66, 88 (1st Cir. 2005); *Holmes v. Kucynda*, 321 F.3d 1069, 1084 (11th Cir. 2003); *Mendocino Env. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1295 (9th Cir. 1999); *Burk v. Beene*, 948 F.2d 489, 494 (8th Cir. 1991); *Hunter v. Namanny*, 219 F.3d 825, 829 (8th Cir. 2000); *Olson v. Tyler*, 771 F.2d 277, 282 (7th Cir. 1985).

[4] *Segura v. United States*, 468 U.S. 796, 814 (1984) ("None of the information on which the warrant was secured was derived from or related in any way to the initial [unlawful] entry into petitioners' apartment."); *Alderman v. United States*, 394 U.S. 165, 177 (1969) ("Nothing seen or found on the premises may legally form the basis for an arrest or search warrant . . . ."); *Murray v. United States*, 487 U.S. 533, 540 (1988) (describing the "much more onerous burden of convincing a trial court that no information gained from the illegal entry affected either the law enforcement officers' decision to seek a warrant or the magistrate's decision to grant it; *United States v. Davis*, 430 F.3d 345, 358 n.4 (6th Cir. 2005) ("[W]e agree with the numerous other circuits that have held that the *Leon* good-faith exception is inapplicable where a warrant was secured in part on the basis of an illegal search or seizure."); *United States v. Reilly*, 76 F.3d 1271, 1280 (2nd Cir. 1996) ("It bears emphasis . . . that the good faith exception requires a sincerely held and objectively reasonable belief that the warrant is based on a valid application of the law to all the known facts.").

[5] *United States v. Leon*, 468 U.S. 897 (1984); *Malley v. Briggs*, 475 U.S. 335, 346 (1986) (applying *Leon*'s "objective reasonableness" test to civil cases against government officials seeking and enforcing warrants).

8

recklessly false information, or by having a policy *that causes* systemic invalidity in issuing and executing warrants." (emphases added)). As this Court's Order and the cases cited in Part IV demonstrate, Plaintiffs have stated a plausible claim that the City is liable for its practices of seeking and executing warrants that are invalid.[6]

## VI. The City Is Liable Under *Monell* for Its Actions and Omissions in the Face of Municipal Court Activity That It Can Control

The arguments set forth above are independently sufficient to deny the City's motion. Separately, for the reasons set forth in Part II of Plaintiffs' Response, Doc. 62 at 19-23, the City can be liable under 42 U.S.C. § 1983 for failing to exercise its legislative and executive control over the Ferguson Municipal Court to prevent that court's open and longstanding practice of issuing arrest warrants for non-payment without inquiring into a debtor's ability to pay (a practice, moreover, also engaged in directly by City prosecutors and employees seeking those warrants from the Court in cases of nonpayment and City law enforcement knowingly executing them). In its Reply, the City repeatedly cites *Granda* and other cases concluding that a judicial decision enforcing state law cannot *itself* render a municipality liable under § 1983. *See, e.g.*, Doc. 64 at 12. But it does not follow that the City is not liable for its actions and omissions in the face of open and longstanding Municipal Court practices that the City has the power to render constitutional through ordinances and executive control and that the City is itself invoking and taking advantage of through its attorneys. Insofar as the Municipal Court had constitutional alternatives open to it under state law, *see* Doc. 62 at 22 & n.18, and insofar as the City failed to act despite knowing of the Court's unconstitutional custom and having the power to render it constitutional, *see id.* at 22-23 & nn.19-23, the City is liable under § 1983 for its deliberate

---

[6] For this reason, the City's repeated references to *Ledbetter v. City of Topeka*, 318 F.3d 1183 (10th Cir. 2003), are irrelevant. There the challenged act was part of the process of "issuing" a warrant in the strict sense (a judge's allowing his clerk to rubber-stamp an arrest warrant), which is distinct from the processes of seeking and enforcing.

9

indifference toward Plaintiffs' rights and for its tacit authorization (as well as its direct invocation and enforcement) of the Municipal Court's practices. *Id.* at 23 (citing *Pembaur*, 475 U.S. at 483).

