UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEILEE FANT, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )   No. 4:15-CV-00253-AGF |
| | ) |
| THE CITY OF FERGUSON, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

The named Plaintiffs in this putative civil rights class action are 11 individuals who allege that they have been jailed by the City of Ferguson (the "City") on numerous occasions because they were unable to pay cash bonds or other debts owed to the City resulting from their traffic and other minor offenses.  Plaintiffs allege that, in violation of the United States Constitution and as a matter of the City's policy and practice, they were not afforded counsel, any inquiry into their ability to pay, or a neutral finding of probable cause in a prompt manner; and they were held in jail indefinitely, in overcrowded and unsanitary conditions, until they or their friends or family members could make a monetary payment sufficient to satisfy the City.

The City has moved to dismiss all claims in Plaintiffs' first amended complaint except one, relating to the conditions of confinement, and to dismiss Plaintiffs' request for injunctive relief.  (Doc. No. 57.)  For the reasons set forth below, the Court will deny the City's motion.

## **BACKGROUND**

As an initial matter, the Court notes that it denied an earlier motion by the City to dismiss Plaintiffs' original complaint.[1] In its current motion to dismiss Plaintiffs' amended complaint, the City incorporates by reference the arguments raised in that earlier motion in order to "preserve their arguments, preserve the record, and to allow the Court to reconsider such arguments should this Court deem appropriate." (Doc. No. 58 at 1 n.1.) After careful consideration, the Court concludes that reconsideration is not warranted and will therefore only address the new arguments asserted by the City.

Plaintiffs' amended complaint asserts seven claims under 42 U.S.C. § 1983, arising out of the City's policies and practices of jailing individuals for failure to pay money owed from traffic and other minor offenses. Plaintiffs seek to represent three classes: (1) a declaratory and injunctive relief class of "[a]ll persons who currently owe or who will incur debts to the City of Ferguson from fines, fees, costs, or surcharges arising from cases prosecuted by the City"; (2) a declaratory and injunctive relief class of "all persons who, either because they owe debts to the City of Ferguson, through warrantless arrest, or for any other reason, will become in the custody of the City of Ferguson and thereby subjected to its post-arrest wealth-based detention procedures"; and (3) a damages class of "[a]ll persons who, from February 8, 2010 until the present, were held in jail by the City because of their non-payment of a monetary sum required by the City." (Doc. No. 53 at 46.)

---

[1] The Court thereafter granted Plaintiffs' unopposed motion for leave to amend their complaint in order to add a new proposed class and a new claim (Count Seven).

In Count One of the amended complaint, Plaintiffs claim that the City violated Plaintiffs' rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment by jailing and threatening to jail Plaintiffs indefinitely for their inability to pay debts owed from traffic and other minor offenses, without conducting any inquiry into Plaintiffs' ability to pay and without considering alternatives to imprisonment. Plaintiffs allege that, as a matter of policy and practice, when arrestees are booked at the City's jail, they are told by jail staff that they can be released immediately but only if they pay an "arbitrarily determined and constantly-shifting" sum of money to the City. *Id.* at 54.

In Count Two, Plaintiffs claim that the City violated Plaintiffs' rights under the Sixth and Fourteenth Amendments "by jailing Plaintiffs during proceedings initiated by City prosecutors at which Plaintiffs did not have the benefit of counsel and did not knowingly, intelligently, and voluntarily waive counsel." *Id.* Plaintiffs allege that the City has a policy and practice "of not providing adequate counsel in proceedings in which indigent people are ordered to be imprisoned in the City jail for non-payment, which are, in turn, based on payment plans arising from traffic and other violations at which the person was also unrepresented." *Id.*

In Count Three, Plaintiffs claim that the City's use of indefinite and arbitrary detention violates the Due Process Clause of the Fourteenth Amendment. Plaintiffs allege that the City has a policy and practice of jailing indigent persons owing debts to the City "indefinitely and without any meaningful legal process through which they can challenge their detention by keeping them confined . . . unless or until they could make arbitrarily determined cash payments." *Id.* at 55. Plaintiffs further allege that "inmates routinely do

