IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KEILEE FANT, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-CV-00253-AGF |
| | ) | |
| THE CITY OF FERGUSON, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS'
MOTION TO DISQUALIFY DEFENDANT'S COUNSEL**

COME NOW Plaintiffs, by and through their undersigned counsel, and for their Reply Brief in Support of Plaintiffs' Motion to Disqualify Defendant's Counsel Pitzer Snodgrass, P.C. (ECF No. 111), pray this Court grant their Motion for the foregoing reasons:

**INTRODUCTION**

In this state, where information in a law firm is presumed to flow freely, no affidavit, no reputation (however impressive), nor any "screen" or "ethical wall" barring Plaintiffs' former attorney Ryan McGinty access to Ferguson's files eliminates Pitzer Snodgrass's ability to access at any time Mr. McGinty's extensive and intimate knowledge of the Plaintiffs, their experiences as impoverished defendants in Ferguson's debtors' prison, and their litigation strategies— knowledge Mr. McGinty first carried into Pitzer Snodgrass at his job interview and continues to bring to work each day.

Only this Court—*not* Pitzer Snodgrass, P.C. nor the named Plaintiffs—has the power to remedy the direct, continuing conflict of interest that immediately arose when Pitzer Snodgrass knowingly hired Plaintiffs' former attorney Ryan McGinty in violation of the Missouri Rules of Professional Conduct, and the only cure is to disqualify Pitzer Snodgrass.

**ARGUMENT**

I. **THIS COURT HAS A DUTY TO DISQUALIFY PITZER SNODGRASS UNDER MISSOURI LAW.**

Every client, including each Plaintiff here, has a right to expect the loyalty of her attorney in the matter for which he is retained, a right that is a fundamental component of the public's confidence in the integrity of the Bar. *In re Carey*, 89 S.W.3d 477, 496 (Mo. 2002). "It is the duty of the court system to not only dispense justice, but equally important, to maintain the integrity of the judicial system." *Polish Roman Catholic St. Stanislaus Parish v. Hettenbach*, 303 S.W.3d 591, 597 (Mo. Ct. App. 2010) (internal citations omitted). The disqualification of an attorney, as a means of preserving that integrity when a conflict arises, is a matter that lies within the sound discretion of the trial court. *Raster v. Ameristar Casinos, Inc.*, 280 S.W.3d 120, 133 (Mo. Ct. App. 2009).

The standards for attorney and firm conflicts of interest in Missouri are established by the Missouri Rules of Professional Conduct, enumerated under Rule 4 of the Rules Governing the Missouri Bar and the Judiciary. This Court has adopted the Missouri rules as the applicable rules of professional conduct for cases in its jurisdiction. E.D. Mo. Local R. 12.02; *E. Maine Baptist v. Regions Bank*, No. 405-CV-962 CAS, 2007 WL 3022220 at *3 (E.D. Mo. Oct. 12, 2007). Under Rule 4-1.9, an attorney "who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." Mo. Sup. Ct. R. 4-1.9(a). Missouri courts utilize Rule 4–1.9 when evaluating whether to grant a motion to disqualify counsel based on a conflict of interest with a former client. *Polish Roman Catholic* at 605, n. 3 (Mo. Ct. App. 2010).

## II. NO "ETHICAL WALL" OR "SCREEN" CAN ABSOLVE THE CONFLICT.

### A. Missouri does not Recognize "Ethical Walls" as a Solution to Pitzer Snodgrass's Conflict of Interest.

This Court must hold, as it has in recent decisions, that under the Missouri Rules of Professional Conduct "screening or the erection of an ethical wall are not methods by which conflicts can be avoided." *E. Maine Baptist v. Regions Bank*, No. 405-CV-962 CAS, 2007 WL 3022220 *4 (E.D. Mo. Oct. 12, 2007) (denying appointment of a firm as class counsel due to imputed conflict of one of its attorneys who previously represented one of the class action defendants).

As it must do in the instant case, the Court in *E. Maine Baptist* followed advisory opinions of the Missouri Bar Association, which conclude unequivocally and absolutely that Missouri does not permit the erection of such walls to eliminate the conflict at issue here. *See* 2007 WL 3022220 at *4; *see also* Mo. B. Ass'n Informal Advisory Op. No. 20050030 (2005 opinion holding that an ethical wall "is not a means of eliminating a conflict under Missouri Rules 4-1.10."). Even though informal advisory opinions do not directly bind the Eastern District, they remain persuasive even today, as the Missouri Rules of Professional Conduct have not changed with respect to use of ethical walls.

