UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KEILEE FANT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 4:15-CV-00253-AGF |
| | ) | |
| THE CITY OF FERGUSON, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' motion (ECF No. 111) to disqualify defense counsel, Peter J. Dunne, Robert T. Plunkert, Jessica L. Diamond,[1] and their law firm of Pitzer Snodgrass, P.C. (collectively, "the Pitzer firm"), based on a conflict of interest. The motion to disqualify arises from the Pitzer firm's hiring of attorney Ryan McGinty, who previously represented Plaintiffs in municipal matters giving rise to the current litigation.

For the reasons set forth below, the Court agrees that the Pitzer firm has a conflict of interest under the applicable rules of professional conduct, and is accordingly prohibited from representing Defendant, the City of Ferguson (the "City"), in this matter. Therefore, the Court will grant Plaintiffs' motion. Although the City is also represented by other attorneys, from the law firm of Lewis Rice LLC, the Court will stay these proceedings for another 21 days to allow the City time to obtain new counsel if it so desires.

---

[1] Diamond entered her appearance on July 20, 2017, after this motion was fully briefed. But the Court deems Plaintiffs' motion applicable to all attorneys employed by Pitzer Snodgrass, P.C.

## BACKGROUND

The 11 named Plaintiffs in this putative class action assert claims under 42 U.S.C. § 1983, arising out of the City's policies and practices of jailing individuals for failure to pay money owed from traffic and other municipal offenses. Plaintiffs filed suit on February 8, 2015, represented by attorneys from, among other organizations, ArchCity Defenders.

McGinty was employed as an attorney with ArchCity Defenders from approximately March 5, 2012, through January 5, 2017, first as a contract attorney and, beginning in January or February 2015, as a full-time staff attorney. Plaintiffs have presented evidence that McGinty represented at least four of the 11 named Plaintiffs during this time in matters in the City's municipal court, including the particular municipal matters giving rise to Plaintiffs' claims in the instant case.

McGinty has submitted an affidavit attesting that he did "provide some services to individuals who were clients of ArchCity Defenders, Inc. in connection with citations they received from the City of Ferguson," but that "those services did not involve, directly working on the filing or pursuit of [this] class action or any other class actions against the City of Ferguson." ECF No. 128-3. McGinty's affidavit does not name the individuals he represented while employed at ArchCity Defenders or further describe the services he provided.

On March 2, 2015, the Pitzer firm entered its appearance on behalf of the City, and it has represented the City since that time. In November and December of 2016, additional attorneys from Lewis Rice LLC, also entered appearances on behalf of the City.

McGinty was hired by the Pitzer firm on April 6, 2017, and his first day of employment was April 17, 2017. The Pitzer firm has presented evidence that, to date, McGinty has been employed exclusively in the firm's asbestos litigation group, a practice group "totally separate" from the municipal practice group in which Dunne and Plunkert are employed and which has been handling this putative class action.

On April 18, 2017, Plaintiffs learned that the Pitzer firm hired McGinty.[2] The next day, during a deposition of two of the named Plaintiffs, Plaintiffs' counsel asked Plunkert whether McGinty had been hired by the Pitzer firm, and Plunkert confirmed McGinty's hiring. On April 25, 2017, Plaintiffs' counsel emailed Dunne about the potential conflict of interest resulting from McGinty's hiring. According to Plaintiffs' counsel, Dunne did not respond. But Plaintiffs' counsel conferred with Plunkert by telephone on April 25, 2017, and with another representative of the Pitzer firm by email in early May 2017. Plunkert and the other representative informed Plaintiffs' counsel that they did not believe a conflict existed with respect to the hiring of McGinty.

The Pitzer firm has presented evidence that, on April 25, 2017, when Plaintiffs' counsel emailed Dunne about the potential conflict regarding McGinty, the Pitzer firm implemented an "ethical wall" (sometimes called a "Chinese wall") by which McGinty was "totally excluded" from accessing the files related to this case and any other suit filed by ArchCity Defenders against the City. ECF No. 128-2. The ethical wall was not implemented until eight days after McGinty's first day of employment at the Pitzer firm.

---

[2] Plaintiffs' counsel learned of McGinty's hiring through "word of mouth" from individuals who remained in contact with McGinty. ECF No. 111-1.

The Pitzer firm has also presented evidence that its computer records show that McGinty had "not accessed nor attempted to access any of the [City's] files" before or after the ethical wall was implemented. *Id.* And McGinty and Dunne have both attested by affidavit that McGinty has never discussed the instant case with any member of the Pitzer firm and that McGinty has fully maintained the confidentiality of any information learned or obtained by him while working for ArchCity Defenders.

