IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KAYLEE FAINT, et al., | ) | |
| | ) | |
| Plaintiffs | ) | Cause No.: :15-CV-00253-AGF |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CITY OF FERGUSON | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT THE CITY OF FERGUSON'S CORRECTED
## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

COMES NOW Defendant the City of Ferguson ("Ferguson"), by and through counsel, and for its memorandum in support of its corrected motion to dismiss Counts I through III and V through VII of Drivers'[1] first amended class action complaint (Doc. 53 at 53-57) pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction states the following:

## I.   Introduction

While Drivers style their complaint as being against Ferguson, the real party in interest is the municipal division of the Missouri state circuit court, an arm of the state entitled to sovereign immunity under the Eleventh Amendment. This is because all of Drivers' allegations in Counts I through III and V through VII originate with that entity.

---

[1] Because all plaintiffs allege violations arising out of traffic tickets, Ferguson refers to them collectively as "Drivers" throughout this memorandum.

EXHIBIT B

Furthermore, Drivers' complaint fails to plead any facts demonstrating an unlawful policy or custom on the part of Ferguson that defeats its entitlement to sovereign immunity. All of the allegations involve the judicial acts of the municipal division judge, those exercising the judge's authority, or acts of the municipal prosecutor intimately connected with the judicial process. Such acts, of their very nature, cannot form the basis of a municipal policy or custom.  At no time do Drivers plead any facts demonstrating that the acts originated with the municipal council, the mayor, the city manager, or any other official outside of the municipal division of the circuit court.

## II.   Standard of Review

### A.    Facial attack versus factual attack

A movant's assertion of sovereign immunity "presents a jurisdictional question that may be raised at any time…." *Lors v. Dean*, 746 F.3d 857, 861 (8th Cir. 2014). "[B]ecause jurisdiction is a threshold question, judicial economy demands that the issue be decided at the outset rather than deferring it until trial, as would occur with [for example] denial of a summary judgment motion." *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990).

There are two different ways for a movant to attack a district court's subject matter jurisdiction: a facial attack and a factual attack.  *Osborn*, 918 F.2d at 730 n. 6. Under a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6) [seeking dismissal for failure to state a claim]."

*Osborn*, 918 F.2d at 730 n. 6. (internal citations omitted). "Specifically, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *McDanel v. BNSF Railway*, 2014 WL 3579570 at *1 (E.D. Mo. July 21, 2014).

Under a factual attack, by contrast, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6)." *Osborn,* . "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Osborn*, 918 F.2d at 730. Furthermore, "the plaintiff will have the burden of proof [under such an attack] that jurisdiction does in fact exist." *Id.*

In challenging this Court's subject matter jurisdiction, Ferguson is mounting a facial attack, considering only the allegations pled in Drivers' first amended complaint. *See McDanel*, 2014 WL 3579570 at * 1. As a facial attack is subject to the same standard of review as a motion to dismiss for failure to state a claim, the court "accept[s] as true all factual allegations in the complaint, giving no effect to conclusory allegations of law." *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). To survive the attack, the complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A claim is facially plausible if the plaintiff pleads factual content that enables the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Nor should the court accept as true legal conclusions contained in the complaint in the absence of anything further. *Id.*  "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations."  *Id.* at 679.

While a plaintiff does not need to plead specific facts in support of its allegations, *In re Pre-Filled Propane Tank Antitrust Litigation*, 860 F.3d 1059, 1070 (8th Cir. 2017) (en banc), it must provide more than "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. Most importantly, "[w]here [the court] can infer from those factual allegations no more than a 'mere possibility of misconduct,' the complaint must be dismissed." *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

B.     *The district court must look beyond the named defendant to determine the real party in interest.*

In analyzing a claim of sovereign immunity, furthermore, "courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy is truly sought against the sovereign." *Lewis v. Clarke*, 137 S.Ct. 1285, 1290 (2017). "If, for an example, an action is in essence against a State even if the State is not a named party, then the State is the real party in interest and is entitled to invoke the Eleventh Amendment's protection." *Id.* As a result, "an arm or instrumentality of the State

generally enjoys the same immunity as the sovereign itself." *Id.* As the Eighth Circuit held 67 years ago, "whether a suit is one against a state is to be determined, not by the fact of the party named as defendant on the record, but by the result of the judgment or decree which may be entered." *Chicago, R.I. & P.R. Co. v. Long*, 181 F.2d 295, 298 (8th Cir. 1950) (internal quotation marks omitted).

## IV.   Drivers' allegations and background on Missouri's unified court system.

Bearing in mind the Supreme Court's admonishment that court must identify the real party in interest in reviewing a claim of sovereign immunity, and not simply rely on the party formally named in the complaint, *Lewis*, 137 S.Ct. at 1290, this section is divided into three parts: (A) a summary of Counts I through III and V through VII; (B) an overview of how municipal court divisions are part of Missouri's unified court system; and (C) a summary of Drivers' individual allegations, showing that all of the alleged wrongs against them relate back, not to Ferguson, but to the municipal court division in Ferguson, an arm-of-the-state and the real party in interest in this matter.

