IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KEILEE FANT, et al.,                      )
                                          )
        Plaintiffs                        )        Cause No.:  4:15-CV-00253-AGF
                                          )
   vs.                                    )
                                          )
THE CITY OF FERGUSON                      )
                                          )
        Defendant                         )

**THE CITY OF FERGUSON'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS
COUNTS I THROUGH III AND V THROUGH VII
FOR FAILURE TO JOIN AN INDISPENSABLE PARTY**

## I.  Introduction

Plaintiffs Keilee Fant, et al. (collectively "Motorists") have structured Counts I
through III and V through VII of their lawsuit against the City of Ferguson
(hereafter "the City") in such a way as to make the municipal division of the Circuit
Court of St. Louis County in Ferguson (hereafter "the Court Division") a central
player in this litigation. The merits of their claims cannot be resolved without
calling into question the validity of actions undertaken by the Court Division and
that division's officials. Despite the Court Division being an entity legally distinct
from the City, Motorists have (wrongly) defined it as being part of the City, alleging
that the City "operates…the Ferguson Municipal Court." (Doc. 53 at ¶ 19).
Consequently, even though Motorists claim to have suffered unconstitutional
deprivations pursuant to an unlawful policy or custom of the City, the merits of
their claims cannot be determined without examining the Court Division's conduct.

1

This necessarily implicates the Court Division's own interests, but since the Court Division is not a party to this lawsuit it is unable to defend these interests.

This is true even if Motorists' contend that the City acted in concert with the Court Division. The Court Division is therefore a required party that must be joined as a co-defendant to this lawsuit under Rule 19.[1] But its joinder is impossible, since the Court Division is a state entity entitled to sovereign immunity. The Supreme Court has been adamant about what must be done in precisely this type of a situation: "A case *may not proceed* when a required-entity sovereign is not amenable to suit." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008) (emphasis added). If the party moving for dismissal under Rule 19 demonstrates that the absent party's joinder is required, and that the absent party possesses sovereign immunity, "dismissal *must* be ordered where there is a *potential* for injury to the interests of the absent sovereign." *See id.* (emphasis added).

In its previous order denying the City's motion to dismiss (Doc. 173), this Court recognized that the Court Division's conduct is at issue, but went on to rule that "[i]n addition to conduct undertaken by the municipal court, the complaint alleges that the City's unlawful policies and practices are executed through its clerk, police department, and city attorney, all of whom act under the authority of the city council." (Doc. 173 at 2-3). But pursuant to the Supreme Court's guidelines in *McMillian v. Monroe County, Ala.*, 520 U.S. 781 (1997), "the question is not whether

---

[1] For this Court's convenience, the City has included the entire text of Rule 19 as Exhibit A to this motion.

[a particular official] act[s] for [a political subdivision or the state] in some categorical, 'all or nothing' manner," *id.* at 785, but whether the official acts for the political subdivision or the state "in a particular area, or on a particular issue." *See id.* Consequently, even if Motorists claim that the policies and practices of the City are at issue, this Court's recognition that the Court Division has an interest in this lawsuit means that it is an indispensable party

The entity on whose behalf an official acts is not a factual issue dependent on what is revealed during discovery, as *McMillian* was adjudicated in the context of a motion to dismiss for failure to state a claim for relief.[2] *Id.* at 784. Rather, it is purely a legal matter that must be resolved by a consultation of state law. *See id.* at 785-786. This is because federal courts "may not assume that final policymaking authority lies in some entity other than that in which state law places it. To the contrary, we must respect state and local law's allocation of policymaking authority." *McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996). (internal citation omitted). "A threshold question, therefore, is whether the official is going about the local government's business. If the official's actions do not fall within an

---

[2] While the Supreme Court's opinion in *McMillian* merely noted that the district court had "dismissed the claims" in question, without any further discussion of the case's procedural history, *McMillian*, 520 U.S. at 784, both the earlier opinion of the Eleventh Circuit on which certiorari was granted – *McMillian v. Johnson*, 88 F.3d 1573, 1575-1583 (11th Cir. 1996) – as well as the unpublished opinion of the Middle District of Alabama from which the initial appeal was taken – *McMillian v. Johnson*, 1994 WL 904652, ** 1, 5, 12-14 (M.D. Ala. Feb. 18, 1994) – make it clear that the issue was resolved in the context of a motion to dismiss for failure to state a claim for relief, prior to the commencement of discovery.

area of the local government's business, then the official's actions are not acts of the local government." *Id*. at 1578.

The Eighth Circuit recently recognized this, holding that "[w]hether the clerk acts on behalf of the State, the City, or the County depends on the definition of the clerk's official functions under relevant state law." *See Evans v. City of Helena-West Helena, Arkansas*, 912 F.3d 1145, 1146 (8th Cir. 2019). As further discussed below, Missouri law demonstrates that when the court clerk and other officials carry out the overwhelming majority of the actions forming the basis for Motorists' lawsuit, they do so as officials of the Court Division, not as City officials. While Motorists dispute this matter, insisting that the City's unlawful policy and custom deprived them of their constitutional rights, this Court cannot resolve the matter without first conducting the legal analysis of whether the officials in question acted on behalf of the City or the Court Division.

