UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |  |
|---|---|---|
| KEILEE FANT, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 4-15-CV-00253-AGF |
| THE CITY OF FERGUSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## EXPERT REPORT OF THE
## HON. DOUGLAS R. BEACH (RET)

Date: January 29, 2021

Designated "Confidential" Under the Governing Protective Order in Light of Certain Materials Relied On.

### I.    BACKGROUND AND QUALIFICATIONS

I am a retired Circuit Court Judge of the 21st Judicial Circuit (St. Louis County). In 2005, I was first appointed as an Associate Circuit Court Judge and served in that capacity until 2010 when I was appointed to the Circuit Court and sat in Division 10. Prior to being appointed as a judge, I was intimately involved in the efforts to incorporate what is now Chesterfield, Missouri beginning in 1986. In 1988, our efforts were successful and Chesterfield was created as third-class city under Chapter 77 R.S.Mo. I was named as the first City Attorney and served in that role until my judicial appointment 17 ½ years later.

As City Attorney, I became very familiar with virtually every aspect of municipal law. I prepared the initial incorporation documents and drafted all 137 of the original ordinances and rules of the city. We created the administrative, executive, legislative, and judicial functions.  The city elected to have violations of its ordinances heard and determined by a municipal judge (as opposed to an Associate Circuit Judge), and we established a municipal division with a Municipal Judge, prosecutor, and court staff. Although  as

City Attorney I had very little role in Chesterfield's Municipal Court, I became very familiar with the statutes and Rules governing its creation and operation.

In September 2016, I was elected to be the Presiding Judge for the 21st Judicial Circuit and served in that role from January 1, 2017 to my retirement on September 20, 2018. At that time, St. Louis County had 77 Municipal Divisions. Although under Supreme Court Rule 37.04, the Presiding Judge has general administrative authority over the judges and court personnel of all such Municipal Divisions, I quickly learned that, prior to 2015, there had been little actual supervision. In that same vein, I came to learn that neither the Missouri Supreme Court nor the State Legislature had exercised any substantial oversight of the Municipal Divisions up to that time. As is evident and will be discussed further in the next section, following Michael Brown there was a public outcry for reform of, among other things, the Municipal Court System. The Supreme Court created a Work Group to recommend revisions to the rules and the legislature enacted Senate Bill 5. When I was elected as Presiding Judge, the municipal judicial system was literally in the midst of a substantial overhaul and St. Louis County and its 77 Municipal Divisions, including Ferguson, were at the forefront.

My work in the Municipal Court reform area began immediately upon my election as Presiding Judge. As the incoming St. Louis County Presiding Judge, I attended the semi-annual Presiding Judges Meeting just days after my election in September 2016. Judge Patricia Breckenridge, Chief Justice of the Missouri Supreme Court, presented the new Rule 37.04 Appendix (later denominated as "Appendix A"). Justice Breckenridge made it clear that, through the Circuit Court Presiding Judges, the Supreme Court was now going to actively supervise all Municipal Divisions. For the majority of the other 45 Presiding Judges this meant supervision of three or four Municipal Divisions. For me, it was supervision of 77 Municipal Divisions.

Immediately following the publication of the Rule 37.04 Appendix A, I created a working committee to review the current practices in the numerous Municipal Division of the 21st Circuit. This committee included current and former Municipal Court Judges, prosecutors, defense attorneys, Court Administrators, clerks, and Courtney Whiteside, the Supreme Court Municipal Division Courts Monitor

2

appointed to assist the Presiding Judges and implement the Rule 37.04 Appendix A throughout the state and particularly in St. Louis County. The Committee worked in two directions. Its initial focus was to develop a local rule and a St. Louis County Municipal Court Handbook. The Supreme Court directed that each circuit adopt a local court rule specifying how that circuit's municipal divisions would comply with Appendix A of Rule 37.04. This committee developed a rule adopted by the 21st Circuit as Local Rule 69.01.  This local rule became an exemplar, and I distributed it to Presiding Judges throughout the State. In addition to this local rule, the Committee drafted a 400-page Handbook that compiled the relevant Rules and protocols, provided specific recommended practices for many of the Rules, and included relevant forms for the operation of the municipal courts. The Handbook was designed to be the go-to reference manual for municipal judges, court administrators and court clerks.

Upon completion of the Handbook, we then embarked on the second task of educating the Presiding Judges, municipal court judges, court administrators and clerks in St. Louis County and around the State. I worked closely with Courtney Whiteside, who also visited municipal courts throughout the State.  I spoke at countless meetings and met with state municipal judges, court administrators and court clerks. Ms. Whiteside and I would separately visit various municipal courts in St. Louis County and review their operation.

In addition to the above, I was actively involved in several national organizations, attended symposiums, and spoke at several of these symposiums. By way of example, but undoubtedly not comprehensive, my work in this area included the following:

- Attended conferences, was elected as President, and served as a Board Member of the National Association for Presiding Judges and Court Executive Officers ("NAPCO");

- Appointed as an *ad hoc* member of the Supreme Court Committee on Practice and Procedure in Municipal Division cases;

- Worked closely with the Missouri Association of Court Administrators ("MACA") in educating its members;

- Participated in the national court clerks' organization, the National Association of Court Management ("NACM");

- Spoke to countless groups including City finance directors, council members and other municipal officials.

- Obtained a grant for the St. Louis County Committee from the State Justice Institute ("SJI") working in conjunction with the National Center for State Courts ("NCSC") specifically for the development of education programs in St. Louis County;

- Worked directly with the NCSC which led to speaking engagements in Las Vegas and Texas;

- Put on a day long program at Florissant Valley Community College for municipal judges and clerks of St. Louis and surrounding counties;

- Worked extensively on Show Me Courts ("SMC"), the newly developed case management system implemented by OSCA;

- Attended and presented at the Fall 2018 annual meeting of NAPCO held in St. Louis;

- Hosted and presented to representatives of the SJI in the Fall of 2018;

- Attended a symposium in New York City regarding Mass Incarceration and Bail, Bonds and Fees;

- In 2018, spoke as a panel member in Denver at the Conference of State Court Administrators ("COSA") and attended several others meeting of that organization;

- Attended several conferences of the MacArthur Foundation and Safety and Justice Institute on Pretrial Detention;

- Upon my retirement as a judge, I was appointed as the Supreme Court Municipal Court Judge Monitor, a role that I held until the end of 2019.

