Honorable Douglas R. Beach
April 01, 2021

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KEILEE FANT, et al,

    Plaintiffs,

vs.                                          Case No. 4:15-CV-00253-AGF

THE CITY OF FERGUSON,

    Defendant.

                               /

REMOTE VIDEO-RECORDED DEPOSITION OF
HONORABLE DOUGLAS R. BEACH
{Pages 1 - 250}

Thursday, April 1, 2021
9:00 a.m. CST - 4:14 p.m. CST
U.S. Legal Support, Inc.
225 Water Street
Suite 1450
Jacksonville, Florida  32202

Stenographically Reported By:
Deanne M. Moore, RMR, CRR

Honorable Douglas R. Beach
April 01, 2021

1    Q   Let's say, if we were to picture a pie chart

2 here, what percentage of your work during -- from '05 to

3 '16 was related to family court?

4    A   That would be 99.

5    Q   Okay.  That's helpful.

6        You said when you were a presiding judge, you

7 did preliminary hearings a little bit?

8    A   Presiding judge, you do a little bit of

9 everything.  You know, you get writs, you get warrants,

10 you get walk-in issues, but one of the things that you

11 do is preliminary hearings.  I did preliminary hearings

12 in the beginning for about three or four months, but

13 they got to be a bit more than -- a lot more than I --

14 that was handled.  Most of the preliminary hearings were

15 handled by the associate circuit court judges that are

16 in -- the two of them, but I would get a couple of the

17 -- some of the -- some of the spillovers.

18    Q   And what's an -- I'm going to -- and I -- I

19 understand that pauses and interruptions can be a little

20 bit more difficult, and there may be times where I -- I

21 interrupt you only because I want to make sure, as you

22 mentioned in the beginning, how long this is going to

23 be -- I want to really direct us to -- to things that I

24 think are going to be the most important, okay?

25        You mentioned you did preliminary hearings.

Honorable Douglas R. Beach
April 01, 2021

1  years of supervision that we're talking about?

2      A    Not -- no.

3      Q    Okay.  Are you holding yourself out to be an

4  expert in constitutional law?

5      A    No.

6      Q    Are you holding yourself out to be an expert

7  in -- in municipal law?

8      A    I think I am.

9      Q    Okay.

10     A    Yes.

11     Q    So you believe that you are an expert in

12 municipal law.  Very good.

13          Are you holding yourself out to be an expert

14 in -- in Missouri statutory interpretation?

15     A    Yes.  In this case I am, yes.

16     Q    Okay.  Before you were retained -- and we'll

17 talk plenty about how and when you were retained, but

18 before you were retained in this case, do you think that

19 you already possessed the necessary qualifications to be

20 an expert?

21     A    I do.

22     Q    Okay.  Do you think that you possessed the

23 necessary -- like the -- the important underlying facts

24 in order to serve as an expert, or did a lot of those

25 facts -- did you become aware of a lot of those facts

Honorable Douglas R. Beach
April 01, 2021

1       A    No.  I think -- I was retained as a -- in a

2  family law case that ended up resolving itself, so I

3  didn't end up being -- having to -- so you say was I

4  retained.  Yes, I was retained, but it didn't go

5  anywhere, so . . .

6       Q    Uh-huh.  Okay.  When was that?

7       A    When?

8       Q    Yes.

9       A    Well, it had to be after 2018.  I'm pretty sure

10  it was like the end of '18, first part of '19.

11      Q    Okay.  And you have not been retained or served

12  as an expert in any other cases besides that one family

13  law case?

14      A    No.  After that I decided that I wasn't going

15  to in general get involved with the family law

16  expertise, being an expert.

17      Q    Okay.  When you were at St. Louis County when

18  you were at the 21st Judicial Circuit, you served on

19  something called the jail population review team, right?

