**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

**KEILEE FANT, et al.**

      **Plaintiffs,**     **Case No. 4:15-CV-00253 AGF**

**v.**

**THE CITY OF FERGUSON,**

      **Defendant.**

**<u>PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY AND
EXCLUDE THE TESTIMONY OF TONY WILKES</u>**

## <u>TABLE OF CONTENTS</u>

I.     MR. WILKES IS NOT QUALIFIED TO OFFER THE PROPOSED OPINIONS ...........3

     A.     Mr. Wilkes Does Not Have Broad Experience Dealing with Conditions of Confinement in Correctional Systems Similar to the Ferguson Jail. .......................3

     B.     Mr. Wilkes has Never Previously Provided Expert Testimony. .............................5

II.     MR. WILKES'S PROPOSED OPINIONS WILL NOT ASSIST THE TRIER OF FACT ...............................................................................................................................5

     A.     Mr. Wilkes's Proposed Opinions Are Not Based on Sufficient Facts, Simply Recast the City's Positions, and Ignore Key Evidence. ...........................................5

     B.     Mr. Wilkes's Proposed Legal Conclusion Opinions and Opinions on Witness Credibility Will Not Assist the Trier of Fact and Are Not Admissible. ................11

            1.     Mr. Wilkes Cannot Testify to the Legal Conclusion that Detainees' Constitutional Rights Have Not Been Violated. .......................................11

            2.     Mr. Wilkes Cannot Opine on Plaintiffs' or the City's Witness's Credibility. ...............................................................................................12

III.     MR. WILKES'S PROPOSED TESTIMONY IS NOT THE PRODUCT OF A RELIABLE METHODOLOGY RELIABLY APPLIED TO THE FACTS OF THE CASE ............................................................................................................................14

     A.     Mr. Wilkes Fails to Identify or Consistently Apply Any Set of Applicable Standards, and Disregards or Misapplies Widely Accepted Standards, In Reaching His Opinions. ...........................................................................................15

            1.     Mr. Wilkes Ignores Many Applicable Standards and Then Only Selectively Applies Certain ACA Standards. ............................................15

            2.     Mr. Wilkes Misguidedly Relies on the City's MPCCF Certification Files in Lieu of Standards. .........................................................................18

            3.     Mr. Wilkes's Failure to Apply Applicable Standards Requires Exclusion. ..................................................................................................19

     B.     Mr. Wilkes's Experience Is Not a Substitute for a Methodology. ........................20

     C.     Parroting the City's Positions and Ignoring Contradictory Evidence is Not a Methodology. .........................................................................................................22

## TABLE OF AUTHORITIES

<u>**Page(s)**</u>

### CASES

*Ahlberg v. Chrysler Corp.*,
  481 F.3d 630 (8th Cir. 2007) ................................................................14

*Beving v. Union Pac. R.R. Co.*,
  447 F. Supp. 3d 786 (S.D. Iowa 2019) ....................................................21

*Bloom v. Toliver*,
  No. 12–CV–169–JED–FHM, 2015 WL 12745090 (N.D. Okla. Sept. 23, 2015)..................20

*Bolton v. Goord*,
  992 F. Supp. 604 (S.D.N.Y. 1998)..........................................................17

*City of Tuscaloosa v. Harcros Chems.*,
  158 F.3d 548, 562 (11th Cir. 1998) ........................................................14

*Cole v. Homier Distrib. Co.*,
  599 F.3d 856 (8th Cir. 2010) ..........................................................2, 11

*Concord Boat Corp. v. Brunswick Corp.*,
  207 F.3d 1039 (8th Cir. 2000) ............................................................10

*Cox v. Glanz*,
  No. 11–CV–457–JED–FHM, 2014 WL 916644 (N.D. Okla. Mar. 10, 2014), *rev'd and
  remanded in part on other grounds*, 800 F.3d 1231 (10th Cir. 2015) ....................20

*Cunningham v. Arizona*,
  2013 WL 3335190, No. CV 12–00313–PHX–FJM, 2013 WL 3335190 (D. Ariz. July 2,
  2013) ....................................................................................20

*Dancy v. Hyster Co.*,
  127 F.3d 649 (8th Cir. 1997) ..............................................................4

*Daubert v. Merrell Dow Pharms., Inc.*
  509 U.S. 579 (1993).............................................................2, 14, 19, 21

*Davis v. Simon Contrs.*,
  No. 8:19-CV-2462021 U.S. Dist. LEXIS 71593 (D. Neb. Apr. 12, 2021)............................19

*Garnac Grain Co., Inc. v. Blackley*,
  932 F.2d 1563 (8th Cir. 1991) .............................................................4

*Hale Cnty. A & M Trans., LLC v. City of Kansas City*,
  998 F. Supp. 2d 838 (W.D. Mo. 2014) ....................................................13

*Henry v. Johnson*,
　　No. 16-4249-CV-C-WJE, 2018 U.S. Dist. LEXIS 232404 (W.D. Mo. Jul. 10, 2018)..........21

*Hill v. Fikes Truck Line, LLC*,
　　No. 4:11-CV-816 CAS, 2012 U.S. Dist. LEXIS 152581 (E.D. Mo. Oct. 24, 2012).............22

*Holloway v. Ameristar Casino St. Charles, Inc.*,
　　No. 4:07 CV 218 DDN, 2009 U.S. Dist. LEXIS 118349 (E.D. Mo. Dec. 18, 2009) ..............5

*In re Dicamba Herbicides Litig.*,
　　No. MDL No. 2820, 2019 U.S. Dist. LEXIS 206589 (E.D. Mo. Nov. 27, 2019) .................19

*Kinder v. Acceptance Ins. Cos.* (*In re Acceptance Ins. Cos. Sec. Litig.*),
　　423 F.3d 899 (8th Cir. 2005) ........................................................................................12, 22

*Kumho Tire Co. v. Carmichael*,
　　526 U.S. 137 (1999)...........................................................................................................21

*Lift Truck Lease & Serv. v. Nissan Forklift Corp.*,
　　No. 4:12-CV-153 CAS2013, 2013 U.S. Dist. LEXIS 87391 (E.D. Mo. June 21, 2013)..........4

*Marmo v. Tyson Fresh Meats, Inc.*,
　　457 F.3d 748 (8th Cir. 2006) .............................................................................................11

*Metcalf v. Lowe's Home Ctrs., Inc.*,
　　No. 4:09-CV-14 CAS, 2010 U.S. Dist. LEXIS 40604 (E.D. Mo. Apr. 26, 2010).................22

*Meterlogic, Inc. v. KLT, Inc.*,
　　368 F.3d 1017 (8th Cir. 2004) ............................................................................................23

*Miravalle v. One World Techs., Inc.*,
　　No. 4:18 CV 304 JMB, 2021 U.S. Dist. LEXIS 233464 (E.D. Mo. Dec. 7, 2021) ...............14

*Morris v. Hockemeier*,
　　No. 05-0362-CV-W-FJG, 2007 U.S. Dist. LEXIS 25167 (W.D. Mo. Apr. 4, 2007) ............20

*Murphy v. FedEx Nat'l LTL, Inc.*,
　　618 F.3d 893 (8th Cir. 2010) .............................................................................................11

*Neb. Plastics, Inc. v. Holland Colors Americas, Inc.*,
　　408 F.3d 410 (8th Cir. 2005) ..............................................................................................5

*Neuharth v. NACCO Materials Handling Group, Inc.*,
　　CIV. 01-4034-KES, 2002 U.S. Dist. LEXIS 28674 (D.S.D. Dec. 16, 2002) .................20, 21

