UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KEILEE FANT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-CV-00253-AGF |
| | ) | |
| CITY OF FERGUSON, MISSOURI | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Named Plaintiffs Keilee Fant, Roelif Carter, Allison Nelson, Herbert Nelson, Jr., Alfred Morris, Shameika Morris, Anthony Kimble, Donyale Thomas, and Ronnie Tucker,[1] filed this putative class-action complaint under 42 U.S.C. § 1983, alleging that their constitutional rights were violated by Defendant City of Ferguson's policies and practices of jailing individuals in inhumane conditions when these individuals could not pay bonds or other fines or fees, without inquiring into their ability to pay or considering alternatives to detention, without a neutral determination of probable cause to justify their continued confinement (in the case of warrantless arrests) or a first appearance before a judge (in the case of arrests on warrants), and without affording them counsel.

---

[1]  Daniel Jenkins and Tonya DeBerry were also named as Plaintiffs in this lawsuit. Jenkins has since been voluntarily dismissed. *See* ECF Nos. 417 & 418. DeBerry passed away during litigation. ECF No. 242. The personal representative of DeBerry's estate, John Narayan, was substituted in her place. *See* ECF No. 242. However, Narayan is not being offered as a class representative. *See* ECF No. 430-1, Pl.'s Br. at 8 n.35. The Court will ask Plaintiffs to address their plan with respect to disposition of Narayan's claims.

The matter is now before the Court on Plaintiffs' motion for class certification. ECF No. 425, filed on November 19, 2021.[2]  Plaintiffs move to certify five damages classes and one class seeking declaratory and injunctive relief.  The City opposes Plaintiffs' motion.  The Court heard oral argument on May 24, 2022.

Upon careful consideration of the parties' briefs, evidence, and oral argument, and for the reasons set forth below, the Court will grant Plaintiffs' motion in part.  The Court will certify all of the classes but will modify the definition of certain of these classes. Further, as discussed with the parties at the hearing, the Court will require supplemental briefing regarding potential end-dates for certain class periods and regarding whether Plaintiffs' claims for declaratory and injunctive relief are moot or otherwise inappropriate due to more recent changes to municipal policies and practices.

## BACKGROUND

Named Plaintiffs Keilee Fant, Roelif Carter, Allison Nelson, Herbert Nelson, Jr., Alfred Morris, Shameika Morris, Anthony Kimble, Donyale Thomas, and Ronnie Tucker were arrested and detained in the Ferguson jail at various points from 2010 through 2015. The following facts are taken from the complaint and evidence attached to the current motion, including arrest records.

---

[2]     The decision whether to certify an action as a class action should ordinarily come "at an early practicable time after a person sues . . . as a class representative."  Fed. R. Civ. P. 23(c)(1)(A).  However, the deadline for seeking class certification in this case was extended multiple times at the joint request of the parties, due in part to multiple stays during prior interlocutory appeals and following the disqualification of former defense counsel, and in part to the parties conducting extensive and contentious discovery.

Keilee Fant

Fant was arrested in 2013 and 2014, on warrants for failure to appear on charges associated with traffic violations and related fines.  According to Fant, when she arrived at the Ferguson jail in 2013, jail staff told her that she would be held indefinitely unless she paid $1,400.  She was not provided a court date.  After three days, however, jail staff informed her that they had decided to let her out for free.  After her 2014 arrest, Ferguson jail staff again told her that she would be held indefinitely unless she paid $1,400, and she was not provided a court date.  This time, Fant asked jail staff if they would accept $1,000, which she believed her family could raise.  A jail officer informed her that he would call the Ferguson chief of police to ask if that amount was sufficient.  The chief of police then approved Fant's release if Fant's family could bring $1,000 to the "Ferguson pay window," but jail staff told Fant that she had to get the cash that night "or the deal would be off."  ECF No. 53, Am. Comp. at ¶ 29.  Fant's family then paid $1,000, and Fant was immediately released from the Ferguson jail.  Upon release, Fant was told by jail staff that she should not go to court and that she did not have any future court date but should instead make cash payments at the Ferguson police department to avoid being jailed again and to remove her arrest warrants.  *Id.* at ¶¶ 30, 34.

Fant alleges that she was jailed in the Ferguson jail "more than a dozen times" in the two decades prior to filing suit.  These arrests were on warrants for failure-to-appear charges arising from traffic violations and related fines.  On one occasion, she alleges that she was held for nearly 50 days without a toothbrush, toothpaste, soap, shower, or change of clothes.  *Id.* at ¶¶ 20, 32.  On other occasions, she was told that she would not receive

feminine products for menstruation.

Roelif Carter

Carter was arrested on a warrant in August of 2010, for failure to appear on charges associated with traffic violations and related fines. He was informed by Ferguson jail guards that he would not be released from jail unless he paid $600. Carter alleges that he was too poor to afford that amount of money, and after three days in jail, he was released without having paid any money and without a court appearance. After his release, Carter was informed that his total fines had increased to more than $1,000. Carter was not provided any explanation of the increase, but he was required to pay $100 per month without any inquiry into whether he could afford that amount.

When he was unable to make these monthly payments in 2012 and 2013, he was arrested on warrants for failure to appear each time and told by jail staff that he would be held in jail unless he paid several hundred dollars. On each occasion, he told jail officials that he was unable to afford the amount, and on each occasion he was released after three days without having paid any money and without a court appearance. On each occasion, the amount that he owed in total was increased.

Carter was also arrested three times in 2014 without warrants for offenses such as disorderly conduct, was told by Ferguson jail staff that he would not be released unless he paid a few hundred dollars in cash, and was released after three days without payment and without a court appearance.

While incarcerated in the Ferguson jail, Carter was not provided a toothbrush, toothpaste, hand soap, shower, or laundry. He also alleges that the toilet, floors, and

walls contained excrement, mucus, and blood; that he had to drink from a water fountain connected to the toilet; and that jail staff refused to provide him his necessary blood pressure and other medications.

Allison Nelson

Nelson was arrested on two occasions, in 2012 and 2013, on warrants for failure to appear on charges resulting from traffic violations and related fines.  On both occasions, she was held in the Ferguson jail, having been transferred from another municipality's jail; told that she would be held indefinitely until she paid the amount alleged to be due ($700 and $1,000, respectively); negotiated with jail staff to pay a lower amount that her family could afford; and was released after three or four days, when her family paid the lower amount, all without a court appearance.

While incarcerated in the Ferguson jail, Nelson was not provided a toothbrush, toothpaste, or soap; she was held in dirty cells with dirty blankets; she drank from a water fountain attached to the toilet; and she was given little or no nutritious food.

Herbert Nelson Jr.

Nelson Jr. was arrested and transferred to the Ferguson jail from another municipality's jail four times, in 2011, 2013, and 2014, on warrants for failure to appear on charges associated with traffic violations and related fines.  On each occasion, Ferguson jail staff told him he would be held in jail indefinitely until he paid $400; Ferguson jail staff then agreed to accept a lower amount; and he was released after a day when his mother paid the lower amount on his behalf.  He was not provided a court appearance.

While incarcerated, Nelson, Jr. was not provided a toothbrush, toothpaste, soap, shower, or change of underwear.  He was forced to sleep on the floor next to an unclean toilet, his cell and blankets were dirty, he drank water from a fountain attached to a toilet, and he was given little or no nutritious food.  He also alleges that he was refused treatment for a skin infection.

Alfred Morris

Alfred Morris was arrested on at least four occasions from 2010 through 2013, on warrants for failure to appear charges associated with minor municipal ordinance violations, such as drinking in public, and related fines, and, on one occasion, without a warrant on a charge for failure to have an occupancy permit.  On these occasions, he was told by jail staff that he would be held indefinitely until he paid a set amount of money, and when he did not pay, he was released after several hours or, on some occasions, one or more days, without having paid any money and without a court appearance.

On at least one occasion, Alfred Morris was released after being sent to the hospital because of a medical emergency.  While incarcerated, he was not provided a shower or hand soap, and he was forced to sleep on the floor or on mats that had bed bugs and lice.  He also alleges that jail staff refused to provide him with his required blood pressure and HIV medications.

Shameika Morris

Shameika Morris was arrested on several occasions from 2010 to 2012, on warrants for failure to appear resulting from a minor municipal offense and related fines.  On each occasion, she was told by jail staff that she would not be released until she paid

6

several hundred dollars and, when she could not pay, she was held for a few days and, on one occasion, for more than a week, until her family either paid a lower amount negotiated with jail staff or she was released without payment.  She was not given a court appearance.

While incarcerated, she was not provided a toothbrush, toothpaste, or soap; she was offered a shower on only one occasion, which was during her first detention; and she was forced to sleep in dirty cells with too few blankets and dirty water.

