UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KEILEE FANT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-CV-00253-AGF |
| | ) | |
| CITY OF FERGUSON, MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiffs filed this putative class-action complaint under 42 U.S.C. § 1983, alleging that their federal constitutional rights were violated by Defendant City of Ferguson's (the "City") policies and practices of jailing individuals in inhumane conditions when these individuals could not pay bonds or other fines or fees, without inquiring into their ability to pay or considering alternatives to detention, without a neutral determination of probable cause to justify their continued confinement (in the case of warrantless arrests) or a first appearance before a judge (in the case of arrests on warrants), and without affording them counsel.  The Court has certified five damages classes and one class seeking declaratory and injunctive relief.

Both sides seek to present expert opinion testimony regarding liability and damages as they relate to Plaintiffs' classwide claims.  And both sides have now moved (ECF Nos. 438, 440, 442, 450, 494 & 496) to exclude from evidence at trial the opinions, testimony, and reports of the other's experts.  For the reasons set forth below, the motions

to exclude Plaintiffs' corrections expert, Eldon Vail, and the City's corrections expert, Tony Wilkes, will be denied; each of the remaining motions will be granted in part and denied in part.

## BACKGROUND

### Plaintiffs' Experts and the City's Objections

I.  Stephen Demuth

Demuth is a professor of sociology whose research has focused primarily on quantitative data analysis related to the influences of race, gender, and social class on decisions and outcomes at the pretrial and sentencing stages of the criminal justice process.  He was retained by Plaintiffs' counsel to analyze arrest records produced by the City in order to opine regarding the number and length of detention of arrestees in each proposed class.

In order to arrive at his opinions, Demuth relied on data sets in the form of Microsoft Excel spreadsheets that contained arrest records from the City and the City's third-party vendor over the relevant period.  Some of these arrest records were originally produced by the City as a single PDF document containing multiple years' worth of arrest sheets.  According to Plaintiffs, Plaintiffs' counsel converted the PDF into an Excel spreadsheet so that the data could be more easily analyzed by Demuth.

Demuth analyzed the arrest records in order to identify, for example, persons arrested on warrants for failure to appear or for non-misdemeanor and non-felony

municipal ordinance violations, persons arrested without warrants, and persons arrested on warrants from other jurisdictions; fines or fees associated with such arrests; payments (if any) made by arrestees at release; and length of detention.  Demuth further estimated the number of individuals in each category by using social security numbers to account for situations when a single individual was arrested on multiple occasions.  Based on his analysis, Demuth calculated median detention lengths, fee or fine totals, and payment amounts.  Demuth also analyzed the detentions based on other demographics, such as arrestees' race, gender, and employment status.

Demuth calculated the number of arrestees in each class proposed by the Plaintiffs by assuming that Plaintiffs could prove their theories of liability.  For example, Demuth assumed that, as to the *Bearden* Class defined in the Court's class certification Order (ECF No. 519),[1] those arrested on failure-to-appear warrants never received indigency determination and were held for as long as it took to extract money for a bond or other payment, as Plaintiffs had alleged in their complaint.  Therefore, Demuth counted such arrestees as members of the *Bearden* Class.

Demuth then created formulas that could be used as a classwide damages methodology if damages were based on the length of detention.  Demuth did not opine

---

[1]     The *Bearden* Class definition was recently amended to impose an end-date to the class period.  *See* ECF No. 535.  The Class, as amended, is defined as "[a]ll persons who have, at any time from February 8, 2010 through September 30, 2017, been kept in jail by the City of Ferguson for failing to pay a fine, fee, bond, surcharge, or cost, without an inquiry into their ability to pay (Count One)."  ECF No. 535 at 1.

regarding the appropriate per-hour dollar value to be applied to such damages. However, Demuth created formulas for each damages class based on the characteristics of each class of arrestees, and Demuth explained how a per-hour dollar value (as found by the fact-finder at trial) could be applied to the formula.

