UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEILEE FANT, et al., | |
| Plaintiffs, | |
| v. | CASE NO. 4:15-CV-00253-AGF |
| THE CITY OF FERGUSON, MISSOURI, | |
| Defendant. | |

**DEFENDANT'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT[1]**

1. **KEILEE FANT**

    (A)   Incarcerations:[2]

    1. July 16, 2010 23:25 through July 20, 2010 12:25 (85 hours)

    2. October 13, 2013 11:30 through October 16, 2013 01:00 (61 hours, 30 minutes)

    3. February 9, 2014 20:54 through February 10, 2014 00:14 (3 hours, 20 minutes)

    (B)   Jail Conditions Testimony[3]

    - Cold (Exhibit A, Keilee Fant Deposition, p. 119, L. 3)
    - Dusty and smelled bad (Exhibit A, p. 119, L. 5)

---

[1] Each fact is hereinafter sometimes referred to as "SOF" followed by the numbered paragraph.
[2] Each stint of incarceration for each Plaintiff is evidenced in Exhibit J, Plaintiffs' spread sheet showing all potential members of the various classes. See SOF 10.
[3] Most of the named Plaintiff's testified that the conditions identified existed in each of their stints in the jail. Except where noted, Defendant will assume that each named Plaintiff experienced each condition that he/she complains of during each period of *that particular Plaintiff's* confinement during the class period.  Defendant does not include condition claims concerning jail stints prior to February 8, 2010.  Likewise, it does not include complaints related to medical care issues, excessive force or abusive/unprofessional conduct since Plaintiff's have represented that these are not class claims.

- Blankets had large holes and were not laundered (Exhibit A, p. 119, L. 6-12; p. 122, L. 11-17)
- Wet toilet paper stuck on ceiling and other places (Exhibit A, p. 121, L. 4-23)
- Request and received pads in 2010 stint (Exhibit A, p. 133, L. 16 - p. 134, L. 1)
- Pot Pies were cold/not sufficiently microwaved (Exhibit A, p. 124, L. 8-9)
- Failure to clean occupied cells (Exhibit A, p. 123, L. 8-16)
- Received only a little bit of toilet paper at a time (Exhibit A, p. 121, L. 15-21)
- No toothpaste/toothbrush (Exhibit A, p. 222, L. 11-16)
- No showers, but this was "not a big deal to her" (Exhibit A, p. 222, L. 17 – p. 223, L. 10)

2. **ROELIF CARTER**

(A) <u>Incarcerations:</u>

1. August 13, 2010 22:00 through August 15, 2010 18:11 (44 hours, 11 minutes)

2. August 3, 2012 22:10 through August 4, 2012 16:35 (18 hours, 25 minutes)

3. November 30, 2012 15:48 through November 30, 2012 16:25 (37 minutes)

4. July 18, 2013 21:05 through July 21, 2013 04:05 (55 hours)

5. June 1, 2014 01:44 through June 2, 2014 11:10 (33 hours, 26 minutes)

6. June 28, 2014 16:33 through June 30, 2014 10:35 (42 hours, 2 minutes)

7. August 1, 2014 18:57 through August 4, 2014 12:07 (65 hours, 10 minutes)

(B) <u>Jail Conditions Testimony</u>

- Water was "nasty" and made him sick (Exhibit B, Roelif Carter Deposition, p. 81, L. 4 – p. 82, L. 22)
- "Barely fed" and food made him sick (Exhibit B, p. 86, L. 18 – p. 87, L. 22)
- Toilets and cells not cleared (Exhibit B, p. 89, L. 5-7)
- "Stay with clothes on all the time" (Exhibit B, p. 89, L. 8-9)
- No showers, but did not request one (Exhibit B, p. 89, L. 10-25)
- Thin blanket and slept on floor (Exhibit B, p. 84, L. 4-7)
- As many as three people in his cell (Exhibit B, p. 84, L. 8-16)

