**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| KEILEE FANT, et al. | ) <br> ) <br> ) Case No. 4:15-CV-00253 AGF <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Plaintiffs, | |
| v. | |
| THE CITY OF FERGUSON, | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PORTIONS OF DEFENDANT'S STATEMENT OF FACTS, MR. BROCKMEYER'S NEW DECLARATION, AND PORTIONS OF DOUGLAS BEACH'S EXPERT REPORT, AND ALTERNATIVELY, MOTION TO REOPEN DISCOVERY REGARDING THE DECLARATION AND REOPEN MR. BROCKMEYER'S DEPOSITION**

Plaintiffs brought this lawsuit over eight years ago, ECF No. 1, and the parties have engaged in extensive and thorough discovery in this case. One of the key individuals is a local private criminal lawyer named Ronald Brockmeyer, who served as the municipal judge for the City during the peak period of incarceration (roughly 2010 through the end of 2014). Discovery included a deposition of Mr. Brockmeyer on February 21, 2020, review of his emails, his public statements, and other materials relating to his tenure at the City's municipal court. Now, at the dispositive motion stage, the City relies heavily on a new declaration from Mr. Brockmeyer (ECF No. 604-12 (Def. Ex. L), "the Declaration") both for its motion for summary judgment and in response to Plaintiffs' motion for summary judgment. The City uses the Declaration as its *sole* source of evidence in many places in its briefing on the City's actual bail, jailing, and warrant practices.[1]

---

[1] See Def. Mot. at 22–24, 34, 38–39, 58–59; Def. SOF ¶¶ 12–32, 34–36; Def. Opp. at 7, 16 n.16, 29–31, 33 n.30, 35, 38; Def. Resp. to SUMF ¶¶ 42, 64, 65–66, 68, 74, 79–83, 131, 137, 182, 194, 227–28, 239, 274–75, 307–08, 420, 508.

1

The Declaration is not simply controverted,[2] but also highly improper for several reasons: it includes several paragraphs that are contrary to key parts of Mr. Brockmeyer's prior deposition testimony; it makes claims on matters as to which Mr. Brockmeyer testified he had no personal knowledge of; and the City presents it to rebut its own binding 30(b)(6) testimony and interrogatory responses. Where the Declaration presents a last-ditch effort to manufacture a genuine dispute of material facts by conjuring testimony contrary to binding admissions and prior testimony from the declarant himself, it constitutes a deliberate frustration of the discovery process, presents serious prejudice to Plaintiffs, and should be stricken.

Plaintiffs ask this Court to strike paragraphs 7, 8, 9, 11, and 12 from the Declaration, and the corresponding paragraphs from the City's Statement of Facts (¶¶ 17–32). Alternatively, Plaintiffs move to reopen discovery into the drafting of this Declaration, and to reopen his deposition. Finally, the City's Statement of Facts also includes several statements from the Expert Report of Former Judge Beach that this Court has already excluded. ECF No. 540 at 22–23. Plaintiffs thus ask this Court to strike paragraph 48 from the City's Statement of Facts.

## Legal Standard

"In evaluating evidence related to possible summary judgment, a court may not consider affidavits that do not satisfy the requirements of" Federal Rule of Civil Procedure 56; *El Deeb v. Univ. of Minn.*, 60 F.3d 423, 429 (8th Cir. 1995). "An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on

---

[2] As covered at length by Plaintiffs' briefing, most of the Declaration is controverted by the testimony of City employees (including Mr. Bockmeyer), Plaintiffs, data in this case, and all other documentary evidence. Plaintiffs Response in Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp."), ECF No. 618 at 13–35, 42–50; Plaintiffs' Counterstatement of Material Facts ("CSUMF") ECF No. 625 at ¶¶ 11, 12 n.5, 15–38, 48; Plaintiffs' Reply in Support of Plaintiffs' Motion for Summary Judgment ("Pl. Reply Br.") (contemporaneously filed); Plaintiffs' Reply to Defendant's Responses and Objections to its Statement of Uncontroverted Material Facts ("RSUMF") ¶¶ 79–84, 108, 131, 137–39, 213, 227 (contemporaneously filed)

the matters stated." Fed. R. Civ. P. 56(c)(4).  Statements in affidavits not based on personal knowledge are inadequate to support summary judgment. *Cummings v. Roberts*, 628 F.2d 1065, 1068 (8th Cir. 1980).