## VII. To Be Subject to an Ongoing Practice is to Face a Threat of Future Harm

Plaintiffs distinguished *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), on the grounds that "the constitutionally objectionable practice" in that case "ceased altogether before the plaintiff filed his complaint." Doc. 62 at 24 (quoting *County of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991)). In reply, the City quotes the *Lyons* Court's clarification that "Lyons' lack of standing does not rest on the termination of the police practice but on the speculative nature of his claim that he will again experience injury as the result of that practice even if continued." Doc. 64 at 14 (quoting 461 U.S. at 109). The City's suggestion seems to be that Plaintiffs (and the Court itself, in *Riverside*), have misunderstood *Lyons*. But any alleged tension between *Lyons* and *Riverside* is nonexistent. The termination of the police chokehold practice in *Lyons* prior to the filing of the suit is part of what made it the case (together with the Court's presumption that the plaintiff would follow the law in the future) that Lyons's claim of future injury was too speculative. *That* is why the *Riverside* Court distinguished *Lyons* by noting that the chokehold practice had terminated before the suit began. By contrast, because the detention challenged in *Riverside* was ongoing when the suit began, it continued to harm the plaintiffs there, and so their claim of future injury was, unlike Lyons's, not speculative at all. The same goes for Plaintiffs here: when they filed suit, they were suffering a direct and current injury as a result of the City's unconstitutional practices, and they faced a real and immediate threat of future harm from the policies they challenged if those policies were not enjoined. Doc. 62 at 24. They therefore have standing.

## VIII. The City's Consent Decree Does Not Moot Plaintiffs' Claims

The City also suggests that the Consent Decree recently approved by another court in this District makes equitable relief improper in this case. Doc. 64 at 15 ("Defendant disagrees that a federal court order in this regard allows a voluntary cessation without recourse."). But the operative point is not just that the City is free to renege on its deal with the Department of Justice or that entities are often unable to comply with consent decrees;[7] it is that the Consent Decree articulates somewhat different relief than Plaintiffs seek, according to a set of deadlines that Plaintiffs have not agreed to. *Cf.* Doc. 62 at 25-26. Even if the City meets the Decree's various deadlines, it will still bear the burden under the voluntary cessation doctrine of showing that the measures accomplished in line with the Decree suffice to address the problems raised in this Complaint. As those deadlines have yet to be met (and, indeed, are in some cases months away), it is currently impossible for the City to make the showing that would be required to moot any of Plaintiffs' claims (and it has not even tried).

Respectfully submitted,

 /s/ Alec Karakatsanis
Alec Karakatsanis (E.D.Mo. Bar No. 999294DC)
Marco Lopez

Equal Justice Under Law
601 Pennsylvania Avenue, NW Suite 900
Washington, DC 20004
(202)-681-2409
alec@equaljusticeunderlaw.org

 /s/ Thomas B. Harvey
Thomas B. Harvey (MBE #61734)

 /s/ Michael-John Voss
Michael-John Voss (MBE #61742)

ArchCity Defenders

---

[7] Indeed, the Ferguson Mayor has warned that the City will not be able to comply with the decree unless new taxes are passed, and not all of the proposed taxes have been passed. *See* http://www.huffingtonpost.com/entry/ferguson-doj-agreement-mayor-james-knowles_us_56fc35a4e4b083f5c6069596.

812 N. Collins
Saint Louis, MO 63102
855-724-2489

 /s/ John J. Ammann
John J. Ammann (MBE #34308)

 /s/ Stephen Hanlon
Stephen Hanlon (MBE #19340)

 /s/ Brendan Roediger
Brendan Roediger (E.D.Mo. Bar No. IL6287213)

Saint Louis University School of Law
100 N. Tucker Blvd.
Saint Louis, MO 63101-1930
314-977-2778

 /s/ Sonia W. Murphy
Sonia W. Murphy (*Pro Hac Vice*)

White & Case LLP
701 13th Street, NW
Washington, DC 20005
(202) 637-6161

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I certify that a copy of this Motion has, on June 1, 2016, been electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of the filing upon counsel for the Defendant in this matter:

    Peter J. Dunne
    Robert T. Plunkert
    Ida Shafaie

    PITZER SNODGRASS, P.C.
    100 South Fourth Street, Suite 400
    St. Louis, Missouri 63102-1821
    (314) 421-5545
    Counsel for Defendant – City of Ferguson

                                                              */s/ Alec Karakatsanis*
                                                              Alec Karakatsanis

                                                              Attorney for the Plaintiffs