3

not even have future court dates set and are held indefinitely without being brought to court," that "[i]f a person . . . misses any future payment, the City, without any legal process confiscates any previous amounts paid by the person to secure their release from jail and resets the person's debts," and that the "City also adds a 'warrant' fee for the person's missed payment without any legal process," which increases the total debt owed by Plaintiffs. *Id.* at 38. Plaintiffs allege specific instances of City jail staff and supervisors holding Plaintiffs in jail for days or weeks, without setting future court dates or bringing Plaintiffs to court, and then gradually and incrementally reducing the amount of money required to buy a Plaintiff's release, not through any formal court process, but by negotiating or bargaining with Plaintiffs or their family regarding the amount of money they are able to pay. Plaintiffs further allege that "[i]n many cases, after significant jail time, the City will release the person for free if it is clear that the City cannot extract any money from the person during that jail stay." *Id.* at 36.

In Count Four, Plaintiffs claim that the totality of the conditions of the City's jail amount to punishment of the pre-trial detainee and post-judgment debtor Plaintiffs, in violation of the Due Process Clause.

In Count Five, Plaintiffs claim that the City's use of jail and threats of jail to collect debts owed to the City violates the Equal Protection Clause because it imposes "unduly harsh and punitive restrictions on debtors whose creditor is the government compared to those who owe money to private creditors." *Id.* at 55. Plaintiffs allege that the "City takes advantage of its control over the machinery of the City jail and police systems to deny

4

debtors the procedural and substantive statutory protections that every other Missouri debtor may invoke against a private creditor." *Id.* at 56.

In Count Six, Plaintiffs claim that the City has a "policy and practice of issuing and serving invalid warrants," in violation of the Fourth and Fourteenth Amendments. *Id.* at 56. Plaintiffs allege that, pursuant to the City's policies and practices, warrants are regularly issued for "failure to appear," even when there was no court appearance scheduled[2] or when the City has not provided adequate notice of a court date, for example, because City officials moved a person's hearing date without informing that person. Plaintiffs further allege that "[t]he City informs people that they can immediately remove outstanding warrants simply by paying a sum of money" or by retaining a lawyer, but that the City does not offer a way for unrepresented indigent persons to remove arrest warrants. *Id.* at 44.

In Count Seven, Plaintiffs claim that the City's "extended detention of warrantless arrestees without a neutral judicial finding of probable cause based on sworn evidence" violates Plaintiffs' rights under the Fourth and Fourteenth Amendments. Plaintiffs allege that, as a matter of policy and practice, the City routinely holds people in jail for longer than 48 hours without a neutral determination of probable cause. Plaintiffs allege that, moreover, "[b]ecause City policy is to negotiate cash bond and then to release people for free eventually if they cannot pay, it does not detain new arrestees for the purpose of any legal proceeding." *Id.* at 57.

---

[2]   Plaintiffs allege, for example, that "[t]he City routinely gives inmates paperwork crossing out a court date and telling them instead to make payments at the police department or to drop money off at the night deposit slot." (Doc. No. 53 at 44.)

Notably, Plaintiffs allege that the challenged actions often took place outside of the judicial process completely and were, in all cases, caused by and representative of "the City's policies and practices concerning collecting unpaid fines, fees, costs, and surcharges relating to traffic tickets and other minor offenses for at least the past five years." *Id.* at 33. Plaintiffs further allege that "[i]t is the policy and practice of the City . . . to use its municipal court and its jail as significant sources of revenue generation for the City." *Id.* Plaintiffs allege that they still owe significant debts to the City and fear that they will again be jailed because of their inability to make monetary payments, subject to the City's policies and practices outlined above.

As relief, Plaintiffs seek a declaration that the City's' policies and practices, as outlined above, violate Plaintiffs' constitutional rights; a permanent injunction preventing the City from enforcing these policies and practices; and an award of compensatory damages, attorneys' fees, and costs.