Despite Pitzer Snodgrass's misleading assertion that Missouri has "repeatedly recognized" the use of such walls, Defendant cites only *one* outdated case from the Western District where that court, relying on rules from another jurisdiction, merely suggested in dicta that a "Chinese wall" or "ethical wall" *might* protect against the *appearance* of an improper conflict. *See Hallmark Cards, Inc. v. Hallmark Dodge, Inc.*, 616 F.Supp. 516, 521 (W.D. Mo. 1985), relying upon *EZ Paintr Corp. v. Padco Inc.*, 746 F.2d 1459 (Fed. Cir. 1984) (Federal Circuit case not involving the Missouri rules). Because the Court here must continue to apply

Missouri professional rules, the *Hallmark* decision bears no weight in the decision to disqualify Pitzer Snodgrass.

      **B.**    **Even if Missouri Permitted Use of an "Ethical Wall," Pitzer Snodgrass Failed and Refused to Promptly Implement Any Such Protection.**

Even if the Missouri Rules of Professional Conduct permitted the use of the ethical wall to immunize firms from its staff attorneys' conflicts of interest, or if the conflict occurred in another jurisdiction, Pitzer Snodgrass still failed and refused to *promptly* implement protective institutional mechanisms in order to avoid the imputation of a staff attorney's conflict of interest. Assuming *arguendo* that a wall could *insure* that confidences were not revealed, the presumption can only be resolved by fully screening off the attorney changing sides *as soon as* he joins the new firm. *EZ Paintr Corp. v. Padco, Inc.*, 746 F.2d 1459, 1462 (Fed. Cir. 1984) (specifying the appropriate time as "that date [] when the two attorneys first joined the [] firm").

Here, Pitzer Snodgrass initially denied that any conflict existed, and only after eight (8) days of Mr. McGinty's employ did Pitzer Snodgrass create any type of screen to prevent Mr. McGinty from accessing any of Ferguson's digital files. Regardless, little harm or prejudice can be done to Defendant Ferguson in Mr. McGinty viewing those files. Rather, the continuing prejudice to the Plaintiffs here is that Mr. McGinty is "infected" with his intimate knowledge obtained from directly representing the Plaintiffs in Ferguson's Municipal Court, and the fact that he carries that knowledge everywhere he goes within and without the Pitzer Snodgrass firm cannot be cured by sworn statements. *See Cobb Publ'g, Inc. v. Hearst Corp.*, 907 F. Supp. 1038, 1046, 1050 (E.D. Mich. 1995) (holding that a firm that did not have the wall in place *at the time the conflicted attorney arrived* had to be disqualified, and that it was insufficient to merely allow the infected attorney and his new colleagues to testify that no confidences had been exchanged); *see also Papanicolaou v. Chase Manhattan Bank N.A.*, 720 F. Supp. 1080, 1086 (S.D.N.Y. 1989)

("[C]ourts have held that the sworn word of an infected attorney or his or her allegedly uninfected colleague that there was no cross-pollination between them is not a satisfactory rebuttal[] . . . [and] that even the most rigorous self-discipline on the part of the infected attorney might not prevent him or her from unconsciously exploiting confidential information.") (citations omitted). In the instant case, eight whole days lapsed before the firm established this basic requirement to insure public confidence and client confidentiality. Thus, the firm's failure necessitates the imputation of Mr. McGinty's disqualification to the firm.

### C. Pitzer Snodgrass's "Ethical Wall" Can Neither Undo nor Prevent Tainted Proceedings.

Pitzer Snodgrass argues that the appearance of impropriety is insufficient upon which to base a disqualification order when there is no claim that the trial will be tainted. *Bd. of Educ. of the City of New York v. Nyquist*, 590 F.2d 1241, 1247 (2nd Cir. 1979). *But cf. Hallmark Cards, Inc. v. Hallmark Dodge, Inc.*, 616 F.Supp. 516, 521 (W.D. Mo. 1985) (stating that evidence need not establish that confidences have been revealed for an attorney's disqualification to be imputed to his colleagues because, when an attorney "becomes associated with a firm opposing [a] client, an appearance of impropriety may arise and his subsequent associates may be disqualified as well").

In *Board*, a class within a union sought the disqualification of the union's attorney, seeking a payment of attorney's fees as a waiver as an alternative. *Id.* Their willingness to proceed with the alternative indicated that the representation by the same attorney would not taint the trial or undermine the representation of those members. *Id.*

Here, there is a clear claim that the trial will be tainted, and the conflict includes *and* exceeds the mere appearance of impropriety. The present conflict implicates the real *possibility* of disclosure that could have occurred absent institutional mechanisms to prevent the deliberate

or inadvertent flow of confidential information, as could be expected in a small-to-mid-sized firm of around 30 attorneys. Disqualification of Pitzer Snodgrass here is the only way to prevent this existing and ongoing prejudice to Plaintiffs.