No written consent or waiver has been sought from or provided by Plaintiffs with respect to the Pitzer firm's representation of the City. Plaintiffs filed this motion to disqualify on June 7, 2017. Plaintiffs argue that the Pitzer firm's representation of the City violates the Missouri Supreme Court's Rules of Professional Conduct, adopted by this Court, because McGinty would be prohibited from representing the City, and McGinty's conflict must be imputed to the entire Pitzer firm.

The City responds[3] that the ethical wall the Pitzer firm created eliminates any possibility of a conflict of interest and that Plaintiffs have not met their burden of proof of showing that disqualification is warranted. In reply, Plaintiffs argue that Missouri does not recognize ethical walls as a method of avoiding this type of conflict of interest, and that in any event, the ethical wall here was insufficient to protect Plaintiffs' confidentiality because it was not erected until eight days after McGinty began work at the Pitzer firm.

On June 23, 2017, the Court granted Plaintiffs' motion to stay all proceedings until the Court ruled on this motion to disqualify. ECF No. 129.

---

[3] The City's response was filed by the law firm of Gray, Ritter & Graham, P.C., which has entered an appearance on behalf of the Pitzer firm for the sole purpose of responding to the issues raised in Plaintiffs' motion to disqualify.

# DISCUSSION

"The decision to grant or deny a motion to disqualify an attorney rests in the discretion of the district court." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1154 (8th Cir. 1999) (citation omitted). While district courts are generally "encourage[d] . . . to strictly enforce the [applicable] Code of Professional Responsibility," *Central Milk Producers Co-op. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 993 (8th Cir. 1978), motions to disqualify are "subjected to particular scrutiny" because of the potential for abuse by opposing counsel. *Macheca Transp. Co. v. Philadelphia Indem. Ins. Co.,* 463 F.3d 827, 833 (8th Cir. 2006) (internal quotation marks and citations omitted). The party moving for disqualification bears the burden of showing that continuing representation would be impermissible. *See A.J. by L.B. v. Kierst,* 56 F.3d 849, 859 (8th Cir. 1995). "However, because courts also have the duty to maintain public confidence in the legal profession and to ensure the integrity of judicial proceedings, any legitimate doubts must be resolved in favor of disqualification." *Process Controls Int'l, Inc. v. Emerson Process Mgmt.*, No. 4:10CV645 CDP, 2011 WL 1791714, at *4 (E.D. Mo. May 10, 2011) (citations omitted); *see also Coffelt v. Shell,* 577 F.2d 30, 32 (8th Cir. 1978).

This Court has adopted the Missouri Supreme Court's Rules of Professional Conduct. *See* E.D. Mo. L.R. 12.02. Two rules are relevant here. Rule 4-1.9(a) governs the duties an attorney owes to former clients:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Rule 4-1.10(a) governs the imputation of an attorney's conflict to his law firm:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 4-1.7 or 4-1.9[.][4]

Applying these rules, the Court will consider, first, whether McGinty "would be" prohibited from representing the City in this case, and second, if so, whether McGinty's conflict must be imputed to the Pitzer firm.

**McGinty's Conflict: Rule 4-1.9(a)**

Rule 4-1.9(a) is "prophylactic, aimed at "preventing even the potential that a former client's confidences and secrets may be used against him." *Zerger & Mauer LLP v. City of Greenwood*, 751 F.3d 928, 932 (8th Cir. 2014) (citing *In re Carey*, 89 S.W.3d 477, 493 (Mo. 2002)). The rule "does not require the former client to show that actual confidences were disclosed." *In re Carey*, 89 S.W.3d at 494 (citation omitted). Rather, the "primary concern is the possibility, or appearance of the possibility, that the attorney may have received confidential information during the prior representation." *Zerger & Mauer LLP*, 751 F.3d at 932 (citing *In re Carey*, 89 S.W.3d at 492 n.14).

To establish a conflict of interest under Rule 4-1.9(a), a movant must prove: "(1) the attorney had a former attorney-client relationship with the movant; (2) the interests of the

---

[4] Rule 4-1.10(a) is subject to an exception not applicable here, regarding conflicts based on a "personal interest" of the prohibited lawyer that do not implicate questions of client loyalty or protection of confidential information. Comment [3] to the rule suggests that the exception applies where, for example "one lawyer in a firm could not effectively represent a given client because of strong political beliefs, . . . but that lawyer will do no work on the case and the personal beliefs of the lawyer will not materially limit the representation by others in the firm." Rule 4-1.10 cmt. [3].

attorney's current client are materially adverse to the movant's interests; and (3) the current representation involves the same or a substantially related matter as the attorney's former representation of the movant." *Id.* at 932 (citation omitted).