### A.   *Counts I through III and V through VII*

Drivers have brought seven counts against Ferguson under § 1983, six of which (Counts I through III and V through VII) are the subject of Ferguson's facial attack on the court's subject matter jurisdiction. Count I alleges that the municipal division of the Missouri state court in Ferguson, and those acting under its authority, violated Drivers' Fourteenth Amendment rights by imprisoning them for failing to pay fines or post bonds associated with convictions on traffic offenses.

(Doc. 53 at ¶¶ 234-235). Count II alleges that the municipal division failed to provide Drivers with adequate counsel in connection with court proceedings on ordinance violations, in violation of their rights under the Sixth Amendment. (Doc. 53 at ¶¶ 236-237).

Count III alleges that the municipal division ordered the indefinite and arbitrary imprisonment of Drivers for failure to pay fines or bonds, in violation of their rights under the fourteenth Amendment. (Doc. 53 at ¶¶ 238-239). In Count V, Drivers allege the municipal division threatened them with incarceration to collect a debt, in violation of their Fourteenth Amendment rights.  (Doc. 53 at ¶¶ 242-243). In Count VI, Drivers allege the municipal division issued invalid warrants for failure to pay fines without inquiring into their ability to pay such fines, in violation of the Fourth and Fourteenth Amendments. (Doc. 53 at ¶¶ 244-245). Finally, in Count VII alleges that Ferguson conducted warrantless arrests and detained such arrestees without a neutral judicial finding of probable cause. (Doc. 53 at ¶¶ 246-247).

> B.   *The structure and authority of Missouri's unified state court system, particularly its municipal court divisions.*

> 1.   **All municipal courts in the State of Missouri are divisions of the Missouri state circuit court.**

The State of Missouri's judicial power is "vested in a supreme court, a court of appeals…and circuit courts." Mo. Const. Art. V, § 1. The circuit courts have "original jurisdiction over all cases and matters, civil and criminal." Mo. Const. Art. V, § 14.

Until approximately four decades ago, municipal courts within Missouri existed as entities separate and distinct from the Missouri state courts. *Gregory v. Corrigan*, 685 S.W.2d 840, 843 (Mo. 1985); Mo. Const. Art. V, § 27. But in 1976, Missouri voters approved amendments to the Missouri Constitution that revamped the state's court system. *Gregory*, 685 S.W.2d at 843. Under these amendments, which went into effect on January 2, 1979, "[p]robate, magistrate, and municipal courts [were] abolished as separate entities and incorporated into the circuit system as divisions of the circuit courts." *Id.*

The amendments transferred the municipal courts' jurisdiction to the particular circuit court in which the relevant municipality was located. Mo. Const. Art. V, § 27.2(d). Additionally, after the municipal courts "ceas[ed] to exist, all [of the defunct courts'] records, papers and files [were] transferred to the circuit court…." *Id.*

Now that the municipal courts have been abolished, "[v]iolations of municipal ordinances *shall* be heard and determined *only* before divisions of the circuit court…." Mo. Rev. Stat. § 479.010 (emphasis added). The presiding judge of the circuit court, furthermore, has "general administrative authority over the judges and court personnel of all divisions of the circuit hearing and determining ordinance violations within [that particular] circuit." Mo. S. Ct. R. 37.04.

### 2.     The judges and clerks of the municipal division of the Missouri state circuit courts.

The 1976 amendments provide that "[e]ach circuit may have such municipal judges as provided by law…." Mo. Const. Art. V, § 23. Municipalities may

determine, via ordinance, how to select such judges and their clerks. Mo. Rev. Stat. §§ 479.020.1, 479.060.1. The municipal clerks, furthermore, "constitute the clerical staff of the circuit court to perform the recordkeeping functions in the municipal divisions." Mo. Rev. Stat. § 483.241.3. Like the municipal judges, such municipal clerks are subject to the administrative authority of the presiding judge of the circuit court. Mo. S. Ct. R. 37.04. Municipalities pay the salaries of both the municipal judges and municipal clerks, and also cover "other expenses incidental to the operation of the municipal divisions…." Mo. Rev. Stat. § 479.060.1. Either the municipal division judge or the municipal division clerk may sign an arrest warrant. Mo. S. Ct. R. 37.45.

Judges selected pursuant to a municipal ordinance are "municipal judges of the circuit court and [are] divisions of the circuit court of the circuit in which the municipality…is located." Mo. Rev. Stat. § 479.020.5. These judges, furthermore, are subject to the rules of the Missouri Supreme Court and the circuit court's local rules. They are "conservator[s] of the peace," Mo. Rev. Stat. § 479.070, and must maintain a written docket of each of their cases, which becomes a record of the circuit court. *Id.* Finally, municipal division judges "have the power to administer oaths and enforce due obedience to all orders, rules, and judgments made by [them], and may fine or imprison for contempt committed before [them] while holding court, in the same manner and to the same extent as a circuit judge." *Id.*

### 3. Procedure in the municipal division of the Missouri state circuit courts.

The Missouri Supreme Court Rules govern the procedure for prosecuting, trying, and executing judgment on ordinance violations. Mo. S. Ct. R. 37.01. Ordinance violations are charged via information. Mo. S. Ct. R. 37.34. The municipal division then issues a summons for the defendant to appear at a court date. Mo. S. Ct. R. 37.43. If a defendant fails to appear in response to a summons, and the municipal division finds probable cause to believe an ordinance violation has been committed, the municipal division may issue an arrest warrant for the defendant. Mo. S. Ct. R. 37.44.  Alternatively, the municipal division judge may, in lieu of issuing a summons, issue a warrant for the defendant's arrest if there exists reasonable grounds for the court to believe that the defendant will not appear upon such a summons. Mo. S. Ct. R. 37.43. In either case, the arrest warrant must contain, among other things, the defendant's name, the charged ordinance violation, the date the warrant was issued and the issuing jurisdiction, the conditions of release, and the signature of either the judge or clerk of the municipal division. Mo. S. Ct. R. 37.45.