In the context of Rule 19, an absent government entity's liability "cannot be tried behind its back." *See Two Shields v. Wilkinson*, 790 F.3d 791, 796 (8th Cir. 2015) (internal quotation marks omitted). Because the merits of this lawsuit cannot be resolved without determining whether the alleged unlawful actions were carried out on behalf of the City or the Court Division, there exists a "potential for injury to the interests" of the Court Division as an absent sovereign. *See Pimentel*, 553 U.S. at 867. This requirement that courts avoid any *potential* injury to the absent, sovereign party's interests mandates that the Rule 19 issue be resolved now, prior to adjudicating Motorists' claims on the merits through either summary judgment

4

or a jury trial. Indeed, a district court's very consideration of the merits of a lawsuit in the absence of a required sovereign entity "is 'itself an infringement on…sovereign immunity.'" *Florida Wildlife Fed., Inc. v. U.S. Army Corps of Eng.*, 859 F.3d 1306, 1318 (11th Cir. 2017) (quoting *Pimentel*, 553 U.S. 851, 864-865 (2008)). As demonstrated below, this lawsuit cannot proceed without impinging on the Court Division's interests, necessitating dismissal.

## II.   Standard of Review

While the Eighth Circuit does not appear ever to have addressed the matter directly, "courts and commentators generally agree that [whether a case must be dismissed for failure to join an indispensable party] is not waivable, and that a reviewing court has an independent duty to raise it *sua sponte*." *Enterprise Mgmt. Cons., Inc. v. U.S. ex rel. Hodel*, 883 F.2d 890, 892 (10th Cir. 1989) (followed by a list of authorities supporting this proposition). Indeed, Rule 12(h)(1) excludes dismissal under Rule 19 from the list of defenses that are waived if not raised at the earliest possible time, and Rule 12(h)(2) allows dismissal under Rule 19(b) to be raised at any time. Furthermore, the 1966 advisory committee notes to Rule 12(h) declare that the defense of "failure to join an indispensable party under Rule 19…[is] expressly preserved against waiver by amended subdivision (h)(2).…"

Rule 12(b), in turn, establishes the procedural mechanism by which a party may move for dismissal under Rule 19. Prior to the close of the pleadings, the matter may be raised via a motion to dismiss under Rule 12(b)(7). After the pleadings have closed, the matter may be raised via a motion for judgment on the

pleadings under Rule 12(c). *See* Rule 12(h)(2)(B). In either instance, the court must accept the complaint's allegations as true." *See Sample v. City of Woodbury*, 836 F.3d 913, 915 (8th Cir. 2016) (applying the standard in the context of a motion to dismiss for failure to state a claim for relief); *see Eco-Site, LLC, v. The City of University City, Mo.*, 2018 WL 5761765 at *2-3 (E.D. Mo. Nov. 2, 2018) (ruling that this standard applies in the context of a Rule 12(b)(7) motion to dismiss); *see Edible Arrangements, LLC v. Provide Commerce, Inc.*, 2015 WL 1321441 at *2 (D. Conn. March 24, 2015) (applying this standard in the context of Rule 12(c)). But the court gives no deference to a complaint's legal conclusions or conclusory factual allegations. *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) ("We do not…blindly accept the legal conclusions drawn by the pleader from the facts" in the context of a Rule 12(c) motion); *see Eco-Site,* 2018 WL at *2-3 (E.D. Mo. Nov. 2, 2018) (applying the same standard in the context of a Rule 12(b)(7) motion).;

Legal conclusions to which a court owes no deference include a plaintiff's allegations about who is vested with final policymaking authority. *See McMillian*, 520 U.S. at 784, 785-786; *Massena v. Bronstein*, 2011 WL 754112 at *4 (N.D. N.Y. Feb. 24, 2011) ("Simply labeling [an official] as a final policymaker is a legal conclusion that does not satisfy the factual pleading standards required by [relevant Supreme Court precedent]."), *aff'd*, 545 Fed.Appx. 53, 55 (2d Cir. 2013) ("[T]he district court was not bound to accept as true [the plaintiff's legal conclusion that [the official in question] was a 'final policymaker.'"). This is because the issue of who possesses final policymaking authority in a particular area or on a particular

6

matter is a legal issue dependent upon an analysis of state law, not an issue of fact.

*See Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 946 (8th Cir. 2017).

## III. Under Missouri law, Motorists have alleged an unlawful policy or custom implicating the Missouri state court system.

As further explained below in Section IV, Rule 19 mandates an absent party's joinder if either (1) complete relief cannot be accorded among the existing parties, or (2) the absent party claims an interest in the litigation's subject matter such that disposing of the litigation without that party's joinder may, practically speaking, impede the absent party's ability to protect that interest. Both of the above situations exist here.

Motorists' allegations – and why they necessarily implicate the Court Division's interests – cannot be understood absent an overview of the Missouri state judicial system. Accordingly, this section is divided into two parts. Part A examines Missouri law governing the state judiciary, while Part B examines how Motorists' allegations, even viewed in a light most favorable to them as the plaintiffs, necessarily implicate the Court Division's interests, and seek relief which only that division, as part of the Missouri state judiciary, has the authority to bestow.

### A. Under Missouri law, municipal court divisions form part of the state circuit courts, and are completely autonomous in their functions from municipalities, rendering them state entities.[3]

---

[3] For this Court's convenience, the City has included, as Exhibit B to this motion, the entire text of all relevant Missouri constitutional provisions, statutes, and operating rules governing the Missouri state judiciary, along with a table of contents. It has also included, as Exhibit C to this motion, the text of all relevant subparts of Missouri Supreme Court Rule 37, also with a table of contents. Both exhibits also include the earlier versions of the respective laws.