I also attach hereto a copy of my curriculum vitae.

## II.    SCOPE OF ASSIGNMENT AND MATERIALS REVIEWED

I have been retained to provide historical perspective on the Missouri Municipal Court System, with emphasis on developments in the Missouri statutes and Supreme Court Rules since mid-2015 that are relevant to the issues in this case.  In this regard, I will focus my analysis on the St. Louis County Municipal Courts. However, the St. Louis County Municipal Courts were not unique. The issues discussed below were prevalent throughout the State of Missouri, if not nationally.

I have also been asked to summarize specific Missouri Statutes and Rules that are relevant to the First Damages Class and Second Damages Class as defined in the expert report of Dr. Stephen Demuth. Beyond that, I will review the relevant testimony and evidence and opine as to whether the policies, practices, procedures and customs of the Ferguson Municipal Court comported with the Missouri Statutes and Rules. Since there were numerous reforms beginning in mid-2015, this task requires an examination of these questions before mid-2015 ("pre-SB 5") and after mid-2015 ("post-SB 5").

The Materials that I have considered in forming my opinions are listed on an attachment to this report. My opinions reached in this case are based on my review of the referenced materials and my above-described knowledge and experience that I have gained in my years as a City Attorney, Associate Circuit Court Judge, Circuit Court Judge and Presiding Judge of the 21st Judicial Circuit, State of Missouri, working in the area of Municipal Court Operations.

### III.     COMPENSATION AND PRIOR TESTIMONY

I am being compensated at the rate of $400 per hour for all document review, research, analysis, Consultation, and preparation of this report. My rate for deposition or trial testimony is $500 per hour. Over the last four years, I have not testified as an expert at trial or in deposition.

### IV.     SUMMARY OF OPINIONS

1.   The Ferguson Municipal Court is a division of the 21st Judicial Circuit of the State of Missouri, an entity separate and distinct from the City of Ferguson, a separate municipal corporation The Presiding Judge of the 21st Judicial Circuit has general administrative authority over the municipal divisions of the circuit court, their municipal judges and court personnel, and the Supreme Court of Missouri has ultimate authority over the circuit court, including those municipal divisions. The City of Ferguson has no authority over the Ferguson Municipal Division or municipal court judges.

2.   To the extent that Missouri law requires or permits an indigency analysis, Missouri law vests such discretion in and imposes such duty upon the municipal judge alone. The municipal judge's sole responsibility to conduct such inquiry, not the City of Ferguson.

3.   I am not aware of any Missouri Rule or Statute (until just prior to the enactment of Senate Bill

5 ("SB 5")) whereby a defendant would receive an automatic indigency analysis at any stage of any municipal court proceedings. The municipal judge had "discretion" to consider a defendant's ability to pay in assessing a fine or its payment terms, but was not required to automatically do so. Likewise, there was no Missouri Rule or Statute providing that a municipal judge must consider a defendant's ability to pay when setting an initial bond. Existing statutes and rules provided only that if a defendant applied for review of the bond, the municipal judge was obligated to provide it. However, there was no provision for automatic review of the bond.

4.   Following the enactment SB 5, Missouri statutes and rules provided that the municipal judge must consider a defendant's ability to pay when assessing fines. For individuals in custody <u>pursuant to an arrest warrant</u>, amendment to rules and statues made pursuant to SB 5 provided that the municipal judge must review a defendant's bond within 48 hours (for minor traffic violations) and 72 hours (for other ordinance violations). As of January 1, 2020, this standard was further refined to mandate that an initial appearance be held for all ordinance violations, at which a defendant's ability to post bond is assessed, within 48 hours after confinement, excluding weekends and holidays. The amendment provides that <u>warrantless arrestees</u>, whose bond had been set through a Bond Schedule, are entitled to have their bond reviewed within SB 5's 48/72-hour time frame.

5.   The policies, practices and customs of the Ferguson Municipal Division regarding indigency determinations complied with applicable Missouri statutes and rules, both pre-SB 5 and post-SB 5.

6.   I disagree with Dr. Demuth's apparent assumption that all persons held in the Ferguson jail had not received an indigency analysis. Those defendants that pled guilty or were convicted and received a payment date or entered into a payment arrangement received inquiries into their ability to pay.

7.   Prior to SB 5, there was no provision in Missouri law setting a time frame by which a warrantless arrestee, whose bond had been set pursuant to a Bond Schedule, must receive a probable cause determination by the municipal judge. Post-SB 5, a warrantless arrestee must receive a probable cause determination by the municipal judge within 24 hours of arrest.

8.   The policies, practices and customs of the Ferguson Municipal Division regarding probable

cause determinations complied with applicable Missouri rules and statutes, both pre-SB 5 and post-SB 5.

## V.    OVERVIEW OF THE MISSOURI MUNICIPAL COURT SYSTEM

Until 1976, municipal courts were entities that were separate and distinct from the state court system. In 1976, Missouri voters approved amendment of the Missouri Constitution. Effective January 2, 1979, the old municipal court system was abolished. The jurisdiction of municipal courts was transferred to the circuit court of the circuit in which such municipality is located and such courts became divisions of the circuit court. Mo. Const. Art. V, sec. 27.2 (d). Pursuant to Mo. Rev. Stat. sec. 479.010, "violations of municipal ordinances shall be heard and determined only before divisions of the circuit court."

Pursuant to its authority under Mo. Const. Art. V, sec. 5, in 1985 the Missouri Supreme Court adopted Rule 37 which "supersedes all statutes, ordinances, and court rules inconsistent therewith." Supreme Court Rule 37.02. Under those Rules, the presiding judge of the circuit has general administrative authority over the municipal divisions of the circuit court, their municipal judges and court personnel. Supreme Court Rule 37.04.[1] Accordingly, the City of Ferguson has no authority over the Ferguson Municipal Division or municipal court judges.