20      A    Correct.

21      Q    What was the purpose of that team?

22      A    Well, the county had -- I was a participant in

23  the McArthur Foundation activities with regards to

24  pretrial confinement, and as the presiding judge in --

25  back in 2018, one of the things that we would do, if you

Honorable Douglas R. Beach
April 01, 2021

1  were a member of the team, we would work on pretrial

2  issues in St. Louis County.

3        And we would -- having gone to a meeting say --

4  there was some other cities or counties or jurisdictions

5  which had these pretrial committees to go in and to see

6  if you could identify reasons for people being held in

7  pretrial for 90 days, 100 days, something like that.

8        So as the presiding judge, again, I convened a

9  -- this committee.  And it included everybody that is

10  involved with the criminal justice system from the

11  jailers to the prosecutors to the court to the

12  administrators to the clerks, to all -- everybody, the

13  police departments, for reviewing that and see if we

14  could find ways and to assist to reduce the length of

15  time it took for people to be held in pretrial

16  confinement in St. Louis County.

17    Q   Okay.  So if I understand correctly, the

18  purpose of that team was to -- was to reduce the amount

19  of time that people were spending in jail before trial;

20  is that right?

21    A   That's correct?

22    Q   Why is that goal important?

23    A   Why wouldn't it be important?  That people

24  should be not in -- confined unless they have to be, and

25  administration shouldn't be part of the reasons that

Honorable Douglas R. Beach
April 01, 2021

1      Q   Okay.  And I know we talked about your private

2   practice, and I think we agreed that -- I think you said

3   that most of your private practice was family law

4   related, right?

5      A   Yes.

6      Q   Was some of it as a practitioner in the

7   municipal courts?

8      A   No.  Very little.  Somebody gets a ticket,

9   someone that you know, can you help me.  I'd go to --

10   some young kid next door that got picked up with

11   drinking in the Irish Day Parade or something in the

12   city so I went to municipal court, so, yeah, that kind

13   of stuff, but maybe five.

14      Q   You're saying five -- five total incidents?

15      A   Yeah.

16      Q   So very few; is that fair to say?

17      A   Very few.

18      Q   Okay.  During your time as supervising judge,

19   how many -- how many physical courts do you think you

20   visited?

21      A   Well, probably less than half, but probably

22   pretty close to half, so, I don't know.  There's --

23   actual divisions -- some are -- you know, Normandy has I

24   think six courts there.  St. Ann has six courts there;

25   you know, that's 12.  But I have been -- probably

Honorable Douglas R. Beach
April 01, 2021

1  say how if I fit into whatever the defense process is.

2  They asked me to do something.  I did it.

3      Q   Okay.  And so in terms of your -- your opinion

4  about how it fits in, you don't have one; is that fair

5  to say?

6          MR. HELLMICH:  Same objection.

7      A   Yes.  I'm not a strategist.  I'm just doing

8  what I'm asked to do.

9      Q   Okay.  Do you think that your knowledge is

10  going to help the trier of fact to understand the

11  evidence in this case?

12          MR. HELLMICH:  Same objection.

13      A   I do.

14      Q   I'm sorry?

15      A   I do.

16      Q   You do?  Can you tell me how?

17          MR. HELLMICH:  Same objection.  I don't know

18      how he -- I don't know how he can answer that.

19      A   I'm speculating as to how I help, and, you

20  know, I can't tell you how I specifically help.  I may

21  or may not.  Nobody may pay attention to it at all.  I

22  don't know.

23      Q   Okay.  But what do you think that the -- I

24  mean, your report lays out a series of, you know -- it's

25  20 pages long, and what do you think the benefit is to

Honorable Douglas R. Beach
April 01, 2021

1  the trier of fact in order to -- as we go through this

2  case, what do you think that that report is bringing to

3  the trier of fact?

4          MR. HELLMICH:  Same objection.  I don't think

5      he was engaged to -- on that particular issue,

6      so . . .

7      A   I don't -- I don't think I can have an opinion.

8  I don't -- I don't know.  I think that it's -- those are

9  facts, was -- were they following the law or not.