*Nichols v. Am. Nat'l Ins. Co.*,
　　154 F.3d 875 (8th Cir. 1998) .............................................................................................13

*Norman v. Marten Transp., Ltd.*,
　　No. 4:08CV01695 AGF, 2011 U.S. Dist. LEXIS 78765 (E.D. Mo. July 20, 2011)...............13

*Novotny v. Weatherford Int'l, LLC*,
　　No. 1:16-CV-260, 2017 WL 5987826 (D.N.D. Oct. 25, 2017)...............................19

*Presley v. Lakewood Eng'g & Mfg. Co.*,
　　553 F.3d 638 (8th Cir. 2009) ...............................................................2

*RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*,
　　No. 5:18-cv-06037-DGK, 2021 U.S. Dist. LEXIS 153591 (W.D. Mo. Aug. 16, 2021) ........22

*Robles v. United States*,
　　No.: 2:19-cv-111, 2020 WL 6533651 (E.D. Va. Aug. 13, 2020) .........................20

*S. Minn. Beet Sugar Coop v. Agri Sys.*,
　　No. 17-cv-5552, 2020 U.S. Dist. LEXIS 157852 (D. Minn. Aug. 31, 2020) .........................3

*Schmidt v. City of Bella Villa*,
　　557 F.3d 564 (8th Cir. 2009) ...............................................................3

*Schwab v. Nissan N. Am., Inc.*,
　　502 F. Supp. 2d 980 (E.D. Mo. 2007)...................................................21

*Soyring v. Fehr*,
　　No. 05-1900, 2006 U.S. Dist. LEXIS 97169 (D. Minn. July 5, 2006) .................................22

*Spire Stl Pipeline Llc v. 3.31 Acres*,
　　No. 4:18 CV 1327 SRC / DDN, 2021 U.S. Dist. LEXIS 41203 (E.D. Mo. Mar. 5, 2021) ....14

*Storie v. Duckett Truck Ctr., Inc.*,
　　No. 4:06 CV 1238 DDN, 2007 U.S. Dist. LEXIS 92083 (E.D. Mo. Dec. 14, 2007) .........3, 12

*Ulibarri v. City & Cnty. of Denver*,
　　Civil Action No. 07-cv-01814-WDM-MJW, 2011 U.S. Dist. LEXIS 69402 (D. Colo. June 28, 2011) ...............................................................16

*Union Pac. R.R. Co. v. Progress Rail Servs. Co.*,
　　778 F.3d 704 (8th Cir. 2015) ...............................................................14

*United States v. Benton*,
　　890 F.3d 697 (8th Cir. 2018) ...............................................................11

*United States v. Frazier*,
　　387 F.3d 1244 (11th Cir. 2004) ...............................................................14

*United States v. Klaphake*,
　　64 F.3d 435 (8th Cir. 1995) ...............................................................11

*United States v. Merrell*,
   842 F.3d 577 (8th Cir. 2016) ................................................................................2

*Unknown Parties v. Johnson*,
   No. CV-15-00250-TUC-DCB, 2016 U.S. Dist. LEXIS 189767 (D. Ariz. Nov. 18, 2016)....17

*Weitlauf v. Parkway Sch. Dist.*,
   Case No. 4:07CV407SNL, 2008 U.S. Dist. LEXIS 14469 (E.D. Mo. Feb. 26, 2008)............5

*Wine v. Comer*,
   No. 4: 20 CV 1721 DDN, 2022 U.S. Dist. LEXIS 41794 (E.D. Mo. Mar. 9, 2022)..............19

## STATUTES AND RULES

Fed. R. Evid. 702 ..............................................................................................................1, 2, 14

## **INTRODUCTION**

Defendant, the City of Ferguson (the "City"), has disclosed Tony Wilkes as its proposed jail conditions expert in this case.  Mr. Wilkes seeks to opine that the conditions of confinement at the City of Ferguson Jail ("Ferguson Jail" or "Jail") were reasonable and consistent with corrections industry standards: 1) medical and medication needs, 2) food and water, 3) hygiene, sanitation, and bedding, and 4) abuse of force.  But Mr. Wilkes's opinions and related testimony should be excluded because they do not satisfy the requirements of Rule 702 of the Federal Rules of Evidence and applicable case law.

As a starting point, Mr. Wilkes is unqualified to give any of these opinions because he has extremely limited work experience with a single correctional system that is not the system at issue in this case, and indeed, has never served as an expert on *any* issue, before *any* court.

In addition, Mr. Wilkes's proposed testimony will not assist the trier of fact.  First, his opinions do not have a sufficient factual basis.  Indeed, Mr. Wilkes primarily regurgitates the City's positions, relying selectively on a conversation he had with a single City witness and on documents the City cherry-picked, while ignoring key facts, evidence, and testimony that contradict his (*i.e.*, the City's) conclusions.  Second, much of Mr. Wilkes's proposed testimony consists of legal conclusions, or his view of the credibility of witnesses—including Plaintiffs—neither of which are appropriate subject matter for any expert's testimony.

Moreover, in reaching his unsupported opinions, Mr. Wilkes ignores many applicable standards that govern jails like the Ferguson Jail and fails to properly apply the key applicable standards—the American Corrections Association Core Jail Standards ("ACA Standards").  Indeed, Mr. Wilkes argues inconsistently that the ACA Standards do not apply on the one hand, but then, on the other hand, applies them where he (incorrectly) thinks they support some of his opinions.  Mr. Wilkes also conflates Ferguson's application for state certification from the

1

Missouri Police Chiefs Charitable Foundation ("MPCCF")—which the Ferguson Jail never received—with adherence to the MPCCF State Certification Standards ("MPCCF Standards"). Additionally, Mr. Wilkes fails to identify and consistently apply any set of applicable standards. Instead, Mr. Wilkes haphazardly cobbles together his opinions, which primarily parrot the City's position, relying on his "expertise" instead of application of a reliable methodology to the facts of this case.

## ARGUMENT

Mr. Wilkes's opinions and testimony must be excluded because they fail to meet the requirements of Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
>
> (b)     the testimony is based on sufficient facts or data;
>
> (c)     the testimony is the product of reliable principles and methods; and
>
> (d)     the expert has reliably applied the principles and methods to the facts of the case.

*See* Fed. R. Evid. 702.

Under *Daubert v. Merrell Dow Pharms., Inc.*, the trial judge is assigned "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). As such, trial judges serve "as a gatekeeper to ensure that only reliable and relevant expert testimony is presented to a jury." *United States v. Merrell*, 842 F.3d 577, 582 (8th Cir. 2016); *see also Cole v. Homier Distrib. Co.*, 599 F.3d 856, 865 (8th Cir. 2010) ("Expert testimony is admissible if it is reliable and will help the jury understand the evidence or decide a fact in issue.") (internal quotation omitted); *Presley v. Lakewood Eng'g &*

*Mfg. Co.*, 553 F.3d 638, 647 (8th Cir. 2009) (upholding the district court's exclusion of expert testimony because "there [was] simply too great an analytical gap between the data and the opinion proffered"); *S. Minn. Beet Sugar Coop v. Agri Sys.*, No. 17-cv-5552 (WMW/BRT), 2020 U.S. Dist. LEXIS 157852, at *17 (D. Minn. Aug. 31, 2020) (excluding expert testimony because witness "failed to follow the scientific methodology that he advocates").