<u>Anthony Kimble</u>

Kimble was arrested on several occasions from 2010 to 2012 on warrants for failure to appear on charges associated with traffic violations and related fines.  On each occasion, he was told by jail staff that he would not be released until he paid several hundred dollars, informed jail staff that he could not pay the money, and was released after two or more days[3] when his family either paid the amount or a lower amount that he negotiated with jail staff, or without paying any money.  He never received a court appearance.

While incarcerated, Kimble was not provided with soap, a toothbrush, or toothpaste; he was offered a shower on only one occasion; he slept in dirty, overcrowded cells with too few beds and blankets; and he was given little or no nutritious food.

---

[3]     On one of these occasions, he alleges that he spent nearly two weeks in jail while jail staff attempted to negotiate a lower amount with him, before he was released for free and without a court appearance.

Donyale Thomas

Thomas was arrested in 2011 on warrants for failure to appear on charges associated with traffic violations and related fines.  She was told by jail staff that she would be held indefinitely, and jail staff later told her mother that Thomas could be released if she paid several hundred dollars.  Thomas could not afford to pay and was kept in jail for more than a week, until jail staff stated that they would accept $200 and Thomas's mother paid that amount.  Thomas did not receive a court appearance.

While incarcerated, Thomas was forced to sleep on the floor in substantially the same conditions as experienced by the other named Plaintiffs.

Ronnie Tucker

Tucker was arrested in 2012 without a warrant on a charge of making a false report.  Jail staff told him that he would be held until he paid several hundred dollars. When he did not pay after several days, he was released without a court appearance.

While incarcerated, he was not provided a shower, soap, toothbrush, or toothpaste; and he was forced to sleep on the floor in a dirty cell.

**Plaintiffs' Complaint**

Plaintiffs' complaint alleges the following claims under 42 U.S.C. § 1983:

Count One: jailing Plaintiffs for their inability to pay the City in violation of Plaintiffs' rights under the Fourteenth Amendment's Due Process and Equal Protection Clauses;

Count Two: imprisoning Plaintiffs without appointing adequate counsel, in violation of Plaintiffs' rights under the Sixth Amendment;

Count Three: jailing Plaintiffs indefinitely without meaningful legal process by which to challenge the detention, in violation of the Due Process Clause;

8

Count Four: incarcerating Plaintiffs in deplorable conditions in violation of the Due Process Clause and Eighth Amendment;

Count Five: treating Plaintiffs more harshly than individuals who owe money to private creditors, in violation of the Equal Protection Clause;

Count: Six: issuing and serving invalid warrants based solely on nonpayment of monetary debt, in violation of the Fourth Amendment; and

Count Seven: detaining Plaintiffs on warrantless arrests without a prompt, neutral finding of probable cause, in violation of the Fourth Amendment.

ECF No. 53, Am. Comp.

**Proposed Classes**

Plaintiffs now move to certify five damages classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure, and one injunctive class under Rule 23(b)(2).  They define these classes as follows:

1. _Bearden_[4] Class: All persons who have, at any time since February 8, 2010, been kept in jail by the City of Ferguson for failing to pay a fine, fee, bond, surcharge, or cost, without an inquiry into their ability to pay (Count One).

---

[4]   "_Bearden_" refers to _Bearden v. Georgia_, 461 U.S. 660 (1983), in which the Supreme Court cited principles of due process and equal protection to hold that, before imprisoning a probationer for failure to pay a court-ordered fine, "a sentencing court must inquire into the reasons for the failure to pay," and "[i]f the probationer could not pay despite sufficient bona fide efforts to acquire the resources to pay, the court must consider alternate measures of punishment other than imprisonment" and may imprison "[o]nly if alternate measures are not adequate to meet the State's interests[.]"  461 U.S. at 672.

a. <u>*Gerstein*[5] Class (a subclass of the *Bearden* Class)</u>[6]: All persons who have, at any time since February 8, 2010, been held in jail by the City of Ferguson after a warrantless arrest for longer than a reasonable period of time (48 hours at a maximum or such shorter period of time as the Court may determine) prior to a finding of probable cause by a neutral magistrate for their arrest and continued detention (Count Seven).

b. <u>Warrant Class (a subclass of the *Bearden* Class)</u>: All persons who have, at any time since February 8, 2010, been held in jail by the City of Ferguson after being arrested on a warrant issued by the City (Count Three).

c. <u>Post-Judgment Class (a subclass of the *Bearden* Class)</u>: All persons who have, at any time since February 8, 2010, been jailed by the City of Ferguson because of their non-payment in connection with a prior judgment (Counts Two, Five, and Six).

2. <u>Jail-Conditions Class</u>: All persons who, at any time since February 8, 2010, were held in the City of Ferguson jail (Count Four).

3. <u>Declaratory and Injunctive Class</u>: All persons who currently owe or who will incur debts to the City of Ferguson from fines, fees, costs, or surcharges arising from judgments in cases prosecuted by the City (Counts Two, Five, and Six).

ECF No. 430-1 at 16-18.  The City opposes class certification on several grounds,

discussed in more detail below.

---

[5]     "*Gerstein*" refers to *Gerstein v. Pugh*, 420 U.S. 103 (1975), in which the Supreme Court held that "the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention," and that a state procedure whereby individuals arrested without warrants were jailed pending trial without any opportunity for a probable cause determination violated the Fourth Amendment.  420 U.S. at 106-26.

[6]     At oral argument, Plaintiffs' counsel represented that the *Gerstein*, Warrant, and Post-Judgment Classes were all subclasses of the *Bearden* Class; that members of these subclasses would also be members of the larger *Bearden* Class but would be asserting relief for unlawful detention based on alternative legal theories; and that they would not seek duplicative damages.

## DISCUSSION

### Legal Standard

"To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005) (citation omitted).  "A party seeking class certification must affirmatively demonstrate his compliance with Rule 23." *Hudock v. LG Elecs. U.S.A., Inc.*, 12 F.4th 773, 775 (8th Cir. 2021) (citation omitted).  "The movant must, among other things, satisfy "through evidentiary proof  at least one of the provisions of Rule 23(b)." *Id.* at 775–76.

Certification of a class is proper only if, after "rigorous analysis," the Court is satisfied that the Rule 23 requirements are met.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (internal quotation marks and citation omitted).  Although that "rigorous analysis" may frequently entail some overlap with the merits of the underlying claims, *see id.* at 351, "[m]erits questions may be considered only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).  "[The Court's] primary task is not to determine the final disposition of a plaintiff's claims, but instead to examine whether those claims are appropriate for class resolution." *Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030, 1037 (8th Cir. 2018).

### Standing

As a preliminary matter, the City contends that no class may be certified because each proposed class purports to include members who did not have standing because they

were not jailed at the time the complaint was filed, on February 8, 2015, regardless of whether they were later jailed by the City.  Citing *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2010), and its holding that "a class cannot be certified if it contains members who lack standing," *id.* at 1034, the City argues that for any putative class to be certified, each known and unknown member of the class had to have suffered a claimed injury as of the date the complaint was filed.

As Judge Catherine D. Perry recently ruled in a similar case, "[t]he City's reliance on *Avritt* is misplaced."  *See Webb v. City of Maplewood*, 340 F.R.D. 124, 135 (E.D. Mo. 2021).  A close reading of *Avritt* demonstrates that the Eighth Circuit's holding was simply that a named plaintiff cannot represent a class of persons "who could not have been injured by the defendant's conduct *at any time*" and, thus, "could never bring a suit themselves."  *See id.* (citing *Avritt*, 615 F.3d at 1034) (emphasis in *Webb*).  But nothing in *Avritt* contradicts the general rule that "[a] putative class action can proceed as long as one named plaintiff has standing" when the case was filed, *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017), provided that the class is defined in a manner that includes only those that would have suffered an injury under Article III, *Avritt*, 615 F.3d at 1034.

**Merits and Mootness Defenses**

The City also raises two defenses that the Court does not believe are appropriate for resolution at this stage.  First, the City argues that the Ferguson municipal court is responsible for the setting of bond, review of arrestees' ability to pay bond, probable cause determinations, and issuance of warrants.  The City argues that the municipal court, as a division of the state courts, is a state actor over which the City lacks control.  Thus,

the City argues that several of the practices that Plaintiffs claim are unlawful are not attributable to the City but to the state of Missouri.