For example, as to the *Bearden* Class, which Demuth described as the "First Damages Class," Demuth created the following classwide damages formula, with the dollar amount to be filled in by the fact-finder at trial:

> For each person in the First Damages Class: [$ per hour detained] x [number of hours detained for the arrests meeting criteria for First Damages Class] = Class-wide damages for First Damages Class.

ECF No. 439-1, Demuth Report at 35.

Demuth also produced a rebuttal expert report, responding to the City's expert witness, Judge Douglas R. Beach, who challenged some of assumptions underlying Demuth's opinions, including the assumption that all persons held in the Ferguson jail were entitled to an indigency determination and did not in fact receive an inquiry into their ability to pay. *See* ECF No. 495-1, Beach Report at 6, 10. In his rebuttal report, Demuth opined that nothing in Beach's report contradicted Demuth's methodology or conclusions and that Demuth identified class members solely by reviewing the charges reflected in the arrest record data for people detained by or on behalf of the City and who had arrest charges for violations of City ordinances or failure-to-appear warrants issued by the City. *See* ECF No. 439-3, Demuth Rebuttal Report.

4

In its motion to exclude Demuth's opinions, the City argues that Demuth is unqualified to render his opinions because he admittedly has never served as a damages expert or prepared a damages methodology. The City further asserts that Demuth's opinions should be excluded because they rely in part on Excel spreadsheets created with the assistance of Plaintiffs' counsel. The City contends that "clearly established law and professional conduct rules . . . mandate that if [counsel's law firm] White & Case did prepare [the spreadsheets], the document[s] must be excluded lest White & Case would be disqualified from serving as trial counsel." ECF No. 510 at 1.

Next, the City asserts that Demuth's rebuttal report goes beyond merely responding to Beach's report and instead improperly expands Demuth's initial opinions. Finally, the City argues that Demuth's opinions should be excluded to the extent they comment on the race of class members, as race is irrelevant to any issue in this case.[2]

II.   Eldon Vail

Plaintiffs have also retained Eldon Vail, a former correctional administrator, to opine on whether the City's policies and practices conform to national correctional standards and whether they created a substantial risk of harm to detainees.[3]

---

[2]     As part of its *Daubert* motion, the City also reiterates its opposition to class certification and its argument that individualized damages determinations will predominate in this action. This Court has already rejected such arguments in its Order granting class certification in part and will not repeat that analysis here.

[3]     The City's jail ceased operations in late 2017.

Vail based his opinions on his review of discovery, including the transcripts of depositions of the named Plaintiffs and jail employees; a March 4, 2015 Department of Justice ("DOJ") report (the "DOJ report") investigating the City's police department; and his extensive experience in corrections. Vail specifically opined regarding the City's policies and practices as they relate to sanitation, hygiene, food service, medical care, and use of force, comparing these to specific standards set forth by the American Correctional Association ("ACA") and other national and state correctional standards.

Vail concluded that the City's policies and practices as they relate to each of the above-noted areas failed to comply with national standards and otherwise subjected detainees to risk of significant harm.

In its motion to exclude Vail's opinions, the City argues that Vail's opinions lack sufficient evidentiary support because Vail did not consider the testimony of all of the City's witnesses, Vail did not visit the City's jail,[4] and the evidence that Vail did rely upon did not support his opinions.   The City further argues that Vail's opinions are unhelpful, as the jury is capable of determining what jail conditions existed during the relevant time.   Next, the City argues that Vail is not qualified to offer opinions on the substantial risk of harm to detainees.  Finally, the City argues that Vail improperly attempts to equate industry standards with constitutionality and that Vail's rebuttal

---

[4]     Vail's issued his report in October of 2020, nearly three years after the City's jail ceased operating.

report cannot cure the above-noted deficiencies in his original report.