2

3. **DONYALE THOMAS**

   (A)  <u>Incarceration:</u>

   1. November 28, 2010 01:15 through November 28, 2010 10:45 (9 hours, 30 minutes)

   (B)  <u>Jail Conditions Testimony</u>

   - Holes in blanket (Exhibit C, Donyale Thomas Deposition, p. 31, L. 23 – p. 32, L. 1)
   - "Nowhere to put mattress on floor, nowhere to put trash in. It was horrible" (Exhibit C, p. 32, L. 2-4)
   - In 2010 stint, "there were bloody pads wrapped up on the floor and the toilet was nasty" (Exhibit C, p. 41, L .7-9)
   - No soap, toothbrush, or toothpaste (Exhibit C, p. 42, L .6-14)
   - 3 or 4 total people possibly in cell – on this particular incarceration (Exhibit C, p. 40, L. 8-15)

4. **ANTHONY KIMBLE**

   (A)  <u>Incarcerations:</u>

   1. July 16, 2010 23:25 through July 19, 2010 15:16 (63 hours, 51 minutes)

   2. February 16, 2012 19:45 through February 17, 2012 20:00 (24 hours, 15 minutes)

   3. February 16, 2013 16:45 through February 18, 2013 13:35 (44 hours, 50 minutes)

   (B)  <u>Jail Conditions Testimony</u>

   - No toothbrush (Exhibit D, Anthony Kimble Deposition, p. 86, L. 14-24)
   - Starting around 2010, showers were given (Exhibit D, p. 87, L. 9 – p. 88, L. 9)
   - Occupied cells not cleaned; unoccupied cells were cleaned (Exhibit D, p. 79, L. 1-19)
   - Pot Pies were cold sometimes and wasn't enough food (Exhibit D, p. 93, L. 9-16)
   - In February 2013, it was cold, and blanket had holes and sometimes weren't washed (Exhibit D, p. 112, L. 19 – p. 113, L. 1)
   - Drinking water was warm and smelled (Exhibit D, p. 162, L. 1-9)
   - Toilets and floors were filthy (Exhibit D, p. 160, L. 2-13)

3

(C)  Indigence

- Does not believe he's "indigent" (Exhibit D, p. 155, L. 6-19)
- Employed at Fairlane Dicor for 22 years (Exhibit D, p. 18, L. 1-3)
- Never married (Exhibit D, p. 10, L. 8-9)
- Three children – oldest emancipated in ▮▮▮▮▮▮▮▮▮▮▮ Exhibit D, p. 10, L. 10 through p. 11, L. 23
- Paid child support of $430/month (Exhibit D, p. 13, L. 11-15)
- 2010 Adjusted Gross Income ("AGI"): $26,586 (Exhibit D, p. 22, L. 17-23)
- 2011 AGI: $25,272 (Exhibit D, p. 29, L. 18-20)
- 2012 AGI: $28,086 (Exhibit D, p. 30, L. 10-12)
- 2013 AGI: $33,546 (Exhibit D, p. 31, L. 17 – p. 32, L. 2)
- 2014 AGI: $34,409 (Exhibit D, p. 33, L. 2-6)
- Based on a Missouri Supreme Court Order dated Sept. 19, 2016 (Exhibit R), a person with 3 household members is presumed indigent if he earns below 125 % of Federal Poverty Guidelines which, at that time, equated to less than $2,100 per month or $25,200 per year.
- For each year during which Kimble was detained, his income exceeded 125% of the applicable federal poverty level: 2010 (125% of $18,310 = $22,887.50); 2012(125% of $19,090 = $23,862.50); and 2013(125% of $19,530 = $24,412.50).  See the 2010-2016 Federal Poverty Guidelines for the 48 Contiguous States and the District of Columbia published by the U.S. Department of Health and Human Services Office of the Assistant Secretary for Planning Evaluation, last accessed March 10, 2023, https://aspe.hhs.gov/topics/poverty-economic-mobility/poverty-guidelines/prior-hhs-poverty-guidelines-federal-register-references, Exhibits S, T and U).  The City moves for this Court to take judicial notice of all published Annual Updates of the HHS Poverty Guidelines published in the federal register (and available at www.federalregister.gov) and at https://aspe.hhs.gov/topics/poverty-economic-mobility/poverty-guidelines/prior-hhs-poverty-guidelines-federal-register-references, last accessed March 10, 2023.