"[A] party who has been examined at length on deposition" cannot simply "submit[] an affidavit contradicting his own prior testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own earlier testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983).

Finally, where a party seeks to rely on an exhibit that a Court has previously ruled inadmissible, district courts are well within their authority to strike those exhibits. *United Magazine Co., Inc. v. Curtis Circulation Co.*, 279 Fed.Appx. 14, 18 (2d Cir. 2008) (affirming trial court's decision to strike previously stricken expert report).

## ARGUMENT

**I. Mr. Brockmeyer's Declaration Contradicts Both His Testimony and Binding Admissions from the City, and He Lacks Personal Knowledge for Some of It**

Here, the City presents new, contradicting, and self-serving testimony as support for its own motion for summary judgment, where—as the *moving* party—*it* bears the burden of showing that no material disputes of fact exist.  It also attempts to use this testimony to produce genuine disputes of fact to defeat Plaintiffs' motion for summary judgment.  For the following reasons, the below material should be excluded from consideration.[3]

---

[3] At the very minimum, these issues cast serious doubts on Mr. Brockmeyer's credibility, given that his testimony is controverted by testimony from the City's employees, emails and documents, and the actual records of the municipal court and the jail. *See* Pl. Opp. (ECF No. 618); Pl. CSUMF (ECF No. 617-2); Pl. Reply Br. (filed contemporaneously); and RSUMF (filed contemporaneously).

3

### a. This Court Should Strike the paragraphs in Mr. Brockmeyer's New Declaration that directly conflict with Mr. Brockmeyer's Deposition Testimony

"The purpose of summary judgment motions is served by a rule that prevents a party from creating issues of credibility by allowing one of its witnesses to contradict his own prior testimony." *Garnac Grain Co. v. Blackley*, 932 F.2d 1563, 1568 (8th Cir. 1991), *modified, reh'g denied* (July 30, 1991). While most conflicts between testimony and other evidence go to credibility, where a witness or party suddenly and without explanation changes their testimony in a declaration submitted with dispositive motions, district courts have stricken "sham" statements in affidavits. *City of St. Joseph, Mo. v. Southwestern Bell Telephone*, 439 F.3d 468, 476 (8th Cir. 2006). "The very purpose of summary judgment under Rule 56 is to prevent the assertion of unfounded claims or the interposition of specious denials or sham defenses." *Camfield Tires*, 719 F.2d at 1365. "If testimony under oath, however, can be abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment." *Id.* at 1365. The City should not be able to present declaration statements (particularly as its sole evidence) when those statements fly in the face of previous testimony from the declarant himself.

> i. Paragraph 7 is contrary to Mr. Brockmeyer's testimony on the issuance of arrest and bench warrants and setting bond for municipal defendants

Paragraph 7 of the Declaration reads, "I was *solely* responsible for issuing arrest/bench warrants and setting bond for municipal defendants who failed to appear for their court appearance. I would set the bond amount *directly* on the arrest warrant upon issuance of such warrant." ECF No. 604-12 ¶ 7 (emphasis added). This is contrary to Mr. Brockmeyer's testimony describing the process, which is that court clerks created and stamped the warrants to issue under his name:

> Q. And then the next page that we turn to, there's a warrant issued for arrest. . . . And it says bond is set at $800. And then it has fines and costs there of 362. And then it has the order for Mr. Carter to be arrested by any law enforcement official. And then it has your signature, is that correct?