The City has moved to dismiss Plaintiffs' request for injunctive relief and all of Plaintiffs' claims except Count Four, for failure to state a claim.

## **ARGUMENTS OF THE PARTIES**

The City argues that all claims except Count Four should be dismissed because Plaintiffs cannot show that the alleged injuries were attributable to the City for purposes of municipal liability under § 1983. Specifically, the City argues that each of the claims at issue arises out of a municipal court judge's allegedly improper action (or inaction) in

carrying out judicial functions as part of the Ferguson Municipal Court, which, according to the City, is an arm of the state and is outside the control of the City as a matter of state law.  The City then cites a line of federal cases following the United States Supreme Court's decisions in *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986), and *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), for the proposition that "the actions of a municipal judge in his or her judicial capacity to enforce state law do not act as a municipal official or lawmaker for purposes of municipal liability under 42 U.S.C. § 1983."  (Doc. No. 58 at 9.)

In a few footnotes, the City briefly mentions alternative arguments for dismissal, based on Eleventh Amendment immunity and abstention.  With respect to immunity, the City argues in a single footnote that, although the Court need not address the issue if it finds that Plaintiffs fail to state a claim for municipal liability, "[i]n the alternative, Defendant sets forth a good faith request that the Eleventh Amendment be extended to the conduct alleged by Plaintiffs for the reasons described below (municipal court alleged action and inaction)."  (Doc. No. 58 at 4 n.2.)  The City does not further explain the basis of this argument.  In another footnote, the City requests that the Court take judicial notice of a state court case, in which some of same attorneys representing Plaintiffs are purportedly "challenging alleged fees of the City."  *Id.* at 20 n.11.  The City does not provide further information about this lawsuit but argues that, to the extent this Court believes Plaintiffs have stated a claim for municipal liability based on the City's fees or surcharges, such claim is "barred by the *Colorado River* doctrine as parallel state court litigation is

pending." *Id.* (citing *Colorado Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)).

Next, the City argues that Plaintiffs' request for injunctive relief should be dismissed on standing and ripeness grounds. Specifically, the City contends that Plaintiffs have failed to allege facts establishing standing to seek injunctive relief because Plaintiffs allege only past harm and have not pleaded a real and immediate threat of injury resulting from the City's conduct. The City further contends that Plaintiffs' claims amount to a "general grievance with the City," which the Court should decline to hear as a matter of "prudential restraint."

In support of its ripeness argument, the City points to a Consent Decree entered on April 19, 2016, in a case brought by the United States Department of Justice against the City and pending before a different judge of this Court, *United States v. City of Ferguson*, Case No. 4:16-cv-00180-CDP, Doc. No. 41 (the "Consent Decree"). The City argues that the Consent Decree "addresses the determination of indigence and the imposition of fines (¶¶ 340–42), payment plans and community service (¶¶ 343–46), the issuance of warrants in connection with a hearing to determine payment (¶¶ 347–48), and bond schedules, bond, payment of bond, and pretrial detention (¶¶ 349–50)." [3] (Doc. No. 58 at 35 n.15.) Thus, the City argues that the Consent Decree has fully addressed Plaintiffs' claims such that no further injunctive relief is necessary.

---

[3] The Court takes judicial notice of the terms of the Consent Decree as a matter of public record appropriately considered at this stage. *See Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015). Plaintiffs do not object to the Court's consideration of the Consent Decree in ruling on the City's motion to dismiss.

In response to the City's motion, Plaintiffs argue that, contrary to the line of cases cited by the City, their complaint alleges constitutional violations caused by the City's own policies and practices, not merely by a single municipal judge's decisions. Plaintiffs argue that the violations here are in fact alleged to have taken place largely outside of the judicial process and without any involvement by a municipal judge. Plaintiffs also note that the Consent Decree—in which the City has agreed to stop certain practices alleged to be unconstitutional in this case (such as imposing fines, fees, and costs without an ability-to-pay determination, and using arrest warrants to collect debts owed to the City)—belies the City's arguments that it lacks any control over such practices.