> D. **Pitzer Snodgrass's Assertions of Factual Distinctions are Irrelevant, Inaccurate, and thus Ultimately Meritless.**

Pitzer Snodgrass's attempts to conjure factual distinctions are either inaccurate or irrelevant to this Court's decision to grant Plaintiffs' Motion to Disqualify.

For example, Defendant attempts to distinguish *Griffen*, *In Commonwealth*, *T.C. Theatre Corp.*, and *In re Carey* on the grounds that those cases involve relationships between conflicted attorneys or conflicted law firms and pending litigation that are different than the relationships in the present case. Defendant's error is its failure to recognize that disqualification under Rules 4-1.9 and 4-1.10 is a two-step process: the first step is establishing the attorney is conflicted, and the second is imputing that conflict to his or her new firm. Defendant purports to distinguish *Griffen*, 945 F.Supp. 1251 (E.D. Mo. 1996), by claiming the case involves an attorney directly representing a party who is adverse to his former client, whereas in the present case, Mr. McGinty is not directly representing Ferguson. That distinction is irrelevant. Plaintiffs cite *Griffen* which establishes that McGinty must be found to have a disqualifying conflict under Rule 4-1.9. Rule 4-1.10 then incorporates that standard into the imputation of the conflict to Pitzer Snodgrass, which *is* directly representing Ferguson. Mo. Sup. Ct. R. 4-1.10 (disqualifying a firm when *any* of its lawyers "would be prohibited...by Rules 4-1.7 or 4-1.9").

The distinction Defendant supplies for *In Commonwealth Land Title Ins. Co.*, No. 408CV1433CAS, 2009 WL 3069101 (E.D. Mo. Sept. 22, 2009) is unavailing for the same reason. Plaintiffs offer *In Commonwealth* to articulate the "substantial relationship" test, not for the proposition that a law firm that has itself switched sides must be disqualified. Nothing in

Defendant's proffered distinctions show why the substantial relationship test should be any different when an attorney, rather than an entire firm, finds itself on the adverse side of a former client. The situation is the same for *T. C. Theatre Corp.*, 113 F. Supp. 265 (S.D.N.Y. 1953), which Plaintiffs cite for the principle that a former client should not be concerned that confidences shared with an attorney will be used against him in future litigation. Again, this is simply a principle underlying the ethical rules that call for disqualification. Defendant's factual distinctions do not undermine the authority of this general principle.

Defendants quote at length from *Fred Weber, Inc.*, 566 F.2d 602 (8th Cir. 1977), in which the 8th Circuit affirmed a lower court's denial of a motion to disqualify. The 8th Circuit found that the attorney movants sought to disqualify had not in fact had an attorney-client relationship with movants, and that therefore the presumption that the attorney obtained movants' confidential information did not apply. In so finding, the 8th Circuit noted that the attorney's former role supposedly giving rise to a conflict—as counsel for movants' codefendants—"differs in structure and function from the *relationship between partners in a law firm* and from the relationship between co-counsel for a single party." *Id.* at 609 (emphasis added). Defendant can find no refuge here. McGinty had an attorney-client relationship with named plaintiffs in this action, not with some remotely-connected party as in *Fred Weber*.

Defendant overlooks the sequential nature of the analysis. The *Fred Weber* court noted that, where no attorney-client relationship existed, the court could not *presume* confidences were disclosed. *Id.* at 608. The court then went on to inquire whether, in the absence of this presumption, confidences had nonetheless been exchanged. Here, by contrast, the parties do not dispute that an attorney-client relationship existed between Plaintiffs and Mr. McGinty. There is therefore no need to reach the second stage of the *Fred Weber* court's inquiry. Mr. McGinty's

receipt of confidential information during his attorney-client relationship "raises an irrefutable presumption that confidences were disclosed." *Id*.

It is not clear what Defendant views as the relevant distinction between the present case and *Terre Du Lac Property Owners*, 661 S.W.2d 45 (Mo. Ct. App. 1983), since Defendant offers only the conclusory observation that the case is "factually different" and involves an "entirely different situation." In any event, Plaintiffs cite *Terre Du Lac* on the issue of timeliness of a motion to disqualify, not the disqualification standard. As Plaintiffs argued in their original brief, their promptness in raising the conflict issue is a far cry from the two years' delay that the *Terre Du Lac* court took as evidence that movants were acting in bad faith.

Defendant likewise seeks to distinguish *State ex rel. Moreland v. Ladd*, 807 S.W.2d 671 (Mo. 1991) as "unrelated factually." The Missouri Supreme Court in that case found no conflict of interest, not because of a failure of imputation from the allegedly conflicted attorney to his firm, but rather because the allegedly conflicted attorney's role as municipal judge did not entail any conflict at the outset. Nonetheless, the Supreme Court acknowledged that, had the underlying conflict existed, Rule 4 would have extended the conflict to all members of the judge's firm, including defense counsel. *Id.* at 672 ("Rule 1.10 . . . extends the disqualification of one attorney in a firm to all attorneys in the same firm if the informed client does not consent to representation involving a potential conflict of interest").