There is no dispute with respect to the first and second elements. The Court finds, and McGinty has not disputed, that McGinty had an attorney-client relationship with at least four of the named Plaintiffs in the municipal matters giving rise to the Plaintiffs' claims in this case against the City, and the City's interests are materially adverse to Plaintiffs' interests.

Regarding the third element, neither McGinty nor the City has contested that this case and the municipal matters in which McGinty represented Plaintiffs are "substantially related." Given that Plaintiffs' claims in this case arise directly from, and are based on the City's conduct in, the municipal matters, the Court concludes that a substantial relationship exists. *See* Rule 4–1.9 cmt. [3] (noting that "[m]atters are 'substantially related' . . . if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter," and that, for example, "a lawyer who has previously represented a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppose rezoning of the property on the basis of environmental considerations"); *In re Carey*, 89 S.W.3d at 494-95 (listing among non-exclusive factors relevant to determining whether a substantial relationship exists, whether the case "involved the same client and the matters or transactions in question are relatively

7

interconnected," and whether "common subject matter, issues, and causes of action existed"). Therefore, McGinty would be prohibited from representing the City here.

**Imputation of McGinty's Conflict to the Pitzer Firm: Rule 4-1.10(a)**

A literal reading of Rule 4-1.10(a) precludes any of the Pitzer firm's lawyers from representing the City because McGinty alone "would be prohibited from doing so" by Rule 4-1.9(a). *See* Rule 4-1.10(a). The "premise" of Rule 4-1.10(a) is "that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client [and] that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated." Rule 4-1.10 cmt. [2].

Neither the text of the rule nor any comment thereto indicates that an ethical wall or screen would alter the rule's application. Indeed, the only time a wall or screen is mentioned is in Comment [4] to the rule, which states that the rule does not apply "where the person prohibited from involvement in the matter is a nonlawyer, such as a paralegal or legal secretary," but that "*[s]uch persons* . . . ordinarily must be screened from any personal participation in the matter to avoid communication to others in the firm of confidential information that both the nonlawyers and the firm have a legal duty to protect." Rule 4-1.10 cmt. [4] (emphasis added). This comment does not suggest that a wall or screen would limit the imputation of a lawyer's conflict to his firm.

Likewise, although there is not a wealth of caselaw addressing this issue in Missouri or the Eighth Circuit, the caselaw in this district and the informal advisory opinions of the Missouri Bar Association's Legal Ethics Counsel that have addressed the issue have held or stated that an ethical wall does not eliminate the conflict of interest. *See E. Maine*

*Baptist Church v. Regions Bank*, No. 405-CV-962 CAS, 2007 WL 3022220, at *4 (E.D. Mo. Oct. 12, 2007) (relying in part on the Missouri Bar Association's informal advisory ethics opinions and holding that a lawyer's conflict under Rule 4-1.9(a), with respect to his former representation of a group of defendants, prohibited his new law firm from representing the plaintiffs in the same case, notwithstanding that the lawyer was separated by an ethical wall from any involvement in the case at his new firm); *see also* Mo. Informal Advisory Op. Nos. 20060003 ("[S]creening does not avoid the application of Rule 4-1.10, although it sometimes facilitates persuading the former client to waive the conflict"), 20050030 (same), 20030007 (same), *and* 20020006 (same), *available at* http://www.mobar.org/ethics/informalopinions.htm. Although these authorities are not binding, they persuade the Court that the ethical wall erected by the Pitzer firm does not eliminate the firm's imputed conflict of interest.

The cases cited by the City do not persuade the Court to hold otherwise. Indeed, one of the few Eighth Circuit cases cited by the City actually supports Plaintiffs' arguments. In *Central Milk Producers Co-op.*, 573 F.2d at 993, the Eighth Circuit, applying similar, but not identical, disciplinary rules under the American Bar Association's Code of Professional Responsibility, for lawyers moving from public to private employment, held that a district court did not abuse its discretion in denying a motion to disqualify a law firm based on the conflict of interest of one of its attorneys where the attorney had been screened from involvement in the case at issue.

The Eighth Circuit acknowledged that "a literal reading" of the applicable rules prohibited the firm from the representation, but the appellate court relied on certain unique

circumstances in that case to uphold the district court's denial of the motion to disqualify. *Id.* at 992-93. Specifically, the Eighth Circuit noted that the movants "not only waited more than two years after they knew [the conflicted attorney] had been hired to formally raise the issue, but they *specifically approved* the arrangement followed by [the firm] with respect to screening [the conflicted attorney] from the case." *Id.* at 992 (emphasis added). Therefore, the Eighth Circuit affirmed the district court's denial of the motion to disqualify but cautioned as follows:

> Although we have determined that disqualification was not required in this case, our opinion should not be construed as an approval of the practice involved in this case which necessitates a probe of the outer limits of what constitutes permissible professional conduct. If the motion to disqualify had been timely filed when [the conflicted attorney] first joined the [ ] firm, this court may have reached a different result.