Any defendant arrested for an ordinance violation has a right to be released from custody pending trial. Mo. S. Ct. R. 37.15(a). The municipal division judge, furthermore, may require the execution of a bond as a condition of the defendant's release to ensure that the defendant is reasonably likely to appear at the court hearing on the ordinance violation. Mo. S. Ct. R. 37.15(c)(3). The judge may modify the bond amount upon a finding that the bond is excessive. Mo. S. Ct. R. 37.19(a)(2).

Should the municipal division judge "fail to set conditions for release," or if the judge "set[s] inadequate or excessive conditions" for release, the defendant may file an application for relief "in a higher court…." Mo. S. Ct. R. 37.22(a). "If the higher court finds that the accused is entitled to be released and no conditions therefor have been set or that the conditions are excessive or inadequate, the court shall make an order setting or modifying conditions for the release of the [defendant]." Mo. S. Ct. R. 37.22(b). In addition, Missouri courts, like the federal courts, provide that an individual who has exhausted his or her ordinary legal remedies for seeking release from custody may petition for a writ of habeas corpus on the ground that he or she "is restrained of his or her liberty in violation of the constitution or laws of the state or federal government." *State ex rel. Amrine v. Roper*, 102 S.W.3d 541, 545 (Mo. 2003).

Defendants charged with municipal violations have a right to counsel if a conviction would possibly result in confinement. Mo. S. Ct. R. 37.50. "If any person charged with an ordinance violation…shall be without counsel upon a first appearance before a judge, it shall be the duty of the judge to advise the defendant of the right to counsel," *id.*, and that the judge is willing to appoint counsel. *Id.*. "Upon a showing of indigency," furthermore, "it shall be the duty of the judge to appoint counsel to represent the defendant." *Id.*

All defendants tried before a municipal division state judge in Missouri have a right to a trial de novo before a circuit judge or associate circuit judge of the State of Missouri. Mo. Rev. Stat. § 479.200. The defendant may then appeal the judgment

of this second trial to the Missouri Court of Appeals. *See, e.g., City of Slater v. Burks*, 714 S.W.2d 534 (Mo. App. W.D. 1986).

If a defendant is found guilty of an ordinance violation and assessed a fine, the municipal division judge "shall order a stay of execution on the payment of the fine" if it "appears to the judge that the defendant does not have at that time the present means to pay the fine…." Mo. S. Ct. R. 37.65(a). The judge shall, in such a case, either "(1) [g]rant the defendant a specified period of time in within which to pay the fine in full, or (2) [p]rovide for the payment of the fine on an installment basis under such terms and conditions as the judge may deem appropriate." *Id.*

Should the defendant not pay the fine under the judge's conditions, the judge may issue an order for the defendant to appear in court at a future date to show cause. Mo. S. Ct. R. 37.65(c). If the defendant fails to appear at this subsequent hearing, "the court may issue a warrant to secure the defendant's appearance for a hearing on the order to show cause." *Id.* Furthermore, if the defendant defaults in paying the fine or any of its installations, "the judge may issue an order to show cause why the defendant should not be held in contempt of court." Mo. S. Ct. R. 37.65(c).

If the defendant has already failed to appear at a previously scheduled hearing on an order to show cause, the municipal division judge may, without a summons, "issue a warrant to secure the defendant's appearance for a hearing on the order to show cause." *Id.* "If following the show cause hearing the judge finds the defendant intentionally refused to obey the sentence of the court or to have

made a good faith effort to obtain the necessary funds for payment, the judge may
confine the defendant for a term not to exceed thirty days for contempt of court." *Id.*

     C.    *Drivers' allegations*

    Drivers allege that individuals are stopped in Ferguson by police while
driving and issued traffic/ordinance violations. (Doc. 53 at ¶ 1). If they fail to appear
in the municipal division on a subsequent court date for the violations, the
municipal division issues a warrant for their arrest. (Doc. 53 at ¶¶ 166, 203(f)).
According to Drivers, the municipal division detains them in jail until they either
post bond on their arrest warrant or pay the fines on the ordinances with which
they have been charged. (Doc. 53 at ¶ 186-187). Drivers maintain the court makes
no inquiry into whether they can pay these fines. (Doc. 53 at ¶190-191). They
further maintain the court never advises them of their right to counsel, nor does it
appoint them counsel. (Doc. 53 at ¶¶ 10, 191). Drivers further allege, without any
elaboration, that Ferguson sometimes makes "warrantless arrest[s]," without "a
neutral finding of probable cause…." (Doc. 53 at ¶ 204(h)).

    There are 11 named Plaintiffs in this case. (Doc. 53 at ¶18). Each of them
make allegations paralleling the generalized allegations described above. (Doc. 53 at
¶¶ 20-163).