### 1.  *The Missouri state judicial system controls the Court Division.*

The State of Missouri's judicial power is "vested in a supreme court, a court of appeals…and circuit courts." Mo. Const. Art. V, § 1. The circuit courts have "original jurisdiction over all cases and matters, civil and criminal." Mo. Const. Art. V, § 14. Until approximately four decades ago, municipal courts within Missouri existed as entities separate and distinct from the Missouri state courts. *See Gregory v. Corrigan*, 685 S.W.2d 840, 842 (Mo. 1985); Mo. Const. Art. V, § 27.2. But in 1976, Missouri voters approved amendments to the Missouri Constitution that revamped the state court system. *Gregory*, 685 S.W.2d at 842. Once the amendments went into effect in 1979, the municipal courts "ceas[ed] to exist," Mo. Const. Art. V, § 27.2(d), their powers and jurisdiction having been transferred to the particular circuit court covering the relevant municipality's geographic location. *Id.*

Now that the municipal courts have been abolished, "[v]iolations of municipal ordinances *shall* be heard and determined *only* before divisions of the circuit court…." Mo. Rev. Stat. § 479.010 (emphasis added). The presiding judge of the circuit court has "general administrative authority over the judges and court personnel of all divisions of the circuit hearing and determining ordinance violations within [that particular] circuit." Mo. S. Ct. R. 37.04.

The municipal clerks, furthermore, "constitute the clerical staff of the circuit court to perform the recordkeeping functions in the municipal divisions." Mo. Rev. Stat. § 483.241.3. Like the municipal judges, such municipal clerks are subject to the administrative authority of the presiding judge of the circuit court. Mo. S. Ct. R.

37.04. Either the municipal division judge or the municipal division clerk may sign an arrest warrant. Mo. S. Ct. R. 37.45(b)(6). No other official has the authority to sign an arrest warrant. *See id.*

All defendants tried before a municipal division state judge in Missouri have a right to a trial de novo before a circuit judge or associate circuit judge of the State of Missouri. Mo. Rev. Stat. § 479.200.1. The defendant may then appeal the judgment of this second trial to the Missouri Court of Appeals. *See, e.g., City of Slater v. Burks*, 714 S.W.2d 534 (Mo. App. W.D. 1986).

### 2. *The City's funding of the Court Division does not vest the City with any control over the Court Division.*

Municipalities provide all funding for the municipal court divisions, including the salary of the judge, the court clerk, and all assistant clerical personnel. Mo. Const. Art. V, § 23; Mo. Rev. Stat. § 479.060. In the event of a budget dispute between a municipality and the municipal court division, "either party may file a request with the presiding judge [of the circuit court] for a settlement conference." Missouri Supreme Court Operating Rule 13.01 (Ex. B at 32). The presiding judge must then issue a recommendation on how to resolve the budget dispute. *Id.* If the municipality is dissatisfied with the presiding judge's recommendation, it may seek review with the municipal finance commission, an independent review board. Missouri Supreme Court Operating Rule 13.02 (Ex. B at 34). Any party dissatisfied with the finance commission's ruling may seek review with the Missouri Supreme Court, which will issue a final decision on the budget dispute. *Id.*; § 477.600.

9

This arrangement reflects the Missouri Supreme Court's determination that a lower court must possess the inherent power, subject to the supervision of the higher courts, "to select and appoint employees reasonably necessary to carry out its functions of care, discipline, detention and protection, and to fix their compensation." *State ex rel. Weinstein v. St. Louis County*, 451 S.W.2d 99, 102 (Mo. 1970). A contrary view "would vest in the legislative department...the power to determine the extent to which the judicial department...could perform its judicial functions." *Id*.

Thus, even though the City funds the Court Division, this does not change the fact that the Court Division is a state entity, as Missouri law plainly vests the Missouri Supreme Court with final say over, among other things, how such funding is to be allocated. The United States Supreme Court recognized as much in *McMillian*, ruling that a sheriff, in the context of his law enforcement duties, acted as a state official, and not a county official, even though the county paid the sheriff's salary. *See McMillian*, 520 U.S. at 791. "The county's payment of the sheriff's salary," the Court ruled, "does not translate into control over him." *Id*. Indeed, the county in *McMillian* had even greater control over the sheriff's funding than the City does over the Court Division's budget in this case, since the "county commissions do appear to have the discretion to deny funds to the sheriffs for their operations beyond what is 'reasonably necessary,'" *id*., whereas the Missouri Supreme Court can completely overrule the City's budget determinations. *See* Missouri Supreme Court Operating Rule 13.02 (Ex. B at 34); Mo. Rev. Stat. §

10

477.600. But even though the county in *McMillian* had final say over what expenses were "reasonable" for the sheriff, "at most, this discretion would allow the commission to exert an attenuated and indirect influence over the sheriff's operations," *McMillian*, 520 U.S. at 791-792, and consequently did not negate the sheriff's status as a state official in the execution of his law enforcement duties. *See id*.

> **3.** **The Court Division – under the supervision of the circuit court and the Missouri Supreme Court – has the sole authority to regulate its inherent powers, regardless of either what the City may desire or what actions the City may attempt to assert in this area.**

Missouri courts have jealously guarded their authority to regulate themselves without any interference from municipalities. This is particularly the case with regard to a court's "inherent powers" – that is, "those powers necessarily inherent in the court to do all things that are reasonably necessary for the administration of justice and in order that it may preserve its existence and function as a court and which powers exist and inhere merely because it is a court *and irrespective of legislative or constitutional grant*." *State ex rel. Gentry v. Becker*, 174 S.W.2d 181, 183 (Mo. 1943) (emphasis added). "The most important and essential of the inherent powers of a court," according to the Missouri Supreme Court, "is the authority to protect itself against those who disregard its dignity and authority or disobey its orders by punishing for contempt." *Id*. at 183-184. "Another inherent power possessed by courts is that of providing counsel for the indigent." *Id*. at 184. Similarly, "courts have an inherent power to deny or revoke bail to protect its

11

processes and the community." *State v. Dodson*, 556 S.W.2d 938, 945 (Mo. App. St.L.D. 1977).