The Supreme Court, of course, has the ultimate authority over the circuit courts including the municipal divisions. This is true even in those areas where the municipalities have separate responsibilities. For example, just as counties must fund their circuit courts, municipalities are required to fund their municipal divisions (i.e., pay the salaries of the municipal judges and clerks as well as other expenses incurred in the operation of the court). However, if there is a budget dispute between a municipality and the municipal division, it is first considered by the presiding judge of the governing judicial circuit, who issues a recommendation. There is then an option for review by the Missouri Finance Commission. Ultimately, if either party is dissatisfied with the results of this process it may seek review with the Missouri Supreme Court, which will issue a final decision on the budget dispute. See, Missouri Supreme Court Operating Rules 13.01 and 13.02 and Mo. Rev. Stat. sec. 477.600.

---

[1] Mo. Rev. Stat. sec. 483.241.3 further provides that "municipal clerks shall constitute the clerical staff of the circuit court to perform the recordkeeping functions in the municipal divisions."

Until the events in Ferguson in August 2014 and the resulting scrutiny of, among other things, the municipal court system, the circuit presiding judge's and Supreme Court's oversight of this system was not robust. Subsequent to August 2014, that changed dramatically, and the Ferguson Municipal Court was at the forefront of the changes.[2] I will not endeavor to provide an all-encompassing summary of the resulting changes. Rather, I will provide an overview of the Supreme Court's work and generally summarize the areas it included. I will focus in depth on the issues implicated by the Plaintiffs' proposed classes in the next section of this report.

In December 2014, the Ferguson Municipal Court promulgated several Operating Orders including ones concerning warrant recall, fine assessment practices, and a revised Bond Schedule and jail release mandate. In March 2015, following the resignation of Judge Ronald Brockmeyer, the Supreme Court transferred Missouri Court of Appeals Judge Roy Richter to handle the municipal cases in the Ferguson Municipal Division. In April 2015, the Office of State Courts Administrator ("OSCA") promulgated a report analyzing some of the issues in the Ferguson Municipal Division. In May 2015, Judge Richter and OSCA issued a report to the Supreme Court "concerning the ongoing efforts to improve the State's Municipal Divisions".

Also, in May 2015, the Missouri Supreme Court issued an Order establishing the Municipal Division Work Group. This Work Group was composed of nine judges and attorneys and was tasked with "review[ing] the applicable constitutional provisions; statutes; ethical, procedural and operating court rules; recently passed legislation; and such other materials as the work group believes would be helpful to study". The Work Group was asked "to assist the Court by reviewing all matters relevant to practice in the municipal divisions of the circuit court and make recommendations concerning any appropriate changes to court rules or practices that can be implemented by the Court as well as any suggestion that may require legislation or action by other entities". Supreme Court of Missouri, *en banc,* Order dated May 14, 2015.

---

[2] Because Ferguson was at the epicenter of this tsunami, both the City and the Municipal Court enacted substantial changes well ahead of the sweeping changes mandated by SB 5, effective Aug. 28, 2015, and substantial overhaul of Supreme Court Rule 37.

That Work Group issued an interim report in September 2015 and, at that time, the Supreme Court requested the Work Group to analyze additional issues and identify potential solutions that the Court could consider. The Work Group issued it final 140-page report on March 1, 2016.

The Work Group's report and recommendations to the Supreme Court were wide-ranging. It included topics such (a) conflicts of interest involving municipal judges and attorneys serving multiple roles; (b) warrants, incarceration, and bonds; (c) enforceability of municipal court judgments; (d) potential consolidation of the municipal courts or referral of municipal court cases to the Associate Divisions of the Circuit Court; (e) elimination of financial incentives; (f) providing for adequate supervision of municipal courts in St. Louis County; (g) elimination of unauthorized costs, fees and surcharges; (h) assuring open and orderly court proceedings; and others. The Work Group issued approximately 35 Recommendations that specifically noted to whom the recommendation was directed. Consistent with my statement above that the judicial oversight was lacking, the overwhelming majority of these Recommendations suggested actions to be taken by the Supreme Court, presiding circuit judges and/or municipal courts. A few included suggestions to the Missouri General Assembly and only a couple involved the municipalities (e.g., funding needed changes, clerks' reporting structure, and potentially eliminating the municipal court and using the Associate Circuit Court).

Following receipt of the Work Group Report, the Supreme Court enacted wide-sweeping revisions to Rule 37 that addressed many of the Recommendations that it had received. Those applicable to the issues in this case will addressed in the next section. Otherwise of note, effective September 20, 2016, the Supreme Court amended Rule 37.04 establishing Appendix A (10 Minimum Operating Standards for the municipal divisions). While this Appendix sets forth extensive operating standards, by and large it was a recapitulation of the existing rules as well as the changes that had been enacted in Senate Bill 5 (discussed below). Effective January 1, 2017, the Court adopted Appendix B (a code of conduct for municipal division personnel), and later that year, Appendix C (a notice of defendants' rights in municipal court), Appendix D (standards for enforcement of court-ordered legal financial obligations and bench card for judges), and Appendix E (protocols for presiding court judges in supervising municipal division judges). In addition, the

Court amended a number of other Rules over the next three years.

As mentioned above, effective August 28, 2015, the General Assembly also enacted significant changes to various aspects of the law in this area with Senate Bill 5 ("SB 5").[3] This legislation repealed and re-wrote portions of what is known as the Macks Creek law concerning maximum permissible municipal court revenue (substantially reducing it) and enacted (a) reporting requirements for the circuit court presiding judge; (b) maximum fines for minor traffic offenses; (c) court cost revisions including no more "dismissal with payment of costs" dispositions; (d) elimination of "failure to appear" charges; (e) limits on incarceration (discussed below); (f) requirements that defendant's financial condition be considered in certain instances; (g) open courtrooms; and (h) other revisions/changes to the law discussed in the next section.