10  That's a -- that's a question that someone needs to

11  know, and can a layperson -- or do you need someone that

12  knows something about it.  That's all I -- that's all I

13  know.

14      Q   Okay.  And so your opinions are based on

15  whether or not you think that Ferguson's court was

16  following the law or not, right?

17      A   Correct.

18      Q   Okay.  Do you hold yourself out to be an expert

19  on -- on the operations of the Ferguson court from 2010

20  to present?

21      A   No.

22      Q   On how many occasions have you been to the

23  Ferguson municipal court when it was in session?

24      A   I believe twice, maybe.

25      Q   Do you remember when those occasions were?

Honorable Douglas R. Beach
April 01, 2021

1  or doing most of those things even before they passed

2  the legislature.

3      Q   Okay.

4      A   And so post and before.

5      Q   So you said one of the things that you were

6  asked to do is you were asked to -- to determine what

7  was happening in Ferguson at the time, right?

8      A   Yeah, I believe I said that, based upon what

9  Judge Brockmeyer said he did.

10     Q   Okay.  And so I want to make sure we understand

11 that -- that your only understanding of what was

12 happening at the time is based on what --

13         Well, let me -- let me rephrase the question so

14 it's better.

15         If we're talking about your understanding of

16 what was happening at the time, what is that -- that

17 knowledge based on?

18     A   Primarily upon Judge Brockmeyer's deposition

19 that you took.

20     Q   Okay.  What else?

21     A   Primarily that because he -- he's the evidence

22 of the -- the part that I'm speaking to and -- and that

23 how he -- how he did it.  If there's other evidence,

24 that's what I relied on his deposition.

25     Q   Okay.  So what other evidence besides his

Honorable Douglas R. Beach
April 01, 2021

1  the manner in which Ferguson's court conducted indigency

2  determinations?

3      A    My understanding is that if Judge Brockmeyer

4  gave somebody -- or was fining them, that he had a

5  conversation with them about their ability to pay, and

6  if they couldn't pay it, then he would give them time in

7  which to pay it, and he would direct that they would --

8  they would then come on Fridays to make payment once a

9  month.  If they did not come on that Friday and make a

10  payment, then they were to come to court on the

11  Wednesday -- the first Wednesday of the month and

12  explain to the court why they couldn't or didn't make

13  the payment.

14      Q    Okay.  And what is your understanding of this

15  area, what -- what is that based on?

16      A    Brockmeyer's testimony.

17      Q    Okay.  Any other sources?

18      A    No.

19      Q    And you said -- my -- I believe you said that

20  your understanding was that Brockmeyer would have a

21  conversation with people who pled guilty; is that

22  correct?

23      A    Whether -- when he was going to fine somebody

24  or do something that would cause money to be paid, he

25  would have -- he would have a conversation about their

Honorable Douglas R. Beach
April 01, 2021

```
 1      Q   My question is:  What principles and methods
 2  did you use in order to -- to draft this report?
 3          MR. HELLMICH:  Object to the form of the
 4      question as being vague.
 5      A   I don't understand what you mean by -- maybe
 6  you're asking for -- I don't understand your question.
 7      Q   Okay.  Well, when you sat down to write the
 8  report, what were some of the -- what were some of the
 9  ground rules; what were some of the things that you were
10  trying to cover?
11      A   Well, when I sat -- when I sat to write it, it
12  was a matter of sitting down, and my understanding, it
13  was supposed to be somewhat of a history of myself and
14  how I get there.
15          And then the question was looking at these --
16  your two sections of your two class -- what we call
17  class 1 and class 2 and take those and then analyze
18  them, so I read them over looking at the issue of the
19  state statutes rather than any allegations of what
20  somebody said happened or didn't happen.
21          And then based upon -- I was asked to say
22  whether or not those -- what was the law at the time
23  that Judge Brockmeyer was the judge, and since your
24  lawsuit goes from until today or whatever, then the post
25  2000- -- the SB5 type of an approach.
```

Honorable Douglas R. Beach
April 01, 2021

1      Q    Okay.  And you've said you've read the -- the

2   complaint in this case, correct?