## I.     MR. WILKES IS NOT QUALIFIED TO OFFER THE PROPOSED OPINIONS

### A.     Mr. Wilkes Does Not Have Broad Experience Dealing with Conditions of Confinement in Correctional Systems Similar to the Ferguson Jail.

Mr. Wilkes's limited experience in a single sheriff's department is insufficient for him to qualify as an expert on the standards applicable to the conditions of confinement at the Ferguson Jail.  For "an expert witness to be qualified based on experience, that experience must bear a close relationship to the expert's opinion."  *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009) (concluding that a purported expert's experience "working as a traffic patrolman, a watch commander, and in organizing security operations for public events" did not qualify him to provide expert testimony on civil rights violations); *see also Storie v. Duckett Truck Ctr., Inc.*, No. 4:06 CV 1238 DDN, 2007 U.S. Dist. LEXIS 92083, at *21 (E.D. Mo. Dec. 14, 2007) ("The court must determine not only whether a witness is an expert, but how far that expertise carries.").

Mr. Wilkes has spent his entire career with, and is currently employed by, the Davidson County Sheriff's Office in Tennessee.[1]  While at the Davidson County Sheriff's Office, Mr. Wilkes worked, and continues to work, in correctional facilities that manage a population of at least 96 detainees.[2]  Mr. Wilkes has never worked in a correctional facility with fewer than 300 beds for

---

[1] Daker Decl., Ex. 2 at 48:22–24 (T. Wilkes 2021-04-01 Dep. Tr.); Daker Decl., Ex. 1 at 1–2 (Expert Report of Tony Wilkes).

[2] Daker Decl., Ex. 2 at 49:24–25.

detainees.[3]  The Ferguson Jail, on the other hand, is meant to manage a population of a maximum

of 20 detainees.[4]  As such, Mr. Wilkes has not had any—much less widespread—experience

analyzing or addressing operations, policies, and practices affecting conditions of confinement in

correctional facilities similar to those of the Ferguson Jail or more broadly.[5]

Simply having some experience in limited areas of a broad industry does not mean that a

purported expert has sufficient qualifications to provide expert testimony as to all aspects of that

industry.  *See Garnac Grain Co., Inc. v. Blackley*, 932 F.2d 1563, 1566 (8th Cir. 1991) (affirming

exclusion of expert testimony where, despite having worked in an "accounting department for

approximately twenty-two years and helped implement some of its internal controls," the

purported expert's "practical knowledge [did] not provide [him] with the requisite expertise in

auditing or accounting"); *see also Dancy v. Hyster Co.,* 127 F.3d 649, 652 (8th Cir. 1997)

(concluding that district court was justified in excluding expert testimony where, despite being a

mechanical engineer, the purported expert "had not even attempted to design the device he was

suggesting[,]" which had "significant differences" from machines he had seen before); *see also*

*Lift Truck Lease & Serv. v. Nissan Forklift Corp.*, No. 4:12-CV-153 CAS2013, 2013 U.S. Dist.

LEXIS 87391, at *22 (E.D. Mo. June 21, 2013) (excluding certain proposed expert testimony

where expert's "experience [was] unrelated to the facts of [the] case" because expert "did not

testify that he had any knowledge of" the specific "industry custom and practice" at issue).[6]

---

[3] Daker Decl., Ex. 2 at 55:18–21.

[4] Daker Decl., Ex. 3 at 83:20–84:4 (J. Craig 2020-02-18 Dep. Tr.).

[5] Daker Decl., Ex. 1; Daker Decl., Ex. 2.

[6] The City no doubt hopes to compensate for Mr. Wilkes's lack of relevant experience and qualifications by pointing to his sole published article, titled "Community Reentry Programs: Their Impacts on Offenders and Recidivism Rates."  *See* Daker Decl., Ex. 4 ("Community Reentry Programs: Their Impacts on Offenders and Recidivism Rates," National Institute of Corrections' Large Jail Network Exchange, 2007).  However, this 15-year-old article that dealt with the Davidson County Sheriff's Office's process for reintegrating ex-offenders into the community is irrelevant to Mr. Wilkes's opinions and the issues in this case, which center on whether the conditions of confinement in the Ferguson Jail met constitutional standards.  Daker Decl., Ex. 4 at 37–41.

**B.      Mr. Wilkes has Never Previously Provided Expert Testimony.**

Mr. Wilkes has never provided expert testimony in a deposition or a trial, let alone expert testimony on issues relating to operations, policies, and practices affecting conditions of confinement in correctional facilities similar to that of the Ferguson Jail. [7]  This weighs in favor of exclusion.  *See Weitlauf v. Parkway Sch. Dist.*, Case No. 4:07CV407SNL, 2008 U.S. Dist. LEXIS 14469, at *4 (E.D. Mo. Feb. 26, 2008) (finding proposed expert unqualified because he had "never been hired as an economic loss expert or ever testified as an economic loss expert"); *see also Holloway v. Ameristar Casino St. Charles, Inc.*, No. 4:07 CV 218 DDN, 2009 U.S. Dist. LEXIS 118349, at *17 (E.D. Mo. Dec. 18, 2009) (finding proposed expert unqualified when he had "never testified, as an expert, on the issue of whether a tape has been manipulated or edited").

## II.      MR. WILKES'S PROPOSED OPINIONS WILL NOT ASSIST THE TRIER OF FACT

### A.      Mr. Wilkes's Proposed Opinions Are Not Based on Sufficient Facts, Simply Recast the City's Positions, and Ignore Key Evidence.

"[I]f [an] expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded."  *Neb. Plastics, Inc. v. Holland Colors Americas, Inc.*, 408 F.3d 410, 416 (8th Cir. 2005) (citing *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002)). Here, Mr. Wilkes's opinions lack sufficient factual basis, making them so fundamentally unsupported that they can offer no assistance to the jury.  Instead of relying on broad evidentiary support for his opinions, Mr. Wilkes primarily parrots the City's position on jail conditions.  In so doing, Mr. Wilkes relies almost exclusively on the City's corporate representative on jail conditions issues, Joseph Craig, with whom he claims to have "met at length."[8]  Indeed, Mr. Wilkes

---

[7] Daker Decl., Ex. 1 at 3; Daker Decl., Ex. 2 at 34:21–23.
[8] Daker Decl., Ex. 1 at 4.  Mr. Wilkes spoke with Mr. Craig for about 2 hours and 15 minutes.  Daker Decl., Ex. 2 at 30:21–24.

testified to the following at his deposition with regard to the critical conditions issue of medical and medication needs of detainees at the Ferguson Jail:

> Q: . . . The question was: Speaking with Joe Craig was sufficient for you to understand the practice at the City of Ferguson jail?
>
> A: Yes, yes. I'm sorry. Yes.[9]

In addition to heavy reliance on Mr. Craig's representations, on certain topics, Mr. Wilkes references the City's General Orders and concedes that they only set out policy for the jail but do not clearly indicate its actual operational processes.[10] Mr. Wilkes also relies on the Certification Files prepared by the City (the "Certification Files") to seek certification under the MPCCF Standards. Mr. Wilkes agreed at his deposition that, given that the City prepared the Certification Files, they would not have had any reason to include examples of non-compliance with their policies,[11] therefore necessarily rendering them an incomplete record of the evidence. Moreover, Mr. Wilkes admitted that he "[had] no idea" how the MPCCF would review applications for accreditation.[12] In any event, the City was never certified under MPCCF.[13]

Mr. Wilkes also ignores key evidence that directly contradicts his opinion. Indeed, Mr. Wilkes admits that he only read the report of Eldon Vail, Plaintiffs' conditions expert, without reviewing the underlying documents,[14] did not seek any additional evidence beyond what the City cherry-picked for him,[15] and failed to review or consider the depositions of any of the named Plaintiffs.[16] It is also clear that Mr. Wilkes failed to give any consideration to complaints or

---

[9] Daker Decl., Ex. 2 at 152:16.