The City has alluded to this argument in the past, most recently in an attempt to invoke sovereign immunity that this Court and the Eighth Circuit rejected.  *See* ECF Nos. 173 & 204; *see also Webb v. City of Maplewood*, 889 F.3d 483 (8th Cir. 2018) (rejecting a similar sovereign immunity argument).  However, the City has never presented this causation-based argument in a manner that would permit the Court to address its merits. The City still has not done so.  The issue of causation in this context does not affect the Court's analysis under Rule 23.  Whether the City (as opposed to the state or another entity) is the moving force behind the alleged constitutional violations here, as required under § 1983, is a question common to the class.  The answer will likewise be common.

Second, the City argues that Plaintiffs' claims for declaratory and injunctive relief are moot in light of changes to Missouri law and Ferguson municipal court practices,[7]

---

[7]     These changes include a new bond schedule issued by the Ferguson municipal court on December 18, 2014, which provides that if a defendant is unable to post bond as required by the schedule within 12 hours, the defendant "shall be released on his/her own recognizance."  ECF No. 446-8, Def.'s Ex. H.  The changes also include Missouri's Senate Bill 5, which became effective on August 28, 2015, and which required state-wide reforms to the municipal court system.  Among these reforms were that anyone in custody pursuant to an arrest warrant "have an opportunity to be heard by a judge . . . as soon as practicable and not later than forty-eight hours on minor traffic violations and not later than seventy-two hours on other violations and, if not given that opportunity, are released."  Mo. Rev. Stat. § 479.360.1(1).  Senate Bill 5 further prohibited detention for the purpose of "coerc[ing] payment of fines and costs" unless the detainee was found to be in contempt; and the bill required municipal courts to "establish[]  procedures to allow indigent defendants to present evidence of their financial condition and [to] take[] such evidence into account if determining fines and costs and establishing related payment requirements."  *Id.* §§ 479.360.1(3)-(4).  As to warrantless arrests, Senate Bill 5 provided that "[d]efendants in municipal custody shall not be held more than twenty-four hours

and a Consent Decree that the City previously entered with the Department of Justice in *United States v. City of Ferguson*, Case No. 4:16-cv-00180-CDP (E.D. Mo.), which addressed municipal court reforms.  Although mootness is a justiciability issue that the Court may address at any stage, the City bears the burden of demonstrating mootness. *See Strutton v. Meade*, 668 F.3d 549, 556 (8th Cir. 2012) (The burden of showing that the challenged conduct is unlikely to recur rests on the party asserting mootness.").  The City has not presented a sufficient record to do so here.

The City devotes only a few sentences of its 70-page memo to arguing in conclusory fashion that "[i]t is beyond dispute that changes in the law and further changes mandated by the DOJ Consent Decree resulted from substantial deliberation and are permanent in nature," such that the equitable claims are moot.  ECF No. 446 at 77.

The Court will thus limit its discussion of Plaintiffs' claims for declaratory and injunctive relief to determining whether Plaintiffs have satisfied the requirements of Rule 23.  However, the City may make a properly supported mootness argument and/or address the appropriateness of injunctive relief[8] in the context of supplemental briefing that the Court will require regarding proposed end-dates for the Rule 23(b)(3) class

---

without a warrant after arrest."  *Id.* § 479.360.1(2).  Aside from these municipal court changes, the municipal policies and practices alleged here changed as a practical matter when the Ferguson jail ceased operating in 2017.

[8]     *See Dixon v. City of St. Louis*, 950 F.3d 1052, 1056 (8th Cir. 2020), *as corrected* (Mar. 23, 2020) (holding that district courts must adequately account for the effect of state-court rule changes on the question of whether injunctive relief "serves the public interest in comity between the state and federal judiciaries" and must also consider "the necessity of an injunction" in light of the most recent course of conduct).

periods, as discussed below.

**<u>Ascertainability</u>**

Before considering the explicit requirements set forth in Rule 23, the Court must also be satisfied that the proposed class is ascertainable. *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 995 (8th Cir. 2016). The Eighth Circuit has not addressed whether ascertainability is a "separate, preliminary requirement" of class certification, but it has confirmed that ascertainability is at least an implicit requirement that must be enforced as part of the "rigorous analysis" of Rule 23's requirements. *Id.* at 996; *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017). And where, as here, a dispute arises regarding the method for identifying class members, "an independent discussion of whether a class is ascertainable" is warranted. *McKeage*, 847 F.3d at 998.

"A class may be ascertainable when its members may be identified by reference to objective criteria." *Id.* at 998 (citing *Sandusky*, 821 F.3d at 996). Ascertainability is especially important in Rule 23(b)(3) classes because of the need to notify absent class members and allow those members an opportunity to opt out. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015) (noting that vagueness in a class definition "is a problem because a court needs to be able to identify who will receive notice, who will share in any recovery, and who will be bound by a judgment"); *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016).

Open-ended class periods may present ascertainability problems for the proposed

Rule 23(b)(3) classes.[9]  *See Vasquez v. Leprino Foods Co.*, No. 117CV00796AWIBAM, 2020 WL 1527922, at *9 (E.D. Cal. Mar. 31, 2020) ("[T]he proposed end date for the class period — 'until resolution of this action' — is not ascertainable.  An end date of 'until resolution' or 'until the present' creates 'a moving target and presents potential case management problems.'"); *Hart v. Rick's NY Cabaret Int'l, Inc.*, No. 09 CIV. 3043(PAE), 2013 WL 11272536, at *5 (S.D.N.Y. Nov. 18, 2013) ("Lack of clarity as to the end date of the class period also has the potential to confuse putative class members as to whether their interests will, or will not, be represented in the pending lawsuit.").

Recognizing this potential problem, the Court discussed with counsel at the hearing several alternative end-dates that the Court could impose with respect to the Rule 23(b)(3) classes.  These alternatives corresponded with changes to the Ferguson municipal court's and Ferguson jail's policies and practices that, as noted above, have been separately identified by the City as grounds for establishing mootness.

As discussed with counsel at the hearing and for the reasons stated at that hearing, the Court will ask the parties to file supplemental briefs addressing the proposed end-dates, the question of mootness, and/or the appropriateness of injunctive relief. Following such briefing, the Court will determine whether and how to revise the class definitions in order to impose end-dates on the class periods, and may also determine whether Plaintiffs' request for declaratory and injunctive relief is moot or should

---

[9]     The Declaratory and Injunctive Class does not suffer from this problem because "the very nature of an injunctive class contemplates that there will be class members who can only be determined in the future."  *Webb*, 340 F.R.D. at 138.

otherwise be denied as a matter of law.

## Rule 23(a)

Rule 23(a) allows individuals to sue on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy).  Fed. R. Civ. P. 23(a).

With respect to commonality, the common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.  "What matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answer." *Id.* (emphasis in original).

## Rule 23(b)

I.   Rule 23(b)(2)

Rule 23(b)(2) applies to the Declaratory and Injunctive Class and requires that defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Class claims under Rule 23(b)(2) must be cohesive, "in that 'the relief

sought must perforce affect the *entire class at once.*'"  *Ebert v. General Mills, Inc.*, 823

F.3d 472, 480 (8th Cir. 2016) (quoting  *Dukes*, 564 U.S. at 361-62) (emphasis in *Ebert*).

II.      Rule 23(b)(3)

Rule 23(b)(3) applies to the damages classes and requires that "the questions of

law or fact common to class members predominate over any questions affecting only

individual members" (predominance), and that a class action "is superior to other

available methods for fairly and efficiently adjudicating the controversy" (superiority).

Fed. R. Civ. P. 23(b)(3).  "The predominance requirement is 'demanding'; a court

considering certification pursuant to Rule 23(b)(3) must take a 'close look at whether

common questions predominate over individual ones.'"  *Hudock v*, 12 F.4th at 776.

"Predominance subsumes the commonality requirement, so both can be analyzed

through the lens of predominance."  *Custom Hair Designs by Sandy v. Cent. Payment*

*Co., LLC*, 984 F.3d 595, 601 (8th Cir. 2020).  "The predominance inquiry 'asks whether

the common, aggregation-enabling, issues in the case are more prevalent or important

than the non-common, aggregation-defeating, individual issues.'"  *Tyson Foods, Inc. v.*

*Bouaphakeo*, 577 U.S. 442, 453 (2016).  "An individual question is one where members

of a proposed class will need to present evidence that varies from member to member,

while a common question is one where the same evidence will suffice for each member

to make a prima facie showing or the issue is susceptible to generalized, class-wide

proof."  *Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 984–85 (8th Cir. 2021).

Moreover, the calculation of damages must be based on a model applicable to all

members of the class.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013); *Cromeans v.*

*Morgan Keegan & Co., Inc.*, 303 F.R.D. 543, 559 (W.D. Mo. 2014).  If the measure of damages is based on a common model linked to plaintiffs' theory of liability, individual assessments of damages do not erode Rule 23(b)(3)'s predominance factor.  *See Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 833 (8th Cir. 2016).