III.   Colin Gordon

Gordon is a professor of history with extensive education and experience in public policy, political economy, and economic development.  He was retained by Plaintiffs to opine regarding the economic, racial, and social history of the St. Louis region and the City in particular, in order to assess and explain the economic circumstances leading the City to implement (according to Gordon and Plaintiffs) the revenue-generating policies that resulted in the jailing of class members.

The City moves to exclude Gordon's opinions on the grounds that they are irrelevant, unhelpful, unreliable, and would confuse the jury.  Specifically, the City contends that Gordon's opinions largely focus on racial segregation and discrimination, which is not at issue in this case.  The City further argues that Gordon attempts to opine on City officials' intent and on the credibility of the City's witnesses, which are not proper subjects of expert testimony.  Finally, the City argues that Gordon's opinions are unreliable because Gordon's report cites articles written by Plaintiffs' counsel, ArchCity Defenders; relies on only portions of the discovery cherry picked by Plaintiffs; and otherwise fails to find support in the sources cited.

IV.   Justin Marlowe

Marlowe is a professor of public policy with a research focus on local government financial management.  He was retained by Plaintiffs to evaluate the City's

7

fiscal policies in place from 2008 to 2018, including how those policies compare to other similarly sized municipalities in the state; whether the City engaged in a policy of maximizing revenues; how police enforcement and collection of fines and fees affected the City's financial policies; and the City's incentive to continue a policy of revenue maximization after that policy began.

The City's motion to exclude Marlowe's opinions largely mirrors its motion to exclude Gordon's opinions.  Specifically, the City argues that Marlowe's opinions impermissibly purport to speak to the intent or motive of the City to use its municipal court to increase revenue.  The City argues that such opinions are speculative and unhelpful.  Next, the City argues that Marlowe's opinions are unreliable because Marlowe's chosen methodology to select municipalities for comparison to the City is based solely on population size rather than other relevant factors, such as crime rate; because Marlowe improperly relies on the DOJ report, which the City argues is inherently unreliable; and because Marlowe's opinion that the City could have raised revenue through means other than court fines and fees is factually unsupported. Further, the City argues that Marlowe's supplemental report, which addressed the later-taken deposition testimony of the City's former finance director, suffers from the same deficiencies as Marlowe's original report.  Finally, the City contends that Marlowe's report includes irrelevant references to race.

**The City's Experts and Plaintiffs' Objections**

I.     Douglas Beach

Beach is a retired circuit court judge of the 21st Judicial Circuit, which covers

St. Louis County, and a former city attorney for the city of Chesterfield, Missouri.

From January 1, 2017 to September 20, 2018, Beach served as the presiding judge for

the 21st Judicial Circuit, and in that role, he helped implement the new Missouri

Supreme Court Rule 37.04, which gave him and other presiding judges of the Missouri

circuit courts a more active role in supervising the municipal divisions of the circuit

courts, including the Ferguson Municipal Court.

The City retained Beach to provide historical perspective regarding the Missouri

municipal court system, particularly with respect to municipal court reform that has

taken place since mid-2015 as a result of changes to state statutes and court rules.

Beach opined that the Ferguson Municipal Court is a division of the state court system

and a separate entity than the City; that the City has no authority over the municipal

court; and that the municipal court's practices over the relevant period were governed

by and complied with then-existing state law.

Plaintiffs move to exclude Beach's opinions as irrelevant and unreliable because

the opinions concern state law rather than federal law and are in any event factually

incorrect.  Further, Plaintiffs argue that Beach's opinions are unsupported by the facts

because they are based solely on the testimony of the former judge of the Ferguson

Municipal Court, which testimony (according to Plaintiffs) did not support Beach's conclusions. Relatedly, Plaintiffs argue that by relying solely on the former municipal court judge's testimony, Beach implicitly opined on the credibility of a defense witness, which Plaintiffs assert is not the proper subject of expert testimony. Finally, Plaintiffs argue that Beach failed to apply reliable methodologies because he attempted to opine on matters of (state) law without the support of legal research and that such legal conclusions are in any event not the proper subject of expert testimony.