5.  **ALFRED MORRIS**

(A)  Incarcerations:

1. April 4, 2010 00:15 through April 5, 2010 11:22 (35 hours, 7 minutes)

2. September 2, 2010 22:35 through September 5, 2010 09:30 (58 hours, 55 minutes)

3. January 16, 2011 23:09 through January 18, 2011 10:40 (35 hours, 31 minutes)

    4.    May 31, 2011 23:00 through June 1, 2011 15:30 (16 hours, 30 minutes)

    5.    March 5, 2012 03:25 through March 5, 2012 13:17 (9 hours, 52 minutes)

    6.    June 29, 2012 10:50 through June 30, 2012 06:45 (19 hours, 55 minutes)

    7.    January 17, 2013 20:45 through January 18, 2013 11:40 (14 hours, 55 minutes)

(B)    <u>Jail Conditions Testimony</u>

- Don't clean mats and blankets and they had holes in them (Exhibit E, Alfred Morris Deposition, p. 18, L. 11 – p. 19, L. 7)
- Filthy (Exhibit E, p. 56, L. 19-20)
- Meals not nutritious (Exhibit E, p. 57, L. 4-25)
- Pot Pies overcooked sometimes or not cooked at all (Exhibit E, p. 59, L. 9-16)
- No shower, toothbrush, or toothpaste (Exhibit E, p. 152, L. 24 – p. 153, L. 4)
- Water fountain did not work (Exhibit E, p. 153, L. 10-24)
- At one point one of the inmates had to sleep on the floor (Exhibit E, p. 152, L. 6-16)
- Three people in his cell (Exhibit E, p. 96, L. 8-19; p. 152, L. 10-16)

6.    **ALLISON NELSON**

    (A)    <u>Incarcerations:</u>

        1.    July 12, 2012 17:23 through July 12, 2012 20:34 (3 hours, 11 minutes)

        2.    January 21, 2013 22:15 through January 22, 2013 13:25 (15 hours, 10 minutes)

        3.    November 27, 2013 01:47 through November 28, 2013 09:15 (31 hours, 28 minutes)

    (B)    <u>Jail Conditions Testimony</u>

- Unsanitary conditions (on one occasion, wall with human feces) (Exhibit F, Allison Nelson Deposition, p. 74, L. 4-10)
- Did not drink water because the fountain was on top of the toilet (Exhibit F, p. 73, L. 25 – p. 75, L. 7)
- Cold (Exhibit F, p. 73, L. 21-22)

5

- Denied shower, toothbrush, and toothpaste (Exhibit F, p. 119, L. 20 – p. 121, L. 7)

7. **HERBERT NELSON, JR.**

   (A) Incarcerations:

   1. April 25, 2011 16:10 through April 25, 2011 17:03 (53 minutes)

   2. December 9, 2011 19:49 through December 10, 2011 18:45 (22 hours, 56 minutes)

   3. October 8, 2013 18:20 through October 8, 2013 21:09 (2 hours, 49 minutes)

   4. February 5, 2014 21:00 through February 5, 2014 22:38 (1 hour, 38 minutes)

   (B) Jail Conditions Testimony

   - No Shower (Exhibit G, Herbert Nelson Deposition, p. 67, L. 14-19)
   - In April 2011 stint (53 minutes), he was not given a blanket (Exhibit G, p. 77, L. 15-21)
   - In April 2011 stint, sink not clean, cell needed to be painted (Exhibit G, p. 78, L. 16 – p. 79, L. 1)
   - In December 2011, the cell wasn't wiped down or swept and there was mucus (like someone spit) and food on the walls (Exhibit G, p. 100, L. 1 – p. 101, L. 11)
   - Not given toothbrush (Exhibit G, p. 103, L. 18-23)
   - As many as 4 in a cell (Exhibit G, p. 79, L. 8-15)

8. **RONNIE TUCKER**

   (A) Incarceration:

   1. September 18, 2012 11:45 through September 19, 2012 11:00 (23 hours, 15 minutes)

   (B) Jail Conditions Testimony

   - Water fountain did not work properly (Exhibit H, Ronnie Tucker Deposition, p. 51, L. 10-22)
   - Received only two meals/day (Exhibit H, p. 59, L. 7-22)
   - No toothbrush (Exhibit H, p. 90, L. 23-25)

6

- At one point, had to sleep on floor (Exhibit H, p. 91, L. 1-3)
- Denied shower (Exhibit H, p. 55, L. 11-18
- Small, old blanket (Exhibit H, p. 47, L. 1-6)
- As many as four people in a cell (Exhibit H, p. 47. L. 7-11)

9. **SHAMEIKA MORRIS**

    (A)    Incarcerations:

    1. August 20, 2010 21:30 through August 23, 2010 21:21 (71 hours, 51 minutes)

    2. March 2, 2011 04:15 through March 3, 2011 09:00 (28 hours, 45 minutes)

    3. April 12, 2012 01:45 through April 13, 2012 21:34 (43 hours, 49 minutes)

    (B)    Jail Conditions Testimony

    - Pot Pies sometimes not fully cooked (Exhibit I, Shameika Morris Deposition, p. 43, L.23-25)
    - Cell was nasty (Exhibit I, p. 44, L.19-21)
    - No shower, toothbrush, or toothpaste (Exhibit I, p. 55, L. 13 – p. 56, L. 10)

10. **CLASS DATA**: Exhibit J (Exhibit A from the Supplemental Report of Plaintiff's data expert Stephen Demuth) is a spreadsheet listing all incarcerations in Ferguson and the amount of time of each such incarceration for the period from February 8, 2010 through September 30, 2017.

11. Exhibit J (the list of potential class members) includes individuals who purport to be in the *Bearden* class, but were not indigent at the time of their incarceration including, for example, the following:

    (a)    Plaintiff Anthony Kimble (see SOF 4(c) above);

    (b)    Other Examples: Exhibit K is certified records obtained from the St. Louis County Department of Revenue showing home ownership and real estate tax history for 29 purported *Bearden* Class Members. In each instance, the jail

        detainee owned the listed property at the time of his/her incarceration. These individuals were demonstrably not indigent at the time of their incarceration.

12. Ronald Brockmeyer was appointed as the Municipal Judge for the Ferguson Division of the Circuit Court of the 21st Judicial Circuit in 2003. (Exhibit L, Declaration of Ronald Brockmeyer, para. 2)

13. Judge Brockmeyer was appointed by the Ferguson City Council and served two-year terms. (*Id.* para. 3)

14. Judge Brockmeyer served as Municipal Judge until his resignation in March 2015. (*Id.* para. 2).

15. Judge Brockmeyer answered to the Presiding Judge of the 21st Judicial Circuit and ultimately to the Missouri Supreme Court. (*Id.* para. 5).

16. Besides providing a courtroom and court staff and paying for the Judge's services, the City of Ferguson had no control whatsoever over the operation of the Ferguson Municipal Court. (*Id.* para. 4).

17. Judge Brockmeyer was solely responsible for setting bond for municipal defendants who failed to appear for their court appearance. (*Id.* para. 7).

18. Judge Brockmeyer would set bond directly on the arrest warrant upon issuance of such warrant. *Id.*).

19. Failure to Appear warrants were generally not issued until a municipal offender failed to appear for at least two court appearances. (*Id.*).

20. All warrants for failure to appear were issued upon Judge Brockmeyer's determination that the municipal offender had been apprised of his/her court date and nevertheless failed to appear. (*Id.*).

8

21. For warrantless arrests, Judge Brockmeyer set bond by way of a Bond Schedule that he provided to the police department. (*Id.*).

22. Judge Brockmeyer did not issue arrest warrants for individuals who failed to make timely payment of their fine. (*Id.*, para. 8).

23. If an individual was unable to make a payment when due, he/she was apprised of a new court date. (*Id.*). At that court appearance, Judge Brockmeyer would always allow an individual more time to pay his/her fine if needed. (*Id.*).

24. Judge Brockmeyer would only issue an arrest warrant if such individual twice failed to appear for his/her court date (after having been mailed notice following the first missed court date). (*Id.*).