4

    A. That's correct.
    Q. Do you recall signing this form?
    A. I don't recall signing each individual form, but that's my signature.
    Q. Okay.  Does the court clerk have a stamp with your signature on it?
    A. She has a stamp that I have her stamp on these warrants.  **She has a stack of warrants and I have her stamp them.**

ECF No. 591-31, Brockmeyer Dep. Tr. at 184:8–185:6 (emphasis added),

    Q. Do you know how many warrants were issued for arrest in 2014?
    A. No.
    Q. If I told you it was over 30,000 warrants for arrest, would that seem accurate?
    A. I don't know whether it would be accurate or not.  It would just be you telling me that.  I don't know whether that's accurate or not.
    Q. Do you think that you reviewed over 30,000 warrants for arrest in 2014?
    A. Whenever somebody didn't show up for court, marked a W; and a warrant was issued, okay?
    . . .
    Q. Turning in to just one more page in this set of exhibits, and that's Number 42, P42.  This looks to be issued on February 5th, 2013, and has again another warrant issued against Mr. Carter.  Charge is no proof of insurance, several failure to appears and a dog running at large with a bond of $1200 and it's reduced to $600.  **Do you recognize that handwriting at all?**
    **A. No, not on the 600, no.**
    **Q. And then it's signed by you.  Is this your stamp, is that correct?**
    **A. Uh-hum.**
    **Q. Okay.  And so warrants that are issued are issued under your name?**
    **A. Right.**

ECF No. 618-31, Brockmeyer Dep. Tr. at 189:18–90:18.

       In his testimony, Mr. Brockmeyer states that he was not "directly" issuing the warrants or putting the bond amounts on warrants.  Indeed, he confirmed, looking at an actual Ferguson warrant, that the bond was not written in his handwriting, that he did not recognize the handwriting, and that he never actually signed the warrant.  The City cannot now rely on the Declaration's statement that Mr. Brockmeyer was the "sole" person who issued warrants or set bond for municipal defendants in the City.[4]

---

[4] This is particularly true given the testimony discussed below, which shows Mr. Brockmeyer was not even present when many warrants were issued by the City.  *See* Section I.C.i.

> ii. Paragraph 9 is contrary to Mr. Brockmeyer's testimony on who was authorized to recall arrest warrants

The Declaration's paragraph 9 reads: "I was the only person who could recall an arrest warrant.  Neither my clerk nor anyone else was authorized to recall a warrant."  ECF No. 604-12 ¶ 9.  Yet, during his deposition, Mr. Brockmeyer testified exactly the opposite:

> Q. So the question is, is it your testimony that if a person did not see you and strolled up to the court clerk in Ferguson, that they would recall the person's warrant for free?
> A. Definitely.  Definitely.
> Q. Without paying any bond?
> A. Without paying any bond.  If they showed up and said and I missed court, she'd give him a court date.

ECF No. 618-31, Brockmeyer Dep. Tr. at 273:17–74:9

> Q. You said that -- I asked if people go up to the window and asked for the warrant to be recalled, you said they would recall the warrant without having to post any bond?
> A. Yeah, that was -- that was procedure.  If they showed up, we knew they were going to come to court, so we didn't ask for their money.  We -- they just said here's your court date.
> Q. Was it written down, this procedure?
> A. No, but it was done.

ECF No. Doc. 618-31, Brockmeyer Dep. Tr. at 274:19–76:2.

This, of course, matters to the City because the court clerk's testimony is that court clerks did not, in practice, agree to recall warrants even when people showed up to plead, or did so only arbitrarily.  ECF No. 608-1, Plaintiffs' Statement of Uncontroverted Material Facts ("SUMF") ¶ 143, Pl. RSUMF ¶ 108.  This is corroborated by the experience of Plaintiffs.  *Id*. ¶ 474 (testimony from Mr. Carter that he came a day late to make a payment, and the court clerk told him "I am not taking it" and that "a warrant [had] already been issued for [his] arrest.").  The City now seeks to redirect liability to the municipal judge rather than its own employees, despite Mr. Brockmeyer's previous testimony acknowledging City employee court clerks could have, but did not, act to prevent individuals from being arrested on warrants.