Plaintiffs further argue that the Court should reject the City's "halfhearted[]" Eleventh Amendment immunity and *Colorado River* abstention arguments as unsupported and wrong on the merits. With respect to the City's abstention argument, Plaintiffs contend that the state court lawsuit noted by the City "challenges the initial issuance of fines," whereas the present lawsuit "challenges the City's collection methods." (Doc. No. 62 at 17 n.17.)

Plaintiffs also argue that they have stated a viable request for injunctive relief. Plaintiffs argue that they have established standing to obtain such relief because they have pleaded that they still owe debts to the City and are still subject to the City's allegedly unconstitutional debt-collection and post-arrest policies and practices. Plaintiffs also argue that their claims do not assert a generalized grievance but assert violations of Plaintiffs' own constitutional and statutory rights.

Finally, Plaintiffs argue that the City's "lack of ripeness" argument appears to be an argument that Plaintiffs' request for injunctive relief is moot in light of the April 19, 2016 Consent Decree. To that argument, Plaintiffs respond that any mootness argument is "premature," as the Consent Decree contains future deadlines by which the City must make changes to policies and practices that would address problems raised in the complaint. Plaintiffs argue that, although the City may be able to prove mootness when it completes those future reforms, it has not done so yet. In a sur-reply, Plaintiffs also note that "the Consent Decree articulates somewhat different relief than Plaintiffs seek, according to a set of deadlines that Plaintiffs have not agreed to." (Doc. No. 65-1 at 11.)

## **DISCUSSION**

To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556. The reviewing court must accept the plaintiff's factual allegations as true and construe them in plaintiff's favor, but it is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)

(quoting *Iqbal,* 556 U.S. at 679).

**Municipal Liability**

"Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Indep., Mo.*, 829 F.3d 695, 699-700 (8th Cir. 2016) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) and *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

The Supreme Court has rejected any heightened pleading requirement for claims alleging municipal liability under § 1983. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 165-66 (1993). To survive a motion to dismiss such a claim, a complaint need only allege facts sufficient "to draw an inference that the conduct complained of resulted from an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004).

> A policy is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters. Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Corwin*, 829 F.3d at 700 (citations omitted).

"The 'official policy' requirement was intended to distinguish acts of the municipality from acts of *employees* of the municipality, and thereby make clear that

municipal liability is limited to action for which the municipality is actually responsible," meaning action which the "municipality has officially sanctioned or ordered." *Pembaur*, 475 U.S. at 479-480. Special problems arise when considering whether an unconstitutional municipal policy may be inferred from the isolated acts of a single official. That is the question addressed in *Pembaur*, *Praprotnik*, and in the line of federal cases that the City relies on in its motion.

In answering that question, the Supreme Court held that a single official's isolated actions may constitute a municipal policy where the official has "final policymaking authority," which is a question of state law, and where the challenged action was "taken pursuant to a policy adopted by the official . . . responsible under state law for making policy in that area of the city's business." *Praprotnik*, 485 U.S. at 123 (emphasis removed) (citing *Pembaur*, 475 U.S. at 482-83).

The federal circuit courts of appeal (in the line of cases relied upon by the City) have applied this rule to find that a municipal judge does not act as a final policymaker of the municipality for purposes of municipal liability when she makes a judicial decision under the authority of state law and appealable to the state's higher courts. *See, e.g., Granda v. City of St. Louis*, 472 F.3d 565, 569 (8th Cir. 2007); *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1189-90 (10th Cir. 2003); *Eggar v. City of Livingston*, 40 F.3d 312, 314-16 (9th Cir. 1994); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Woods v. City of Michigan City, Ind.*, 940 F.2d 275, 277-78 (7th Cir. 1991). In each of these cases, the plaintiffs "by naming [a particular municipal court judge acting in his judicial capacity] as the source of

12

the constitutional deprivation, detach[ed] the local governments from the unconstitutional policy." *Woods*, 940 F.2d at 279.