Lastly, Defendant's most egregious misrepresentation of a cited case involves *Central Milk Producers*, 573 F.2d 988 (8th Cir. 1978). Plaintiffs originally cited *Central Milk Producers* on the issue of timeliness; in that case, the motion to disqualify was partly denied because of a two-year delay between movants' learning of the potential conflict and their motion. Defendant sees fit to invoke *Central Milk* as a stamp of approval on their counsel's alleged screening

regimen, however the case provides no such support. The relevance of the screening arrangements at issue in *Central Milk* is that the movants had already explicitly approved them, which the court interpreted as a waiver of their right to disqualify later when those arrangements were faithfully followed. *Central Milk* at 992 (appellants not only waited more than two years to raise the conflict issue, but also "specifically approved the arrangement followed...with respect to screening").

Plaintiffs here have not consented to any screening arrangement and have therefore made no such waiver. In fact, Plaintiffs as representatives of a purported class of similarly situated individuals cannot voluntarily waive the conflict at issue here on behalf of the class members, since the class members have not provided informed consent. In the absence of such consent, the fact that the *Central Milk* court found a screening mechanism purportedly similar to that employed by Defendant's counsel to be adequate is irrelevant.

### III. **DISQUALIFICATION ELIMINATES THE PERSISTING PREJUDICE TO THE PLAINTIFFS AND STRONGLY OUTWEIGHS THE SLIGHT RESULTING INCONVENIENCE TO FERGUSON.**

Pitzer Snodgrass argues that "the court must also find that the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case[.]" *Williams v. Trans World Airlines, Inc.*, 588 F.Supp. 1037, 1041 (W.D. Mo. 1984). Applying this test here, this Court can readily find that the severity of Plaintiffs' injuries undermines any social interest Pitzer Snodgrass claims in continuing its representation of Ferguson. Further, Pitzer Snodgrass's social interest in continuing representation is offset by the likelihood of public suspicion involved in the case involving Ferguson, a city under national scrutiny for myriad unethical and unlawful practices.

Further, replacing Defendant's counsel during the discovery and motion phase of the case

will not impose a significant burden on Defendant if the City is permitted to transfer work and information prior to the date on which the conflict of interest occurred. In fact, Defendant had already obtained additional representation by the law firm of Lewis Rice (*see* Norwood Entry of Appearance, ECF No. 82) in November of 2016, and will thus experience no delay attributable to obtaining new counsel.

## CONCLUSION

Based on the foregoing and for the reasons further articulated in Plaintiffs' Motion to Disqualify and Memorandum in Support; and in order to protect the integrity of the Court, the Bar, and the Missouri Rules of Professional Conduct; this Court must grant Plaintiffs' Motion to Disqualify Pitzer Snodgrass, P.C. from representing Defendant City of Ferguson the instant action.

Dated: July 7, 2017                          Respectfully submitted,

By:/s/ *Nathaniel R. Carroll* (MBE #67988MO)
Thomas B. Harvey (MBE #61734MO)
Michael-John Voss (MBE #61742MO)
Blake A. Strode (MBE #68422MO)
**ARCHCITY DEFENDERS, INC.**
1210 Locust Street, 2nd Floor
Saint Louis, MO 63103
Tel: (855) 724-2489
Fax: (314) 925-1307
tharvey@archcitydefenders.org
mjvoss@archicitydefedners.org
bstrode@archcitydefenders.org
ncarroll@archcitydefenders.org

—and—

Andrew Tomback (*pro hac vice*)
Alice Tsier (*pro hac vice*)
Dorian Panchyson (*pro hac vice*)
Larry Moscowitz (*pro hac vice*)
**WHITE & CASE LLP**

1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200

—and—

Sonia W. Murphy (*pro hac vice*)
Margaret Spicer (*pro hac vice*)
Vivake Prasad (*pro hac vice*)
**WHITE & CASE LLP**
701 13th Street, NW
Washington, DC 20005
(202) 637-6161

—and—

Alec Karakatsanis (E.D. Mo. 999294DC)
**CIVIL RIGHTS CORPS**
910 17th Street NW, Suite 500
Washington, DC 20006
(202) 681-2409
alec@civilrightscorps.org

—and—

John J. Ammann (MBE #34308)
Brendan Roediger (E.D.Mo, IL6287213)
**SAINT LOUIS UNIVERSITY SCHOOL OF LAW**
100 N. Tucker Blvd.
Saint Louis, MO 63101-1930
(314) 977-2778

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that notice and a copy of the foregoing was received by all parties of record via this Court's PACER/ECF electronic notification system upon filing on this 7th day of July, 2017.

/s/ *Nathaniel R. Carroll*