*Id.* at 993. Plaintiffs here have neither delayed moving to disqualify nor approved the screening procedures erected by the Pitzer firm, placing this case firmly outside *Central Milk*'s "outer limit" of permissible professional conduct.[5]

The City also argues that a "burden-shifting" framework should apply here, whereby Plaintiffs bear an "initial burden" of raising a presumed conflict by "showing receipt of relevant confidences," and the Pitzer firm has an opportunity to rebut that presumption by contesting the facts relied upon by Plaintiffs or showing that counsel did not in fact share confidential information. ECF No. 128 at 5-6. However, the only case

---

[5] Moreover, as Plaintiffs correctly note, even in jurisdictions in which courts have suggested an ethical wall could be effective, motions to disqualify have been granted when the wall was not in place immediately upon the conflicted attorney's hiring. *See, e.g., Cobb Publ'g, Inc. v. Hearst Corp.*, 907 F. Supp. 1038, 1050 (E.D. Mich. 1995) (granting a motion to disqualify where the screen between a conflicted attorney and his new law firm was not erected until 11 days after the attorney began work at the new firm).

cited by the City in support of such a framework, *Polish Roman Catholic St. Stanislaus Parish v. Hettenbach,* 303 S.W.3d 591 (Mo. Ct. App. 2010), did not address the question of imputation of an attorney's conflict of interest to his law firm under Rule 4-1.10(a). In *Hettenbach*, the Missouri Court of Appeals addressed the question of whether an attorney's conflict of interest should be imputed to a separate firm with which he entered a "co-counsel relationship" by way of a "Joint Litigation Agreement." *Id.* at 599, 604. Unlike Rule 4-1.10(a), the applicable rules of professional conduct did not automatically mandate imputation in such a case. Rather, imputation was only "required when the attorney, through his or her relationship with co-counsel, was in a position to receive relevant confidences regarding the party seeking disqualification," making a rebuttable presumption test appropriate. *Id.* at 604. *Hettenbach* is therefore entirely distinguishable, and from the Court's review, no binding or factually similar persuasive authority has applied such a test to the question of imputation under Rule 4-1.10(a).

**<u>Other Considerations Relevant to Plaintiffs' Motion to Disqualify</u>**

Plaintiffs filed this motion to disqualify shortly after learning of the conflict of interest and after attempting to confer with the Pitzer firm regarding the same, convincing the Court that Plaintiffs are not using disqualification merely as a strategy to deprive the City of its choice of counsel. *See Hettenbach*, 303 S.W.3d at 599 ("[A] motion to disqualify should be made with reasonable promptness after the party becomes aware of the conflict to prevent the party from using disqualification as a strategic tool to deprive his opponent of counsel of his choice after substantial preparation has been completed.") (citation omitted).

11

Moreover, the City is represented by other attorneys from another well-respected firm, and to ease potential prejudice to the City, the Court will stay this matter for another 21 days to allow the City time to obtain new counsel if desired. Finally, although the Court does not lightly enter this decision to partially deprive the City of its choice of counsel, the Court has a duty "to maintain public confidence in the legal profession and to ensure the integrity of judicial proceedings." *Process Controls*, 2011 WL 1791714, at *6. Given the clear conflict of interest under the applicable rules of professional conduct, the Court will grant Plaintiffs' motion to disqualify.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion to disqualify Peter J. Dunne, Robert T. Plunkert, Jessica L. Diamond, and the law firm of Pitzer Snodgrass, P.C., from representing Defendant in this matter is **GRANTED**. ECF No. 111.

**IT IS FURTHER ORDERED** that the stay currently in place shall continue for another **21 days**, to allow Defendant time to obtain new counsel, if it so desires.

**IT IS FURTHER ORDERED** that, within **28 days** from the date of this Memorandum and Order, the parties shall submit a joint proposed scheduling plan for the remainder of this litigation, including an appropriate deadline to complete any outstanding depositions of the named Plaintiffs and any necessary amendment to the briefing schedule for Plaintiffs' motion for class certification and the current Case Management Order.

_____
AUDREY G. FLEISSIG

UNITED STATES DISTRICT JUDGE

Dated this 7th day of August, 2017.