## V.    The municipal divisions of the Missouri state courts are arms-of-the-state entitled to sovereign immunity under the Eleventh Amendment.

    Whether the entity in question is an arm-of-the-state requires "a detailed
analysis of state law," *Public School Ret. Sys. of Mo. v. State St. Bnk. & Trust Co.*,
640 F.3d 821, 827 (8th Cir. 2011). But the issue is ultimately a question of federal

law. *Id.* A court must examine, in the context of the function in question, (1) the entity's degree of independence from the state, and (2) how a judgment for monetary damages against the entity could affect the state's treasury. *Public School Ret. Sys. of Mo. v. State St. Bnk. & Trust Co.*, 640 F.3d 821, 827 (8th Cir. 2011). While the Eighth Circuit has held that held that the potential exposure of the state treasury to monetary damages outweighs any other factor in an arm-of-the-state analysis, *e.g., Thomas v. St. Louis Bd. of Police Comm.*, 447 F.3d 1082, 1085 (8th Cir. 2006), the Supreme Court has rejected the notion that state funding outweighs any other factor, holding that such an idea "reflects a fundamental misunderstanding of the purposes of sovereign immunity. While state sovereign immunity serves the important function of shielding state treasuries…the doctrine's central purpose is to accord the States the respect owed them as joint sovereigns."

Applying the above test to Drivers' claims, the functions at issue in this case are (a) the municipal division's issuance – through its judge and clerk – and execution – through the police department – of arrest warrants  on defendants who either fail to appear for court on their ordinance violations or who fail to pay fines imposed upon them; (b) the municipal division court's setting of bail conditions on such warrants through its judge; and (c) the municipal division judge's decisions on whether or not to appoint counsel for defendants.

There can be no serious dispute that the municipal divisions of the circuit courts are state entities under Missouri law. The 1976 amendments to the Missouri constitution abolished municipal courts as freestanding entities, merging them with

the circuit courts. *Gregory*, 685 S.W.2d at 843. This Court has already held, as a matter of law, that "[t]he Missouri state courts…must be deemed a part of the State of Missouri, and its adjudicative voice." *Harris v. Missouri Court of Appeals, West. Dist.*, 787 F.2d 427, 429 (8th Cir. 1986). It has also recognized that its municipal divisions are subsets of the circuit courts. *Granda v. City of St. Louis*, 472 F.3d 565, 569 (8th Cir. 2007) ("The municipal court is a division of the state circuit court, and review of a judge's decisions is to be sought in that court."). Since the municipal divisions are a mere subset of the circuit courts, their status as state entities under Missouri law is not an open question. This includes the division judge and the division clerk. Mo. Const. Art. V, § 23; Mo. Rev. Stat. § 483.241.3.

As for the degree of independence from the state, there is no such independence. The issuance of warrants is within the exclusive authority of the division judge and the division clerk, Mo. S. Ct. R. 37.04, both of whom are subject to the administrative authority of the circuit court's presiding judge, Mo. S. Ct. R. 37.04. *See Williams v. Leslie*, 28 Fed.Appx. 387, 389 (6th Cir. 2002) (unpublished) (ruling that "[i]t logically follows that the clerks of court, who operate under the authority of the [state] courts, are likewise arms-of-the-state of Ohio for purposes of § 1983 liability, at least when they conduct the business of the court or other duties mandated by state law.").

Similarly, the setting of bond conditions is within the exclusive authority of the municipal division judge, Mo. S. Ct. R. 37.15(c)(3), and is subject to the review of a higher court, Mo. S. Ct. R. 37.22(a), not to the review of the city council. The same

goes for the appointment of counsel to indigent defendants – Mo. S. Ct. R. 37.50 vests this authority with the municipal division judge, and does not subject it to the city council's supervision. Drivers' class action complaint contains no allegations demonstrating, in a non-conclusory manner, that the setting of bond conditions belonged to anybody other than the municipal division judge.

In addition, when police officers execute arrest warrants, they are subject only to the supervision of the court, in whose name they act at the time of execution. *Cf. Roland v. Phillips*, 19 F.3d 552, 555 (8th Cir. 1994) (ruling that nonjudicial officers share a judge's immunity "when their official duties have an integral relationship with the judicial process.") (internal quotation marks omitted). A police officer "does not serve the [municipality] alone. He also follows orders from state courts. When he does so…he acts as a state officer, and a suit protesting his activities is a suit against the state." *Ruehman v. Sheahan*, 34 F.3d 525, 529 (7th Cir. 1994). Indeed, not only is an officer executing municipal division arrest warrant not subject to control by any non-state officials, but the failure of such an officer to execute the warrant is a crime in the State of Missouri. Mo. Rev. Stat. § 575.180; *State v. Young*, 42 S.W.3d 729 (Mo. App. W.D. 2001).

Nor does the fact that municipalities themselves select municipal division judges, pay their salaries, and fund their court divisions subject the municipal divisions to any control by the city officials. As this Court well knows, federal judges are appointed by the President with the advice and consent of the Senate. U.S. Const. Art. III, § 2 cl. 1. Congress also determines the salaries of federal judges. 28

U.S.C. § 461. *Fed. Maritime Comn. v. South Carolina State Ports Authority*, 535 U.S. 743, 765 (2002). Despite this, there has never been any question of either the President or members of Congress being able to supervise or control the federal judiciary's judicial acts and decisions. Likewise, the ability of municipalities to appoint judges to municipal divisions and pay their salaries does not render such divisions or judges subject to the municipality's control.