Courts also possess the "vital and inherent power…to enforce any and all lawful orders by imprisonment for contemptuous disobedience thereof." *Int. Mot. Co., Inc. v. Boghosian Mot. Co.*, 914 S.W.2d 5, 8 (Mo. App. E.D. 1995). To that end, "no person shall be imprisoned for debt, *except for nonpayment of fines and penalties imposed by law.*" Mo. Const. Art. 1, § 11 (emphasis added). Indeed, courts have an inherent power to incarcerate individuals who fail to pay a fine. *See* Mo. S. Ct. Rule 37.65.

Thus, "[t]he duty of a court to preserve the integrity of its process antecedes legislative or even constitutional grant and so…depends on neither." *State ex rel. Mo. Hwy. and Trans. Comm. v. McCann*, 685 S.W.2d 880, 884 (Mo. App. W.D. 1984). It is for a court alone to develop relevant procedures to aid in the administration of justice, and any attempt by a legislature or a political subdivision to interfere with this function "is unconstitutional." *See id.* at 884.

### 4. *Missouri Supreme Court Rule 37 codifies the inherent powers of the Court Division, superseding and rendering void any state law or local ordinance to the contrary, including any ordinance or other attempted form of control by the City.*

As a means of achieving this end of guarding the courts' independence, the Missouri Supreme Court has promulgated Rule 37 for the municipal divisions of the circuit courts. It promulgated this rule "pursuant to authority granted this Court by article V, section 5 of the Missouri Constitution *and supersedes all statutes, ordinances and court rules inconsistent therewith.*" Rule 37.02 (emphasis added).

12

Rules 37.15 and 37.16 provide that the Court Division may, in its discretion, condition the release of one arrested for an ordinance violation on the posting of bond and being arrested again if he or she misses a court date. Rule 37.17, in turn, states that "[w]hen an arrest is made without a warrant, the peace officer may accept bond in accordance with a bail schedule furnished by the court having jurisdiction." Rule 37.17. Furthermore, the Court Division may authorize a clerk or peace officer to set and accept conditions for release. *See* Rule 37.18. If conditions are not set for the release, or if the conditions are too high, "an application may be filed in a higher court by the accused...stating the grounds for the application and the relief sought." Rule 37.22. The Court Division must appoint counsel to an indigent defendant if conviction could potentially result in confinement. Rule 37.50.

Under Rule 37.65 the Court Division may, following a defendant's conviction on an ordinance violation, impose a payment plan for paying a fine or offer the defendant an alternative, non-monetary means, of satisfying the conviction, such as community service. The same rule provides that if the defendant fails to adhere to the payment plan, the Court Division may imprison him for contempt of court, but only if the Court Division first finds that the defendant had the ability to pay the fine, but voluntarily decided not to. Rule 37.65.

Missouri courts have unequivocally held that cities have no authority to alter these rules or interfere with their administration, and that any attempt to do so is void. *E.g.*, *Gooch v. Spradling*, 523 S.W.2d 861, 865 (Mo. App. K.C.D. 1975) ("[T]he rule [providing for contact with counsel] is not meaningless and cannot be

disregarded nor is its clear import vitiated by a policy of the Independence, Missouri police department to deny contact with counsel….”). This continues to hold true today, following the 1979 Missouri constitutional amendments merging the municipal courts with the state circuit court. “Though constitutional charter cities may legislate for themselves as long as they do so consistently with state statute, ‘that does not mean that suits by such cities in the courts of this state are not subject to rules of practice and procedure promulgated by the Supreme Court under the rule making power conferred on it by Article V, Section 5 [of the] Constitution of Missouri.’ ” *Smith v. City of St. Louis*, 409 S.W.3d 404, 416 (Mo. App. E.D. 2013) (quoting *Bueche v. Kansas City*, 492 S.W.2d 835, 842 (Mo. 1973)). Consequently, the City cannot interfere with the Court Division’s functions *See Smith*, 409 S.W.3d at 416.

**B.   Motorists’ allegations necessarily call into issue the Municipal Divisions’ inherent powers, and consequently its interests.**

Given the above, Motorists’ complaint (Doc. 53) plainly implicates the interests of the Court Division – as part of the Missouri state judiciary – and seeks relief which only the Court Division may grant. Motorists claim that the City “operates the…Ferguson Municipal Court,” (Doc. 53 at ¶ 19), even though that Court Division is part of the state circuit court and subject to the control of the Missouri Supreme Court. Having defined the City to include the Court Division, Motorists go on to allege that the “City” has an unlawful policy and custom of “us[ing] its municipal court and its jail as significant sources of revenue generation for the City.” (Doc. 53 at ¶ 165). Having identified the Court Division as the source of the alleged unlawful

14

acts, Motorists then proceed to allege unlawful actions that all fall within the scope of Missouri Supreme Court Rule 37: "Decisions regarding the operation of the court and jail – including but not limited to the assessment of fines, fees, costs and surcharges [Rule 37.65]; the availability and conditions of payment plans [Rule 37.65]; the setting and re-setting of amounts required for release from jail [Rules 37.15 – 37.18; Rule 37.65]; the issuance and withdrawal of arrest warrants [Rules 37.15 – 37.16; Rule 37.65]; and the non-appointment of an attorney [Rule 37.50] – are significantly influenced by and based on maximizing revenues collected rather than on legitimate penological considerations." (Doc. 53 at ¶ 166 (brackets added)). In addition, Motorists make plain that in complaining about having to pay a fee prior to being released from jail, they are referring to bond amounts (Doc. 53 at ¶ 171 n. 15), thus coming within the provisions of Rules 37.15 – 37.16, 37.24, and 37.26.