## VI.    THE FIRST DAMAGES CLASS

### I.    INTRODUCTION

The First Damages Class, as defined by Plaintiffs, is as follows:

> *All persons who have, at any time since February 8, 2010, been kept in jail by the City of Ferguson for failing to pay a fine, fee, bond, surcharge, or cost, without an inquiry into their ability to pay.*[4]

In determining the make-up of this proposed class, Plaintiffs' expert, Dr. Demuth, assumes that all persons held in jail did not receive an inquiry into their ability to pay (Demuth depo, pp. 106-07). As discussed below, I disagree with that assumption. The class as determined by Dr. Demuth further assumes that all persons incarcerated *were, in fact, indigent* and *were entitled* to an indigency analysis prior to or at the time he/she was jailed. These assumptions, of course, must be examined, and, in my opinion, such analysis necessarily implicates three different factual scenarios: (1) Defendants who fail to appear at Court and are arrested pursuant to an arrest warrant issued as a result of such failure; (2) Defendants who pled guilty or were convicted of an offense; given time to pay the fine and did not pay it and failed to appear in court to

---

[3] This statute was amended in 2016. Such amendments are not significant to the issues addressed in this report.
[4] Expert Report of Stephen Demuth, p. 2.

explain their failure to pay; and, as a result had an arrest warrant issued against them[5]; and, (3) Defendants arrested for certain more serious crimes without a warrant and who are incarcerated. In analyzing this proposed class, it is also necessary to break down the defined class period into two different time periods because Missouri law (and the Ferguson Municipal Court's practices) were substantially changed in 2015 and thereafter. Finally, to the extent indigency analysis is required, it is necessary to determine where Missouri law provides for such an inquiry and at what stage of the proceedings it is undertaken.

## II.   MISSOURI LAW

To the extent that an indigency analysis is required or permitted under Missouri law, it is the municipal judge's responsibility to conduct such inquiry. This is obvious when it comes to assessing fines and costs for a violation of the law. It is no less obvious in the context of bonds, which are always set by the Court and reviewed by the Court. Every rule or statute that touches upon inquiry into a defendant's ability to pay places that responsibility on the judge. I know of no law in Missouri or elsewhere that imposes such obligation on the police, corrections officers, or City.

I am not able to determine whether any of the putative class members were, in fact, "indigent" (and, if so, how many) because such a determination would have to be made on a putative class member by putative class member basis. (See Model Local Rule 69.01 requiring a person seeking permission to proceed as an indigent to submit a Statement of Financial Condition that requires individual financial information and provides indigency standards based on Federal Poverty Guidelines). Accordingly, I will focus the remainder of my analysis on the issue of whether an indigency analysis was provided for under Missouri law during the relevant timeframe and, if so, at what stage of the proceedings.

### **Indigency Consideration in the Assessment of Fines**

#### Pre-SB 5

Until just prior to the enactment of Senate Bill 5 ("SB 5"), I am aware of no Missouri Rule or Statute by which there would be an automatic indigency analysis in assessment of fines. Supreme Court

---

[5] These first two scenarios are functionally and legally the same except, as discussed below, with respect to the question of whether the defendant received an indigency analysis.

Rule 37.65 specified that the judge had "discretion" to consider ability to pay in imposing fines but did not mandate it. Until July 1, 2015, Rule 37.65 stated in pertinent part the following:

> (a) When a fine is assessed for violation of an ordinance, it shall be within the discretion of the judge assessing the fine to provide for the payment of the fine on an installment basis under such terms and conditions as the judge may deem appropriate.
>
> (b) If it appears to the judge imposing judgment assessing a fine that the defendant does not have at the time the present means to satisfy the fine, the judge assessing the fine may order a stay of execution on the judgment and grant the defendant a specified period of time within which to satisfy the same.

<u>Post-SB 5 (Circa)</u>

Effective July 1, 2015, that Rule was amended to read as follows:

> "(a) When a fine is assessed and it appears to the judge that the defendant does not have at that time the present means to pay the fine, the judge shall order a stay of execution on the payment of the fine and:
>
>> "(1) Grant the defendant a specified period of time within which to pay the fine in full, or"
>>
>> "(2) Provide for the payment of the fine on an installment basis under such terms and conditions as the judge may deem appropriate."

While not entirely clear, arguably at this time, a municipal judge was obligated to consider a defendant's ability to pay when assessing fines. Effective August 28, 2015, any ambiguity on this point was resolved by Senate Bill 5, and the judge is now required to consider a defendant's ability to pay when assessing fines. See Mo. Rev. Stat. sec. 479.360.1(4).

Effective January 1, 2019, Rule 37.65 was again amended to explicitly require municipal judges to inquire as to a defendant's ability to pay "if, [after assessment of a fine, fee, or cost] the defendant states the defendant is unable to pay the amount then due." Specifically, the Rule now provides the following in relevant part:

> (a) **Judicial Inquiry as to Ability to Pay**. When a fine, fee, or cost is assessed, or thereafter any time a fine, fee, or cost is due, if the defendant states the defendant is unable to pay the amount then due, the judge shall inquire as to the defendant's ability to pay.

(b) **Defendant Has Ability to Pay But Unable to Pay When Assessed or Due.** If the judge finds the defendant has the ability to pay but is unable to pay the amount when assessed or due, the judge shall order a stay of execution on the payment and:

    (1) Grant the defendant a specified period of time within which to pay the fine in full; or

    (2) Provide for the payment of the fine on an installment basis under such terms and conditions as the judge may deem appropriate.

(c) **Defendant Has No Ability to Pay.** If the judge finds the defendant does not have the ability to pay the amount when assessed or due and is unable to acquire the resources to pay, the judge shall, after consideration of the violation, the defendant's financial circumstances, disabilities, driving restrictions, transportation limitations, and caregiving and employment responsibilities, impose alternative sanctions that may include, but are not limited to:

    (1) Waiver or suspension of imposition of any fine, fee, or cost or of the amount previously assessed and due;

    (2) Imposition of a lower amount of any fine, fee, or cost or reduction of the amount previously assessed and due;

    (3) Community service in lieu of any fine, fee, or cost; or

    **(4)** Court-approved programs, e.g., driver skills, education, job skills, mental health or drug treatment in lieu of any fine, fee, or cost.