3      A    Yes, right.

4      Q    Do you believe that your report refutes any of

5   the claims or allegations in the complaint?

6           MR. HELLMICH:  Object, calls for an opinion

7      that's outside the scope of his engagement, I think.

8      A    My report talks about very specific issues, and

9   to -- whether that refutes it or not, I'm not sure.

10  And -- and I think it depends on how you want to read

11  the -- the petition.

12          It's very narrow, I thought, in terms of the

13  overall what's been -- you know, like you've been asking

14  me a lot of questions that I don't think had anything to

15  do with what I was asked to do, but they -- I understand

16  how they may fit into your overall context.

17          So I don't know that I think it refutes it.  I

18  just think it says what it -- that -- what I interpret

19  the law to have said, and it's going to be for somebody

20  else to apply and decide whether or not what Judge

21  Brockmeyer did in particular -- because I have looked at

22  both before and after, but it's -- really the issue is

23  before, I believe.

24          But even if it's not, I still think that --

25  that the court, as I understand it, is in compliance

Honorable Douglas R. Beach
April 01, 2021

 1  with the state law.  And I'm talking state law, not the

 2  Constitutional law.

 3      Q   All right.  And so there's nothing that -- I

 4  just want to sort of summarize to make sure I'm

 5  understanding it correctly.

 6          There's nothing you can think of in your report

 7  that refutes any of the allegations in the complaint; is

 8  that fair to say?

 9          MR. HELLMICH:  Same objection.  I mean, the

10      complaint is 50 pages long.  I don't know how he

11      could possibly answer that.

12      A   I don't -- I don't believe so.  I mean, I

13  just -- I don't -- I didn't read the -- my -- I didn't

14  see my part of it as doing anything but fact finding or

15  making -- opine as to this one issue, were they or

16  weren't they.  That's not whether -- I'm not sure that

17  even if -- I don't know.  I don't know if that refutes

18  it or not.  I really don't.

19      Q   Okay.

20      A   My concern --  my concern was to read it and

21  say -- tell you what -- opine as to what I thought.

22      Q   All right.  And is it correct that you do not

23  hold yourself out to be an expert on -- on the city's

24  liability in this case?

25      A   I have no idea about city liability here.

Honorable Douglas R. Beach
April 01, 2021

1      Q    Right.  And in the process of drafting this

2   report, you didn't talk to any Ferguson employees,

3   correct?

4      A    Correct.

5      Q    And you didn't talk to anybody who had ever

6   been jailed by Ferguson; is that correct?

7      A    That would be correct.

8      Q    Did you talk to anybody who was ever present in

9   court in front of Judge Brockmeyer?

10     A    No.

11     Q    Did you -- did you review any -- any racist

12  emails that were sent by City of Ferguson employees?

13         MR. HELLMICH:  Object to the form of the

14      question as being argumentative.

15     A    I'm not sure what that means, but, no.

16     Q    Okay.  Did you talk to Judge Brockmeyer

17  separately or -- did you talk to Judge Brockmeyer at

18  all, I should say?

19     A    No.

20     Q    Okay.  And you didn't review correction officer

21  testimony, right?

22     A    No.

23     Q    You didn't review the testimony of prosecutor

24  Stephanie Karr?

25     A    I saw her name mentioned, but that's it.

Honorable Douglas R. Beach
April 01, 2021

1  Whatever is in there in his depo is all I know.

2      Q   Okay.  You did not review the testimony of

3  court clerks, Mary Ann Twitty or Chrissy Lampersech

4  (phonetic)?

5      A   No, except what you brought up in the

6  deposition of Brockmeyer.

7      Q   Right.  Only as it would fit within

8  Brockmeyer's -- Brockmeyer's testimony.  But you didn't

9  review any of those -- because those women were also

10  deposed, and you didn't review their depositions,

11  correct?