[10] *Id.* at 158:5–24.

[11] *Id.* at 173:17–174:5.

[12] *Id.* at 135:5–8 ("Q: . . . [W]hat is your understanding of how MPCCF would review applications for accreditation? A: I do not know. I have no idea.").

[13] Daker Decl., Ex. 1 at 7 n.6.

[14] *Id.* at 4; Daker Decl., Ex. 2 at 147:6–11, 147:20–23.

[15] Daker Decl., Ex. 2 at 62:6-19.

[16] *Id.* at 147:6–11; 181:17–23.

reports of practices from other detainees identified in the March 4, 2015 Report, "Investigation of the Ferguson Police Department," of the Department of Justice Civil Rights Division ("DOJ Report"), which Mr. Wilkes claims to have read.[17]

**Medical and Medication Needs**.  Mr. Wilkes concludes that "Ferguson Jail's operational practices in addressing detainees' medical and medication needs (upon intake and while detained) were reasonable and did not deviate from accepted corrections industry practice given the nature of the facility and limited length of stay."[18]  In so concluding, Mr. Wilkes simply accepts Mr. Craig's assertions that there was a standard practice[19] of calling dispatch when medical complaints arose; corrections officers deferring medical issues to medical professionals; and medical complaints being taken seriously and responded to promptly.[20]  In reaching these opinions, Mr. Wilkes blatantly ignores evidence that directly contradicts his opinions—medical decisions *not* being deferred to medical professionals and corrections officers relying on their own judgement for medical complaints—including Plaintiffs' testimony and other evidence of detainees being denied medical care and medication.[21]  Indeed, Mr. Wilkes characterizes the City's practices in dealing with detainees' medical complaints as "reasonable" based on his belief that "[i]f there were a pattern of medical mistreatment leading to injuries, [he] would expect to see a long list of past lawsuits making this claim or more documentation of specific problems in Ferguson's documents

---

[17] Daker Decl., Ex. 2 at 147:6–11; 181:17–23.

[18] Daker Decl., Ex. 1 at 8.

[19] Mr. Wilkes relies on Mr. Craig's assertions that policies identified in certain General Orders and Certification Files were adhered to.  *Id.* at 8–10.

[20] *See* Daker Decl., Ex. 2 at 149:21–152:19.

[21] Daker Decl., Ex. 5 at 64:6–20 (A. Morris 2017-04-19 Dep. Tr.) (Alfred Morris was hospitalized after repeatedly asking for his blood pressure medication but never receiving it); Daker Decl., Ex. 6 (CITY_00228103-8112) (Albert Brooks was denied medical care); Daker Decl., Ex. 7 (CITY_00609154) (Kim Campbell was not given her medication in a timely fashion); Daker Decl., Ex. 8 at 78:23–79:9 (R. Carter 2016-12-19 Dep. Tr.) and Daker Decl., Ex. 9 at 141:1–19 (R. Carter 2017-03-03 Dep. Tr.) (Roelif Carter's necessary medication was not provided to him after his wife brought it to Jail).

or in the DOJ Report."[22]   Mr. Wilkes thus opts to ignore actual evidence in the present lawsuit based on an irrelevant standard about past lawsuits that he has made up.

**Food and Water.**   Mr. Wilkes concludes that "[t]he hydration (water) provided was adequate and consistent with standard correctional practice" and adds that he has "no opinion as to whether the food provided to detainees was nutritionally adequate" but that "[b]ased on short duration of detainment, the meals provided, while not ideal, were not horrendous, intolerable, or likely to be harmful to detainees."[23]   Regarding water, Mr. Wilkes concludes that because the "stainless steel toilet-sink combination" in each cell was a standard fixture, the water provided must have been fit for consumption,[24] based on the City-prepared Certification Files.[25]   But Mr. Wilkes makes no reference to any factual support indicating that the water was actually potable, or that the toilet-sink fixture was generally functional.   Mr. Wilkes ignores testimony that the water was foul-tasting and made people sick and that, at times, the fixture did not dispense water.[26]   Nor does Mr. Wilkes consider evidence of the unsanitary condition of the cell and the toilet-sink fixture—including complaints of it being filled with blood or feces—which would no doubt affect the ability of detainees to access potable water.[27]

Regarding food, similarly, Mr. Wilkes concludes that the meal practices of the Ferguson Jail complied with ACA Standards, requiring at least two hot meals per 24-hour period.[28]   But this

---

[22] Daker Decl., Ex. 1 at 10.

[23] *Id.*

[24] *Id.*

[25] Daker Decl., Ex. 2 at 195:2–6; 195:18–23.

[26] Daker Decl., Ex. 8 at 81:1–83:4; Daker Decl., Ex. 10 at 51:10–52:21 (R. Tucker 2017-04-19 Dep. Tr.).

[27] Daker Decl., Ex. 11 at 74:2–75:15; 148:6–18 (A. Nelson 2016-12-19 Dep. Tr.) (Allison Nelson describing feces and mold on the walls of her cell and being afraid to drink the water in the cell); Daker Decl., Ex. 8 at 88:25–89:6 (Mr. Carter confirming that the toilet in the cell was never cleaned); Daker Decl., Ex. 7 (Ms. Campbell complaining that there was blood in her toilet); Daker Decl., Ex. 12 (CITY_00184172) (describing toilet being full of feces and bloody menstrual pads).

[28] Daker Decl., Ex. 1 at 11.

ignores testimony of food being served cold, so overcooked that it was inedible or simply insufficient for a "grown person."[29]

**Hygiene, Sanitation and Bedding.**  Mr. Wilkes's opinion is that "[t]he hygiene, sanitation, and bedding at the Ferguson jail were reasonable and consistent with accepted correctional practice."[30]  This is based on the assertions of Mr. Craig[31] and the City-prepared Certification Files.[32]  Consistent with his approach for other topics, Mr. Wilkes summarily dismisses evidence of the "filthy conditions in the jail."[33]  Mr. Wilkes's opinions are also directly contradicted by the testimony of three former officers, who recalled that detainees did not have access to or were not permitted to use the shower—and who could not remember anyone ever showering[34]—and detainee testimony to the same effect.[35]

Regarding jail occupancy, Mr. Wilkes references Mr. Craig's claim that there was a maximum of two detainees per cell.[36]  Indeed, Mr. Wilkes confirmed at his deposition that he did not "cite anything specifically" for those propositions, and "that's basically a statement from the interview with Joe Craig."[37]  However, as Mr. Wilkes conceded at his deposition, he did not review or consider booking sheets beyond what was included in the Certification Files;[38] nor documents *produced by the City* of Ferguson in which City Council members discuss the Ferguson Jail being

---

[29] Daker Decl., Ex. 13 at 124:21–125:20 (K. Fant 2017-03-03 Dep. Tr.); Daker Decl., Ex. 5 at 57:7–59:16; Daker Decl. Ex. 10 at 58:24–60:13; Daker Decl., Ex. 8 at 86:18–86:24.

[30] Daker Decl., Ex. 1 at 11.

[31] *Id.* at 11–12.

[32] *Id.*; Daker Decl., Ex. 2 at 208:6–209:2.

[33] Daker Decl., Ex. 1 at 11–12.