### *Bearden* Class Under Rule 23(b)(3)

As noted above, Plaintiffs seek Rule 23(b)(3) certification of the *Bearden* class, which they define as:

> All persons who have, at any time since February 8, 2010, been kept in jail by the City of Ferguson for failing to pay a fine, fee, bond, surcharge, or cost, without an inquiry into their ability to pay (Count One).

Plaintiffs contend that members of this class were jailed for failure to pay or failure to appear on minor municipal ordinance violations with related fines; were held for periods of hours or days because they could not afford bond; and were never provided a hearing to assess their ability to pay bond.

The City argues that the *Bearden* class should not be certified because Plaintiffs fail to demonstrate ascertainability, typicality, commonality, predominance, and superiority[10] in that (1) the class definition fails to distinguish between indigent and non-

---

[10]    The City does not contest that *Bearden* and other proposed classes satisfy the numerosity and adequacy factors, and the Court concludes that these factors are satisfied with respect to all proposed classes.  Specifically, the parties do not dispute that membership in each of the classes ranges from more than 1,000 to more than 10,000 individuals, which is sufficiently numerous such that joinder of all members would be impracticable.  Further, Plaintiffs' counsel represented at the hearing (and the City did not dispute) that the vast majority of these individuals were arrested prior to 2015, such that even if the Court after supplemental briefing imposes end-dates with respect to some or all of the Rule 23(b)(3) classes, numerosity would still be satisfied.

indigent class members, (2) the applicable standard is one of "reasonableness," which is an inherently individualized inquiry, and (3) damages cannot be determined on a classwide basis.

I.    Indigency

As an initial matter, the Court is not convinced that an inmate's right to an ability-to-pay inquiry, which courts have considered under both the Equal Protection and Due Process Clauses, depends on his or her indigence.  *See, e.g.*, *Cain v. City of New Orleans*, 327 F.R.D. 111, 124 (E.D. La. 2018) ("[A] putative class member's right to an ability-to-pay inquiry does not depend on indigence; the procedural protections required by the Supreme Court in *Bearden* apply equally to indigent and non-indigent individuals."). Regardless, the proposed class is, by definition, limited to the indigent "given that most people would not willingly stay incarcerated if their financial circumstances permitted them to avoid it."  *Webb*, 340 F.R.D. at 139 (quoting *Dixon v. City of St. Louis*, No. 4:19-CV-0112-AGF, 2021 WL 616153, at *7 (E.D. Mo. Feb. 17, 2021)).  In light of the City's failure to conduct indigency hearings or create any record from which to otherwise determine an individual's indigence,[11] the Court concludes that the *Bearden* Class is sufficiently limited to the indigent.

---

As to adequacy, the Court is confident based on the record and the conduct of counsel and parties throughout this litigation that the named Plaintiffs' interests are aligned with those of the putative classes and that their attorneys are competent to prosecute the action.

[11]    *See Tyson Foods,* 577 U.S. at 456 (discussing the evidentiary consequences of a defendant's failure to keep adequate records).

Moreover, each of the named Plaintiffs offered as a class representative is a proper representative of this class and satisfies the typicality factor, as each alleges that he or she was assessed a fine, fee, bond, surcharge, or cost; was unable to pay the amount required; and was jailed as a result thereof, without an inquiry into his or her ability to pay.

II.   <u>Reasonableness</u>

The City next contends that the standard to establish a constitutional violation regarding the timing of any required hearing in this context is one of "reasonableness," which is an inherently individualized inquiry.  The City cites *County of Riverside v. McLaughlin,* 500 U.S. 44 (1991) and its progeny such as *Portis v. City of Chicago*, 613 F.3d 702 (7th Cir. 2010), to argue that Plaintiffs must prove that any delay in their release from detention was unreasonable.

*County of Riverside* and *Portis*, in turn, both derived from *Gerstein v. Pugh*, 420 U.S. 103.  Like *Gerstein*, both involved Fourth Amendment claims by individuals arrested without warrants and challenging the length of their pretrial detention prior to a judicial hearing on the issue of probable cause.  Plaintiffs in the instant case assert a somewhat similar Fourth Amendment claim in Count Seven of their complaint.

But the *Bearden* Class falls under Count One of Plaintiffs' complaint, which asserts a hybrid due process and equal protection claim.  The basis for the City's liability with respect to the *Bearden* Class is whether the City had a policy and practice of jailing people for failure to pay without any consideration of their ability to pay, in violation of due process and equal protection.  The City's reliance on Fourth Amendment caselaw

21

regarding prompt determinations of probable cause after warrantless arrests is therefore inapposite.

Nevertheless, even if the Court were to apply the reasoning of *County of Riverside* and *Portis* here, class certification would not be precluded. *County of Riverside* involved a class action alleging that the manner in which a county provided probable cause determinations to persons arrested without a warrant violated the Fourth Amendment. 500 U.S. 44, 47. The California process at issue combined probable cause determinations with arraignment procedures and provided that the combined arraignment/probable cause hearing must be held within two days of arrest but excluded weekends and holidays, such that the delay for a probable cause determination could be as long as five days. *Id.*

The Supreme Court held that the Fourth Amendment does not compel immediate determination of probable cause upon completion of the administrative steps incident to a warrantless arrest, but that jurisdictions must hold probable cause determinations as soon as is reasonably feasible. *Id.* at 54-57. The Court also imposed a presumptively reasonable standard of 48 hours and concluded that counties who hold judicial determinations of probable cause no later than 48 hours after arrest are generally immune from systemic challenges, such as class actions. *Id.* at 56. But the Court noted that a hearing within 48 hours may still violate the Fourth Amendment if the arrested individual could prove the probable cause determination was delayed unreasonably, such as delay for delay's sake. *Id.* at 56-57.

*Portis* relied on *County of Riverside* to hold that a class action was improperly certified under Rule 23(b)(3) where the plaintiffs challenged a city practice of

unconstitutionally delaying release of persons arrested for non-jailable, fine-only
ordinance violations, for more than two hours.  613 F.3d at 703.  The plaintiffs in that
case reasoned that taking any more than two hours to perform all the administrative steps
necessary to determine the arrestees' eligibility for release was inherently unreasonable
under the Fourth Amendment.  *Id.*  The Seventh Circuit held that district courts cannot
establish a numerical definition of a reasonable detention and that the rationale of *County
of Riverside*'s 48-hour burden-shifting approach was to inform courts that
"reasonableness must be assessed one case at a time."  *Id.* at 703-04.  The Seventh Circuit
then concluded that "[b]ecause reasonableness is a standard rather than a rule, and
because one detainee's circumstances differ from another's," common questions in that
case did not predominate and the class did not satisfy Rule 23(b)(3).  *Id.* at 705.

However, the Seventh Circuit went on to note that *County of Riverside*'s "48–hour
burden-shifting approach does not apply when the police don't plan to present the suspect
to a magistrate for a probable-cause hearing."  *Id.* at 704.  The Seventh Circuit likewise
recognized that "class treatment might be appropriate if the class sought to establish that
a jurisdiction had adopted a policy of deliberate delay."  *Id.* at 705.  Thus, the circuit did
"not foreclose the possibility" of classwide relief in the case before it, but it noted that the
record in that case had not yet established such deliberate delay.  *Id.* at 705-06.

In this case, Plaintiffs have in fact alleged deliberate delay with respect to both the
*Bearden* Class and the *Gerstein* Class.  It is on this basis that another judge of this Court
rejected a similar argument that the City of Maplewood asserted in a response to a

proposed class challenging that municipality's practices with respect to its municipal jail.

As that judge noted:

> The City misses the mark on plaintiffs' theory of liability for this Class.  The periods of detention for [the] named plaintiffs ranged from 3 hours to more than 44 hours. Regardless of these varied durations and the plaintiffs' eventual release with or without payment of bond, it is the *fact* of their detention without *any* consideration given to their ability to pay to secure their release that is the thread that connects the legal and remedial theories of plaintiffs and the putative class members. And the City's established policy, practice, or procedure of not considering a person's ability to pay *at all* renders the presumptively reasonable 48-hour period of detention meaningless. . . . [According to the plaintiffs,] the policy of holding these persons without inquiring into their ability to pay served the City's purpose of extracting any monies it could before releasing them – whether it be full bond after 3 hours or a reduced bond or no bond as the 48-hour mark approached. The City held these persons as long as it could until either they could scrounge up some money for bond or an arbitrary decision had to be made to release them without payment of bond. Accordingly, . . . the delay in releasing these persons was merely for delay's sake. Given this alleged purpose for keeping these persons in jail – whether it be for one hour after booking, 7 hours, or 47 hours and 59 minutes – this detention is not "reasonable" as the City argues.