II.   Tony Wilkes

The City has also retained Tony Wilkes, a former correctional administrator and ACA training consultant, to opine regarding whether ACA standards in fact applied to the City's jail during the relevant time period; and whether the City's policies and practices with respect to sanitation, hygiene, food service, medical care, and use of force complied with accepted corrections industry practice.

Wilkes based his opinions on his review of discovery; a virtual meeting with Joseph Craig, who served as the City's jail supervisor from 2006 to July 2014; and Wilkes's extensive experience in corrections.  Wilkes concluded that the ACA standards would not have applied without exception to the City's jail, given the jail's size, structure, and limited maximum length of detainment. Wilkes further concluded that the City's policies and practices as they relate to each of the above-noted areas were reasonable and did not deviate from accepted corrections industry practice given

10

the nature of the facility and limited length of stay.[5]

In their motion to exclude Wilkes's opinions, Plaintiffs argue that Wilkes is unqualified to render his opinions because his experience in corrections is limited to a single correctional system that is not the system at issue in this and because he has never served as an expert witness.  Next, Plaintiffs argue that Wilkes's opinions are unhelpful because they do not have a sufficient factual basis and are based on cherry-picked portions of the discovery.  Likewise, Plaintiffs contend that Wilkes failed to reliably or consistently apply any applicable set of industry standards.  Finally, Plaintiffs argue that Wilkes's opinions should be excluded to the extent that they constitute conclusions of law or opine on the credibility of witnesses.

## **DISCUSSION**

The admission of expert testimony is governed by Federal Rule of Evidence 702.

*Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006).  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

---

[5]     While Wilkes declined to opine whether the food provided to detainees was nutritionally adequate, he concluded that "[b]ased on short duration of detainment, the meals provided, while not ideal, were not horrendous, intolerable, or likely to be harmful to detainees."  ECF No. 497-2, Wilkes Report at 10.

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The rule was amended in 2000 in response to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), which charged trial judges with a "gatekeeping" role to exclude unhelpful and unreliable expert testimony.

Factors relevant to the reliability and relevancy determinations include: "(1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community." *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012) (citations omitted).  Additional factors include "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

"[T]he *Daubert* reliability factors should only be relied upon to the extent that they are relevant and the district court must customize its inquiry to fit the facts of each particular case." *Shuck v. CNH Am., LLC*, 498 F.3d 868, 874 (8th Cir. 2007); *see also Unrein*, 394 F.3d at 1011 (stating that the "evidentiary inquiry is meant to be flexible

and fact specific, and a court should use, adapt, or reject *Daubert* factors as the particular case demands"). There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant. *Unrein*, 394 F.3d at 1011. The question is whether the expert's opinion is sufficiently grounded to be helpful to the jury. *Id.* at 1012.

Although the proponent of the expert testimony must prove its admissibility by a preponderance of the evidence, *Daubert*, 509 U.S. at 592, Rule 702 "is one of admissibility rather than exclusion." *Shuck*, 498 F.3d at 874. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Olson v. Ford Motor Co.*, 481 F.3d 619, 626 (8th Cir. 2007). Proposed expert testimony "must be supported by appropriate validation - i.e., good grounds, based on what is known"; expert "knowledge connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590, 599. But any "doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998).

**The City's *Daubert* Motions**

I.     <u>Demuth</u>

Contrary to the City's contention, Demuth does not purport to opine on the appropriate dollar amount to compensate class members for wrongful detention. Nor

does Demuth purport to opine on the validity of assumptions underlying class members'
legal claims, such as whether arrestees held on failure-to-appear warrants were in fact
detained for failure to pay some amount of money.  Therefore, the City's challenges to
Demuth's qualifications or assumptions made with respect to these two topics are
misplaced.