25. Judge Brockmeyer was the only person who could recall an arrest warrant. (*Id.* para. 9).

26. Neither Judge Brockmeyer's clerk nor anyone else was authorized to recall a warrant. (*Id.*).

27. If a person subject to warrant appeared in Court, Judge Brockmeyer would almost always recall the warrant. (*Id.*).

28. At any time, a municipal defendant (whether incarcerated or not) could file a motion seeking to have his/her bond reduced or arrest warrant recalled pursuant to the then applicable Supreme Court Rule, and Judge Brockmeyer would hear and rule on that motion. (*Id.* para. 11).

29. Judge Brockmeyer was solely responsible for determining the length of time that an individual would or could be incarcerated in the Ferguson Municipal Jail if he/she was unable to post bond. (*Id.* para.12).

30. With respect to length of incarceration, Judge Brockmeyer established maximum permissible incarceration terms as follows: From some point prior to February 1, 2010,

9

      through December 18, 2014, Brockmeyer directed the Police Department to hold jail inmates for a maximum of 72-hours. (*Id.*).

31. As per Judge Brockmeyer's Order attached to his Declaration as Exhibit L-1, effective December 18, 2014, Brockmeyer rescinded the 72-hour rule and directed that any individual who could not post bond was to be released on his/her own recognizance within 12 hours. (*Id.*).

32. Judge Brockmeyer directed Ferguson Police Supervisors to release detainees without posting bond at the conclusion of the maximum incarceration periods mentioned above or sooner when it was necessary because of (a) jail overcrowding; (b) medical needs of an inmate; (c) jail staffing issues, or other good reason. (*Id.* para. 12*)*.

33. At no point did any Ferguson officer or employee *increase* the amount of any bond. (Ex. M, Deposition of Ronald Brockmeyer, 222:4-9).

34. With the exception of one contempt of court instance (in which the individual disrupted his courtroom), Judge Brockmeyer never sentenced or even considered sentencing a municipal offender to a jail term. (Ex. L, para. 13). If he had believed that it was possible that he would sentence someone to a jail term, it was Judge Brockmeyer's sole responsibility to appoint counsel to represent the individual. (*Id.*).

35. Judge Brockmeyer's practice was to not bring individuals before him for an initial appearance during their incarceration. Rather, the initial appearance would take place when such individuals appeared for their first court appearance after release. (*Id.*, para. 14).

36. Judge Brockmeyer resigned in March 2015. (*Id.*, para. 2*)*.

37. On March 9, 2015, Judge Roy Richter, Eastern District, Missouri Court of Appeals was temporarily transferred to the 21st Judicial Circuit and assigned to the Ferguson Municipal Court (Exhibit N).

38. Judge Richter operated the Ferguson Municipal Court until June 22, 2015. (Exhibit Y).

39. On April 13, 2015, the Office of State Courts Administrator ("OSCA") issued a report concerning operations of the Ferguson Municipal Court (Ex. O). The report noted progress including the following: (1) clear communication to municipal defendants concerning missed court dates and warrants. (*Id.* pp. 3-4); (2) implementation of the 12-18-14 Municipal Court Order attached to Judge Brockmeyer's Declaration; (*Id.* p. 5*);* and, (3) the Court's utilization of arrest warrants as a last resort to enforce appearance. (*Id.* at p. 7). In particular, warrants would not be issued until a municipal defendant missed <u>three</u> court appearances. (*Id.*).

40. On May 11, 2015, OSCA and Judge Richter issued a Report to the Missouri Supreme Court re: efforts to improve Municipal Divisions (Ex. P). This report confirmed the above-described findings of the 4-13-15 OSCA report including implementation of the 12-18-14 Order. (*Id.* at p. 12) It further confirmed that Judge Richter had implemented a procedure to assess a municipal court defendant's ability to pay at the time his/her fine was assessed. (*Id.* at p. 4) The report further noted that certain DOJ findings concerning the issuance of warrants for missing a single payment could not be substantiated and that, in fact, **"arrest warrants are issued because of missed court appearances only."** (*Id.* p. 5) (Emphasis added). The report noted that "Judge Richter reports that he conducts the courts in accordance with Supreme Court of Missouri's Rule 37 governing municipal court divisions as well as applicable state statutes." (*Id.* at p. 9)