### iii. Paragraph 12 of the Declaration is contrary to his earlier admission that City officers made independent decisions to lower bond and release

Paragraph 12 of the Declaration states that "I directed Ferguson Police Supervisors to release detainees without posting bond at the conclusion of the maximum incarceration periods mentioned above or sooner when it was necessary because of (a) jail overcrowding; (b) medical needs of an inmate; (c) jail staffing issues, or other good reason." ECF No. 604-12 ¶ 12. Defendant have used this paragraph to portray a system where Mr. Brockmeyer ordered City officers to hold certain arrestees for a set period and then release them, leaving the officers powerless to release arrestees earlier unless some specific situation arose.  Def. Mot. at 57; Def. Opp. at 35

But his deposition testimony Mr. Brockmeyer described a very different system: that City jailing officers had unfettered discretion to release anyone on any amount of bond (or no bond):

> Q. Is it your understanding that the police had authority to deviate from your bond schedule?
> A. They could reduce them if the people didn't have the money to pay the bond and somebody came up and had a lesser amount and promised they'd appear in court, yes, they could reduce them.
> **Q. So whatever they could pay, if they could pay something?**
> **A. Anything reasonable.** We didn't really want to hold them, but we wanted to assure something that they would come to court.

ECF No. 591-31, Brockmeyer Dep. Tr. at 106:6–16.

> Q. … they could release that person in less than three days?
> A. Yeah, they had authority from me to do that.
> **Q. And they could release him within 12 hours?**
> **A. Fifteen minutes.**

ECF No. 591-31, Brockmeyer Dep. Tr. at 215:11–15.

> Q. So in the situation that we've drawn up, two people could be jailed at the exact same time, okay?
> A. Right.
> Q. One person has money and one person is poor.  They're both there on a $500 bond. . . . **[A] police officer of the City of Ferguson could have released both of them at the same time for -- within five minutes, correct?**
> **A. Correct.**

7

> Q. Okay. And they wouldn't have been breaking any of your rules, right?
> A. Correct.

ECF No. 591-31, Brockmeyer Dep. Tr. at 223:17–24:4.

Mr. Brockmeyer thus acknowledged jailing officers made their own decisions to release, or not, and for any amount of bond the officer chose. And he notably did not state that officers' ability to release detainees a lessened bond amount (or no bond) was cabined to specific situations of necessity, such as jail overcrowding, low staffing, or some exigent medical need.

There is a clear pattern here: The City's Statement of Facts ignores Mr. Brockmeyer's prior testimony when it contravenes their position. Instead, the City presents the statements in a declaration it wishes Mr. Brockmeyer had said in deposition in 2020, relies primarily on the declaration, ignores the deposition, and claims this refutes all other evidence in this case. This is not sufficient to create a real dispute of fact. *See c.f. Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 288 (8th Cir. 1988) (affirming granting of summary judgment "where a party's sudden and unexplained revision of testimony create[d] an issue of fact where none existed before.").

b. **The City Attempts to Use Mr. Brockmeyer's Declaration to Contradict its own Binding Admissions**

A issue in this case is the City's practice of officers arbitrarily decide arrestees' length of detention and bond amounts for release. *See* Plaintiffs' Motion in Support of Summary Judgment ("Pl. Mot."), ECF No. 597 at 10–11, 16, 18–20, 37–39. In 2015, the City responded as follows to an Interrogatory:

> 12. Identify any and all policies and procedures used by Defendant to determine the length of Plaintiff(s)' detention in the municipal jail following an arrest (i.e. in a case involving failure to pay municipal fines and fees or in a case involving a new arrest), and identify the persons responsible for making such determinations, from February 8, 2010, to the present
> **ANSWER**: Objection on the grounds this request is confusing and vague. Subject to this and with respect to written orders, see General Order 416.00 (August 19, 2010) and

8

Court Order (December of 2014). The precise time of release depended upon bond amount and was addressed on an individual case-by-case basis.