But Plaintiffs do not seek to hold the City liable for the judicial decisions made by a municipal court judge in particular cases. Indeed, as noted above, Plaintiffs allege that the constitutional deprivations here took place largely outside of any judicial process. Instead, Plaintiffs' complaint is replete with allegations that each of the injuries alleged was caused by the City's own unconstitutional policies and by the continuing and pervasive unconstitutional practices of a wide range of City employees. The Court finds that Plaintiffs have pleaded enough facts to raise a reasonable expectation that discovery will reveal evidence to support their claim of municipal liability under § 1983, which is all that is required at this stage. *See Johnson v. City of Philadelphia*, No. 13–cv–02963, 2013 WL 4014565, at *3 (E.D. Pa. Aug. 7, 2013) ("[W]hile the extent of the City's involvement in the warrant process may be disputed, and whether its procedures, or lack thereof, for preventing the issue of erroneous warrants may be challenged, those are fact-sensitive issues that can be addressed in later proceedings.").

**Eleventh Amendment Immunity and *Colorado River* Abstention**

The City fails to present a coherent or complete legal argument as to why Eleventh Amendment immunity would apply here, *see Monell*, 436 U.S. at 691 n.54 (finding no "basis for concluding that the Eleventh Amendment is a bar to municipal liability"), or why *Colorado River* abstention would be appropriate.[4] Therefore, the Court will deny the

---

[4] *Colorado River* abstention is reserved for "exceptional circumstances where the surrender of federal jurisdiction is supported by the clearest of justifications" and is

13

City's motion to dismiss on these alternative grounds.

**Injunctive Relief**

For a plaintiff to demonstrate standing to obtain injunctive relief, he must show that he "has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983) (citation omitted).  "It is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the threatened injury is certainly impending."  *Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000)

Plaintiffs have established standing to obtain injunctive relief by pleading that they still owe debts to the City and are still subject to the City's continuing unconstitutional debt-collection and post-arrest policies and procedures.  *See, e.g.*, *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) (distinguishing *Lyons*, "in which the constitutionally objectionable practice [of chokeholds] ceased altogether before the plaintiff filed his complaint," and holding that plaintiffs established standing where they were still detained at the time of the complaint and still subject to the county's policy of failing to provide prompt probable cause hearings); *Ray v. Judicial Corr. Servs.*, No. 2:12-CV-02819-RDP, 2013 WL 5428360, at *13 (N.D. Ala. Sept. 26, 2013) (holding that the plaintiffs' allegations that they "still owe[d] various fines and fees," demonstrated they were "under

---

especially disfavored where federal law controls.  *Spectra Commc'ns Grp., LLC v. City of Cameron, Mo.*, 806 F.3d 1113, 1121 (8th Cir. 2015) (citation omitted),

the present and constant threat of being subject to the allegedly illegal methods and procedures utilized . . . to collect municipal fines," and their request for "prospective injunctive relief" was therefore appropriate).

Plaintiffs have also satisfied any "prudential" concerns that bear on the question of standing because, as discussed above, they have "asser[ted] their own legal rights and interests," and not merely a "generalized grievance[]" of the public at large. *Cf. Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474-75 (1982).

Plaintiffs' standing to obtain injunctive relief is not diminished by the City's entry into the April 19, 2016 Consent Decree with the Department of Justice. The Court agrees with Plaintiffs that the effect of the Consent Decree on Plaintiffs' request for injunctive relief presents a question of mootness, which occurs "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013). A request for injunctive relief "becomes moot if it can be said with assurance that there is no reasonable expectation that the violation will recur or if interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Kennedy Bldg. Assocs. v. Viacom, Inc.*, 375 F.3d 731, 745 (8th Cir. 2004). "The heavy burden of proving mootness falls on the party asserting the case has become moot." *Id.*

In *Kennedy Building Associates*, the Eighth Circuit considered "whether a defendant's entry into an agreement with a third party to negotiate a resolution to the violation on which injunctive relief is based moots a claim for injunctive relief." *Id.* The