Turning to the source of revenue, it is true that the municipal divisions of the state circuit court, including the one in Ferguson, are funded by the municipality they serve, and not by the State of Missouri. Mo. Rev. Stat. § 479.060.1. But in light of the fact that Missouri law considers the divisions to be state entities, and given the fact that the State of Missouri has exclusive control over all of the divisions' functions, this lack of state funding cannot, under the totality of the circumstances, sever them as arms from the state body. The Sixth Circuit rejected such a possibility of severance in *Pucci v. Nineteenth District Court*, 628 F.3d 752 (6th Cir. 2010), when it was called upon to determine whether the Michigan trial courts were arms-of-the-state, despite the fact that they were funded by the county. *Id.* at 760. The court concluded that "the importance of local funding…[was] outweighed by the integrated role of Michigan's [trial] courts within the state judiciary…, the degree of supervision and control that the Michigan Supreme Court and legislature exercise over those courts," and several other factors. *Id.* at 764. *Accord Benn v. First Judicial District of Philadelphia*, 426 F.3d 233, 240 (3rd Cir. 2005) ("That [the state trial courts] are locally funded…does not transform them into local entities for

Eleventh Amendment purposes."). Similarly, the municipal division being a part of Missouri's unified court system, along with the state holding ultimate supervisory authority over it, strongly outweighs the fact that it receives local funding.

Given the totality of the circumstances, the municipal divisions of the Missouri state circuit courts are arms-of-the-state, and thus entitled to sovereign immunity under the Eleventh Amendment from Drivers' claims, both for monetary damages and declaratory relief. This Court should accordingly dismiss Counts I through III and V through VII of the first amended class action complaint. In doing so, this Court would join at least four circuit courts that have already held the municipal courts in Pennsylvania, Ohio, Indiana, and California to be arms-of-the-state, and thus entitled to sovereign immunity under the Eleventh Amendment. *Benn*, 426 F.3d at 235 n. 1, 240-241; *Ward v. City of Norwalk*, 640 Fed.Appx. 462, 464-465 (6th Cir. 2016); *Kelly v. Mun. Courts of Marion County, Indiana*, 97 F.3d 902, 907-908 (7th Cir. 1996); *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1994). Indeed, the Sixth Circuit in *Ward* confronted allegations practically identical to those that Drivers raise here – the claim that Ohio municipalities were unconstitutionally imposing fines upon indigent defendants and imprisoning them for failing to pay those fines. *Ward*, 640 Fed.Appx. at 464. It concluded that the district court properly dismissed the claims, since the municipal court was an arm-of-the-state and not amenable to suit. *Id.* at 464-465.

**VI.    Drivers fail to allege any non-conclusory facts demonstrating an unlawful custom or policy on the part of Ferguson such as would defeat its claim of sovereign immunity.**

*A.    Elements required to establish municipal liability under § 1983.*

A municipality may not be held liable under § 1983 on the grounds of *respondeat superior* – that is, it "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dept. of Soc. Serv. of the City of New York*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the [municipality] as an entity is responsible under § 1983." *Id.* In this Circuit, furthermore, individual liability on an underlying substantive claim is a condition precedent to finding the existence of a policy or custom that would render a municipality liable. *Veneklase v. City of Fargo*, 248 F.3d 738, 748-749 (8th Cir. 2001) (en banc).

Official policy on the part of a municipality "involves a deliberate choice to follow a course of action…made from among various alternatives by an official who has the final authority to establish governmental policy." *Doe v. Special School District of St. Louis*, 901 F.2d 642, 645 (8th Cir. 1990) (internal quotation marks omitted). Whether an official is a policymaker, furthermore, is a matter of state law. *Id.* A custom, on the other hand, "is a practice of municipal officials that is not authorized by written law, but which is so permanent and well-settled…as to [have] the force of law." *Russell v. Hennepin County*, 420 F.3d 841, 849 (8th Cir. 2005)

(alteration in original) (internal quotation marks omitted). A plaintiff alleging an unlawful municipal custom must demonstrate "that his alleged injury was caused by municipal employees engaging in a widespread and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized." *Id.* (internal quotation marks omitted).

While a plaintiff does not need to plead the specific existence of an unlawful policy or custom to survive a motion to dismiss, *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004), factual allegations from which the court can infer nothing more than the mere possibility of an unlawful municipal policy or custom do not, under *Iqbal*, state a viable § 1983 claim. *See Cole*, 599 F.3d at 861; *Iqbal*, 556 U.S. at 679. Merely pleading that a municipal official was aware of alleged misconduct, furthermore, does not state an unlawful policy or custom on the part of a municipality. *Granda v. City of St. Louis*, 2006 WL 1026978 at *8 (E.D. Mo. April 13, 2006), *citing Russell*, 420 F.3d at 849.