Motorists bring six counts against the City arising out of the above allegations, all under 42 U.S.C. § 1983 (Counts I through III and V through VII).[4] (Doc. 53 at 53-57). They seek declaratory and injunctive relief relating to the manner in which the Court Division assesses an individual's ability to pay a fine, the manner in which the Court Division appoints counsel, the manner in which the Court Division issues arrest warrants for failure to appear or failure to pay, and the manner in

---

[4] Count IV is not a subject of this motion, as that count alleges individual housed in the Ferguson jail suffered "deplorable conditions" of confinement (Doc. 53 at 59), and Missouri law vests neither the Court Division nor the rest of the Missouri state judiciary with final policymaking authority in this area.

15

which the Court Division imposes payment conditions on bonds and payment plans on fines. (Doc. 53 at 57-58). All of these challenged practices are functions that Missouri law vests in the Court Division.

Motorists also seek monetary damages as a result of the above practices. (Doc. 53 at 58). Motorists' claims thus directly implicate the Court Division's inherent powers. As a result, under Rule 19 (1) Motorists cannot obtain complete relief absent the Court Division's joinder, and (2) the Court Division has a claimed interest in this lawsuit's subject matter.

## IV. Under Rule 19, dismissal is mandatory if an absent, indispensable party's joinder is impossible.

Under Rule 19, a court must dismiss an action if an indispensable, sovereign party to the lawsuit has not been joined and the sovereign's immunity bars joinder from taking place. *See Two Shields v. Wilkinson*, 790 F.3d 791, 798 (8th Cir. 2015) ("[T]he action must be dismissed if the claims of sovereign immunity are not frivolous and there is a potential for injury to the interests of the absent sovereign." (Internal quotation marks omitted)). As noted above in Section II, this issue is not waivable and may be raised at any time, even by the court *sua sponte*. *Enterprise Mgmt.*, 883 F.2d at 892; Rule 12(h)(2) and 1966 advisory committee notes. While a district court normally has "substantial discretion" over whether to dismiss a case for failure to join an indispensable party, *see Kickapoo Tribe v. Babbitt*, 43 F.3d 1491, 1495 (D.C. Cir. 1995), this discretion is greatly narrowed and circumscribed where the indispensable party is immune from suit. *See id.* at 1497. ("[T]he district court was confronted with a more circumscribed inquiry when it assessed whether

16

the Tribe's lawsuit could proceed 'in equity and good conscience' in the absence of

Kansas, which was both a necessary party and immune from the lawsuit.").

### A.  To determine whether Rule 19 mandates dismissal, courts must conduct a two-step inquiry.

Whether Rule 19 mandates dismissal consists of a two-step inquiry, with Rule

19(a)(1) governing the first step and Rule 19(b) governing the second step. Under

Step 1, the court must examine – under either of two alternative grounds – whether

the absent party's joinder is "required"[5] under Rule 19(a)(1). One ground requires

joinder if complete relief cannot be accorded among the existing parties in the non-

joined party's absence. Rule 19(a)(1)(A). This "may require some preliminary

assessment of the merits of certain claims." *See Pimentel*, 553 U.S. at 868. For

example, if the named defendant has no legal authority to carry out the requested

injunctive relief, the plaintiff cannot obtain complete relief without the joinder of

the absent party possessing such legal authority. *See Focus on the Family v.*

*Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279-1281 (11th Cir. 2003) (ruling

that absent private corporation was a required party since it alone had the legal

authority to carry out the injunctive relief sought by the plaintiffs).

The alternative ground under Step 1 requires joinder if the absent party claims

an interest relating to the subject matter of the litigation, and is situated in such a

manner that disposing of the case in that party's absence may, as a practical

---

[5] Prior to 2007 amendments, Rule 19 used the term "necessary" party instead of the term "required" party, but this change was purely stylistic and did not affect the rule's substance. *Pimentel*, 553 U.S. at 855-856 (2008).

17

matter, impede its ability to protect that interest. Rule 19(a)(1)(B)(i). This can happen if proceeding with the litigation absent joinder has the potential to cloud the validity of the absent party's actions. *E.g., Two Shields v. Wilkinson*, 790 F.3d 791, 796 (8th Cir. 2015) ("Without the participation of the United States, any determination that particular lands had been illegally titled would potentially cloud the validity of many of the land grants approved by the government."). The movant bears the burden of "show[ing] the nature of the unprotected interests of the absent party." *H.S. Resources, Inc. v. Wingate*, 327 F.3d 432, 439 n. 11 (5th Cir. 2003) (internal quotation marks omitted). It is not necessary that the absent party actually seek intervention or otherwise come forward before the court in order for the movant to satisfy this burden. *E.g.*, *Wilkinson*, 790 F.3d at 799 (affirming granting of Rule 19 motion to dismiss where the absent party never sought intervention); *Citizen Potawatomi Nat. v. Norton*, 248 F.3d 993, at 995-1000 (10th Cir. 2001) (affirming granting of Rule 19 motion to dismiss where the absent parties neither sought intervention nor filed any amicus briefs).

If either of the above grounds under Step 1 are met, but the absent party's joinder is impossible, the court must proceed to Step 2 (Rule 19(b)) and determine whether the absent party is "indispensable" to the lawsuit such that its inability to be joined mandates the lawsuit's dismissal. *See Gwartz v. Jefferson Mem. Hops. Assn.*, 23 F.3d 1426, 1429-1430 (8th Cir. 1994); *Hood ex rel. Mississippi v. City of Memphis, Tenn.*, 570 F.3d 625, 628-629 (5th Cir. 2009). An indispensable party is one "who not only [has] an interest in the controversy, but an interest of such a

nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with 'equity and good conscience'…." *Int. Commerce Comm. v. Blue Diamond Prod. Co.*, 192 F.2d 43, 46 (8th Cir. 1951). Rule 19(b) sets out four non-exclusive factors the court should consider in determining whether the absent party is indispensable: "(1) the nature to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by [protective provisions, shaping the relief, or other measures]," as well as  "(3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."