### Indigency Assessment in Setting and Reviewing Bonds

Bonds are initially set in two ways by the Ferguson Municipal Division: (1) When an arrest warrant is issued (frequently because a defendant failed to appear in Court), the Municipal Judge sets the bond amount; or, (2) For certain warrantless arrests, bond is set pursuant to a Bond Schedule issued by the Court. In both scenarios, there is no opportunity for the Judge to inquire of a defendant's ability to post such bond at the time that it is first set. This is true both pre-SB 5 and post-SB 5.

### Pre-SB 5: Review of Bonds

Prior to SB 5, once bond was set (regardless of how it was initially set), a defendant had a right to make application to the Court for review of his/her conditions of release, but such review was not automatic.

(See, Supreme Court Rules 37.15, 37.19 and 37.20).[6] It is important to note that a process for review of the bond was available. It was simply up to the defendant to request such review. There was no statute or rule requiring automatic review of the bond.

<u>Post-SB 5: Review of Bonds</u>

With the enactment of SB 5 this aspect of Missouri law was addressed. SB 5 provided for the following procedure when the defendant was arrested <u>pursuant to an arrest warrant</u>:

> Defendants in custody pursuant to an initial arrest warrant issued by a municipal court have an opportunity to be heard by a judge in person, by telephone, or video conferencing as soon as practicable and not later than forty-eight hours on minor traffic violations and not later than seventy-two hours on other violations and, if not given that opportunity, are released.

(Mo. Rev. Stat. § 479.360.1 (1)). This statute went on to specify that the municipal courts must establish procedures to allow defendants to present evidence of their financial condition:

> [The municipal judge shall certify to the state auditor that] "the municipal court has established procedures to allow indigent defendants to present evidence of their financial condition and takes such evidence into account in determining fines and costs and establishing related payment requirements."

Mo. Rev. Stat. sec. 479.360.1(4). This statute is consistent with the division of responsibilities mentioned above. It mandates that the *municipal court* review a detainee's ability to pay a bond set by the court. It requires the *city* to release the detainee in the specified time period if the defendant has not been seen or heard by the judge.

The requirement for review of the bond amount <u>set in an arrest warrant</u> was further clarified with an amendment to Rule 37.47 that went into effect on January 1, 2020. That rule now requires that an initial appearance occur, in person or by video, no later than 48 hours, excluding weekends and holiday, after arrest under the warrant. Specifically, it provides in pertinent part as follows:

> **(a) Initial Appearance Under Warrant Before Judge.** A defendant arrested and confined under the initial warrant for any ordinance

---

[6] Rule 37.47 required an initial appearance before a judge "as soon as practicable" for a person arrested under a warrant but did not address the issue of an indigency analysis.

violation issued pursuant to Rule 37.43 shall be brought forthwith for an appearance, in person or by interactive video technology, before a judge of the court from which the warrant was issued. This initial appearance shall be held no later than 48 hours, excluding weekends and holidays, after the defendant is confined under the warrant in the county that issued the warrant or in a county with which the county issuing the warrant has a contractual agreement to hold the defendant.

\*       \*       \*

**(d)** If the defendant is in custody after arrest on a warrant, the court shall inform the defendant of the conditions of release, if any, and determine whether the defendant can meet the conditions. If a defendant is unable to meet the conditions, then the court may modify the conditions of release if the court determines the circumstances of the defendant and the case require modification of the conditions. …

It is my opinion that the new Rule 37.47 effectively abrogates that portion of SB 5 that permitted up to 72 hours for review of bond in non-traffic ordinance violations for individuals held pursuant to an arrest warrant.

As previously mentioned, the question of indigency analysis as applied to review of bonds imposed by the court arises in a second scenario. There are certain offenses that are deemed so serious that, rather than issuance of a citation and release, the offender is arrested and booked and often incarcerated (hereinafter referred to as "warrantless arrests").  In those instances, for most offenses, the bond may be set by the judge pursuant to a Bond Schedule issued by the court.[7] For example, the court might specify that persons arrested for driving while revoked/suspended might be assigned a bond of $250, or, if arrested for assault on a law enforcement officer, the bond assigned might be $500.

SB 5 also addressed the warrantless arrest scenario. It imposed a requirement that a person may not be held without a warrant for longer than 24 hours. This provision was enacted to require a probable cause determination by a judge within the stated 24-hour period. Absent such determination, the defendant must be released.

However, the provision requiring the probable cause determination does not, itself, require that the judge see the defendant and review his/her bond. If probable cause is determined to exist and a warrant is

---

[7] Bond Schedules for use in warrantless arrests are expressly permitted under Supreme Court Rule 37.17

issued, and the defendant has not been released on bond, SB 5's 48/72-hour time limits apply. The judge must see the defendant (by telephone, in person, or video conference) in that time period and the bond review/indigency analysis takes place at that time. If that does not occur, the defendant must be released.

III.     THE FERGUSON MUNICIPAL COURT'S COMPLIANCE WITH MISSOURI LAW

PRE-SB 5 (AUGUST 28, 2015)

Plaintiffs' First Damages Class definition concerns persons incarcerated for failing to pay a fine, fee, bond or surcharge without receiving an indigency analysis. Thus, incarceration is a prerequisite and therefore this claim basically concerns bonds. The above-described analysis of Rule 37.65 is offered because the lion's share of the "indigency concerns" addressed by the Missouri Supreme Court and legislature was focused on ensuring that a person's ability to pay is considered at the time the fines and costs are assessed. To the extent that this is an issue in this case, Judge Brockmeyer testified that he always permitted defendants to address ability to pay issues. This is further supported by the fact that a substantial percentage of defendants were given time to pay their fine.