12      A   I did not.

13      Q   Okay.  All right, Judge.  Could I ask you to

14  turn to your -- your resumé or your CV.

15          Could I ask you to turn -- let's just start:

16  Do you recognize these three pages to be the CV that you

17  submitted within your report, right?

18      A   Yes.

19      Q   Great.  Could I ask you to turn to the third

20  page?  We looked -- we talked a little bit earlier, I

21  just want to make sure, I've got author of three

22  different documents:  "CLE Chapter on Trial Tactics For

23  Domestic Cases," "Division of Martial Property" and

24  "Annual Update on Family Law."

25          Any other -- besides those three, any other

Honorable Douglas R. Beach
April 01, 2021

1    Q   Okay.  Do you know whether or not the topic of

2  those compliance hearings relates to Missouri -- to

3  Ferguson's courts compliance with Ferguson law?

4    A   I do not.

5    Q   Okay.  So you're not sure whether that's an

6  issue that gets addressed?

7    A   I -- I'm not sure whether they're -- they're

8  worried about there being compliance in Missouri law.

9    Q   Okay.  Another thing -- another document that

10  you rely on is the Department of Justice report.  How

11  did the -- and that's what is often called the Ferguson

12  report, just so that we understand each other.

13       How did the Department of Justice report inform

14  your findings or the work that you did to draft this

15  report?

16    A   Well, I looked for, you know, what their report

17  said and -- in terms of -- and then seeing what they --

18  what their positions were and then looked -- could

19  analyze -- thinking to my -- to myself and analyzing

20  what the state's position was.

21       And again going back to my -- my task here is

22  to say were they in compliance with state law, not

23  necessarily federal law, and that was in the -- in

24  looking at that -- to the extent that that may or may

25  not have informed me, I thought it was prudent that I

Honorable Douglas R. Beach
April 01, 2021

1  to express and tell you what -- whether they can or

2  cannot comply on a financial side before you're going to

3  incarcerate them.

4      Q   Okay.  And I -- I would imagine that some of

5  these documents you reviewed ultimately did not inform

6  your final report; is that correct?

7      A   That would be correct.

8      Q   Sure.  And is Bearden one of those documents?

9      A   I don't -- I guess I'm not sure how to -- give

10 you -- be responsive.  I think Bearden comes into play

11 as you're reviewing the process that I was analyzing or

12 looking at and the changes in the law and the rules in

13 the intervening time from the -- the -- just prior to

14 and after Senate Bill 5 and as where they -- as where

15 they headed.

16      And they seemed to -- you know, I read the

17 rules as being more particular about having show cause

18 hearings which I thought probably came from Bearden, so

19 to say that it -- you know, it had some effect on there,

20 but I wasn't looking for Bearden applications in what I

21 was doing.

22      Q   Okay.  Another case on there was County of

23 Riverside versus McLaughlin.  That's just right

24 underneath Bearden.  Did anything that you read in the

25 County of Riverside case influence or relate to

Honorable Douglas R. Beach
April 01, 2021

1  something that you wrote in your report?

2      A    Not directly.

3      Q    Okay.  How about the Dixon versus City of

4  St. Louis?

5      A    Well, I thought that was interesting, I think

6  particularly the timeline.  My recollection was it's

7  like -- it was around 2011 that they were talking about.

8  But you know, I don't think that one's over, is it?

9          So -- but I, you know -- I'm -- you know, I

10  mean, I thought all those things are relevant in looking

11  at what is the stature of where you are, but not

12  necessarily on the state law side and not necessarily

13  what your petition is seeking to do.  You're looking at

14  a different -- in a different viewpoint, at least in my

15  mind.

16          So from, again, what I was asked to opine on I

17  don't know that it had a lot to do, but I -- I took it

18  in.  I thought it was relevant enough to review and to

19  consider.

20      Q    Okay.  So you reviewed it, and it -- fair to

21  say you can't particularly identify a section of the

22  report that was informed by your review of that

23  document?