[34] William Catanzaro and Brian Kaminski were police officers who worked in the Jail; Daniel McDuffie was a corrections officer.  Daker Decl., Ex. 14 at 117:15–18 (W. Catanzaro 2016-05-03 Dep. Tr.); Daker Decl., Ex. 15 at 32:11–33:8 (B. Kaminski 2016-01-13 Dep. Tr.); Daker Decl., Ex. 16 at 54:17–56:6 (D. McDuffie 2016-01-11 Dep. Tr.).

[35] Daker Decl., Ex. 13 at 105:2–3.

[36] Daker Decl., Ex. 3 at 37:23–38:2.

[37] Daker Decl., Ex. 2 at 95:6–96:1.

[38] *Id.* at 170:5–171:24.

"always at capacity and often overcapacity" and "over 100 percent (usually at 200 percent) capacity at all time[s]."[39]  Mr. Wilkes claimed that such information would not change his overarching opinion.[40]

**Abuse of Force.**  Mr. Wilkes concludes that "[t]here is no significant evidence of a custom, practice, or pattern of abuse of force by corrections officers toward detainees, widespread or otherwise.  The procedures in place for documenting and reviewing uses of force were reasonable and consistent with accepted and standard correctional practice."[41]  In so finding, Mr. Wilkes does not reference or rely upon evidence of what actually happened at the Ferguson Jail, but instead references General Orders stating how officers should be trained and Mr. Craig's explanation of his role in training officers.[42]  He also notes that the City did not include in the Certification Files any use of force reporting in the Ferguson Jail.[43]  However, Mr. Wilkes disregards record evidence of abuse of force in the Ferguson Jail,[44] again simply stating that he would have "expected [the numbers] to be significantly higher than those incidents."[45]  But Mr. Wilkes bases this assessment solely on his reading of the DOJ Report; he did not look into whether there were any other claims of inappropriate use of force.[46]

Because Mr. Wilkes had insufficient support for his opinions, and simply adopted the City's positions, his opinions must be excluded.  *See Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056–57 (8th Cir. 2000) (excluding proposed expert testimony where witness failed to incorporate "all relevant circumstances . . . into the expert's method of analysis," leading the court

---

[39] Daker Decl., Ex. 2 at 100:23–105:16.
[40] *Id.* at 101:2–102:6.
[41] Daker Decl., Ex. 1 at 13.
[42] *Id.*
[43] *Id.*
[44] *Id.* at 13–14; Daker Decl., Ex. 2 at 234:21–237:15.
[45] Daker Decl., Ex. 2 at 236:6–236:7.
[46] *Id.* at 236:6–237:6.

to find the "resulting conclusions were mere speculation"); *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757–58 (8th Cir. 2006) (affirming district court's exclusion of proposed expert testimony that was "speculative [and] unsupported by sufficient facts" due to substantive "analytical flaws"); *Murphy v. FedEx Nat'l LTL, Inc.*, 618 F.3d 893, 906 (8th Cir. 2010) (upholding exclusion of expert testimony for lack of factual basis where that testimony "relied solely on [the interested party's] self-report," and was not based on independent evidence).

While in some instances it might just be fodder for cross-examination, Mr. Wilkes's decision to ignore record evidence that contradicts each of his key opinions is so egregious here that it makes clear that Mr. Wilkes does not have a sufficient factual basis for his opinions.  As such, the opinions should be excluded.  *See Cole*, 599 F.3d 856 at 865–67 (affirming exclusion of expert testimony on grounds that his "report relied on incorrect factual premises," which "indicate[d] that he was either unaware of or disregarded [certain] facts" and thus "c[ould] offer no assistance to the jury").

> ### B. Mr. Wilkes's Proposed Legal Conclusion Opinions and Opinions on Witness Credibility Will Not Assist the Trier of Fact and Are Not Admissible.
>
> #### 1. Mr. Wilkes Cannot Testify to the Legal Conclusion that Detainees' Constitutional Rights Have Not Been Violated.

Mr. Wilkes effectively seeks to opine that Plaintiffs' constitutional rights have not been violated with respect to the conditions at the Ferguson Jail.[47]  However, such expert testimony on legal conclusions is not admissible.  *United States v. Benton*, 890 F.3d 697, 717 (8th Cir. 2018) (upholding the district court's exclusion of expert testimony that "offered an impermissible legal conclusion" that [certain] regulations were confusing and . . . "not violate[d]," which amounted to "an impermissible instruction on the law"); *see also United States v. Klaphake*, 64 F.3d 435, 438

---

[47] Daker Decl., Ex. 1 at 8.

(8th Cir. 1995) (holding that it was proper for the district court to exclude expert testimony about the "legality of the trust arrangement" because "questions of law are . . . not the subject of expert testimony").

As such, Mr. Wilkes's proposed opinions and testimony must be excluded because they are "so couched in legal conclusions that [they] simply instruct[] the fact-finder as to what the verdict should be." *Storie*, 2007 U.S. Dist. LEXIS 92083, at *16-17 (excluding expert testimony that "contain[ed] statements couched in legal conclusions"); *see also Kinder v. Acceptance Ins. Cos. (In re Acceptance Ins. Cos. Sec. Litig.)*, 423 F.3d 899, 905 (8th Cir. 2005) (upholding the district court's dismissal of expert testimony that "were mere legal conclusions with no analytical reasoning or support" because expert was simply making "legal conclusions about the facts of the case as presented to the expert[] by the [party that hired the expert]").

### 2.    Mr. Wilkes Cannot Opine on Plaintiffs' or the City's Witness's Credibility.

With regard to Plaintiffs' testimony, Mr. Wilkes noted that "[i]t appears that Mr. Vail assumed these allegations to be unconditionally true in arriving at his conclusions[,]" and that he would not be "making any determination as to whether these incidents did or did not occur as alleged."[48]  However, Mr. Wilkes's Report and deposition testimony make it clear that he is the one making credibility determinations about testimony and documents based on whether it comes from Plaintiffs or the City.

Specifically, Mr. Wilkes gives minimal weight to Plaintiffs' testimony by labelling their testimony as mere allegations, while accepting the City's witness's testimony and documents as unconditionally true.  When referring to Plaintiffs' testimony, Mr. Wilkes carefully words his opinions to say, "Mr. Vail's report appears to present all of Plaintiffs' 'best evidence' of ***alleged***

---

[48] Daker Decl., Ex. 1 at 4, 10.

misdeeds in the Ferguson Jail[;]"[49] and "Plaintiffs have provided **alleged** instances of filthy conditions in the jail. **Even if true**, I have no evidence to suggest that this was a widespread, persistent problem that the Ferguson jail allowed to exist."[50] On the other hand, when considering the City's witness's testimony and documents, Mr. Vail does not label them as mere allegations. In fact, Mr. Wilkes primarily relies on Mr. Craig's informal interview in forming his opinions, despite not having reviewed documents to verify the information.[51]  Mr. Wilkes even admitted to accepting the City's documents as "unconditionally true" without doing anything to verify the information in the documents.[52]

"Weighing evidence and determining credibility are tasks exclusive to the jury, and an expert should not offer an opinion about the truthfulness of witness testimony."  *Holloway*, 2009 U.S. Dist. LEXIS 118349, at *13 (citing *Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 883 (8th Cir. 1998)); *see also Norman v. Marten Transp., Ltd.*, No. 4:08CV01695 AGF, 2011 U.S. Dist. LEXIS 78765, at *11–12 (E.D. Mo. July 20, 2011) (excluding portions of expert testimony because it discussed "the truthfulness of Plaintiff's statements and symptoms").  Mr. Wilkes's opinions on witnesses' credibility are improper.  Such credibility determinations, and the opinions premised on them, should be excluded.  *See United States v. Whitted*, 11 F.3d 782, 785–86 (8th Cir. 1993) (prohibiting expert from testifying as to the witness's truthfulness); *Nichols*, 154 F.3d 875 at 882–83 (excluding expert testimony where expert claimed she needed "to interpret and weigh" witness's testimony); *Hale Cnty. A & M Trans., LLC v. City of Kansas City*, 998 F. Supp. 2d 838, 846 (W.D. Mo. 2014) (excluding expert testimony on whether expert found witness's story useful

---

[49] Daker Decl., Ex. 1 at 4 (emphasis added).