*Webb*, 340 F.R.D. at 141–42 (emphasis in original).

The same holds true in this case, in which Plaintiffs assert substantially similar claims.  Plaintiffs' theory of liability with respect to the *Bearden* Class is that the class members' detentions were uniformly unreasonable because, as a matter of City policy or custom, they were held in the Ferguson jail as long as it took to extract money for a bond, without any consideration of their ability to pay, or until an arbitrary decision was made to release them without payment.  Such a policy or practice, if proven, is subject to common proof.  *See id.* at 142 (holding that "[a]ny period of detention based solely on a failure to pay without an inquiry into indigency is a common question subject to common

proof," regardless of the length of such detention, the amount of the bond, or whether the bond was paid in part, in full, or not at all).

Damages

Plaintiffs contend they will seek damages for each hour spent in jail beyond the estimated two hours to complete booking, reasoning that such hours of detention were unlawfully based on their failure to pay without inquiry into their ability to pay.  This model for calculating damages is linked to Plaintiffs' theory of liability and is applicable to all members of the Class.

"The damages recoverable for the loss of liberty for the period spent in a wrongful confinement are separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering."  *Webb v. City of Maplewood*, No. 4:16 CV 1703 CDP, 2021 WL 5371247, at *2 (E.D. Mo. Nov. 18, 2021) (quoting *Betances v. Fischer*, 304 F.R.D. 416, 431 (S.D.N.Y. 2015)).  Such general damages "would include at least the value of the time lost by the plaintiff during the period of detention," and thus "do not turn on any individual characteristics of any class members."  *Id.* (quoting *Betances*, 304 F.R.D. at 431 and collecting other cases for the same proposition).

Plaintiffs also proffer common proof of the number of hours that each class member was wrongfully detained through their expert, Stephen Demuth, Ph.D.  Based on Dr. Demuth's analysis of the municipal court records, Plaintiffs have offered representative evidence that the median amount of time that City officials took to complete administrative steps incident to arrest during the class period was approximately two hours.  This evidence is appropriate for the Court's consideration in

25

light of the City's failure to maintain records necessary for more accurate calculations. *See Tyson Foods*, 577 U.S. at 456 (recognizing that it is appropriate for class plaintiffs "to introduce a representative sample to fill an evidentiary gap created by the [defendant's] failure to keep adequate records").

Further, to the extent that the City wishes to argue in defense that some portion of certain class members' detentions were due to reasons unrelated to Plaintiffs' theory of liability, such as detention on a warrant from another jurisdiction, the data necessary to make such an argument is available in the municipal court records.  Indeed, Plaintiffs' expert, Dr. Demuth, has already identified from such records those arrests that involved warrants from another jurisdiction.  And because the municipal records do not delineate the amount of time held on an outside warrant versus a Ferguson warrant or charge, the City would be asking the Court to make assumptions regarding such delineation, regardless of whether these claims were pursued on an individual or classwide basis.[12] For all of these reasons, individual assessments of damages do not erode Rule 23(b)(3)'s predominance factor.

Finally, the Court concludes that certification of this class is superior to individual litigation.  The class includes thousands of allegedly indigent persons who would be

---

[12]     Representative evidence could be used in mounting such a defense. *See Tyson Foods*, 577 U.S. at 454–55 ("A representative or statistical sample, like all evidence, is a means to establish or  defend against liability. Its permissibility turns not on the form a proceeding takes—be it a class or individual action—but on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action.").  For example, Dr. Demuth has estimated that the median amount of time that inmates were held in the Ferguson jail solely on warrants from other jurisdictions was approximately five hours.  *See* ECF No. 466-1 at 21, 24 n.14.

unlikely to commence litigation on their own behalf.  *See D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) ("It is appropriate for the court to consider the inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually."). Resolution of their claims in a single forum would also serve judicial economy interests.

Accordingly, the Court will certify the *Bearden* Class under Rule 23(b)(3) and appoint named Plaintiffs Fant, Carter, Nelson, Nelson, Jr., Alfred Morris, Shameika Morris, Kimble, Thomas, and Tucker as Class Representatives.   However, as noted above, the Court may revise this class definition based on the expected supplemental briefing in order to impose an end-date for the class period.  *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

### A. *Gerstein* Class Under Rule 23(b)(3)

Next, Plaintiffs seek Rule 23(b)(3) certification of the *Gerstein* class, which Plaintiffs describe as a subclass of the *Bearden* Class and define as:

> All persons who have, at any time since February 8, 2010, been held in jail by the City of Ferguson after a warrantless arrest for longer than a reasonable period of time (48 hours at a maximum or such shorter period of time as the Court may determine) prior to a finding of probable cause by a neutral magistrate for their arrest and continued detention (Count Seven).

ECF No. 430-1 at 17.

Plaintiffs contend that members of this subclass were arrested without a warrant and held for hours or days without probable-cause hearings because the City maintained a policy of *never* providing probable-cause hearings to warrantless arrestees.

Reasserting many of the same arguments that it raised with respect to the *Bearden* class, the City argues that the *Gerstein* subclass should not be certified because Plaintiffs fail to demonstrate ascertainability, typicality, commonality, predominance, and superiority in that (1) the applicable standard is one of "reasonableness," which is an inherently individualized inquiry; (2) the class definition fails to distinguish between those whose arrests were supported by probable cause and those whose arrests were not; and (3) damages cannot be determined on a classwide basis.

### 1.   Reasonableness

The City again cites *County of Riverside* and *Portis* to argue that the standard to establish a constitutional violation here is an inherently individualized "reasonableness" inquiry, and that Plaintiffs must prove that any delay in holding a probable cause hearing was both unreasonable *and* lasted longer than 48 hours.

Again, the City misses the mark.  Although the *Gerstein* subclass, like the plaintiffs in *County of Riverside* and *Portis*, alleges a Fourth Amendment violation on behalf of individuals arrested without a warrant, the nature of the subclass's claim differs from that alleged in those cases.  In particular, the subclass does not merely challenge the "manner" in which the City provides probable cause determinations as in *County of Riverside*, 500 U.S. at 47, or the length of time that the City alleges takes to complete administrative steps incident to arrest as in *Portis*.

Rather, the *Gerstein* subclass alleges that the Ferguson police "don't plan to present [persons arrested without a warrant] to a magistrate for a probable-cause hearing"—at least they did not until Senate Bill 5 was made effective.  *See Portis*, 613

F.3d at 704.  Specifically, Plaintiffs allege that no process existed by which those arrested without a warrant would *ever* be provided a probable cause hearing.  Thus, Plaintiffs' claim is more like that asserted in *Gerstein* itself, in which an injunctive class was certified that challenged a Florida procedure under which "a person arrested without a warrant and charged by information [could] be jailed or subjected to other restraints pending trial without *any* opportunity for a probable cause determination."  *Gerstein*, 420 U.S. at 116 (emphasis added).  In such cases, *County of Riverside*'s "48-hour burden-shifting approach does not apply."  *See Portis*, 613 F.3d at 704.

In other words, reasonableness in this case does not turn on whether class members were held for too long (as in *County of Riverside* and *Portis*) but whether they were held for reasons unrelated to the arrangement of the probable-cause determination or completion of the steps incident to arrest—reasons such as revenue generation.  *See. e.g.*, *MacNamara v. City of New York*, 275 F.R.D. 125, 150 (S.D.N.Y. 2011) (granting class certification of an excessive detention claim under Rule 23(b)(3) where "[t]he central and predominant focus of the class action suit [was] not the mere length of detention for . . . arrestees, but the existence of a policy to detain them longer than would otherwise be required."); *see also County of Riverside*, 500 U.S. at 70 (Scalia, J., dissenting) ("[A]bsent extraordinary circumstances, it is an 'unreasonable seizure' within the meaning of the Fourth Amendment for the police, having arrested a suspect without a warrant, to delay a determination of probable cause for the arrest *either (1) for reasons unrelated to arrangement of the probable-cause determination or completion of the steps incident to arrest, or* (2) [for too long] after the arrest.") (emphasis added).

The success or failure of every class member's claim turns on proof that no process existed by which those arrested without a warrant would have an opportunity for a probable cause determination.[13]  That proof will be common to the class.

With this understanding of Plaintiffs' legal theory, it is unclear why Plaintiffs reference the 48-hour safe harbor in their proposed class definition.  *See* ECF No. 430-1 at 17 (defining the *Gerstein* Class to include those held in jail after a warrantless arrest "for longer than a reasonable period of time (48 hours at a maximum or such shorter period of time as the Court may determine) prior to a finding of probable cause . . . .").  However, at oral argument, Plaintiffs' counsel clarified that the reference was an alternative to be imposed only if the Court rejected Plaintiffs' argument that the 48-hour safe harbor did not apply.