Rather, Demuth's opinions are limited to calculating the number of potential class
members and a formula to calculate damages on a classwide, per-hour basis.  Both sets of
opinions are based on the objective data, and Demuth is well qualified to render the
opinions in light of his extensive experience in such quantitative data analysis.  Further,
the Court agrees with Plaintiffs that Demuth's rebuttal report is properly limited to
rebutting Beach's challenges to his opinions.  The rebuttal report does not expand the
scope of Demuth's opinions.

As to the City's challenge to Plaintiffs' counsel's participation in preparation of
some of the Excel spreadsheets on which Demuth relied, on this record, the City does not
dispute Plaintiffs' assertion that counsel's participation was limited to converting the file
type from PDF to Excel. [6]  The City's challenge relies on Rule 4-3.7 of the Missouri

---

[6]     To the extent that the City takes issue with particular arrest records reflected in the
spreadsheets, such as potentially erroneous entries identified by Demuth as "fake" or test
entries (*see* ECF Nos. 439 at 23 & 513 at 6), the City may explore that topic on cross
examination.  From the Court's review of Demuth's reports and deposition testimony,
any such erroneous entries did not appear to impact Demuth's opinions.  But in any
event, such challenges to factual bases go to the weight rather than admissibility of
Demuth's testimony.

Supreme Court Rules of Professional Conduct, which provides that:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
>> (1) the testimony relates to an uncontested issue;
>>
>> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>>
>> (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 4-1.7 or Rule 4-1.9 [governing conflicts of interests with respect to current and former clients, respectively].

Mo. S.Ct. R. 4–3.7. This Rule "has been interpreted to mean an attorney is a necessary witness only if there are things to which he will be the only one available to testify." *Macheca Transp. Co. v. Philadelphia Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006).

Here, the only issue potentially implicating counsel is the authenticity of some, but not all, of the spreadsheets on which Demuth relied. It is far from clear at this stage what, if any, evidence would be required to lay the foundation for the spreadsheets at trial. As such, the Court cannot say at this stage that counsel is a necessary witness such that Rule 4-3.7 would apply.

And if the Rule did apply, it would not necessarily disqualify counsel but instead requires balancing of the interests of multiple parties, including the client, the tribunal, and the opposing party, considering the nature of the case, importance of the lawyer's testimony, probability that such testimony will conflict with other witnesses, hardship to

15

the client, and the availability of other lawyers in the attorney's firm to act as advocate, absent a conflict of interest.  *See* Mo. S.Ct. R. 4–3.7, cmt. [2]-[5].  The City has not moved to disqualify counsel and, upon consideration of the above-noted factors in light of the existing record, the Court is not convinced that disqualification of counsel would be warranted under these circumstances.  For these reasons, the Court will deny the City's motion to exclude Demuth based on counsel's involvement in creation of the underlying Excel spreadsheets.

However, to the extent that Demuth seeks to opine regarding the racial characteristics of arrestees, the Court agrees with the City that such opinions are irrelevant to Plaintiffs' claims, which do not allege any cause of action dependent upon race.  Therefore, the Court will grant the City's motion to exclude Demuth's opinions in part, solely to the extent that his opinions relate to the race of arrestees.

II.     Vail

The City's *Daubert* challenges with respect to Vail focus on the factual bases for Vail's opinions.  For example, the City argues that Vail's opinions regarding inadequate nutrition and hydration are based only on vague complaints by inmates rather than testing of the food and water supply; and that Vail failed to consider the deposition testimony of some of the corrections officers deposed in this case.  Such factual challenges may be addressed on cross examination but do not warrant exclusion of Vail's opinions.  Further, the Court concludes that Vail is well qualified by virtue of his

16

extensive experience in corrections to opine regarding the City jail's compliance with industry standards, and that such opinions are relevant and helpful in this case.