41. On June 22, 2015, Judge Donald McCullin became the new Ferguson Municipal Court Judge. Exhibit Y.

42. On August 25, 2015 and again on December 15, 2015, Judge McCullin certified to the Missouri State Auditor that, as of June 30, 2015, the Ferguson Municipal Court was in full compliance with the requirements of the newly-enacted Senate Bill 5. (Exhibit Q).

43. Until 1976, municipal courts were entities that were separate and distinct from the state court system. In 1976, Missouri voters approved amendment of the Missouri Constitution. Effective January 2, 1979, the old municipal court system was abolished. The jurisdiction of municipal courts was transferred to the circuit court of the circuit in which such municipality is located and such courts became divisions of the circuit court. Mo. Const. Art. V, sec. 27.2 (d).

44. Pursuant to Mo. Rev. Stat. sec. 479.010, "violations of municipal ordinances shall be heard and determined only before divisions of the circuit court."

45. Pursuant to its authority under Mo. Const. Art. V, sec. 5, in 1985 the Missouri Supreme Court adopted Rule 37 which "supersedes all statutes, ordinances, and court rules inconsistent therewith." Supreme Court Rule 37.02.

46. Under those Rules, the presiding judge of the circuit has general administrative authority over the municipal divisions of the circuit court, their municipal judges and court personnel. Supreme Court Rule 37.04.

47. Mo. Rev. Stat. sec. 483.241.3 further provides that "municipal clerks shall constitute the clerical staff of the circuit court to perform the recordkeeping functions in the municipal divisions."

48. Accordingly, the City of Ferguson has no authority over the Ferguson Municipal Division or municipal court judges. *See* ECF No. 495-1, Beach Report at § V.[4]

49. The Supreme Court has the ultimate authority over the circuit courts including the municipal divisions. This is true even in those areas where the municipalities have separate responsibilities. *Id.*

50. Just as counties must fund their circuit courts, municipalities are required to fund their municipal divisions (i.e., pay the salaries of the municipal judges and clerks as well as other expenses incurred in the operation of the court). *Id.*

51. If there is a budget dispute between a municipality and the municipal division, it is first considered by the presiding judge of the governing judicial circuit, who issues a recommendation. There is then an option for review by the Missouri Finance Commission. Ultimately, if either party is dissatisfied with the results of this process it may seek review with the Missouri Supreme Court, which will issue a final decision on the budget dispute. *Id*. See also, Missouri Supreme Court Operating Rules 13.01 and 13.02 and Mo. Rev. Stat. sec. 477.600.

52. Until the events in Ferguson in August 2014 and the resulting scrutiny of, among other things, the municipal court system, the circuit presiding judge's and Supreme Court's oversight of this system was not robust. *Id*.

---

[4] In this Court's ruling on Plaintiffs' motion to exclude the opinions of Judge Beach, this Court denied such motion in part and ruled "[T]he Court will permit Beach to provide fact-based historical context as to the overall structure of the Missouri municipal court system, the entity or entities with general administrative authority over that court system, and the changes to the Ferguson Municipal Court practices over time.  *See* ECF No. 541, p. 23.  The Court concludes that Beach is well qualified to provide such a historical context and that his testimony would help synthesize and put into context the City's other evidence and arguments that it was not the moving force behind the constitutional violations at issue here." *Id.*

53. Subsequent to August 2014, that changed dramatically, and the Ferguson Municipal Court was at the forefront of the changes. Both the City and the Municipal Court enacted substantial changes well ahead of the sweeping changes mandated by SB 5, effective Aug. 28, 2015, and substantial overhaul of Supreme Court Rule 37. *Id*.

54. In December 2014, the Ferguson Municipal Court promulgated several Operating Orders including ones concerning warrant recall, fine assessment practices, and a revised Bond Schedule and jail release mandate. *Id*.