*See* Pl. Reply Ex. 6 (emphasis added). Now, at summary judgment, the City relies heavily on paragraph 12 of the Declaration:

> I was solely responsible for determining the length of time that an individual would or could be incarcerated in the Ferguson Municipal Jail if he/she was unable to post bond. In that regard, I established maximum permissible incarceration terms as follows: From some point prior to February I, 2010 through December 18, 2014, I directed the Police Department to hold jail inmates for a maximum of 72-hours.  I directed Ferguson Police Supervisors to release detainees without posting bond at the conclusion of the maximum incarceration periods mentioned above or sooner when it was necessary because of (a) jail overcrowding; (b) medical needs of an inmate; (c) jail staffing issues, or other good reason.

ECF No. 604-12 ¶ 12.

Putting aside the mound of other contradictory evidence,[5] the City is trying to use this Declaration statement to contradict its *own interrogatory answers*. In response to Plaintiffs' statement that the 72-hour limit was set by the Chief of Police and codified in General Order 416.00,[6] the City states, "[d]efendant specifically denies that this was a city policy or that it was instituted by Chief Jackson. Rather, length of detention policy was set by Judge Brockmeyer. (*See* ECF 604-12, Declaration of Brockmeyer, para. 12)." ECF No. 612 at ¶ 61. But when Plaintiffs' Interrogatory 12 asked for the policies and procedures governing length of detention in the jail, the City responded by citing General Order 416.00—*a City policy*. *See* Pl. Reply Ex. 6. The City had a duty to update or supplement its interrogatory answer if there was additional responsive information. *Carter v. Moog Automative, Inc*., 126 F.R.D. 557, 559 (E.D. Mo. 1989).

---

[5] Such as the fact there is absolutely no written documentation of Mr. Brockmeyer setting a 72-hour limit, no other witness remembers him setting the limit, and the directly contradictory, contemporaneous emails from Chief Jackson setting a 72-hour limit on holding times as a matter of City jail policy.  *See* SUMF ¶¶ 61–63.

[6] City employees specifically testified that General Orders were approved by the Police Chief, and they were issued by the Office of the Chief of Police.  *See* SUMF ¶¶ 198–201, 231.

Likewise, Plaintiffs put forward this 30(b)(6) topic: "Policies and procedures used by the City and its Employees to determine whether and how long a person should be detained or held in the Municipal Jail."  The *City itself* designated testimony in response that: City jailing officers were never given "any guidance in making those [bond reduction] decisions." Pl. Mot. Ex. 58, 7/26/21 W. Ballard Dep. Tr. at 29:17-23; that City jailing officers made individual decisions on their own to lower bond and factored in "length of time incarcerated, seriousness, population," Pl. Mot. Ex. 48, 2/18/20 J. Craig Dep. Tr. at 75:15-76:7; and that "everyone essentially could be released if they weren't being held on some state warrant charge, particularly a violent type charge, but that would be essentially the watch commander's decision, usually who had been there the longest would be released unless there was a particular need to hold that person." Pl. Mot. Ex. 73, 1/6/16 T. Jackson Dep. Tr. at 73:20-74:4.

The City now uses Mr. Brockmeyer's declaration statement that he had given guidance that Ferguson jailers could *only* release detainees for limited reasons to rebut its own binding admissions which show just the opposite. *CitiMortgage, Inc. v. Chicago Bancorp, Inc*., 2013 WL 3946116, at *1 (E.D. Mo. July 31, 2013) ((30(b)(6) testimony is "binding on the corporation."). "Some extraordinary explanation must be required before a corporation is allowed to retreat from binding admissions in the testimony of its Rule 30(b)(6) designee." *Estate of Thompson v. Kawasaki Heavy Industries, Ltd*., 291 F.R.D. 297, 304 (N.D. Iowa 2013).  Wishing for different testimony to exist is not an extraordinary explanation, and thus this Court should strike paragraph 12 of the Declaration.