15

third-party agreement in that case was an administrative consent order that the defendant entered with a state environmental agency "to design and implement a remedial plan [concerning contaminated property] whose terms [were] yet unknown." *Id.* at 742. The question was whether the administrative consent order mooted a claim by a private plaintiff in a separate suit for an injunction to clean up the same contaminated property. The Eighth Circuit held that, although a claim for injunctive relief may be moot where "the condition on which the suit was based had been remedied" by a third-party agreement, the same was not necessarily true where the agreement "depend[ed] on future events entirely outside [of the] control" of the plaintiff seeking injunctive relief. *Id.* at 745-46. The Eighth Circuit noted that if a request for injunctive relief "were to be dismissed upon an agreement between third parties to perform at some time in the future, if some impediment arises or some prolonged delay ensues in the planned performance, the plaintiff would be at square one." *Id.* at 745; *see also Gropper v. Fine Arts Housing, Inc.*, 12 F. Supp. 3d 664, 670, 674 (S.D.N.Y. 2014) (holding that a defendant's entry into a voluntary compliance agreement ("VCA") with the Department of Justice that bound it to address "the majority" of an individual plaintiff's disability discrimination claims in a separate case did not moot the individual plaintiff's claims because "the VCA consist[ed] largely of promises that [the defendant] will fulfill *in the future*"; but deciding to stay case during the term of the VCA to avoid "duplicative litigation while [the defendant] was engaged in an ongoing effort to comply with the law").

    The Eighth Circuit in *Kennedy Building Associates* further held that "[e]ven assuming for the sake of argument that entering an administrative agreement to do

something in the future is the same thing as having already done the thing for purposes of mootness analysis, . . . [r]elief granted in another tribunal can moot a claim . . . only where the relief granted is complete." *Kennedy Bldg. Assocs.*, 375 F.3d at 746.

Here, too, the Court finds that the City has not yet demonstrated that the Consent Decree moots Plaintiffs' request for injunctive relief. A review of the Consent Decree reveals that the City has agreed to "develop and implement" plans to correct its municipal court practices in the future. *See, e.g.*, Consent Decree, No. 4:16-cv-00180-CDP, Doc. No. 41 at ¶ 328 (within 90 days, "the City will develop and implement all necessary ordinances and policies to ensure that the practices of the Ferguson Municipal Court are grounded in the fair administration of justice and comport with all constitutional and other legal requirements"); ¶ 340 (within 60 days, "the City will ensure that defendants are provided with appropriate ability-to-pay determinations"); ¶ 348 (within 60 days, "the City will establish and implement protocols, through policy or ordinance, to ensure that arrest warrants related to municipal code violations will be issued, if at all, only after all other mechanisms available for securing a person's appearance in court have been exhausted" and to "ensure that arrest warrants are not being issued in response to a person's financial inability to pay a fine or fee"); ¶ 350 (within 60 days, "the City will develop and implement a plan to eliminate e the use of a fixed monetary bond schedule").

The City also does not suggest (and a review of the Consent Decree's terms does not reveal) that the Consent Decree addresses Plaintiffs' claim in Count Two, regarding Plaintiffs' alleged right to counsel and the City's policies and practices in this regard. Therefore, the City has not demonstrated that the Consent Decree provides complete relief.

The City may well establish in the near future, as a result of new policies designed or implemented under the terms of the Consent Decree, "that there is no reasonable expectation that the violation[s] will recur or [that] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation[s]." *See Kennedy Bldg. Assocs.*, 375 F.3d at 745. Alternatively, the City may establish that Plaintiffs' request for injunctive relief should be stayed or withheld, in whole or in part, to avoid duplication of or inconsistency with the relief ordered in the Consent Decree (a point that the City has not clearly made to date). But the City has not done so yet. In sum, the Court will deny the City's motion to dismiss Plaintiffs' claim for injunctive relief.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss Plaintiffs' first amended complaint is **DENIED**. (Doc. No. 57.)

*[signature]*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 15th day of November, 2016.