Furthermore, "in order for municipal liability to attach, individual liability must be found on an underlying substantive claim." *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005); *Russell*, 420 F.3d at 846; *Veneklase*, 248 F.3d at 748-749. "Under this standard, there must be an unconstitutional act by the municipal employee before the municipality is liable." *Avalos v. City of Glenwood*, 382 F.3d 792, 802 (8th Cir. 2004). As a result, while a municipality may not claim individual, official immunities such as judicial immunity, quasi-judicial immunity, and prosecutorial immunity, no municipal liability can attach if the underlying

actions themselves are covered by such immunities. *E.g., Patterson v. Von Riesen*, 999 F.2d 1235, 1238 (8th Cir. 1993) (ruling that "[b]ecause [the plaintiff] may not hold the prosecutors liable [due to them having prosecutorial immunity], he may not hold the county liable.").

      C.    *Absolute immunity covers the actions of all the individuals who performed the actions Drivers allege constitute Ferguson's unlawful custom or policy, precluding any liability against Ferguson.*

Drivers allege that the municipal division judge, the municipal division clerk, the municipal prosecutor, and municipal police officers all took actions that, according to them, form an unlawful policy or custom on the part of Ferguson. But as explained below, each of the alleged actions is covered by judicial, quasi-judicial, or prosecutorial immunity. Accordingly, they cannot form the basis for finding Ferguson liable. This is not because Ferguson itself is entitled to these immunities, but rather because they preclude the finding of individual liability, a condition precedent to finding municipal liability. *McCoy*, 411 F.3d at 922.

      D.    *Judicial immunity covers all of the actions alleged against the municipal division judge.*

"[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Mireles v. Waco*, 502 U.S. 9, 10 (1991) (internal quotation marks omitted). As a result, judges are immune from suit arising from their judicial actions. *Id*. This immunity is absolute to the extent the suit is seeking damages, *id*. at 9, and also applies to claims seeking injunctive relief "unless a declaratory decree

was violated or declaratory relief was unavailable." § 1983. It "applies even when the judge is accused of acting maliciously and corruptly…." *Pierson v. Ray*, 386 U.S. 547, 545 (1967). Such immunity exists "not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Id.* (internal quotation marks omitted). *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007). It also applies to municipal judges. *See Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462-463 (8th Cir. 1994).

Judicial immunity covers all "judicial acts," except those acts "taken in complete absence of all jurisdiction." *Granda*, 2006 WL 1026978 at *5. It even applies to judicial acts performed in excess, as opposed to absence, of jurisdiction. *Duty*, 42 F.3d at 462. A judge "acts in excess of jurisdiction if the act complained of is within his general power of jurisdiction, but is not authorized because of certain circumstances." *Id.* (internal quotation marks omitted). By contrast, jurisdiction is absent only "when a court of limited jurisdiction attempts to adjudicate a case outside of its jurisdiction…." *Id.* (internal quotation marks omitted). A judge "does not act outside her jurisdiction simply because she makes an unconstitutional or unlawful decision." *Patterson*, 999 F.2d at 1239.

"Judicial acts," in turn, are those acts "normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982). Judicial acts include holding contempt proceedings, finding a party in contempt, issuing an arrest warrant, setting bond for

an arrest warrant, and the appointment of counsel. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012) (contempt); *Boyer v. County of Washington*, 971 F.2d 100, 102 (8th Cir. 1992) (arrest warrant); *Ireland v. Tunis*, 113 F.3d 1435, 1441 (6th Cir. 1997) (setting of bond on an arrest warrant); *Birch*, 678 F.2d at 756 (appointment of counsel). Furthermore, while a party may obtain injunctive relief against judicial acts otherwise protected by judicial immunity, the terms of § 1983 limit such injunctive relief only to where either the judge violated a declaratory decree or if declaratory relief was unavailable.

As Ferguson extensively catalogued above, the municipal division judges have jurisdiction to perform all of the above acts, each of which forms the basis for Plaintiffs' claims under § 1983. Nothing in the class action complaint suggests that the municipal division judge has violated a declaratory decree. Furthermore, jailed individuals may petition for a writ of habeas corpus, meaning declaratory relief is available to them. Accordingly, judicial immunity covers all of the municipal division judge's actions alleged in the class action complaint, and as a result cannot form the basis of an unlawful policy or custom by Ferguson.

   E.   *Judicial immunity covers all of the actions alleged against the municipal division clerk.*

"[T]he clerk of [the] court is entitled to judicial immunity…as to claims related to the issuance and signing of warrants." *Smith v. Slay*, 2015 WL 1955018 at *2 (E.D. Mo. April 29, 2015). This immunity applies even if the clerk issues warrants in the absence of a judge authorizing or signing such warrants. *Boyer*, 971 F.2d at 102. Accordingly, judicial immunity covers all of the municipal division

clerk's actions alleged in the class action complaint, and as a result cannot form the basis of an unlawful policy or custom by Ferguson.

F.      *Absolute quasi-judicial immunity covers the Ferguson police officers' execution of the municipal division's arrest warrants.*

"Absolute quasi-judicial immunity derives from absolute judicial immunity." *Martin v. Hendren*, 127 F.3d 720, 721 (8th Cir. 1997) (internal quotation marks omitted). Public officials are entitled to such immunity for "acts they are specifically required to do under court order or at a judge's discretion." *Robertson v. Freeze*, 15 F.3d 107, 109 (8th Cir. 1994). This Court has held that a police officer who carries out a municipal judge's orders to handcuff a plaintiff and remove him from the court during a traffic proceeding is entitled to absolute quasi-judicial immunity because the officer was implementing a judge's orders. *Martin*, 127 F.3d at 721-722. The same rationale applies to Ferguson officers executing the municipal division's orders. Accordingly, absolute quasi-judicial immunity covers all of the police officers' actions alleged in the class action complaint that form the basis for Drivers' claims, and as a result cannot form the basis of an unlawful policy or custom by Ferguson.