## B. Dismissal under Rule 19 is particularly critical if the absent party cannot be joined due to sovereign immunity.

"One reason joinder may be infeasible is that the absent party enjoys sovereign immunity." *Kickapoo*, 43 F.3d at 1495. The Supreme Court has concluded that Rule 19's concerns are of particular importance where a non-party's sovereign immunity may be implicated by the litigation: "A case may not proceed when a required-entity sovereign is not amenable to suit." *Pimentel*, 553 U.S. at 868. The Eighth Circuit, in turn, has observed that *Pimentel's* emphasis on the importance of sovereign immunity under Rule 19 "appear[s] to diminish the significance of the other Rule 19(b) factors…." *See Wilkinson*, 790 F.3d at 798 (8th Cir. 2015); *accord Kickapoo*, 43 F.3d at 1496 (ruling that if the absent party is immune from suit, "there is very little room for balancing of other factors set out in Rule 19(b)…." (internal quotation

marks omitted). This is due to "[t]he potentially far reaching effects of any decision absent governmental participation" *see Wilkinson* at 796, as well as the United States Constitution reserving to the states "'a substantial portion of the Nation's primary sovereignty, together with the dignity and essential attributes inhering in that status.'" *See Florida Wildlife Fed. Inc. v. U.S. Army Corps of Eng.*, 859 F.3d 1306, 1318 n. 9 (11th Cir. 2017) (quoting *Alden v. Maine*, 527 U.S. 706, 714 (1999)).

**V.  Rule 19 mandates the dismissal of Counts I through III and V through VII as the Court Division is an indispensable party whose sovereign immunity makes its joinder impossible.**

**A.  Motorists cannot be accorded complete relief absent the Court Division's joinder, as only that entity has the legal authority to carry out Motorists' requested injunctive relief. (Step 1 – Rule 19(a)(1)(A)).**

Motorists seek declaratory and injunctive relief changing the manner in which the Court Division carries out its inherent powers – including the issuance of arrest warrants, the setting of bond on such warrants, the imposition of payment plans, and the appointment of counsel. But the City has no authority to carry out these actions – only the Court Division does, as part of the Missouri state court system. Consequently, complete relief cannot be accorded Motorists without the Court Division making that division a required party.

The Eleventh Circuit came to such a conclusion in *Pinellas*, 344 F.3d at 1280-1281. There, the plaintiff sought injunctive relief against a municipal authority to compel it to put up an advertisement at a bus station. *Id*. at 1267-1268. The Eleventh Circuit concluded that the municipal authority did not have the legal ability to display the advertisement – such ability instead resided with a private

entity whom the plaintiffs had not named as a defendant. *Id*. at 1267-1268, 1280-1281. Consequently, the plaintiffs were not able to obtain complete relief in the absence of that private entity, and the Eleventh Circuit ordered it to be joined as a defendant. *Id*. at 1280-1281.

Unable to obtain injunctive relief against the City, Motorists are also unable to obtain the monetary damages they seek absent the Court Division's joinder because, as demonstrated above, they have alleged, without any ambiguity, that the Court Division and its officials are the source of their alleged unlawful policy and custom. *See Taylor v. County of Pima*, 913 F.3d 930, 937 (9th Cir. 2019) (Graber, J., concurring) ("[I]f the relevant officials were working on behalf of the State, then any practice or custom was a *[s]tate* practice or custom, not a *municipal* practice or custom.") (emphasis in original). It is irrelevant that they claim the Court Division officials carried out their actions in order to enrich the City, as a "municipality cannot be liable for judicial conduct it lacks the power to require, control, or remedy, even if that conduct appears entangled with the desires of the municipality." *Eggar v. City of Livingston*, 40 F.3d 312, 316 (9th Cir. 1994) (Lay, J., of the Eighth Circuit, sitting by designation on the Ninth Circuit).

## B. In the absence of the Court Division's joinder, its interests cannot adequately protected, rendering it a required party. (Step 1, alternative ground – (Rule 19(a)(1)(B)(1)).

Motorists will no doubt dispute the City's arguments about the officials in question acting on behalf of the Court Division and not on behalf of the City. But the very existence of this dispute demonstrates that the Court Division has an

interest in the subject matter of this lawsuit that cannot be adequately defended absent its joinder. While one of the City's contentions is that Motorists did not suffer any unconstitutional deprivations to begin with, the City also contends that, even if any unconstitutional deprivations took place, they were the result of an unlawful *state* policy or custom by the Court Division for which the City cannot be liable. Unless it is joined as a party, the Court Division cannot defend against this contention.

This situation parallels what the Eighth Circuit confronted in *Wilkinson*, where it affirmed the district court's dismissal of the lawsuit under Rule 19. *Wilkinson*, 790 F.3d at 792-793, 794. The plaintiffs – two Native Americans – possessed interests in lands allotted to them by the United States. *Id.* at 792. Several private entities had submitted bids for oil and gas mining rights to the lands, and the United States thereafter awarded those rights to the private entities. *Id.* The Native Americans brought a class action lawsuit only against the private entities, and not the United States. *Id.* at 792-793. The lawsuit alleged that the private entities had induced the United States to breach the Government's fiduciary duties to Native Americans by illegally awarding the gas and mining rights to the private entities. *Id.*

The Eighth Circuit agreed with the district court that the United States was an indispensable party to the lawsuit whose sovereign immunity made its joinder impossible, thus mandating dismissal under Rule 19. *Id.* at 792-793, 799. "Appellants argue," the court noted, "that the United States would suffer no

prejudice from its absence in the case since they claim appellees have similar interests to it and the incentive to make every argument on the merits that the absent [United States] would or could make." *Id*. at 799 (internal quotation marks omitted; brackets in original). This argument, the Eighth Circuit ruled, could "not withstand scrutiny." *Id*. "While one potential defense," the court continued, "would be the argument that no fiduciary duty was owed or breached, [the named, private defendants] are alleged to be coconspirators with the United States and therefore have strong incentives to characterize any breach as resulting solely from the government's independent action and judgment." *Id*. The inability of the United States to counter such an argument absent its joinder constituted a major factor in favor of dismissal. *See id*. Similarly, the Court Division lacks any ability, absent its joinder, to counter the City's argument that, even if Motorists suffered unconstitutional deprivations, such deprivations could only be the result of an unlawful state policy or custom.