With respect to bonds, it is necessary to separately examine the three different bond scenarios. The first scenario is simply the defendant's failure to appear in court to answer the charges. This accounts for the overwhelming percentage of arrest warrants. As discussed above, if the defendant has not appeared, there can be no analysis of his/her ability to pay before the bond is set. Accordingly, there is no requirement for an indigency analysis at that stage of the proceeding, and the Ferguson Division complied with Missouri law.

The second scenario concerns those who are given payment terms, but fail to make the required payment and fail to appear in court to explain the lack of payment and secure new payment terms. Here again, the judge is setting bond without the ability to speak with the defendant because the defendant failed to appear in Court as necessitated by his/her failure to pay. However, assuming that the payment terms were discussed at the time the payment plan was agreed to, the defendant did previously receive an indigency analysis. Of course, the circumstances in the defendant's life could have changed, but again the judge has no way to know that because the defendant has failed to appear as required. For that reason, no further

ability to pay inquiry is required or even possible at this stage.

The final scenario is the warrantless arrest. The defendant is arrested by the police (with no warrant outstanding), booked and incarcerated. Ferguson's Municipal Court utilized a bond schedule in such circumstances. Bond was set by the Court pursuant to an established schedule that depended upon the charge involved. Functionally, the defendant here is in the same position as the person arrested on the outstanding warrant. In all three cases, the defendant is now incarcerated with bond having been set without the judge having seen the defendant. As noted above, until the enactment of SB 5, Missouri had no requirement that the judge *sua sponte* see the defendant and review the bond conditions at any particular time.

In the Ferguson Municipal Court, prior to December 18, 2014, Judge Brockmeyer imposed a 72-hour requirement: if bond had not been posted within 72 hours an individual incarcerated by Ferguson was to be released. (See Plaintiffs' Exhibit 11, Brockmeyer's Municipal Court Operating Order, in re: Bond Schedule, effective December 18, 2014; See also Brockmeyer depo. pp. 95-96). Judge Brockmeyer's 72-hour standard complied with Missouri law which, as noted, did not require that an individual's ability to pay be reviewed by the court. Again, it is important to note that it is the judge's responsibility to determine when and how the bond conditions must be reviewed. It is the judge's arrest warrant, bond schedule and other directives to the police and corrections officers that govern this issue.

### POST-SB5 (AFTER AUGUST 28, 2015)

The Supreme Court and legislature enacted sweeping changes to the municipal court system with SB 5, its subsequent amendment, and various changes to Supreme Court Rule 37. These changes applied to all municipal courts in the State of Missouri. Because of the Department of Justice investigation of Ferguson, its Municipal Division was at the forefront of the municipal court reforms and enacted many of the new practices even prior to SB 5's effective date.  As mentioned above, in March 2015, the Missouri Supreme Court transferred Missouri Court of Appeals Judge Roy Richter to handle the municipal cases in the Circuit Court of the 21st Judicial Circuit, Ferguson Division. Judge Richter issued a report to the Missouri Supreme Court, date May 11, 2015, in which he confirmed that this Division had

successfully, implemented most of the reforms then under consideration. (See Richter report generally). With

respect to the indigency inquiry at issue in this case, as noted above in December 2014, Judge

Brockmeyer entered an Order requiring the release of any jailed person who could not post bond <u>within 12</u>

<u>hours</u>. This has been the standard of the Ferguson Municipal Court since that date. Thus, the Ferguson

Municipal Court's practices complied with post-SB 5 Missouri rules and statutes that require indigence

analysis within either 48 or 72 hours.

## IV.   THE SECOND DAMAGES CLASS

### A.   <u>INTRODUCTION</u>

The Second Damages Class, as defined by Plaintiffs, is as follows:

> *All persons who have, at any time since February 8, 2010, been held in jail by the City of Ferguson after a warrantless arrest for longer than a reasonable period of time (48 hours at a maximum or such shorter period of time as the Court may determine) prior to a finding of probable cause by a warrant magistrate for their arrest and continued detention.*

This class concerns a different issue: a probable cause determination for those arrested without a warrant.

Here again, Missouri law has changed over the course of the last ten years.

### B.   <u>MISSOURI LAW</u>

#### <u>Pre-SB 5</u>

Prior to the enactment of SB 5, a warrantless arrestee's right to a probable cause determination was

addressed in Mo. Rev. Stat. §544.170.1. This statute states the following in pertinent part:

> All persons arrested and confined in any jail or other place of confinement by any police officer, without warrant or other process, for any alleged breach of the peace or other criminal offense, or any suspicion thereof, shall be discharged from said custody within twenty-four hours from the time of such arrest, unless they shall be charged with a criminal offense by the oath of some credible person, and be held by warrant to answer to such offense.

While the statute does not expressly mention "probable cause", it references "being held by a warrant"

which necessarily involves a probable cause determination.

The statute provides a 24-hour maximum incarceration period for all persons arrested "without

warrant or other process". Therefore, absent "*other process*", the probable cause determination must be

made by a judge within 24 hours of arrest. This statute worked hand-in-hand with Supreme Court Rule 37.17 which, prior to January 1, 2019, provided as follows:

> When an arrest is made without a warrant, the peace officer may accept bond in accordance with a bail schedule furnished by the court having jurisdiction.

If a municipal judge for a particular jurisdiction utilized a bond schedule (as Ferguson did) and bond was set for a warrantless arrestee pursuant to such schedule, then the arrestee had received "other process" and Mo. Rev. Stat. §544.170.1's 24-hour time limit did not apply.  Prior to SB 5, Missouri law was not clear on how long a warrantless arrestee, whose bond was set pursuant to a bond schedule, could be held without a probable cause determination. I am not aware of any Rule or Statute that addressed this question.

<u>Post-SB 5</u>

This apparent hole in Missouri procedure was addressed in SB 5. Mo. Rev. Stat. §479.360.1(2) squarely addressed the issue:

> Defendants in municipal custody shall not be held more than twenty-four hours without a warrant after arrest.