24      A    I don't -- no, I don't think there was a

25  particular part that was informed by that.  I don't -- I

1  task, to be honest with you.  But to summarize it, I --

2  I don't know, it's -- it's a summary based upon what was

3  told by Judge Brockmeyer in conjunction with what the

4  rules said and then talking about the element of the

5  rules as they are today.

6       And I thought it was -- the summary was

7  important to show that it's -- things have changed since

8  2010 and Brockmeyer's reign when he was the judge in

9  that division.

10      So summary, I don't know, you know, you're --

11  you're catching on words that just frankly came out of

12  my brain but didn't mean as much as you seem to be

13  attaching them -- to them, so I don't know what -- I

14  don't really know how to answer any more than that.

15      Q   Okay.  Am I correct that your report does

16  not -- does not seek to -- to have you bring your

17  expertise into any Ferguson city practices as -- as they

18  relate to jailing?

19      A   Corrects.

20      Q   Or -- or any city police practices?

21      A   Correct.

22      Q   Okay.  And then at -- I'm at the second full

23  paragraph on page 5.  You say, "My opinions reached in

24  this case are based on my review of the referenced

25  material and my above-described knowledge and experience

Honorable Douglas R. Beach
April 01, 2021

1  that regard, no.

2      Q   Are of any -- are you aware of anything the

3  court did in that regard?

4      A   I'm -- I'm not aware, but based upon the

5  testimony, it happened all the time.

6      Q   Tell me what you mean by "all the time."

7      A   He couldn't -- my recollection of his

8  deposition, he couldn't tell you how many times he --

9  he -- I think he even said that.  It happened all the

10  time.  He would run into people in the grocery store or

11  something, and someone would say something.

12          But, you know, almost everybody that comes in

13  says that, and most of the time people are -- I -- I

14  can't -- I don't know what they were doing specifically.

15      Q   All right.  I want to ask you about number 4.

16  Would you let me know once you've read number 4?

17      A   Okay.

18      Q   I want to make sure I understand how opinions 3

19  and 4 interact.

20          Am I right to read number 3 as to be the

21  pre-SB5 era and number 4 to be the to post-SB5 area?

22      A   As I'm looking at it, yes.

23      Q   Okay.  That's helpful.

24          And you agree that the entirety of this opinion

25  is based off of your understanding of Missouri state law

Honorable Douglas R. Beach
April 01, 2021

1   and not federal Constitutional law, right?

2        A    I've said before.

3        Q    And that applies here, right?

4        A    Yes.

5        Q    Okay.  You say, "Following the enactment of

6   SB5, Missouri statutes and rules provide that the

7   municipal judge must consider a defendant's ability to

8   pay when assessing fines."

9             What is your understanding of the precise

10  things that a judge must consider when assessing fines?

11       A    I don't think it says a precise thing of what a

12  judge must consider.

13       Q    Okay.  So are there any specific things that --

14  that your understanding of these laws and rules say that

15  a judge must consider?

16       A    There's a whole bunch.  There's a section in it

17  that describes everything from whether -- you know,

18  their jobs, their -- their families, their

19  relationships, whether they have a driver's license.

20  There's a whole litany, and in the midst of all those is

21  a discussion about the ability to pay.

22       Q    All right.  And is your understanding that

23  every time a judge assesses a fine now in the post-SB5

24  era, that the judge must go through those -- that

25  litany?

Honorable Douglas R. Beach
April 01, 2021

1  schedule, they could be held pursuant to that bond, but

2  if there's not --

3       Q   Okay.

4       A   -- on the bond schedule, then they need to be

5  released within 24 hours.

6       Q   All right.  And -- and you emphasized that --

7  that "or other process," correct?  That's important for

8  you in the interpretation of the statute, right?

9       A   It is.

10      Q   And one of the things that -- and you believe

11  that the "or other process" means that the -- that the

12  bond schedule was a sufficient process; is that correct?