[50] *Id.* at 12 (emphases added).

[51] Daker Decl., Ex. 2 at 34:9–11.

[52] *Id.* at 72:2–8.

to analysis).

### III.   MR. WILKES'S PROPOSED TESTIMONY IS NOT THE PRODUCT OF A RELIABLE METHODOLOGY RELIABLY APPLIED TO THE FACTS OF THE CASE

Under the Federal Rules of Evidence, the Court must consider whether "the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*."  *See City of Tuscaloosa v. Harcros Chems.*, 158 F.3d at 548, 562 (11th Cir. 1998) (citing Fed. R. Evid. 702 and *Daubert*, 509 U.S. at 589).  Courts are "vested with a gatekeeping function, ensuring that 'any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Union Pac. R.R. Co. v. Progress Rail Servs. Corp.*, 778 F.3d 704, 709 (8th Cir. 2015) (citing *Daubert*, 509 U.S. at 589) (excluding expert testimony due to opinion being unreliable and speculative).  Specifically, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue."  *United States v. Frazier*, 387 F.3d at 1261–62 (citing *Daubert*, 509 U.S. at 592–93).

An expert "must explain how he or she arrived at his or her conclusions; the trial court may not simply take the expert's word for it."  *Spire Stl Pipeline Llc v. 3.31 Acres*, No. 4:18 CV 1327 SRC / DDN, 2021 U.S. Dist. LEXIS 41203 at *4 (E.D. Mo. Mar. 5, 2021) (finding expert's testimony too speculative and remote to be admissible).  *See also Miravalle v. One World Techs., Inc.*, No. 4:18 CV 304 JMB, 2021 U.S. Dist. LEXIS 233464, at *18 (E.D. Mo. Dec. 7, 2021) (excluding expert testimony because witness "failed to do any work to determine with any degree of scientific methodology to support his opinions"); *Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 635 (8th Cir. 2007) (affirming exclusion of expert testimony because the expert "employed no methodology whatsoever").

A. **Mr. Wilkes Fails to Identify or Consistently Apply Any Set of Applicable Standards, and Disregards or Misapplies Widely Accepted Standards, In Reaching His Opinions.**

Here, Mr. Wilkes fails to identify applicable standards.  He refuses to even address most widely-accepted applicable standards.  He then dismisses the primary set of governing standards, the ACA Standards, as inapplicable and yet proceeds to cherry-pick a few[53] that he thinks do apply because he asserts Ferguson complies with them.  In other words, he picks and chooses which portions of the ACA Standards should apply and should not apply to the Ferguson Jail without providing any coherent methodology or authority to support his reasoning.[54]  This haphazard and partial application of the standards is no methodology at all.

1. **Mr. Wilkes Ignores Many Applicable Standards and Then Only Selectively Applies Certain ACA Standards.**

In his Report and during his deposition, Mr. Wilkes stated that no one set of standards applies to a facility like the Ferguson Jail.[55]  While Mr. Wilkes acknowledges that Mr. Vail used various industry standards such as those promulgated by the National Institute of Corrections ("NIC"), he does not even attempt to explain why they do not apply to the Ferguson Jail, other than generally commenting that they are "not mandated by law."[56]  However, neither are the MPCFF Standards upon which Mr. Wilkes, as discussed below, heavily relies.[57]  Furthermore, he completely ignores and does not address in his report the Missouri Core Jail Standards or the United Nations Standard Minimum Rules for the Treatment of Prisoners.[58]

In addition to ignoring those standards, he also largely dismisses the ACA Standards,

---

[53] Daker Decl., Ex. 2 at 202:8–205:14.

[54] *Id.* at 203:1–15.

[55] *Id.* at 115:16–18.

[56] Daker Decl., Ex. 1 at 6–7.

[57] *See infra* section III, A, 2.

[58] Daker Decl., Ex. 1 at 6–8.

arguing that based on the nature of the Ferguson Jail—including its size and length of detention—the ACA Standards should not apply.[59]   But ACA Standards were developed to "describe everything a jail of any size should do to operate as a constitutional jail."[60]   In fact, Mr. Wilkes concedes in his report that the "ACA is recognized as a national and international accrediting body for the corrections industry, and its standards represent best practices which are intended to improve correctional operations, including areas related to safety, security, order, inmate care, programs, justice, and administration."[61]   Mr. Wilkes adds that "[u]ndoubtedly, ACA standards are designed to enhance organizational professionalism, improve operational practices, create a safer environment for staff and the incarcerated population, improve conditions of confinement, and reduce potential liability."[62]   Yet, he does not cite any section limiting their applicability.[63]   In fact, Mr. Wilkes concedes he cannot identify any support in the ACA Standards for his claim that they do not apply.[64]   This is because there is no support for the proposition—the October 29, 2011 AJA Core Jail Standards Resolution adopted by the AJA Board of Directors confirms that the ACA Standards apply to "jails of all sizes and throughout all jurisdictions."[65]   When confronted with this resolution at his deposition, Mr. Wilkes conceded that he did not recall ever seeing it,[66] and he concluded that there was a disagreement between him and the AJA on what standards would

---

[59] Daker Decl., Ex. 1 at 7.

[60] *See* Kathy Black-Dennis Presentation, American Correctional Association, Core Jail Standards (2010), at https://web.archive.org/web/20161020151857/http://www.aca.org/aca_prod_imis/docs/standards%20and%20accreditation/corejailstandards.pdf.

[61] Daker Decl., Ex. 1 at 6.

[62] *Id.*

[63] *Id.* at 6–7.

[64] Daker Decl., Ex. 2 at 124:11–24.

[65] *See* 10/29/2011 American Jail Association Resolution Core Jail Standards at https://www.americanjail.org/files/Resolutions/AJA%20Resolution%20-%20Core%20Jail%20Standards.pdf ("Therefore be it resolved that the American Jail Association support the Core Jail Standards that provide for the improvement of jail operations, programs, and services for jails of all sizes and throughout all jurisdictions.").

[66] Daker Decl., Ex. 2 at 119:3–19.

apply to the Ferguson Jail.[67]

Moreover, courts have relied on ACA Standards as industry standards applicable to cases evaluating violations in detention facilities. *Ulibarri v. City & Cnty. of Denver*, Civil Action No. 07-cv-01814-WDM-MJW, 2011 U.S. Dist. LEXIS 69402, at *16–19 (D. Colo. June 28, 2011) (holding that "the ACA Standards represent the correctional community's understanding of the 'best practices' for the operation of a jail or prison," and admitting expert testimony in the field of corrections and jail administration whose opinions were based in large part on the ACA Standards); *Unknown Parties v. Johnson*, No. CV-15-00250-TUC-DCB, 2016 U.S. Dist. LEXIS 189767, at *20 (D. Ariz. Nov. 18, 2016) (assessing conditions related to claims of deprivation of sleep and warmth in correctional facilities based on ACA Standards as applied to "short-term detentions, defined as being less than 10 hours"). This is true regardless of length of detention. *See e.g.*, *Bolton v. Goord*, 992 F. Supp. 604, 622 (S.D.N.Y. 1998) (admitting testimony of expert stating that the "ACA has the same standard for any prison cell whether inmates are in it for six hours or for ten hours, and the same standard whether inmates are in the cell for ten hours and five minutes or for twenty three hours").