Because the Court in fact agrees with Plaintiffs' argument, and in order to capture class members with common claims under Plaintiffs' legal theory and satisfy Rule 23, the Court will modify the class definition as follows: All persons who have, at any time since February 8, 2010, been held in jail by the City of Ferguson after a warrantless arrest with no finding of probable cause by a neutral magistrate for their arrest and continued detention (Count Seven) (the "Modified *Gerstein* Class").  As with the *Bearden* Class, the Court may further revise this class definition following supplemental briefing on the parties' proposed end-dates.  *See* Fed. R. Civ. P. 23(c)(1)(C).

---

[13]     Whether the City, rather than another entity, was the moving force behind this alleged constitutional violation is a merits question that would impact the class uniformly and, therefore, does not change the Court's Rule 23 analysis.

So modified, the class satisfies both the commonality and predominance requirements of Rule 23(a) and (b)(3).  Moreover, the three named Plaintiffs offered as class representatives—Carter, Tucker, and Alfred Morris—are proper representatives of this class and satisfy the typicality factor, as each alleges that he was arrested without a warrant and held with no prospect of receiving a probable cause determination.

> 2.  <u>Identifying Warrantless Arrests That Were Supported by Probable Cause</u>

The City likewise misses the mark when it argues that the class definition must distinguish between those whose warrantless arrests were supported by probable cause and those whose arrests were not.  The very point of the Modified *Gerstein* Class members' claims is that they were never afforded any determination of probable cause.  The City's failure to hold a probable-cause hearing and its alleged policy or practice to *never* hold such a hearing is the claimed constitutional violation here.  According to Plaintiffs, probable cause was never determined for any of the warrantless arrests and detentions at issue.

> 3.  <u>Damages</u>

As with the *Bearden* Class, Plaintiffs' damages calculations for the Modified *Gerstein* Class are based on how long each class member spent in the Ferguson jail beyond an estimated two hours for completing any administrative steps incident to arrest.  Such general damages again "include at least the value of the time lost by the plaintiff during the period of detention," and thus "do not turn on any individual characteristics of any class members."  *Webb*, 2021 WL 5371247, at *2  (quoting *Betances*, 304 F.R.D. at 431 and collecting other cases for the same proposition).  And again, any defense by the

31

City in individual cases that the detention was due to other factors, such as an outside warrant, can be asserted based on court records in a classwide proceeding just as it could in an individual proceeding.

Plaintiffs likewise proffer common proof of damages, based on the number of hours class members were wrongfully detained, through their economics expert, Dr. Demuth.  Accordingly, damages can be measured using common means.  Because this model for calculating damages is linked to Plaintiffs' theory of liability and is applicable to all members of the Class, individual assessments of damages do not erode Rule 23(b)(3)'s predominance factor.

Finally, the Court concludes that certification of this class is superior to individual litigation and that resolution of these claims in a single forum would serve the interests of judicial economy.  For all of these reasons, the Court will certify the Modified *Gerstein* Class under Rule 23(b)(3) and appoint named Plaintiffs Carter, Tucker, and Alfred Morris as Class Representatives.

### B.  Warrant Class Under Rule 23(b)(3)

Next, Plaintiffs seek Rule 23(b)(3) certification of the Warrant Class, which Plaintiffs describe as another subclass of the *Bearden* Class consisting of only those members who were arrested on a warrant; in other words, the Warrant Class consists of those members of the *Bearden* Class who are not also members of the Modified *Gerstein* Class.  Plaintiffs define the Warrant Class as:

> All persons who have, at any time since February 8, 2010, been held in jail by the City of Ferguson after being arrested on a warrant issued by the City (Count Three).

ECF No. 430-1 at 17.

Plaintiffs contend that members of this class were arrested on a warrant and held in the Ferguson jail without any opportunity to be brought before a judge for a first appearance.

The difference between the Warrant Class and the classes based on *Bearden* and *Gerstein* is the legal theory asserted by class members.  As noted above, members of the *Bearden* Class challenge their detention as based on their inability to pay, in violation of due process and equal protection.  Members of the Modified *Gerstein* Class challenge their detention as failing to be based on a prompt, neutral finding of probable cause, in violation of the Fourth Amendment.  Members of the Warrant Class challenge their detention as violating their substantive due process "right to a prompt appearance in court, after arrest by warrant."  *See Hayes v. Faulkner Cty., Ark.*, 388 F.3d 669, 673 (8th Cir. 2004) (recognizing such a right and noting that the standard of liability is "[d]eliberate indifference to prisoner welfare" that is sufficient to "shock the conscience").

The City argues that, like reasonableness, the shocks-the-conscience standard is inherently individualized and precludes class certification.  To highlight the individualized nature of the inquiry, the City again cites caselaw in which individual arrestees claimed they were held too long before receiving a first appearance in court. *See, e.g.*, *Martz v. Simmons*, No. 4:18-CV-04040, 2019 WL 2110576, at *1 (W.D. Ark. May 14, 2019) (cited by the City).

The City's reliance on such caselaw is again misplaced.  The Warrant Class members do not merely challenge the length of their detention prior to receiving a first appearance.  They allege that, as a matter of the City's uniform policy and practice, they were *never* provided a first appearance because no process for such appearance existed. Whether no such process existed, whether that failure is attributable to the City, whether the City acted with deliberate indifference, and whether the City's conduct shocks the conscience, are all common questions the answers to which will be the same for all class members.

For the same reasons discussed above with respect to the *Bearden* and Modified *Gerstein* Classes, the Warrant Class satisfies both the requirements of Rule 23(a) and (b)(3).  Plaintiffs proffer common proof of damages through their expert, Dr. Demuth, which are based on the number of hours class members were wrongfully detained. Moreover, the seven named Plaintiffs offered as class representatives—Fant, Carter, Nelson, Nelson, Jr., Alfred Morris, Shameika Morris, Kimble, and Thomas[14]—are proper representatives of this class and satisfy the typicality factor, as each alleges that he or she was arrested on a warrant and detained with no prospect of receiving a first appearance before a judge.

For all of these reasons, the Court will certify the Warrant Class under Rule 23(b)(3) and appoint named Plaintiffs Fant, Carter, Nelson, Nelson, Jr., Alfred Morris, Shameika Morris, Kimble, and Thomas as Class Representatives.  Again, the Court may

---

[14]    Plaintiffs assert that Tucker's sole arrest was warrantless and, as such, he is not being offered as a class representative of the Warrant Class.

revise the class definition following supplemental briefing on the parties' proposed end-

dates.  *See* Fed. R. Civ. P. 23(c)(1)(C).

### C.  <u>Post-Judgment Class Under Rule 23(b)(3)</u>

The last self-described subclass of the *Bearden* Class of which Plaintiffs seek Rule

23(b)(3) certification is the Post-Judgment Class, defined as:

> All persons who have, at any time since February 8, 2010, been jailed by the
> City of Ferguson because of their non-payment in connection with a prior
> judgment (Counts Two, Five, and Six).

ECF No. 430-1 at 17.

Plaintiffs contend that members of this subclass were arrested on warrants issued

automatically when they missed a payment due with respect to fines or costs assessed by

the Ferguson municipal court in connection with a judgment.  Plaintiffs contend that

these warrants were invalid, in violation of the Fourth Amendment, because they were

issued solely for non-payment, without probable cause and without prior notice or an

opportunity to be heard concerning ability to pay.  Next, Plaintiffs contend that members

of this subclass should have been but were not provided legal representation, in violation

of the Sixth Amendment.  Finally, Plaintiffs contend that these class members were

treated more harshly than those similarly situated—including individuals owing money to

private creditors who receive protections against unduly harsh methods of debt collection,

and individuals able to afford an attorney or able to pay a predetermined fee, whose arrest

warrants in this context were automatically recalled—in violation of the Equal Protection

Clause.

The City argues that this subclass should not be certified because Plaintiffs

conceded in their brief that the class "contains thousands of people who have been jailed by the City on the basis of warrants arising from nonpayment of debts" but that "[d]ue to the City's flawed record keeping, a more precise tally of the Post-Judgment Class would require a manual review of the City's existing individual paper court files."  ECF No. 430-1 at 23.  The City contends that this concession renders the class unascertainable.

The City further argues that it is unclear who would be included in the class and whether, for example, it would include persons who were being detained on warrants from other jurisdictions or on warrantless arrests in addition to those allegedly arrested for nonpayment of debts.