The Court has carefully reviewed Vail's report and deposition testimony, in which Vail makes clear that he is not opining on whether constitutional (as opposed to industry) standards were violated. *See* ECF No. 486-3, Vail Dep. at 65:7-21. The Court concludes that Vail does not in fact opine regarding the City's compliance with constitutional standards and does not attempt to equate industry standards with constitutional standards, as the City argues. Therefore, Vail's opinions are not subject to exclusion on this ground. Finally, the Court concludes that Vail's rebuttal report is appropriately limited to rebutting the opinions of the City's jail conditions expert, Wilkes, and does not improperly expand Vail's original opinions. For these reasons, the Court will deny the City's motion to exclude Vail's testimony.

III.    <u>Gordon and Marlowe</u>

The Court agrees with the City that much of Gordon's report and testimony would be unhelpful to the jury. Specifically, Gordon's extensive discussion of the history of racial segregation and racial discrimination in the greater St. Louis area is, as noted above, marginally, if at all, relevant to any issue in this case.[7] Gordon's opinions

---

[7]    As such, even if the testimony were relevant, the Court would exercise its discretion to exclude it under Federal Rule of Evidence 403 because its probative value is substantially outweighed by a danger of confusing the issues and unfairly prejudicing the City.

regarding the City's alleged motivation or intent to increase revenues by what Gordon

terms "predatory policing" are unhelpful because, to the extent that the City's

motivation or intent is relevant to its liability under § 1983, a jury is capable of

determining these issues without expert testimony.  *See, e.g.*, *Deutsch v. Novartis*

*Pharms. Corp.*, 768 F. Supp. 2d 420, 442 (E.D.N.Y. 2011) ("[T]he opinions of expert

witnesses on the intent, motives, or states of mind of corporations, regulatory agencies

and others have no basis in any relevant body of knowledge or expertise.") (quoting *In*

*re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004)).

Nevertheless, as the City recognizes in its reply brief (ECF No. 509 at 5-6),

historical context may be an appropriate subject of expert testimony if it helps the jury

understand the evidence.  *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 135–36

(2d Cir. 2013) (distinguishing between a historian's expert inadmissible testimony that

"speculat[ed] as to the motivations and intentions of certain parties" from potentially

helpful expert testimony by historians that could "for example, help to identify, gauge

the reliability of, and interpret evidence that would otherwise elude, mislead, or remain

opaque to a layperson[;] . . . helpfully synthesize dense or voluminous historical texts[;]

[o]r . . . . offer background knowledge or context that illuminates or places in

perspective past events"); *United States ex rel. Fesenmaier v. Cameron-Ehlen*

*Grp., Inc.,* No. 13-CV-3003 (WMW/DTS), 2021 WL 101193, at *15 (D. Minn. Jan. 12,

2021) (holding that expert testimony that directly opines about a party's state of mind is

inadmissible, but an expert may testify about observable underlying facts relevant to determining an individual or entity's intent.).

At least some portions of Gordon's report provide such fact-based historical context for the City's municipal court practices that are at issue in this case.  For example, Gordon opines as to the historical inability of sales and property taxes to provide adequate revenue for the City, and the simultaneous rising municipal costs and patchwork municipal structure, in order to explain why the City faced a fiscal crisis. *See* ECF No. 443, Gordon Report at 29-31.  The Court concludes that this historical context will help put into perspective Plaintiffs' other evidence and arguments that the City had a policy and practice of using its municipal court and jail as a significant source of revenue, which is the basis for Plaintiffs' assertion of municipal liability under § 1983.[8]

Gordon is well qualified to offer such historical context, given his education and experience, and these portions of Gordon's report do not rely upon the sources that the City challenges, such as articles written by Plaintiffs' counsel.[9]  Therefore, the Court

---

[8]     The City's separate argument that any such revenue-generating policy or practice was not the moving force behind the constitutional violations alleged here because the City had no control over the municipal court is, as the Court has previously noted (ECF No. 519 at 13), a merits question not appropriate for resolution on the current motions.