55. In May 2015, the Missouri Supreme Court issued an Order establishing the Municipal Division Work Group. This Work Group was composed of nine judges and attorneys and was tasked with "review[ing] the applicable constitutional provisions; statutes; ethical, procedural and operating court rules; recently passed legislation; and such other materials as the work group believes would be helpful to study". The Work Group was asked "to assist the Court by reviewing all matters relevant to practice in the municipal divisions of the circuit court and make recommendations concerning any appropriate changes to court rules or practices that can be implemented by the Court as well as any suggestion that may require legislation or action by other entities." Ex. V, Supreme Court of Missouri, *en banc,* Order dated May 14, 2015.

56. That Work Group issued an interim report in September 2015 and, at that time, the Supreme Court requested the Work Group to analyze additional issues and identify potential solutions that the Court could consider. Ex. W, pp. 139-140.

57. The Work Group issued it final 140-page report on March 1, 2016. Ex. W.

58. The Work Group's report and recommendations to the Supreme Court were wide-ranging. It included topics such (a) conflicts of interest involving municipal judges and

attorneys serving multiple roles; (b) warrants, incarceration, and bonds; (c) enforceability of municipal court judgments; (d) potential consolidation of the municipal courts or referral of municipal court cases to the Associate Divisions of the Circuit Court; (e) elimination of financial incentives; (f) providing for adequate supervision of municipal courts in St. Louis County; (g) elimination of unauthorized costs, fees and surcharges; (h) assuring open and orderly court proceedings; and others. *Id*. *See also,* ECF No. 495-1, Beach Report at § V.

59. The Work Group issued approximately 35 Recommendations that specifically noted to whom the recommendation was directed. Consistent with Judge Beach's opinion that judicial oversight was lacking, the overwhelming majority of these Recommendations suggested actions to be taken by the Supreme Court, presiding circuit judges and/or municipal courts. A few included suggestions to the Missouri General Assembly and only a couple involved the municipalities (e.g., funding needed changes, clerks' reporting structure, and potentially eliminating the municipal court and using the Associate Circuit Court). *Id.*

60. Following receipt of the Work Group Report, the Supreme Court enacted wide-sweeping revisions to Rule 37 that addressed many of the Recommendations that it had received. Of note, effective September 20, 2016, the Supreme Court amended Rule 37.04 establishing Appendix A (10 Minimum Operating Standards for the municipal divisions). While this Appendix sets forth extensive operating standards, by and large it was a recapitulation of the existing rules as well as the changes that had been enacted in Senate Bill 5 (discussed below). Effective January 1, 2017, the Court adopted Appendix B (a code of conduct for municipal division personnel), and later that year, Appendix C (a notice of defendants' rights in municipal court), Appendix D (standards for enforcement of court-

15

ordered legal financial obligations and bench card for judges), and Appendix E (protocols for presiding court judges in supervising municipal division judges). *See* ECF No. 495-1, Beach Report at § V.

61. In addition, the Court amended a number of other Rules over the next three years. *Id.*

62. Effective August 28, 2015, the General Assembly also enacted significant changes to various aspects of the law in this area with Senate Bill 5 ("SB 5") (This statute was amended in 2016). This legislation repealed and re-wrote portions of what is known as the Macks Creek law concerning maximum permissible municipal court revenue (substantially reducing it) and enacted (a) reporting requirements for the circuit court presiding judge; (b) maximum fines for minor traffic offenses; (c) court cost revisions including no more "dismissal with payment of costs" dispositions; (d) elimination of "failure to appear" charges; (e) limits on incarceration (discussed below); (f) requirements that defendant's financial condition be considered in certain instances; (g) open courtrooms; and (h) other revisions/changes to the law. *Id*.