### c. The Court Should Strike Paragraph in the Declaration Regarding Which Mr. Brockmeyer Has No Personal Knowledge

Affidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge." *El Deeb v. Univ. of Minnesota*, 60 F.3d 423, 428 (8th Cir.

10

1995); *see aslo Yeager v. Bowlin*, 693 F.3d 1076, 1080–81 (9th Cir. 2012) (disregarding declaration where "deponent remember[ed] almost nothing about the events central to the case during his deposition, but suddenly recall[ed] those same events with perfect clarity in his declaration in opposition to summary judgment without any credible explanation as to how his recollection was refreshed").

Paragraphs 7 and 8 of the Declaration are improper because Mr. Brockmeyer has no personal knowledge of warrants issued after individuals failed to appear at the "payment docket" to pay assessed amounts, or whether individuals unable to pay were apprised of new court dates. Plaintiffs assert in their Motion for Summary Judgment that Post-Judgment Class members were subject to warrants issued for non-payment. In support, Plaintiffs voluminously cite City documents, City official procedures, court clerk testimony, and Plaintiffs' testimony (*See* SUMF ¶¶ 99–148)—the City's response relies only on the Declaration. *See* ECF No. 613 at 34–35.

Specifically, paragraph 7 of the Declaration reads, in relevant part: "Failure to Appear warrants were generally not issued until a municipal offender failed to appear for at least two court appearances. All warrants for failure to appear were issued upon my determination that the municipal offender was apprised of his/her court date and nevertheless failed to appear." ECF No. 604-12 ¶ 7. Paragraph 8 of the Declaration then reads: "If an individual was unable to make a payment when due, he/she was apprised of a new court date." ECF No. 604-12 ¶ 8.

But Mr. Brockmeyer previously testified he was present *only* at limited Ferguson municipal court dockets and not when non-payment was recorded, or warrants issued. Mr. Brockmeyer testified he was paid per court appearance and would attend three or four dockets a month. ECF No. 591-31, Brockmeyer Dep. at 26:2-12, 46:8-47:6, SAMF ¶ 91. He testified that municipal court files were kept in the Police Department and only brought to him the night of court. ECF No. 618-

11

31, Brockmeyer Dep. at 85:18-20, SAMF ¶ 93.  He further testified that people had a date which was a "payment schedule," not a court date, and that because it was not a court night, Mr. Brockmeyer was not there to see people or hold hearings.  ECF No. 591-31, Brockmeyer Dep. at 77:22-79:10, SUMF ¶ 118.  At no point in his deposition did Mr. Brockmeyer testify that he issued letters to municipal defendants or arrange dockets to put individuals on different court nights.  *See, e.g.*, ECF No. 591-31, Brockmeyer Dep. at 69:12–24, SUMF ¶ 215 ("I'm not involved day-to-day in the operations of the court because I'm not there every day.").  Indeed, Mr. Brockmeyer testified that court clerks were responsible for both tasks.  ECF No. 618-31, Brockmeyer Dep. Tr. at 189:18–90:18 (clerks generated and stamped warrants), 273:17–74:9 (clerks set court dates and dockets).

And those court clerks testified exactly opposite to Mr. Brockmeyer: that prior to 2015, if individuals did not make a payment, a warrant was generated by the City's computer system, stamped by the court clerks, with **no** scheduled court date to talk to the City's judge about non-payment before a warrant issued.  *See* SUMF ¶¶ 131–135, 124.  The City's own procedures outline that if a payment was not received on time, the case would immediately go into warrant status.  SUMF ¶ 125; SAMF ¶ 94.  In rebuttal, the City puts forward the Declaration, which, tellingly, does not explain how Mr. Brockmeyer was involved in the alleged process of generating letters to individuals after missed payments to set a new court date.  Instead, the Declaration states in passive voice that "he/she was apprised." ECF No. 604-12 ¶ 8.