G.      *Prosecutorial immunity covers the municipal attorney's charging of ordinance violations, advocating for the issuing of an arrest warrant, and advocating of particular bail conditions.*

"Prosecutors enjoy absolute immunity in their review of and decisions to charge a violation of the law." *Sample*, 836 F.3d at 916. "Similarly, threatening criminal prosecution is within the scope of absolute immunity." *Myers v. Morris*, 810 F.2d 1437, 1446 (8th Cir. 1987), *abrogated on other grounds by Burns v. Reed*, 500 U.S. 478 (2003). Like judicial immunity, "allegations of improper motive in the

performance of prosecutorial functions will not defeat its protection." *Myers*, 810 F.2d at 1446. This immunity not only shields from suit a prosecutor's decision on whether or not to charge a violation of the law, but also shields from suit any "conduct that is intimately associated with the judicial process." *Anderson v. Larson*, 327 F.3d 762, 768 (8th Cir. 2003). Accordingly, prosecutorial immunity extends to a prosecutor's motion for the issuance of an arrest warrant. *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997). It also encompasses a prosecutor's advocating for a particular bail or bond amount. *Myers*, 810 F.2d at 1446; *Warren v. Ellis*, 2011 WL 398198 at *1 (E.D. Ark. Feb. 1, 2011).

Drivers do not allege any facts against the municipal prosecutor sufficient to demonstrate that he had any involvement in the issuance of the arrest warrants or the setting of bail conditions. Nor do Drivers appear to be alleging that the actual charging of ordinance violations forms a basis for their § 1983 claims. But even if Drivers were making such allegations, prosecutorial immunity covers such actions of the municipal prosecutor, and as a result cannot form the basis for an unlawful policy or custom on the part of Ferguson.

> H.   *Of their very nature, judicial acts cannot form the basis for a municipality's policy or procedure, regardless of whether immunity applies.*

Immunity aside, judicial acts of their very nature cannot form the basis of a municipality's policy or procedure. This Court recognized as much in *Granda*, where the plaintiff brought suit against both a municipal division judge and the City of St. Louis. *Granda*, 472 F.3d at 569. The municipal division judge ordered the plaintiff

arrested and jailed after the plaintiff failed to appear for a hearing. *Id.* at 566. The plaintiff alleged that her jailing constituted an unlawful policy or custom on the part of the City of St. Louis. *Id.* at 566. This Court rejected her argument, noting that the municipal division judge's order of incarceration "was a judicial decision in a case that came before her on a court docket….[The plaintiff] fail[ed] to cite a single case where a municipality has been held liable for such a decision." *Id.* at 569. It concluded "that the judicial order incarcerating [the plaintiff] was not a final policy decision of a type creating municipal liability under § 1983." *Id.*

The Eighth Circuit's Judge Lay, while sitting by designation on the Ninth Circuit, carried the inability of a judge to be a municipal policymaker or enabler of municipal custom to its logical conclusion in *Eggar*. Because the municipal judge in that case "was functioning as a state judicial officer, his acts and omissions were not part of a city policy or custom." *Eggar*, 40 F.3d at 316. "A municipality," he continued, "cannot be liable for judicial conduct it lacks the power to require, control, or remedy, even if that conduct parallels or appears entangled with the desires of the municipality." *Id.* Every other circuit to examine this issue has come to the same conclusion. *E.g.*, *Butler v. Pechkurow*, 669 Fed.Appx. 627, 628 (3rd Cir. 2016); *Bliven v. Hunt*, 579 F.3d 204, 214 (2d Cir. 2009); *Ledbetter v. City of Topeka, Kansas*, 318 F.3d 1183, 1190 (10th Cir. 2003); *Johnson v. Turner*, 125 F.3d 324, 335-336 (6th Cir. 1997); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Woods v. City of Michigan City, Indiana*, 940 F.2d 275, 279 (7th Cir. 1991).

Judge Lay in *Eggar* was confronted with allegations similar to Drivers – the plaintiffs alleged that the municipality had a policy of imprisoning indigent defendants without offering them appointed counsel. *Eggar*, 40 F.3d at 313. He nevertheless concluded that because the allegations all stemmed from the judicial decisions of the municipal division judge, such decisions could not constitute an unlawful municipal policy or procedure. This Court should follow his lead – as well as the lead of the other circuit courts – and conclude likewise here.

I.      *Drivers' complaint alleges no actions taken by any officials or entities outside of the municipal division of the Missouri circuit courts.*

Drivers' complaint proffers nothing – other than conclusory statements, naked assertions devoid of further factual enhancement, and legal conclusions, all condemned by *Iqbal*, 556 U.S. at 678 – demonstrating that somebody other than the municipal district judge and his clerk in Ferguson were the ultimate source for the issuance and execution of the arrest warrants, the setting of bail conditions, and the assigning or denial of counsel to indigent defendants. Indeed, Drivers never even mention Ferguson's mayor, city manager, or city council anywhere in their complaint. All of their allegations lead back to the municipal judge.