The City has no authority to direct the Court Division and its officers. As Missouri law demonstrates, the actions at issue here go to the Court Division's inherent powers, and only the Missouri state judiciary can properly answer for that division's conduct. *See Florida Wildlife*, 859 F.3d at 1316-1318. In *Florida Wildlife*, the plaintiffs sued the Army Corps of Engineers over the maintenance of Florida's inland water system. *Id*. at 1311-1312. While the Army Corps of Engineers presided over the inland water system, Florida law also vested a state water district agency with maintaining and operating several structures within this system. *Id*. at 1311-

23

1312. The Eleventh Circuit concluded that Rule 19 barred the lawsuit because the state water district was a required party, but could not be joined due to its sovereign immunity. *Id*. at 1316-1320. The court concluded that the water district agency's interests in the litigation's subject matter could not be adequately protected absent its joinder because the state water district was "involved in an integral way in the Corps's management of the [water system]." *Id*. at 1317. Any relief granted against the Army Corps of Engineers would interfere with the state water district agency's ability to "pursu[e] its own management strategy." *Id*. at 1319.

Similarly, any relief granted in this lawsuit against the City will necessarily interfere with both the Court Division's ability to exercise its own inherent powers and the ability of Circuit Court and the Missouri Supreme Court to oversee such control. The Court Division has the right to decide for itself how to best manage its officers in carrying out its actions. Since the Court Division is answerable only to the Circuit Court of St. Louis County and, ultimately, the Missouri Supreme Court, the City cannot adequately represent its interests in this lawsuit. Regardless of this litigation's outcome, *Monell*[6] dictates that the merits of this lawsuit cannot be decided without examining whether the acts in question were carried out on behalf of the Court Division, and a government entity's liability "cannot be tried behind its back." *Wilkinson*, 790 F.3d at 796 (internal quotation marks omitted). This potential

---

[6] *Monell v. Dept. of Soc. Services*, 436 U.S. 658 (1978).

for Motorists' lawsuit to adversely affect the Court Division's interests renders that division a required party under Rule 19.

## C. Because the Court Division's sovereign immunity bars it from being joined, equity and good conscience require this suit's dismissal. (Step 2 – Rule 19(b)).

The Eighth Circuit has explicitly ruled that "[t]he Missouri state courts…must be deemed a part of the State of Missouri, and its adjudicative voice," *Harris v. Mo. Court of Appeals, West. Dist.*, 787 F.2d 427, 429 (8th Cir. 1986). Consequently, they are immune from suit, "given the eleventh amendment protection [of sovereign immunity] granted these courts as state instrumentalities." *See id.* While the Eighth Circuit has never explicitly addressed this issue with regard to the municipal court divisions of the state circuit courts, it is indisputable that the Court Division, as part of the Missouri state court system, fully partakes of this sovereign immunity, despite being funded by the City and not by the State. "While state sovereign immunity serves the important function of shielding state treasuries…the doctrine's central purpose is to accord the States the respect owed them as joint sovereigns." *Fed. Maritime Comm. v. S.C. State Ports Auth.*, 535 U.S. 745, 765 (2002) (internal quotation marks omitted). Thus, multiple federal appellate courts have found local courts to be entitled to sovereign immunity even when they are funded by local entities, and not by the State.[7]

---

[7] *E.g.*, *Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 760-764 (6th Cir. 2010); *Benn v. First Judicial Dist. of Phil.*, 426 F.3d 233, 239-241 (3d Cir. 2005).

25

Since the Court Division possesses sovereign immunity, it is immune from suit and consequently cannot be joined to this lawsuit. Accordingly, this Court must proceed to Step 2 and examine whether, under the four non-exclusive factors set out in Rule 19(b), equity and good conscience require this suit's dismissal.

The first of the four factors requires an analysis of "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties…." Rule 19(b)(1). As demonstrated in the previous section, the City cannot adequately represent the Court Division's interests in this lawsuit. The Court Division alone has the right to answer for and defend its conduct, and any judgment entered in its absence will, of its very nature, cloud the validity of that conduct. *See Wilkinson*, 790 F.3d at 796 ("Without the participation of the United States, any determination that particular lands had been illegally titled would potentially cloud the validity of many of the land grants approved by the government."). *Accord Florida Wildlife*, 859 F.3d at 1318 ("Because of the way [the plaintiffs] have framed the Corps' alleged transgressions…this case is fundamentally about Florida's protection of its own natural resources."). Thus, the first factor under Rule 19(b) weighs in favor of dismissal.

Under the second factor of Rule 19(b), the court must examine the extent to which any prejudice could be avoided by protective provisions in the judgment, shaping the relief, or other measures. It is impossible to avoid such prejudice, for if one removes the Court Division from Motorists' allegations, nothing remains of Counts I through III and V through VII, as Motorists have structured their lawsuit

26

entirely around the Court Division and its officers. The Eleventh Circuit came to such a conclusion in *Florida Wildlife*, reasoning that no prejudice could be avoided to the state water district, since "any relief…would take the form of an injunction with potentially substantial consequences for the Water District's management of the Waterway." *Id*. at 1319. Similarly, any relief in this lawsuit will go to the heart of the Court Division's ability to carry out its inherent actions, regardless of whether such relief may also incidentally affect the City. Thus, the second factor also weighs in favor of dismissal.