Of note, this provision appears similar to Mo. Rev. Stat. §544.170.1. However, it does not provide the "other process" (i.e., bond schedule) exception. Effective January 1, 2019, the Missouri Supreme Court amended Rule 37.17 to comport with §479.360.1(2). That Rule (with the term "defendant" substituted for "accused") now reads as follows:

> When an arrest is made without a warrant, the peace officer may accept bond within 24 hours of arrest in accordance with a bond schedule furnished by the court having jurisdiction. If the judge has not issued an arrest warrant within 24 hours of arrest, the peace officer shall release the defendant from custody.

In sum, post-SB 5 (August 28, 2015), a bond schedule may be utilized so that those who wish to post bond can secure quick release. However, if bond is not posted, then the defendant must be released within 24 hours unless a judge issues an arrest warrant (which, of course, requires him/her to determine that there is probable cause to conclude that the defendant committed the offense).

## C.  THE FERGUSON MUNICIPAL COURT'S COMPLIANCE WITH MISSOURI LAW

### Pre-SB5

Prior to SB 5, the Ferguson Municipal Court had issued a bond schedule (although it is my understanding that the actual document cannot be located) (See. Plaintiffs' Exhibit 11, December 18, 2014 Bond Schedule that references the prior bond schedule; see also, Brockmeyer depo pp. 95-96). Based on the documentation and testimony, until December 18, 2014, Judge Brockmeyer ordered that a warrantless arrestee be held no longer than 72 hours. As stated above, when a bond schedule was utilized to set bond, Missouri had no express Rule or Statute establishing a time frame for probable cause review. Therefore, Judge Brockmeyer's 72-hour rule complied with Missouri law as it existed at the time.

### Post-SB 5

Missouri law is now clear that a warrantless arrestee cannot be held more than 24 hours without a probable cause determination.  Fortunately, the above stated issues are academic in this case.  On December 18, 2014, almost nine (9) months before SB 5 became effective, the Ferguson Municipal Court changed its practice and ordered that any warrantless arrestee who could not post bond must be released within 12 hours. Shortly, thereafter, Judge Richter took over the Municipal Judge duties. Accordingly, the policies of the Ferguson Municipal Division complied with post-SB 5 Missouri law.

The foregoing is a compilation of my opinions in this case. I reserve the right to amend my report should additional information become available for my review.

The Hon. Douglas R. Beach (Ret)

## CURRICULUM VITAE

# <u>Douglas R Beach</u>

█████████████
███████

| | |
|---|---|
| Education: | New England School of Law (cum laude 1973) |
| | Central Connecticut State University (BS 1970) |

| | |
|---|---|
| Legal Experience: | Circuit Court Judge 2010 to 2018 (Presiding Judge 2017 - 2018) |
| | Associate Circuit Court Judge 2005 to 2010 (Family Court) |
| | Supreme Court of Missouri – Municipal Monitor – Judge ret. (2018-2019) |
| | JAMS -Neutral – Arbitrator/Mediation (2019 to present) |
| | Beach Stewart, Heggie & Mittleman. L.L.C (1982 – 2005) |
| | City Attorney- City of Chesterfield. Missouri 1988—2005, |
| | Business Law instructor, University College |
| | (Washington University 1977 to 1987) |

| | |
|---|---|
| Bar Memberships: | The Missouri Bar [1977] |
| | Massachusetts Bar [1973] |
| | Association of Associate and Probate Judges |
| | National Presiding Judges Association (Past President) |
| | Missouri Municipal Attorneys Association (Past President) |
| | St. Louis County Bar Association (Past President) |
| | Bar Association of Metropolitan St. Louis |
| | Lawyers Association of St, Louis |
| | Women Lawyers Association |

| | |
|---|---|
| Military Experience | United States Marine Corps 1969 to 1997 Judge Advocate |
| | Retired Lt. Col. USMC Reserve: Military Judge, Navy Commendation Medal |

BAR ASSOCIATION HONORS AND AFFILIATIONS:

Fellow-American Academy of Matrimonial Lawyers. (past President
 Missouri Chapter);
Best Lawyers in America in Family Law. 1991 – 2005;
Outstanding Young Lawyer, St. Louis County, 1982;
President St. Louis County Bar Association;
Recognized by Legal Advocates for Abused Women and the Crime Victim
Advocacy Center for work on passage of the Bond Issue for a new Family
Court facility and renovations to current civil court;

Board member Association of Family and Conciliation Courts (AFCC);
Ellen Cowell Leadership Award 2018;
Judge assigned to the Family Court, became one of the original three
(3) judges assigned to hear Domestic Violence cases;
Co-Chair of Domestic Violence Council for St. Louis County;
Statewide committee on developing the Judgment and Order for
appointment of Parent Coordinators in domestic cases;
Supreme Court Committees for Committee on Access to Family Courts
(CAFC) and Evaluation –Adult Education Committee;
Strategic Planning Committee of Court en Banc;
Faculty Futures Without Violence for training on Elder Abuse;
Traveled to Mexico for U.S. State Department on cultural exchange on
issues of Domestic Violence Against Women;
Missouri Court Management Institute;
Distinguished Service Award - National Center for State Courts 2017;
St. Louis County Bar Distinguished Service Award;
Roger P. Krumm Family Law Award from the Missouri Bar 2018;
National Association of Presiding Judges (NAPCO) past President and
Board member 2016-2019;
Hon. Tom C. Clark Award – NAPCO 2018;
Champion of Kid's Award from Kids in the Middle;
Incorporator for the City of Chesterfield and was the first City Attorney
Chesterfield, serving from its incorporation in 1988 until appointed
to the bench in 2005;
Presiding Judge St. Louis County Circuit Court 2017 -2018
Established First Veterans Treatment Court for St. Louis County
Supreme Court Retired Judge Monitor for Municipal Divisions St Louis
County
Task Force on Criminal Justice – Supreme Court Committee
    Subcommittee Costs, Fines and Fees
Commission on Racial Ethnic and Fairness
    Subcommittee Municipal Court
        Implementation of Uniform case management,
        Impact of driver's license suspensions,
National Judicial Institute on Domestic Violence – Elder Abuse Faculty
Missouri Coalition for Right to Counsel – Board Member
NCSC – Interactive Video on Courts of Limited Jurisdiction
Committee on Practice & Procedure in Municipal Division Cases – Ex
Officio assignment from Supreme Court

## TEACHING & WRITINGS

Interactive Municipal Resource Guide – Roles and purposes of limited
jurisdiction courts – Committee Chair

Lecturer/CLE:
    Municipal Judges Ethics – Mo. Municipal and Assoc. Judges Assoc.
    Family Law - Maintenance, Ethics, Custody, Experts, Valuation,
    Municipal - Judges Education, Municipal law, Constitutional issues of Land Use, Telecommunications Issues.