13      A   That's correct.

14      Q   And what's your citation for that?

15      A   I don't have one.

16      Q   Did you do any research about this topic?

17      A   I couldn't find anything that would suggest --

18  say that to me.

19      Q   What did you look for?

20      A   A definition of "other process."

21      Q   Uh-huh.

22      A   I'm trying to think of what it might be that --

23  what the other process might be.  What the --

24          I also looked at Senate Bill 5 which dropped

25  that out which meant that -- to me that there was

Honorable Douglas R. Beach
April 01, 2021

1   potentially -- no one else might -- could figure it out

2   either.

3       Q   Okay.  Did you -- so I'm getting ahead of

4   myself here on exhibits.  Can we please label 544.170 as

5   exhibit -- as Exhibit 7.  And then I'm going to show you

6   Exhibit 8, which is MO PRAC, 28 MO PRAC 1 -- section

7   1.7.  It is called the 24-hour rule.

8           Judge, did you review this document in reaching

9   your conclusion about probable cause?

10      A   No, I did not.

11      Q   Why not?

12      A   I don't know why not.

13      Q   Will you read first -- will you read the first

14  sentence here at paragraph A?

15      A   "Effective August 2005, a person arrested

16  without a warrant must be released unless a warrant is

17  issued by a judge within 24 hours of the arrest."

18      Q   And this was written by Judge Dueker, correct?

19      A   That's what it says.

20      Q   Yeah.  You disagree with Judge Dueker, don't

21  you?

22      A   That's -- yes, I do.

23      Q   Okay.  You think Judge Dueker's interpretation

24  is wrong?

25      A   Yes, I do.

Honorable Douglas R. Beach
April 01, 2021

1    Q   Okay.  And you can't cite to any authority for

2  Judge Dueker being wrong?

3    A   I -- I can't find anyone that says he's right

4  either, but I have -- I don't know if there's any cases.

5  If there's an a case on it that I missed, then I'm glad

6  to look at it.

7    Q   Have you reviewed this case that Judge Dueker

8  notes here, In Re:  Green, 593 S.W.2d 518?

9    A   I can't say that as I have.  It sounds familiar

10 for some reason, but I don't know that I -- I don't know

11 that I have.

12   Q   Would you agree that -- that if Judge Dueker is

13 right about a 24-hour requirement, would you agree that

14 your opinion in number 7 is wrong?

15   A   If Judge Dueker is right?

16   Q   Yes.

17   A   Well, if he's -- if he's right, then I'm wrong.

18   Q   Okay.

19   A   If he's right.  But just because he's Judge

20 Dueker doesn't mean he's right.

21   Q   There's not a lot Judge Dueker and I agree on,

22 I can tell you that much, but we may agree on this one.

23       Let's look at opinion 8, Judge.

24   A   Okay.

25   Q   You refer here to "the policies, practices and

Honorable Douglas R. Beach
April 01, 2021

1  have been assessed a fine, a fee, have some -- be on

2  some sort of a bond either whether -- a bond, or so --

3  so they therefore are surcharged.  A surcharge comes

4  from a surcharge based upon you did something that

5  caused a surcharge to be assessed.  So the only way

6  you're going to be there is you had to have at some

7  point appeared before the court.

8       Q   Okay.  And do you see the last sentence of this

9  paragraph, "This is further supported by the fact that a

10 substantial percentage of defendants were given time to

11 pay their fine"?

12      A   Yes.

13      Q   What is your basis for that sentence?

14      A   I believe I -- that came from Brockmeyer's

15 statement.  I think he said that.  That's the only basis

16 I have.

17      Q   Do you -- did he use the term a substantial

18 percentage?

19      A   I'm not sure he did.

20      Q   Okay.  So your only reliance on -- when you

21 state that there is -- that a substantial percentage of

22 people were given time, the only thing you're relying on

23 there is somewhere in Brockmeyer's deposition?

24      A   Yes.  I don't --

25      Q   Are you able to tell me what page?