The only basis for Mr. Wilkes's claim that ACA Standards do not apply—other than his own conjecture—was a single email exchange he had with someone from the ACA after he was engaged by the City in this case.[68] Indeed, Mr. Wilkes refers repeatedly to this email correspondence throughout his deposition.[69] However, the email itself actually confirms that the opposite is true—the ACA employee told Mr. Wilkes that "yes we provide guidance [to Temporary

---

[67] Daker Decl., Ex. 2 at 123:10–25.

[68] *Id.* at 114:15–115:23.

[69] *See, e.g.*, *id.* at 113:4–114:8, 116:8–117:18, 124:11–125:8, 146:4–7.

Holding Facilities (48-72 hours)] whether accredited or not" and "we try to get them accredited."[70]

While Mr. Wilkes argues that ACA Standards do not apply, he then confusingly cites and relies on select ACA Standards to support his opinions that certain meal practices at the Ferguson Jail were acceptable.  Specifically, Mr. Wilkes states that the meal practices at the Ferguson Jail "although not approved by a nutritionist, complied with the remainder of the ACA Standard cited by Mr. Vail."[71]

## 2. Mr. Wilkes Misguidedly Relies on the City's MPCCF Certification Files in Lieu of Standards.

Mr. Wilkes casually dismisses commonly applied ACA Standards, which he claims to be very familiar with through his past experience with the organization, without providing any actual authority for their inapplicability, and instead harps on MPCCF Standards he admits he has no understanding of beyond the documents spoon-fed to him by the City.[72]  The MPCCF is a charitable foundation that "fosters standards and development in the area of law enforcement through education and services" and its standards are "operational standards and operational general orders."[73]  Mr. Wilkes uses the City's attempt to gain a state certification from the MPCCF—which the Ferguson Jail ultimately never received[74]—as evidence that the Jail's conditions of confinement do not violate applicable standards.  Specifically, Mr. Wilkes states that "Ferguson's Certification Files address all sections of MPCCF Chapter 35" showing "reasonable diligence."[75]  But "reasonable diligence" is not the standard for assessing whether the Ferguson Jail conditions violated detainees' constitutional rights.  Mr. Wilkes does not explain why these

---

[70] Daker Decl., Ex. 17 (01/06/2021 Email from Tony Wilkes to David Haasenritter).

[71] Daker Decl., Ex. 1 at 11.

[72] Daker Decl., Ex. 2 at 134:17–135:3.

[73] *See* Missouri Police Chiefs Charitable Foundation Overview, at https://www.mopca.com/wp-content/uploads/MPCCF-Divisions.pdf.

[74] Daker Decl., Ex. 2 at 130:22–133:15.

[75] Daker Decl., Ex. 1 at 8.

standards are dispositive or even relevant to the conditions of the confinement inquiry here.  In arguing their application to the Ferguson Jail, Mr. Wilkes relies on language in the MPCCF Standards stating that "[t]hese standards do not apply to long term jails or correctional institutions that house prisoners in excess of 72 hours,"[76] but it is well documented that the Ferguson Jail did, in fact, hold people on occasions for longer than 72 hours.[77]  Mr. Wilkes also concedes that his understanding of the MPCCF Standards are limited to the information provided by the City[78] in the documents he reviewed, adding that he has "no real knowledge of that process."[79]

### 3. Mr. Wilkes's Failure to Apply Applicable Standards Requires Exclusion.

Mr. Wilkes's testimony should be excluded because he fails to consistently apply any set of standards.  An expert solely saying they have "knowledge of industry standards" does not suffice to meet the *Daubert* reliability requirement.  *Davis v. Simon Contrs*., No. 8:19-CV-246, 2021 U.S. Dist. LEXIS 71593 at *10–11 (D. Neb. Apr. 12, 2021) (finding proposed expert testimony should be excluded when an expert claims to rely on industry standards but fails to demonstrate that they "possess[] the requisite specialized knowledge to opine on the industry").  This means that, where, as here, an expert "fails to adequately articulate or specify what the acceptable industry standards are," a court should strike such expert's report and testimony.  *Novotny v. Weatherford Int'l, LLC*, No. 1:16-CV-260, 2017 WL 5987826, at *5–6 (D.N.D. Oct. 25, 2017).

Indeed, courts routinely exclude expert testimony for failure to identify a discernible standard and apply it properly to the facts.  *Shaffer v. Amanda Am., Inc.*, No. 03-1388, 2003 U.S. App. LEXIS 19335, at *4 (8th Cir. 2003) (excluding expert testimony because the expert "could

---

[76] Daker Decl., Ex. 1 at 8.

[77] Daker Decl., Ex. 2 at 70:17–71:3; Daker Decl., Ex. 13 at 111:11–113:9.

[78] *See supra* III. A.

[79] Daker Decl., Ex. 2 at 135:2–3.

not identify any code or standard applying" to the subject of their testimony); *In re Dicamba Herbicides Litig.*, MDL No. 2019, U.S. Dist. LEXIS 206589, at *25 (E.D. Mo. Nov. 27, 2019) (excluding expert testimony for failure to identify a standard that, when "appropriately applied," would "ensure the statistical significance of [the expert's] study"); *Wine v. Comer*, No. 4: 20 CV 1721 DDN, 2022 U.S. Dist. LEXIS 41794, at *8–9 (E.D. Mo. Mar. 9, 2022) (excluding expert testimony for failure to "apply the cited . . . principle to the facts of the case" and for failure to "rely on current generally accepted principles").

This is true where conditions of confinement "experts" fail to cite any specific standards. In *Cox v. Glanz*, No. 11–CV–457–JED–FHM, 2014 WL 916644 (N.D. Okla. Mar. 10, 2014), the court rejected a corrections expert's testimony about "whether [defendant's] conduct was proper and in compliance with jail policies and procedures" because "none of his opinions . . . refer[red] to any particular policies or procedures and, other than generically listing 'policies' in a list of items that he reviewed . . . his report d[id] not identify which policies and procedures he allege[d] were followed or were material." *Id.* at *2–3 (citations omitted).[80]

### B.    Mr. Wilkes's Experience Is Not a Substitute for a Methodology.

Even with "the requisite knowledge, education, and training," an expert's qualifications

---

[80] *See also Robles v. United States*, No.: 2:19-cv-111, 2020 WL 6533651, at * 3–4 (E.D. Va. Aug. 13, 2020) ("[An expert]'s mere 'say so' that Defendant's conduct violated 'the industry standard' does not constitute a reliable opinion . . . [The expert] never actually discusse[d] what the industry standard specifically [wa]s with respect to the proper way to supervise [employees undertaking a particular task].  Citations to the various authorities generally such as [c]ode[s] . . . , [industry] publication[s] . . . or . . . company handbook[s], ***without specifically describing the provisions that purportedly establish the industry standard***, [are] wholly insufficient to establish the standard of care.") (emphases added); *Bloom v. Toliver*, No. 12–CV–169–JED–FHM, 2015 WL 12745090, at *2 –3 (N.D. Okla. Sept. 23, 2015) (finding expert's "opinion [wa]s unconnected to any identifiable standards and merely state[d] a factual determination that appears solely supported by the *ipse dixit* of [expert], ***based upon mostly unspecified documents that he reviewed;***" and that additional opinion "[did] not explain ***what specific corrections standards or experience*** constitute[d] the foundation for his opinion") (emphases added); *Cunningham v. Arizona*, 2013 WL 3335190, No. CV 12–00313–PHX–FJM, 2013 WL 3335190, at *2 (D. Ariz. July 2, 2013) (noting expert "may testify as to whether he believes defendants' actions were reasonable based on objective national standards for correctional mental health services, but ***any testimony that is based on nothing more than his personal views will be excluded***") (emphasis added).