At oral argument, Plaintiffs' counsel clarified that class members could be ascertained by review of municipal court records.  Counsel cited as an example arrest warrants for several of the named Plaintiffs that reference "fines and costs" owed by these Plaintiffs.  *See, e.g.*, ECF No.427-81, Pls.' Ex. 80 (one of the arrest warrants for named Plaintiff Roelif Carter referencing such "fines and costs").  Plaintiffs further assert that the municipal court's paper files contain information about detainees' outstanding fines and costs owed and payments made, which will ensure an accurate list of class members.  Based on these representations, the Court concludes that class members may be identified by reference to objective criteria and, as such, the class is ascertainable.

As to the City's contention that the Post-Judgment Class may improperly include those detained on outside warrants or on warrantless arrests, in addition to warrants arising from failure to pay court-assessed fines and costs, the Court agrees with Plaintiffs that at least some period of detention would be due to the warrant arising from failure to

36

pay.  As with the other classes described above, to the extent that the City wishes to argue in defense that some portion of the detention was due to other reasons (such as an outside warrant or warrantless arrest), the data necessary to establish such an argument is available from court records, which reflect any such dual-purpose arrests.  Litigation on a classwide, as opposed to individual, basis would not impede the City's ability to pursue such a defense.

As with the other classes, the success or failure of each Post-Judgment Class member's claim turns on common proof.  In this case, it is proof that it was the City's policy or practice to automatically issue arrest warrants when an individual failed to make timely payment with respect to fines and costs assessed in connection with prior judgments; and to fail to appoint counsel in connection with such legal proceedings.[15]

For the same reasons discussed above with respect to the *Bearden* and Modified *Gerstein* Classes, the Post-Judgment Class satisfies both the requirements of Rule 23(a) and (b)(3).  Plaintiffs proffer common proof of damages through their expert, Dr. Demuth, which are based on the number of hours class members were wrongfully detained.  Moreover, the seven named Plaintiffs offered as class representatives—Fant, Carter, Nelson, Nelson, Jr., Alfred Morris, Shameika Morris, and Thomas—are proper representatives of this class and satisfy the typicality factor, as each alleges that he or she was arrested on a warrant arising from non-payment of a fine or cost assessed in connection with a prior judgment and was incarcerated without counsel.

---

[15]    Likewise, the City's contention that another entity was the moving force behind these alleged constitutional violations is a common question with a common answer.

For all of these reasons, the Court will certify the Post-Judgment Class under Rule 23(b)(3) and appoint named Plaintiffs Fant, Carter, Nelson, Nelson, Jr., Alfred Morris, Shameika Morris, and Thomas as Class Representatives.  As with the other classes, the Court may revise the class definition following supplemental briefing on the parties' proposed end-dates.  *See* Fed. R. Civ. P. 23(c)(1)(C).

## Jail Conditions Class Under Rule 23(b)(3)

Next, Plaintiffs seek Rule 23(b)(3) certification of the Jailed Conditions Class, which they define as:

> All persons who, at any time since February 8, 2010, were held in the City of Ferguson jail (Count Four).

Plaintiffs contend that the Jail Conditions Class includes all arrestees who were detained in the Ferguson jail during the relevant period, even if they were held on behalf of another municipality.  Plaintiffs argue that class members are united by their shared exposure to the jail's inhumane conditions, including inadequate food, lack of access to hygiene products and showers, and lack of access to clean water by virtue of water fountains being attached to toilets.

The City argues that the Jail Conditions Class should not be certified because Plaintiffs fail to demonstrate ascertainability, typicality, and commonality, predominance, and superiority[16] in that (1) the proposed class impermissibly combines distinct alleged constitutional violations of excessive force, denial of medical care, and inhumane jail

---

[16]      As noted above, the Court concludes and the City does not contest that this proposed class satisfies the numerosity and adequacy factors.

conditions; (2) the differences in the length of time each class member was detained in allegedly poor conditions defeats commonality and typicality; and (3) Plaintiffs lack evidence of an element of their claim because the expert testimony they rely upon should be excluded under Federal Rule of Evidence 702.

I.     Constitutional Violations Alleged

The City correctly notes that, to the extent that Plaintiffs intend to combine their claims of inhumane jail conditions with discrete claims of excessive force or denial of medical care into a single class, the class would fail to satisfy Rule 23's requirements. *See Elizabeth M. v. Montenez*, 458 F.3d 779, 787 n.4, 788 (8th Cir. 2006) (holding that combining failure-to-protect and right-to-custodial-treatment claims with "differing legal standards" in a single class action was contrary to Rule 23). But Plaintiffs confirmed at oral argument that they do not seek to assert constitutional violations based on jail staff's use of excessive force or denial of medical care in particular instances.

Rather, Plaintiffs argue that their Jail Conditions Class asserts a general conditions-of-confinement claim requiring proof that the conditions of confinement "posed a substantial risk of serious harm" to the plaintiffs, and that the defendant was aware of the substantial risk of harm and deliberately indifferent to it.    *See, e.g., Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012).  Because Plaintiffs allege that the conditions applied to them in substantially uniform ways, in a single facility, a classwide proceeding on this claim will generate common answers as to each of these elements. *See, e.g.*, *Scott v. Quay*, 338 F.R.D. 178, 190 (E.D.N.Y. 2021) (certifying a conditions-of-confinement class under Rule 23(b)(3) upon finding that "Plaintiffs' claims

39

arise from conditions that applied to them in uniform or similar ways, and which they allege were caused by defendants' policies, acts, and omissions").

## II.   Differences in Length of Time of Detention

The Court rejects the City's contention that differences in the length of time during which each class member was exposed to allegedly harmful conditions precludes class certification.  The City relies upon the general proposition that conditions-of-confinement claims require consideration of the "totality of circumstances" of confinement and that exposure to harmful conditions for only a minimal length of time may not rise to the level of a constitutional violation.  *See, e.g.*, *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003).

But this rule does not preclude a finding of commonality.  *See, e.g.*, *Yates v. Collier*, 868 F.3d 354, 363 (5th Cir. 2017) (affirming class certification even where no two class members had "the exact same risk," as the prison's conditions were alleged to pose an unconstitutional risk of serious harm to all class members); *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) ("[E]very inmate suffers exactly the same constitutional injury when he is exposed to a single . . . policy or practice that creates a substantial risk of serious harm") *Hassine v. Jeffes*, 846 F.2d 169, 178 (3d Cir. 1988) (holding that commonality was satisfied where prisoners complained that deficient conditions regarding plumbing, food service, and inmate security existed at the prison and that they were subject to these conditions).  If it did, it is not clear how any class of prisoners seeking to contest the conditions of confinement could satisfy Rule 23.

Liability for all class members will depend on proof that the City had a policy or

custom of detaining inmates with inadequate food, lack of access to hygiene products and showers, and lack of access to clean water; that these conditions posed a substantial risk of serious harm to inmates; and that the City was deliberately indifferent to that risk. Assuming that Plaintiffs can prove these elements, any variations in the length of time of detention may "speak . . . to damages, not liability.  And differences in damages alone will not defeat class certification." [17] *Flood v. Dominguez*, 270 F.R.D. 413, 418 (N.D. Ind. 2010); *see also Dunn v. City of Chicago*, 231 F.R.D. 367, 377 (N.D. Ill. 2005), *amended on reconsideration,* No. 04 C 6804, 2005 WL 3299391 (N.D. Ill. Nov. 30, 2005) ("[I]f it is unlawful to hold detainees for prolonged periods in interrogation rooms without a toilet, bed, or regular meal service, it is unlawful as to each class member regardless of factual variations in their actual experiences while in custody."); *MacNamara v. City of New York*, 275 F.R.D. at 152–53 ("The fact that the eventual assessment of damages may require individualized proof of injury does not preclude class treatment of allegations that the shared confinement conditions were unlawful.").

III.   Expert Testimony

The City's arguments with respect to Plaintiffs' expert, Eldon Vail, have been fully briefed by way of a separate *Daubert* motion.  *See* ECF No. 440.  The Court will address that motion by separate Order.  However, the merit of that motion does not affect the Court's Rule 23 analysis.  The questions of whether Vail's testimony is reliable and

---

[17]   To the extent that the City successfully establishes that the conditions did not pose a substantial risk of harm to those held for less than a certain amount of time as a matter of law, classwide relief may be limited accordingly.

whether Plaintiffs have sufficient evidence to support their claim that the jail conditions posed a substantial risk of serious harm, and the answers to these questions, will be common to the class.

In sum, the Jail Conditions Class satisfies the requirements of Rule 23(a) and (b)(3); each of the named Plaintiffs offered as class representatives is a proper representative of this class as each alleges that he or she was subject substantially similar poor conditions of Ferguson's jail; Plaintiffs proffer common proof of their damages through their expert, Dr. Demuth, which are based on how long each class member spent in the Ferguson jail rather than on any individual characteristics of class members; and for the reasons stated above, the Court concludes that class certification is superior to individual litigation.