[9]     Although paragraph 54 of Gordon's report cites an article co-authored by one of Plaintiffs' attorneys, that paragraph is subject to exclusion for other reasons, as noted above, because it discusses irrelevant issues of racial bias and goes beyond providing historical context to opine on the City's motivation to use the municipal court for revenue generation.

will deny the City's motion to exclude Gordon in part, in order to allow Gordon to offer the fact-based historical context discussed above.  The Court recognizes that the line it has drawn is fine, and that extracting those portions of Gordon's report that are limited to fact-based historical context may be a difficult task.  Therefore, the Court reserves the right to address this issue further at trial or at the pretrial conference.[10]

The Court draws a similar line with respect to Marlowe's testimony.  Marlowe's report is primarily limited to describing the City's finances and fiscal policies.  At his deposition, Marlowe highlighted the fact-based nature of his opinions as follows:

> The opinion[s] that I offered . . . describe what Ferguson could have done, what they didn't do, and what they ultimately did. I do offer an opinion about how Ferguson's imposition of fines and fees and the increase in Ferguson's fines and fees, which was orders of magnitude greater than its peer municipalities, considerably improved its financial position and how, once those fines and fees revenues decreased after the DOJ report and subsequent events, its financial position deteriorated considerably.

ECF No. 451-2, Marlowe Dep. at 181:20-182:21.  The Court concludes that much of Marlowe's opinions will help the jury synthesize the voluminous financial data in this case and help put into perspective Plaintiffs' other evidence and arguments that the City had a policy and practice of using its municipal court and jail as a significant source of revenue.  The Court further concludes that Marlowe is well qualified to offer such testimony by virtue of his education and experience.

---

[10]   It may be that the permissible scope of the testimony can be properly determined by having Plaintiffs detail the historical testimony they seek to offer.

However, to the extent that Marlowe goes beyond such fact-based testimony in order to opine regarding whether the City's fiscal policies actually motivated its municipal court practices, such testimony will be excluded for the reasons stated above. For example, parts of Marlowe's report go beyond fact-based testimony to speculate regarding the City's intent, including Marlowe's opinions that that "Ferguson ramped up police enforcement and collection of fines and fees to improve its financial health"; that the "collections of fines and fees were consistent with . . . a policy of revenue-maximization"; and that the "public policy of maximizing its revenue . . . was uncoupled from any public safety policies."[11]  ECF No. 451-1, Marlowe Report at 5-7. The Court will grant the City's motion to exclude Marlowe's opinions in part, in order to exclude such opinions.  Again, should the task of distinguishing between admissible and inadmissible testimony prove to be impracticable, the Court reserves the right to address this issue further at trial or at the pre-trial conference.

The City's remaining arguments regarding Marlowe, including the reliability of Marlowe's methodologies, go to the weight of Marlowe's testimony rather than its admissibility.  Marlowe explained in his report that the methodology he used to select municipalities for comparison to the City is an industry standard, peer-reviewed methodology commonly used to measure a local government's financial health.  The

---

[11]     By contrast, Marlowe may be permitted to offer fact-based testimony that, for example, "[c]ompared to its peers, Ferguson collected much more public safety revenue relative to its public safety spending."  *See* ECF No. 451-1, Marlowe Report at 7.

City has not offered evidence to contradict these assertions.  The City may explore any alleged deficiencies in the methodology, including the failure to consider crime rates, on cross examination.

Further, the Court agrees that the City overstates Marlowe's reliance on the DOJ report.  Even if the Court were to agree that the report itself is inadmissible—a point that the City has not yet established—Marlowe's opinions, as limited above, do not rely on the DOJ's conclusions.  Rather, he largely references the DOJ's report for timeline purposes, in order to mark when the City began to change its fiscal policies, or for citation to documents contained within the report that corroborate Marlowe's own analysis of the City's financial documents.  Finally, Marlowe's supplemental report is appropriately limited to addressing the later-taken deposition testimony; and Marlowe's stray reference to race does not impact his opinions or justify their exclusion.  For these reasons, the Court will deny the City's motion to exclude Marlowe except to the extent noted above.