63. Plaintiff's expert, Stephen Demuth, summarizes and compares the length of incarceration for individuals who meet the *Bearden* Class criteria for the 2010-2014 period with the 2015-2019 period as follows:

**Exhibit 2a**

**Demographic and Case Characteristics for People in the First Damages Class, By Year (2010–2014)**

|  | 2010 | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|
| 0 hours < Detained ≤ 24 hours | 46.0 | 52.5 | 59.9 | 55.2 | 59.3 |
| 24 hours < Detained ≤ 48 hours | 19.5 | 30.1 | 25.8 | 30.6 | 26.4 |
| Detained > 48 hours | 34.5 | 17.4 | 14.2 | 14.2 | 14.2 |

16

| | | | | | |
|---|---|---|---|---|---|
| Median Detention Time (hours) | 27.9 | 22.6 | 18.7 | 21.5 | 17.7 |
| Total Number of Arrests | 2478 | 3630 | 4293 | 4560 | 1869 |

**Exhibit 2b**

**Demographic and Case Characteristics for People in the First Damages Class, By Year (2015–2019)**

| Variables | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|
| 0 hours < Detained ≤ 24 hours | 98.7 | 98.6 | 98.7 | 99.0 | 99.4 |
| 24 hours < Detained ≤ 48 hours | 1.3 | 1.4 | 1.3 | 0.9 | 0.6 |
| Detained > 48 hours | ---- | ---- | ---- | 0.0 | ---- |
| Median Detention Time (hours) | 9.0 | 2.7 | 2.4 | 1.1 | 0.9 |
| Total Number of Arrests | 857 | 514 | 802 | 1191 | 734 |

*See* ECF No. 439-1, Ex. 2A to Demuth Report.

64. As for the Jail Conditions Class, including all individuals detained between February 8, 2010 through September 30, 2017:

   a. The first of the class representatives entered the jail on April 4, 2010, and the last was released on August 4, 2014. SOF 1(A), 2(A), 3(A), 4(A), 5(A), 6(A), 7(A), 8(A) and 9(A).

   b. Of the 2,791 days contained within the class period, the named Plaintiffs only account for just over 41 days **total**, with *no class representatives experiencing any duration of incarceration during the final 1,153 days of the class period. Id.*

   c. In 2010, there were no class representatives in the Ferguson jail during the months of February, March, May, June, October or December, with only a single 9-hour

       detention in November 2010 and the longest single detention lasting just over 3.5 days. *Id*.

    d. In 2011, there were no class representatives jailed during the months of February, July, August, September, October, or November, and the longest single detention lasted less than 36 hours. *Id*.

    e. In 2012, there were no detentions of class representatives in January, May, October or December, and no detentions significantly greater than 24 hours (with the longest being 24 hours and 15 minutes). *Id*.

    f. In 2013, no class representative was detained in March, April, May, June, August, September, or December, and the longest single detention was 61 hours and 30 minutes. *Id*.

    g. In 2014, no class representative was detained in the months of January, March, April, May, July, September, October, November or December, and the longest single detention was 65 hours and 10 minutes (2 days, 17 hours and 10 minutes). *Id.*

    h. There were no class representative detentions whatsoever in the class period years 2015, 2016 or 2017 (in which the class period concludes). *Id.*

60.     Stephen Demuth's Supplemental Expert Report is filed herewith as Exhibit X.

Respectfully Submitted,

**HELLMICH, HILL & RETTER, LLC**

By: */s/ William A. Hellmich*
William A. Hellmich, #31182MO
Blake D. Hill #58926MO
1049 N. Clay Ave.
Kirkwood, MO  63122
Phone: 314-646-1110
Fax:     314-646-1122
E-mail:bill@hellmichhillretter.com

**LEWIS RICE LLC**
Ronald A. Norwood, #33841MO
600 Washington Avenue, Suite 2500
St. Louis, MO 63101
(314) 444-7759
(314) 612-7759 (facsimile)
rnorwood@lewisrice.com

**REICHARDT NOCE, LLC**
Tim Reichardt, #57684MO
12444 Powerscourt Dr., Suite 370
St. Louis, MO 63131
314-789-1199 Tel
314-754-9795 fax
tjr@reichardtnoce.com

*Attorneys for Defendant City of Ferguson*

### Certificate of Service

    I hereby certify that a copy of the foregoing filed electronically with the Clerk of the Court this 13th day of March 2023 to be served by operation of the Court's electronic filing system upon all parties through their counsel registered with CM/ECF.

                                  /s/  William A. Hellmich