The City cannot create a genuine dispute of fact by simply having Mr. Brockmeyer make conclusory statements that certain procedural protections were taken when it is clear that he would not have personal knowledge of such process, particularly when the City employees who *would* have such knowledge have already testified that such a process did not exist.

Likewise, paragraph 11 of the Declaration reads: "At any time, a municipal defendant (whether incarcerated or not) could file a motion seeking to have his/her bond reduced or arrest warrant recalled." *See* ECF No. 604-12 ¶ 11; Def. SOF ¶ 28.

The Declaration provides no factual support to show that Mr. Brockmeyer is competent to testify that it was possible for *pro se* arrestees to file such bond-reduction motions. Not once did Mr. Brockmeyer discuss his involvement in the operation of the City's jail; Mr. Brockmeyer testified that he did not know an occasion when he ever went to the Ferguson jail between 2010 and 2014. ECF No. 591-31, Brockmeyer Dep. at 33:24–34:6, 106:17–21. The City has put forward no evidence showing Mr. Brockmeyer would have known whether Ferguson jailers gave arrestees information or the necessary materials (such as pen or paper) to draft and submit such motions, or conveyed those handwritten materials from arrestees to the Court.

Indeed, at no point during this eight-year litigation has the City ever alleged there was a process by which *pro se* incarcerated individuals in its jail could—or did—file motions to secure their own release. Nor is there any evidence of these alleged motions. Making this new claim at the dispositive motion stage through a witness who is clearly unable to personally testify to this process is improper.

### d. Striking Paragraphs from Mr. Brockmeyer's Declaration and the City's Statement of Facts is the Appropriate Remedy Given Prejudice to Plaintiffs

The City presents this never-before-seen Declaration long after the close of discovery, following class certification briefing, and contemporaneously with summary judgment.[7] Had Mr. Brockmeyer offered these statements at his actual deposition, Plaintiffs could have asked

---

[7] In *City of St. Joseph,*, the Eighth Circuit noted that "the City's filing of Sparks's affidavit on the same day that the City's Suggestions in Opposition to Defendant's Motion for Summary Judgment were due is highly suspicious . . . The timing of the affidavit, combined with the aforementioned factors, indicate that the City engaged in a last-minute effort to create a genuine issue of material fact." 439 F.3d at 476.

additional targeted questions. Plaintiffs also would have shaped the depositions of other witnesses to address these factual issues. In fact, Plaintiffs conducted over 20 such depositions after February 2020 in this case. Plaintiffs would have propounded additional requests for production and interrogatories to probe into the details of, for example, Mr. Brockmeyer's involvement in sending show cause letters and setting court dates for nonpayment. Therefore, the City's untimely proffering of this Declaration has deprived Plaintiffs of their ability and right to conduct discovery into these claims.

In a deliberate frustration of the discovery process, the City instead presents this Declaration at the literal last minute, such that Plaintiffs *cannot* confront Mr. Brockmeyer or gather additional evidence. ECF No. 586. This is improper, and the Court should strike those paragraphs. *Mountain Pure, LLC v. Bank of America, N.A.*, 481 F.3d 573, 577 (8th Cir. 2007) (disregarding newly produced evidence put forth at summary judgment in an affidavit where the affidavit was "contradictory to the facts alleged in the complaint, the facts argued by plaintiffs up until the [date of pleading] … and all the documents that have been submitted."); *Cap. Promotions, L.L.C. v. Don King Prods., Inc.*, 2012 WL 1094655 (E.D. Mo. Mar. 31, 2012) (finding "defendant was prejudiced by the late disclosure of" evidence since "[d]efendant prepared its motion for summary judgment based upon a certain set of known facts, only to be 'surprised' by the late disclosure of thirteen exhibits" and granting a motion to strike such evidence").

In the alternative, Plaintiffs ask this Court to reopen discovery into the drafting of the Declaration, and to depose Mr. Brockmeyer again prior to trial.