In previously denying Ferguson's Eleventh Amendment arguments, this Court ruled that "[p]laintiffs do not seek to hold the City liable for judicial decisions made by a municipal court judge in particular cases." (Doc. 79 at 13). "Instead," this Court continued, "Plaintiff's complaint is replete with allegations that each of the injuries alleged was caused by the City's own unconstitutional policies and by continuing and pervasive practices of a wide range of City employees." (Doc. 79 at

13). This conclusion ignores the fact that a court must look beyond the named defendant and determine who the real party in interest is in the context of the Eleventh Amendment. While Plaintiffs formally name Ferguson as the defendant, their complaint plainly shows that the municipal court division is the ultimate source of all of their alleged wrongdoings. Other than pleading boilerplate conclusions about "policy and practice" – something impermissible under *Iqbal* – the complaint contains no allegations showing that any officials outside of the municipal division were involved in any of the alleged wrongdoing.

That the plaintiffs do not seek to hold the judge liable for particular actions in particular cases, furthermore, is immaterial for purposes of a sovereign immunity analysis. As Judge Lay noted, a "municipality cannot be liable for judicial conduct it lacks the power to require, control, or remedy, even if that conduct parallels or appears entangled with the desires of the municipality." *Eggar*, 40 F.3d at 316. This Court cannot assume "that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988).

At least two district courts have recently dismissed claims similar to Drivers' on these grounds. In *Harris v. City of Austin*, 2016 WL 1070863 (W.D. Tex. March 16, 2016), the plaintiff brought a class action lawsuit alleging that the City of Austin "has a practice of jailing people who are too poor to pay their fines and fees for traffic tickets and other petty misdemeanors in violation of their constitutional right to due process, equal protection, and counsel." *Id.* at **1-3. Relying heavily on

*Eggar*, the district court dismissed the plaintiff's claims in their entirety, concluding that they arose solely out of the judicial acts of the municipal division judges, and such acts could not, of their very nature, constitute municipal policy or custom. *Harris*, 2016 WL at **4-8.

Similarly, in *Ray v. Judicial Corrections Services, Inc.*, 2017 WL 660842 (N.D. Ala. 2017), the plaintiffs brought a class action complaint against the City of Childersburg. *Id.* at *1. They alleged that the city failed to provide any indigency hearings on whether defendants could afford to pay fines on their convictions, that the city unlawfully arrested defendants for failing to pay such fines, and that the city employed a policy and practice of treating "poor people less favorably than wealthier people because Municipal Court defendants who were able to pay the imposed fines and costs did not face [an] additional burden…whereas defendants who were unable to pay those fines and costs were placed on probation, charged additional fees, and subjected to threats of incarceration." *Id.* The Northern District of Alabama ruled that the city could not be liable for any of the allegations, as they related back to the judicial acts of the municipal judge, who could not be said to be setting municipal policy or custom in such a context. *Id.* at **10-15.

As noted above, federal courts are not "justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Praprotnik*, 485 U.S. at 126. By pleading the source of their alleged constitutional deprivations to be the municipal division judge, Drivers have "detach[ed] the local government from the [alleged] unconstitutional policy." *Woods*,

940 F.2d at 279. This Court should follow Judge Lay in *Eggar*, the other circuit courts, and the district courts in *Harris* and *Ray*, and hold that Drivers have failed to plead any facts tending to prove the existence of an unlawful custom or policy on the part of Ferguson as a municipality separate and distinct from the municipal court division.

J.    *Count VII alleges insufficient facts demonstrating a violation of Plaintiffs' constitutional rights.*

In Count VII, Drivers allege that Ferguson wrongly detained individuals after conducting unlawful warrantless arrests "without a prompt finding of probable cause by a neutral judicial officer based on sworn evidence." (Doc. 53 at ¶ 247). Plaintiffs make no further elaboration about the crimes on which these warrantless arrests took place, or about why such an arrest would be warrantless in the first place. As far as Ferguson can tell, Drivers are alleging that the municipal court wrongly detained individuals for more than 48 hours in jail. But as noted above, such actions are judicial acts, not municipal policy or custom. Such allegations do not meet the *Iqbal* and *Twombly* standards, and this Court should dismiss Count VII, as it does not overcome Defendants' claim of sovereign immunity.

## VIII.  Conclusion

WHEREFORE, for all of the foregoing reasons, Ferguson prays this Court dismiss Counts I through III and V through VII of Drivers' first amended class action complaint with prejudice for lack of subject matter jurisdiction and grant any other relief that is just and proper.


Respectfully submitted,

**Brinker & Doyen, LLP**


*/s/ John M. Reeves*
Jeffrey J. Brinker, #30355MO
John M. Reeves, #59634MO
Brinker & Doyen, LLP
34 North Meramec – 5th Floor
St. Louis,  MO  63105
314.863.6311 – Phone
314.863.8197 – Fax
jbrinker@brinkerdoyen.com
gpaul@brinkerdoyen.com
jreeves@brinkerdoyen.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed with the Court's electronic filing system, with notice of case activity to be generated and sent electronically by the Clerk of said Court on the 19th day of September, 2017, to all counsel of record.


*/s/ John M. Reeves*