The third factor under Rule 19(b) requires examining "whether a judgment rendered in the [required entity's] absence would be adequate…." Again, *Florida Wildlife* is instructive on this matter. There, the Eleventh Circuit concluded that any judgment without the state water district's participation "would not end the litigation but instead could set up a battle between the Corps and the Water District over who has ultimate authority for making water-release decisions." *Florida Wildlife*, 859 F.3d at 1319.

A similar situation exists here. The City has no legal authority to compel the Court Division to undertake any action related to that court's inherent powers. This Court's granting of injunctive relief for Motorists' without the Court Division's participation could potentially "set up a battle between the [City] and the [Court Division] over who has ultimate authority for making…decisions [governing the Court Division's inherent powers]." *See id*. Thus, the third factor likewise weighs in favor of dismissal.

27

Finally, the fourth factor under Rule 19(b) requires the district court to determine "whether the plaintiff[s] would have an adequate remedy if the action were dismissed for nonjoinder." Motorists will no doubt argue that this factor weighs against dismissal. But the United States Supreme Court has concluded that any such prejudice to the plaintiffs is outweighed by the prejudice an indispensable sovereign entity immune from suit will potentially suffer if the suit proceeds in its absence. *See Pimentel*, 553 U.S. at 872. Certainly, this "will mean, in some instances, that plaintiffs will be left without a forum for definitive resolution of their claims." *See id*. But as the D.C. Circuit put it 20 years before *Pimentel*, in an opinion joined by then-Judge Antonin Scalia, this "does not mean that an action should proceed solely because the plaintiff otherwise would not have an adequate remedy, as this would be a misconstruction of the rule and would contravene the established doctrine of indispensability."[8] *Wichita and Affd. Tribes of Okla. v. Hodel*, 788 F.2d 765, 777 (D.C. Cir. 1986) (internal quotation marks omitted).

In *Wilkinson,* the Eighth Circuit noted the following in rejecting the argument that the plaintiffs lacked an alternative remedy if the court upheld the lawsuit's

---

[8] As far as undersigned counsel has been able to determine, every federal appellate court to consider this matter has arrived at the same conclusion. *See, e.g., Seneca Nat. of Ind. v. New York*, 383 F.3d 45, 48-49 (2d Cir. 2004); *U.S. ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 480-481 (7th Cir. 1996); *Makah Ind. Tribe v. Verity*, 910 F.2d 555, 560 (9th Cir. 1990); *N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1283-1284 (10th Cir. 2012); *Florida Wildlife v. U.S. Army Corps of Eng.*, 859 F.3d 1306, 1320 (11th Cir. 2017). *See also Dowling v. Globe Direct LLC*, 806 F.Supp.2d 461, 469 (D. Mass. 2011), *aff'd*, 682 F.3d 18 (1st Cir. 2012).

dismissal:

> Although appellants argue that dismissal would deprive them of any remedy against the lessees, the Supreme Court has recognized that a defending party has an interest in avoiding "sole responsibility for a liability he shares with another." *Patterson*,[9] 390 U.S. at 110, 88 S.Ct. 733. We consider this interest to be particularly strong here, where the wrongful conduct the appellee lessees are alleged to have committed was inducing the United States to breach its fiduciary duty to ensure that all leases are in the Indians' best interest; all liability is therefore contingent upon evaluation of the actions of the United States.

*Wilkinson*, 790 F.3d. at 798 (footnote added). Likewise, this lawsuit is muddled in such a way that that the City could be held liable for damages arising from actions attributable to the Court Division – with no ability to seek a proper allocation of that liability to or obtain contribution from the Court Division.

In any event, it cannot be said that Motorists lack an adequate alternative remedy following the dismissal of their claims, as they may utilize the Missouri state political process to try and effect their stated goal of reforming the Missouri state judicial system. *See, e.g., City of Normandy v. Grietens¸* 518 S.W.3d 183, 201-202 (discussing the implementation such reform) (Mo. 2017). In light of the Court Division's immunity from suit, the reality is that the political process is the proper avenue to redress such claims.

## VI. Conclusion

The United States Supreme Court has been unequivocal on this matter: "A case may not proceed when a required-entity sovereign is not amenable to suit."

---

[9] *Provident Tradesmens Bnk. & Trust Co. v. Patterson*, 390 U.S. 102 (1968).

*Pimentel*, 553 U.S. at 867. As the mere "consideration of the merits" of a lawsuit in the absence of a required-entity sovereign "is itself an infringement on…sovereign immunity," *see id.* at 864, it is incumbent upon this Court to resolve this matter now, prior to the filing of any motions for class certification or summary judgment. Since the Court Division is a required entity to this lawsuit, but cannot be joined, Rule 19 mandates dismissal of Counts I through III and V through VII.

Respectfully submitted,

*/s/ John M. Reeves*
John M. Reeves, #59634MO
William A. Hellmich, #31182MO
Blake D. Hill, #58926MO
Jason S. Retter, #59638MO
KING, KREHBIEL & HELLMICH, LLC
2000 S. Hanley Road
St. Louis, MO 63144
314-646-1110 – Phone
314-646-1122 – Fax

*Attorneys for Defendant*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed with the Court's electronic filing system, with notice of case activity to be generated and sent electronically by the Clerk of said Court on the 5th day of March, 2019, to all counsel of record.

/s/ *John M. Reeves*