Speaker:
    Texas Municipal Courts – Court Reform
    Duke University – Fees, Fines and Bail reform
    NACM Annual Conference – Limited Jurisdiction

Author:
    CLE Chapter on Trial Tactics for Domestic Cases;
    Division of Marital Property, BAMSL,
    Annual update on Family law Associate Judges Conference

## DOCUMENTS REVIEWED

Osca Report 04/13/2015

St. Louis County Municipal Court Handbook

Advisory Committee of the Supreme Court Report 06/30/15

Report of the Municipal Division Work Group to the Supreme Court of Missouri 03/01/2016

*Davis v. City of Charleston, MO*., 635 F. Supp. 197 (E.D. MO. 1986)

*Gregory v. Corrigan*, 685 S.W.2d 840 (Mo. banc 1985)

Supreme Court Order 05/14/2015 Establishing Work Group

Supreme Court Order 09/19/2016 Determining Indigent Status in Municipal Division Cases

479.010 Violation of Missouri Ordinances, Jurisdiction,…MO ST 479.010

479.020 Municipal judges, selection, tenure, jurisdiction, ….MO ST 479.020

479.060 Clerks, courtroom, other employees – municipalities to… MO ST 479.060

479.070 Duties and powers of municipal judge, MO ST 479.070

479.110 Arrest without warrants, procedure, MO ST 479.110

479.359 Political subdivisions to annually calculate percentage of…., MO ST 479.359

Plaintiff's Exhibit 11 Bond Schedule

December 2014 Ferguson Municipal Court Orders

Missouri Constitution Art. 5, sec. 27

Missouri Constitution Art. 5, sec. 5

37.02 Rules—Authority for—Statutes and Ordinances Superseded

37.04 Supervision of Courts Hearing Ordinance Violations and Appendixes

37.15 Right to Release – Conditions MO. R. ORD and TRAF VIOL Rule 37.15 - Current

37.15 Right to Release – Conditions MO. R. ORD AND TRAF VIOL Rule 37.15 – Older Version

37.17 Arrest Without Warrant, MO. R. ORD and TRAF VIOL Rule 37.17 - Current

37.17 Arrest Without Warrant, MO. R. ORD and TRAF VIOL Rule 37.17 - Older Version

37.19 Modification of Conditions of Release, MO. R. ORD AND TRAF VIOL Rule 37.19 – Current

37.19 Modification of Conditions of Release, MO. R. ORD AND TRAF VIOL Rule 37.19 – Older Version

37.20 Release Hearing, MO R ORD AND TRAF VIOL Rule 37.20 – Current

37.20 Release Hearing, MO R ORD AND TRAF VIOL Rule 37.20 – Older Version

37.47 Initial Proceedings Before a Judge, MO R ORD AND TRAF VIOL Rule 37.47 – Current

37.47 Initial Proceedings Before a Judge, MO R ORD AND TRAF VIOL Rule 37.47 – Older Versions

37.65 Imposition and Payment of Fines, Fees, and Cost…., MO R ORD AND TRAF VIOL Rule 37.65 - Current

37.65 Imposition and Payment of Fines, Fees, and Cost…., MO R ORD AND TRAF VIOL Rule 37.65 – Older Version

37.435 Statement of Probable Cause, MO R ORD AND TRAF VIOL Rule 37.435 – Current

Senate Bill 5 and Amendments

Consent Decree

First Amended Class Action Complaint

Judge Richter and OSCA Report 05/11/2015

Ronald Brockmeyer deposition 02/21/2020

Stephen DeMuth deposition 12/03/20

479.360 Certification of substantial compliance, filed with state…., MO ST 479.360 and amendment

483.241 Other Clerks, Duties…,MO ST 483.241

544.170 Twenty hours detention on arrest without…., MO ST 544.170

221.510 Pending Outstanding Warrants in MULES and NCIC Systems (Jakes Law)…,MO ST 221.510

*Bearden v. Georgia*, 461 U.S. 660 (1983), 103 S.Ct. 2064, 76 L.Ed. 2d 221

*County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), 111 S. Ct. 1661, 114 L.Ed.2d 49, 59 USLW 4413

*Dixon, et al v. City of St. Louis, et al*. – Memorandum and Order

*Dixon v. City of St. Louis*, 950 F.3d 1052 (8th Cir. 2020)

DOJ Report 03/04/2015

*Evans v. City of Helena-West Helena, Arkansas*, 912 F.3d. 1145 (2019)

*Gerstein v. Pugh*, 420 U.S. 103 (1975), 95 S.Ct. 854, 43 L.Ed.2d 54

*Hamilton v. City of Hayti*, Missouri, et al – No. 18-3450

Missouri Municipal Division brochure

Missouri Municipal Division Courts Know Your Rights

2

*O'Donnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018)

*Portis v. City of Chicago, Ill*, 613 F.3d 702 (7th Cir. 2010)

Local Rule 69 Municipal Division

*Walker v. City of Calhoun, GA*, 901 F.3d 1245 (11th Cir. 2018)

*Williams v. Illinois*, 399 U.S. 235 (1970), 90 S.Ct. 2018, 26 L.Ed.2d 586

*Williams v. City of Sherwood* – No. 18-2982