"do not automatically allow him to articulate all of his opinions . . . [and] [e]ach of [the expert's] conclusions must be reliable and relevant." *Neuharth v. NACCO Materials Handling Group, Inc.*, CIV. 01-4034-KES, 2002 U.S. Dist. LEXIS 28674, at *6 (D.S.D. Dec. 16, 2002).  A trial court "cannot stop its inquiry after simply reviewing the proposed expert's curriculum vitae." *Morris v. Hockemeier*, No. 05-0362-CV-W-FJG, 2007 U.S. Dist. LEXIS 25167, at *12 (W.D. Mo. Apr. 4, 2007).  Indeed, "the United States Supreme Court has cautioned trial judges not to admit opinion evidence that is 'connected to the existing data only by *ipse dixit* of the expert,' or that it is valid only because the expert says it is valid." *Schwab v. Nissan N. Am., Inc.*, 502 F. Supp. 2d 980, 985 (E.D. Mo. 2007) (quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)).  And "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) (quoting 522 U.S. at 146).

Given his lack of methodology and authority to support his opinions, Mr. Wilkes relies solely on his limited experience with a single correctional system.[81]  Indeed, he references his "experience" or "knowledge" in support of his opinions thirty-four times in his deposition[82] and seven times in his Report.[83]  Because Mr. Wilkes's experience is not a substitute for a reliable methodology, his opinions and testimony must be excluded.  *See e.g., Henry v. Johnson*, No. 16-4249-CV-C-WJE, 2018 U.S. Dist. LEXIS 232404, at *11–12 (W.D. Mo. Jul. 10, 2018) (excluding expert testimony despite expert's extensive experience because it was "devoid of . . . an explanation of the 'reliable principles and methods' used"); *Neuharth*, 2002 U.S. Dist. LEXIS 28674, at *10 (rejecting expert testimony where "[n]othing connects [the expert's] opinion to

---

[81] Daker Decl., Ex. 1 at 3, 4, 7, 8, 9, 10, 12.
[82] *See, e.g.*, Daker Decl., Ex. 2 at 104:24, 105:1, 116:11, 116:17, 123:13, 138:16, 139:23, 148:20–21, 152:1, 152:11, 156:19, 167:9–12, 167:22–23, 168:14, 169:20, 170:19, 177:22, 179:22, 180:2–5, 205:15–16.
[83] Daker Decl., Ex. 1 at 3, 4, 7, 9, 10, 12.

existing data except the *ipse dixit* of defendant, and this is too large of an analytical gap to cross");

*Beving v. Union Pac. R.R. Co.*, 447 F. Supp. 3d 786, 804 (S.D. Iowa 2019) (excluding expert

testimony that "effectively left [the court with the expert's] bare qualifications or his ipse dixit as

the sole reason to admit his . . . opinion").

### C.      Parroting the City's Positions and Ignoring Contradictory Evidence is Not a Methodology.

As set forth above in Section II, A, Mr. Wilkes simply espouses the City's legal positions—

*e.g.,* claims the Ferguson Jail's practices were fine—relying on evidence cherry-picked by the

City's lawyers and primarily the call with Mr. Craig, and he ignores other evidence.

Mr. Wilkes's decision to take the City's and their witnesses' statements as true without

reviewing "the record to see if the statements were supported," confirms that his process was

unreliable.  *See Kinder*, 423 F.3d 899 at 905 (upholding exclusion of expert testimony including

"mere legal conclusions with no analytical reasoning or support").  *See also Hill v. Fikes Truck*

*Line, LLC*, No. 4:11-CV-816 CAS, 2012 U.S. Dist. LEXIS 152581, at *9–10 (E.D. Mo. Oct. 24,

2012) (excluding part of expert testimony because he "did not form his own opinion" and "adopted

wholesale the opinion of another expert" without basing it on "his own expert analysis"); *Metcalf*

*v. Lowe's Home Ctrs., Inc.*, No. 4:09-CV-14 CAS, 2010 U.S. Dist. LEXIS 40604, at *18 (E.D.

Mo. Apr. 26, 2010) (excluding expert testimony where "opinion as to habitability of the home was

based on [plaintiffs] telling him that they could not return to the home"); *Soyring v. Fehr*, No. 05-

1900 (PJS/RLE), 2006 U.S. Dist. LEXIS 97169, at *14 (D. Minn. July 5, 2006) (excluding

proposed expert testimony that advanced "conclusory reiteration[s] of those expressed by the

Plaintiffs' other expert witnesses").

Mr. Wilkes's decision to ignore such a vast amount of contradictory evidence demonstrates

that his proposed testimony is unreliable.  *See RightCHOICE Managed Care, Inc. v. Hosp.*

*Partners, Inc.*, No. 5:18-cv-06037-DGK, 2021 U.S. Dist. LEXIS 153591, at *8–9 (W.D. Mo. Aug. 16, 2021) (finding the expert's analysis "ignore[d] a substantial amount of evidence which contradict[ed] her conclusion," which was "fatal to admitting her opinion on this subject" because "[t]he fact that she ignored or summarily dismissed this evidence indicates her opinion is not the product of reliable principles and methods, and that [she] has not reliably applied these principles and methods to the present case").

Because Mr. Wilkes's opinions were not based on "substantiated facts," they are "so fundamentally unreliable that [they] can offer no assistance to the jury." *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1019 (8th Cir. 2004) (excluding proposed expert testimony not based on "substantiated facts").

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court exclude Mr. Wilkes's opinions and testimony.

Respectfully submitted,

Dated: April 12, 2022

*Attorneys for Plaintiffs*


WHITE & CASE LLP
By: */s/ Angela Daker*
Angela Daker (*pro hac vice*)
200 South Biscayne Boulevard,Suite 4900
Miami, FL 33131
Phone: 305-371-2700
Email: adaker@whitecase.com

Cvetiva Popa (*pro hac vice*)
Xin Yue Zhang (*pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Phone: 212-819-7670
Email: iva.popa@whitecase.com
Email: betty.zhang@whitecase.com

Leonardo Kim (*pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Phone: 213-620-7700
Email: leonardo.kim@whitecase.com

ArchCity Defenders
Blake A. Strode (#68422MO)
John M. Waldron (#70401MO)
440 N. 4th Street, Suite 390
Saint Louis, MO 63102
Phone: 855-724-2489
Email: jwaldron@archcitydefenders.org

—and—

CIVIL RIGHTS CORPS
Marco Lopez (*pro hac vice*)
1601 Connecticut Avenue NW, Suite 800
Washington, DC 20009
Phone: 202-844-4975
Email: marco@civilrightscorps.org

—and—

SLU Law Clinic
Brendan Roediger (#6287213IL)
John Ammann (#34308MO)
100 N. Tucker Blvd.
Saint Louis, MO 63101-1930
Phone: 314-977-2778
Email: Brendan.roediger@slu.edu