For all of these reasons, the Court will certify the Jail Conditions Class under Rule 23(b)(3) and appoint named Plaintiffs Fant, Carter, Nelson, Nelson, Jr., Alfred Morris, Shameika Morris, Kimble, Thomas, and Tucker as Class Representatives.  Following supplemental briefing, the Court may revise the class definition in order to impose an end-date to the class period, which is likely to be no later than the date on which the Ferguson jail ceased operations.  *See* Fed. R. Civ. P. 23(c)(1)(C).

## Declaratory and Injunctive Class Under Rule 23(b)(2)

Finally, Plaintiffs seek Rule 23(b)(2) certification of the Declaratory and Injunctive Class, which they define as:

> All persons who currently owe or who will incur debts to the City of Ferguson from fines, fees, costs, or surcharges arising from judgments in cases prosecuted by the City (Counts Two, Five, and Six).

ECF No. 430-1 at 18.

Although Plaintiffs reference only Counts Two (lack of counsel, in violation of the Sixth Amendment); Five (differential treatment compared to debtors owing money to private creditors, in violation of equal protection), and Six (invalid warrants, in violation of Fourth Amendment) in this class definition, they assert that members of this class will be jailed under the City's unconstitutional policies and practices as alleged in <u>all</u> of the counts of their complaint.  *See* ECF No. 430-1 at 30-32 (describing the common questions that this class intends to address, which touch on all of the causes of action pled in the complaint).  They likewise seek declaratory and injunctive relief to address all of the alleged constitutional violations.

Therefore, the Court will modify the class definition to reflect that it addresses all of Plaintiffs' causes of action, as follows: All persons who currently owe or who will incur debts to the City of Ferguson from fines, fees, costs, or surcharges arising from judgments in cases prosecuted by the City (Counts One, Two, Three, Four, Five, Six, and Seven) (the "Modified Declaratory and Injunctive Class").[18]

The City's opposition to this class consists primarily or exclusively of challenges to the merits, including arguments that the requests for declaratory and/or injunctive

---

[18]     The Court recognizes that, following supplemental briefing and/or dispositive motion, it may be determined as a matter of law that some or all of the claims on which this class is proceeding are moot or otherwise inappropriate for injunctive relief.  For example, the cessation of the Ferguson jail's operations in 2017 likely renders Plaintiffs' claims under Count Four (conditions of confinement) moot.  However, the Court believes it prudent to address such issues on a more complete record.

relief are moot; the requests for such relief are otherwise inappropriate in light of governing legal principles; and the relief sought is not within the authority of the City.[19] The City does not address Rule 23's requirements with respect to this class.

The Court finds that the proposed class satisfies the requirements of Rule 23(a) for the reasons set forth above with respect to the corresponding damages classes.  The named Plaintiffs offered as class representatives—Fant, Carter, Alfred Morris, Shameika Morris, and Thomas—are typical of the class because they each allege they were, at the time the lawsuit was filed, indebted to the City as a result of fines, fees, costs, or surcharges arising from judgments in cases prosecuted by the City.   As noted above, the City does not challenge the adequacy of the class representatives or class counsel, and the Court finds based on the record and the conduct of counsel and parties throughout this litigation that the class representatives' interests are aligned with those of the putative classes and that their attorneys are competent to prosecute the action.

"The key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360.  The City raises no specific argument against the cohesiveness of this class.  And the relief sought here is applicable to all class members as it seeks to declare the City's policies and practices described above with respect to the damages classes unconstitutional and seeks to enjoin the City from enforcing such policies and practices.

---

[19]     As noted above, some of these arguments may be addressed in supplemental filings that will follow this Memorandum and Order.

Because the Modified Declaratory and Injunctive Class's challenges to the City's policies and practices are premised on grounds applicable to the entire class, Rule 23(b)(2) is satisfied. *See Ebert*, 823 F.3d at 480. And as Plaintiffs have met their burden of showing that the Modified Declaratory and Injunctive Class satisfies the requirements of Rule 23(a) and (b)(2), the Court will certify the Class and appoint named Plaintiffs Fant, Carter, Alfred Morris, Shameika Morris, and Thomas as Class Representatives.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for class certification is **GRANTED in part**, as set forth above, such that the Court will grant certification but will modify certain of the class definitions. ECF No. 425.

**IT IS FURTHER ORDERED** that named Plaintiffs Keilee Fant, Roelif Carter, Allison Nelson, Herbert Nelson, Jr., Alfred Morris, Shameika Morris, Anthony Kimble, Donyale Thomas, and Ronnie Tucker are appointed as Class Representatives to represent the *Bearden* Class, defined as follows:

All persons who have, at any time since February 8, 2010, been kept in jail by the City of Ferguson for failing to pay a fine, fee, bond, surcharge, or cost, without an inquiry into their ability to pay (Count One).

**IT IS FURTHER ORDERED** that named Plaintiffs Roelif Carter, Alfred Morris, and Ronnie Tucker are appointed as Class Representatives to represent the Modified *Gerstein* Class (a subclass of the *Bearden* Class), defined as follows:

All persons who have, at any time since February 8, 2010, been held in jail by the

City of Ferguson after a warrantless arrest with no finding of probable cause by a neutral magistrate for their arrest and continued detention (Count Seven).

**IT IS FURTHER ORDERED** that named Plaintiffs Keilee Fant, Roelif Carter, Allison Nelson, Herbert Nelson, Jr., Alfred Morris, Shameika Morris, Anthony Kimble, and Donyale Thomas are appointed as Class Representatives of the Warrant Class (a subclass of the *Bearden* Class), defined as follows:

All persons who have, at any time since February 8, 2010, been held in jail by the City of Ferguson after being arrested on a warrant issued by the City (Count Three).

**IT IS FURTHER ORDERED** that named Plaintiffs Keilee Fant, Roelif Carter, Allison Nelson, Herbert Nelson, Jr., Alfred Morris, Shameika Morris, and Donyale Thomas are appointed as Class Representatives of the Post-Judgment Class (a subclass of the *Bearden* Class), defined as follows:

All persons who have, at any time since February 8, 2010, been jailed by the City of Ferguson because of their non-payment in connection with a prior judgment (Counts Two, Five, and Six).

**IT IS FURTHER ORDERED** that named Plaintiffs Keilee Fant, Roelif Carter, Allison Nelson, Herbert Nelson, Jr., Alfred Morris, Shameika Morris, Anthony Kimble, Donyale Thomas, and Ronnie Tucker are appointed as Class Representatives of the Jail Conditions Class, defined as follows:

All persons who, at any time since February 8, 2010, were held in the City of Ferguson jail (Count Four).

**IT IS FURTHER ORDERED** that named Plaintiffs Keilee Fant, Roelif Carter,

46

Alfred Morris, Shameika Morris, and Donyale Thomas are appointed as Class

Representatives to represent the <u>Modified Declaratory and Injunctive Class</u>, defined as

follows:

All persons who currently owe or who will incur debts to the City of Ferguson

from fines, fees, costs, or surcharges arising from judgments in cases prosecuted by the

City (Counts One, Two, Three, Four, Five, Six, and Seven).

**IT IS FURTHER ORDERED** that John Waldron and Blake Strode of ArchCity

Defenders, Inc., 440 N. 4th Street, Suite 390, St. Louis, Missouri 63102; Angela Daker, J.

Frank Hogue, Claire Leonard, Shannon Lane, and Hafsa S. Mansoor of White & Case

LLP,  200 South Biscayne Boulevard, Suite 4900 Miami, FL 33131; Marco Lopez and

Ryan Downer of Civil Rights Corps, 1601 Connecticut Avenue NW, Suite 800

Washington, DC 20009; and Brendan Roediger and John Ammann of SLU Law Clinic,

100 N. Tucker Blvd. Saint Louis, MO 63101-1930, are appointed as Class Counsel.

**IT IS FURTHER ORDERED** that the parties shall promptly meet and confer and

shall file, within **14 days** of the date of this Memorandum and Order, a joint proposed

schedule for the remainder of the litigation, including <u>prompt</u> proposed deadlines and

procedures with regard to the following:

(1) the most appropriate procedural framework and deadlines for briefing
proposed end-dates for the Rule 23(b)(3) class periods and Defendants' related
arguments regarding mootness and the appropriateness of declaratory and
injunctive relief based on changes to the alleged policies and practices at issue
in the complaint;

(2) the disposition of named Plaintiff John Narayan's claims;

(3)  the re-referral of this action to mediation;

47

(4) the filing of dispositive motions;

(5) the filing of any remaining Daubert motions; and

(6) trial, as well as the estimated length of trial.

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 9th day of June, 2022.