**Plaintiffs' *Daubert* Motions**

I.    Beach

The Court agrees with Plaintiffs that Beach's opinions regarding the Ferguson Municipal Court's compliance with state law are irrelevant to this class action, which alleges only federal constitutional violations.  Even if such opinions were marginally relevant, the Court would exclude them under Federal Rule of Evidence 403 because

the probative value of such opinions is substantially outweighed by the risk of confusing the issues.

However, similar to the limitations discussed above with respect to Gordon and Marlowe, the Court will permit Beach to provide fact-based historical context as to the overall structure of the Missouri municipal court system, the entity or entities with general administrative authority over that court system, and the changes to the Ferguson Municipal Court practices over time.   *See* ECF No. 495-1, Beach Report at § V.

The Court concludes that Beach is well qualified to provide such a historical context and that his testimony would help synthesize and put into context the City's other evidence and arguments that it was not the moving force behind the constitutional violations at issue here.

II.    Wilkes

Plaintiffs' *Daubert* challenges with respect to Wilkes—like the City's challenges with respect to Plaintiffs' corrections expert, Vail—focus on the factual bases for Wilkes's opinions, which may be explored on cross examination but do not warrant exclusion of Wilkes's opinions.  Wilkes's opinions regarding the City jail's compliance with industry standards, like Vail's, are relevant and helpful in this case.

Wilkes is also well qualified to offer these opinions not only because of his experience in corrections but also because of his specific involvement in the ACA itself, including as an ACA training consultant, which experience bears a close relationship

with his opinions in this case.  *See Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009) ("[F]or an expert witness to be qualified based on experience, that experience must bear a close relationship to the expert's opinion.").  Finally, the Court has carefully reviewed Wilkes's report and concludes that Wilkes has not attempted to opine as to whether constitutional or legal (as opposed to industry) standards were violated; and has not attempted to draw legal conclusions or opine on any witness's credibility.  For these reasons, the Court will deny Plaintiffs' motion to exclude Wilkes's testimony.

**<u>CONCLUSION</u>**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's motion to disqualify and exclude the report and testimony of Stephen Demuth is **GRANTED in part and DENIED in part**, as set forth above.  ECF No. 438.  Demuth's report and testimony will be excluded only to the extent that they relate to the race of arrestees.

**IT IS FURTHER ORDERED** that Defendant's motion to disqualify and exclude the report and testimony of Eldon Vail is **DENIED**.  ECF No. 440.

**IT IS FURTHER ORDERED** that Defendant's motion to disqualify and exclude the report and testimony of Colin Gordon, Ph.D., is **GRANTED in part and DENIED in part**, as set forth above.  ECF No. 442.  Gordon's report and testimony will be excluded except to the extent that they provide fact-based historical context regarding the City's alleged fiscal crisis, subject to reconsideration if drawing this

24

distinction proves to be impracticable.

**IT IS FURTHER ORDERED** that Defendant's motion to disqualify and exclude the report and testimony of Dr. Justin Marlowe, is **GRANTED in part and DENIED in part**.  ECF No. 450.  Marlowe's report and testimony will be excluded only to the extent that they extend beyond fact-based testimony in order to opine whether the City's fiscal policies actually motivated its municipal court practices, subject to reconsideration if drawing this distinction proves to be impracticable.

**IT IS FURTHER ORDERED** that Plaintiffs' motion to disqualify and exclude the testimony of Douglas Beach is **GRANTED in part and DENIED in part**, as set forth above.  ECF No. 494.  Beach's report and testimony will be excluded except to the extent that they provide fact-based historical context as to the overall structure of the Missouri municipal court system, the entity or entities with general administrative authority over that court system, and the changes to the Ferguson Municipal Court practices over time, subject to reconsideration if these topics become irrelevant due to pretrial rulings.

**IT IS FURTHER ORDERED** that Plaintiffs' motion to disqualify and exclude the testimony of Tony Wilkes is **DENIED**.  ECF No. 496.


_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of September, 2022.

25