**II.     The City's Statement of Fact 48 Relies on Statements from Judge Beach's Expert Report that This Court Has Already Excluded**

The City's Statement of Facts also puts forward statements from the Expert Report of Judge Beach. ECF No. 495-1. This Court has previously considered arguments from the parties and

14

excluded portions of Judge Beach's expert report, stating: "Beach's opinions regarding the Ferguson Municipal Court's compliance with state law are irrelevant to this class action, which alleges only federal constitutional violations … probative value of such opinions is substantially outweighed by the risk of confusing the issues." ECF No. 540 at 22–23.

Yet the City cites *only* Judge Beach's report to claim as a statement of fact, "the City of Ferguson has no authority over the Ferguson Municipal Division or municipal court judges. See ECF No. 495-1, Beach Report at § V." Def. SOF ¶ 48.[8]

This "fact" is within the scope of what this Court has already excluded. The City asks to rely on Judge Beach's excluded opinion testimony to explain what kind of actions City policymakers were taking with respect to its court, which is outside his knowledge, improper opinion testimony, and creates a risk of confusing the issues in this case. This Court should strike this statement. *United Magazine Co. v. Curtis Circ. Co.,* 279 Fed.Appx. 14, 18 (2d Cir. 2008).

## CONCLUSION

For the foregoing reasons, Plaintiffs ask this Court to strike paragraphs 7, 8, 9, 11, and 12 from Mr. Brockmeyer's February 22, 2023 Declaration, and paragraphs 17–32, 48 from the City's Statement of Facts. Alternatively, Plaintiffs ask the Court to reopen discovery into the drafting of this Declaration and to reopen Mr. Brockmeyer's deposition.

---

[8] Plaintiffs also note this is not a fact at all, but rather an attempt to opine on the City's authority and control over the Municipal Division— one of the central legal issues in this case.

Dated: May 26, 2023                                   Respectfully submitted,

| | |
|---|---|
| **WHITE & CASE LLP** | **ARCHCITY DEFENDERS** |
| | |
| Angela Daker (*pro hac vice*) | By:  */s/ Maureen Hanlon* |
| 200 South Biscayne Boulevard, Suite 4900 | Maureen Hanlon, #70990MO |
| Miami, FL 33131 | Blake A. Strode, #68422MO |
| Phone: 305-371-2700 | John M. Waldron, #70401MO |
| Email: adaker@whitecase.com | 440 N. 4th Street, Suite 390 |
| | Saint Louis, MO 63102 |
| J. Frank Hogue (*pro hac vice*) | Phone: 855-724-2489 |
| 701 13th Street NW | Email: mhanlon@archcitydefenders.org |
| Washington, DC 20005 | |
| Phone: 202-626-3623 | —and— |
| Email: fhogue@whitecase.com | |
| | **CIVIL RIGHTS CORPS** |
| Ross E. Elfand (*pro hac vice*) | |
| Iva Popa (*pro hac vice*) | Marco Lopez (*pro hac vice*) |
| Luke J. Miller (*pro hac vice*) | Ryan Downer (*pro hac vice*) |
| Chloe R. Edmonds (*pro hac vice*) | 1601 Connecticut Avenue NW, Suite 800 |
| Fabiola Alvelais Aldana (*pro hac vice*) | Washington, DC 20009 |
| Ariell D. Branson (Law Clerk – not barred) | Phone: 202-844-4975 |
| 1221 Avenue of the Americas | Email: marco@civilrightscorps.org |
| New York, NY 10020 | |
| Phone: 212-819-7670 | —and— |
| Email: relfand@whitecase.com | |
| | **SLU LAW CLINIC** |
| | |
| | Brendan Roediger (MBE #6287213IL) |
| | 100 N. Tucker Blvd. |
| | Saint Louis, MO 63101-1930 |
| | Phone: 314-977-2778 |
| | Email: brendan.roediger@slu.edu |
| | |
| | ***ATTORNEYS FOR PLAINTIFFS*** |