**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL GUNN, Personal Representative of the Estate of KEILEE FANT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF FERGUSON, MISSOURI <br><br> Defendant. | Case No. 4-15-CV-00253-AGF <br><br> (Class Action) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT AND SETTLEMENT CLASSES, AND FOR
<u>PERMISSION TO DISSEMINATE NOTICE</u>**

## TABLE OF CONTENTS

**PAGE(S)**

I.      INTRODUCTION ...........................................................................................1

II.     BACKGROUND AND PROCEDURAL HISTORY ......................................................2

    A.     Litigation of the Case ..........................................................................2

    B.     Mediation ............................................................................................6

III.    THE TERMS OF SETTLEMENT ....................................................................6

    C.     The Classes ..........................................................................................6

    D.     Benefits to the Classes .........................................................................7

        1.     Monetary Benefits...........................................................................7

    E.     Class Member Releases .......................................................................9

    F.     Notice and Settlement Administration.................................................10

    G.     Opt-Outs and Objections...................................................................12

    H.     Attorneys' Fees and Service Awards ..................................................13

IV.     ARGUMENT ................................................................................................14

    A.     Preliminary approval of the Settlement is appropriate. .......................14

        1.     Legal standard.................................................................................14

        2.     The Settlement is fair. ....................................................................18

        3.     The Settlement is adequate. ............................................................21

        4.     The allocation of the Settlement is fair and reasonable. ...........................23

        5.     Counsel and Parties believe that the Settlement is fair and reasonable. ....26

    B.     The Court should approve the proposed form and method of Notice...................27

        1.     The proposed Notice provides for the best notice practicable under the circumstances.................................................................................27

        2.     The proposed form of Notice adequately informs Eligible Persons of their rights. ............................................................................................28

V.      CONCLUSION................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Albright v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, No. 4:11CV01691 AGF, 2013 WL 4855308 (E.D. Mo. Sept. 11, 2013).................................................................16, 23

*Baker et al v. City of Florissant*, Case No. 4:16-cv-01693-RHH (E.D. Mo. Jan. 2, 2024), ECF No. 289.................................................................................................................................25

*City of Ferguson v. Fant*, 140 S. Ct. 2515 (2020) ..............................................................4

*Claxton v. Kum & Go, L.C.*, No. 6:14-CV-03385-MDH, 2015 WL 3648776 (W.D. Mo. June 11, 2015) .................................................................................................................................18

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ....................................18, 22, 26, 27

*Donovan v. St. Joseph Cnty. Sheriff*, Case No. 3:11-CV-133-TLS, 2015 WL 7738035 (N.D. Ind. Dec. 1, 2015)........................................................................................................................25

*E.E.O.C. v. McDonnell Douglas Corp.*, 894 F. Supp. 1329 (E.D. Mo. 1995).............................19

*Fant et al. v. City of Ferguson*, Case No. 4:15-cv-00253-AGF..............................................12, 13

*Fant et al. v. City of Ferguson*, No. 18-1472 (8th Cir. July 26, 2018) ....................................3

*Fant et al. v. City of Ferguson*, No. 19-2939 (8th Cir. Sept. 25, 2019)...................................4

*Fant v. City of Ferguson*, 913 F.3d 757 (8th Cir. 2019) ..................................................3

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) .......................................................16

*Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935 (D. Minn. 2016) ................................15

*In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002) ....................................23

*In re Traffic Exec. Ass'n - E. Railroads*, 627 F.2d 631 (2d Cir. 1980)........................................17

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057 (8th Cir. 2013) ...........................................................................................................................15, 16

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. MDL 1559 4:03-MD-015, 2004 WL 3671053 (W.D. Mo. Apr. 20, 2004) ...........................................................................23, 27

*In re Zurn Pex Plumbing*, 2013 WL 716088 ................................................................14, 22, 26

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958.................................................14

*Jenkins et al. v. Jennings*, No. 4:15-cv-00252 (E.D. Mo. Dec. 14, 2016), ECF No. 40 ............... 21

*Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564 (S.D. Iowa 2011) ........................................................ 22

*Liddell by Liddell v. Bd. of Educ. of City of St. Louis*, 126 F.3d 1049 (8th Cir. 1997) ................. 14

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371 (8th Cir. 1990) ............................................................................................................................................ 15

*Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015) ............................. 14, 15, 16, 21

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) .......................................................... 15

*Risch v. Natoli Eng'g Co., LLC*, No. 4:11CV1621 AGF, 2012 WL 3242099 (E.D. Mo. Aug. 7, 2012) ........................................................................................................................................ 16

*Rodriguez et al. v. Providence Cmty. Corr., Inc. et al.*, No. 3:15-CV-01048 (M.D. Tenn. July 5, 2018), ECF No. 228 ................................................................................................................... 21

*Thomas v. City of St. Ann*, No. 4:16-cv-01302 (E.D. Mo. Oct. 17, 2023), ECF No. 302 ............................................................................................................................................ 21, 24

*Van Orden v. Meyers*, No. 4:19-cv-00971 (AGF), 2011 U.S. Dist. LEXIS 113478 (E.D. Mo. Sept. 30, 2011) ....................................................................................................................... 19

*Webb et al. v. City of Maplewood*, No. 4:16-cv-01703 (E.D. Mo. Apr. 5, 2023), ECF No. 273 ............................................................................................................................................ 21, 24

## STATUTES AND RULES

28 U.S.C. § 1715 ............................................................................................................................ 12

42 U.S.C. § 1983 ......................................................................................................................... 1, 21

Fed. R. Civ. P. 19 ............................................................................................................................. 3

Fed. R. Civ. P. 23(c) ...................................................................................................................... 28

Fed. R. Civ. P. 23(c) ...................................................................................................................... 28

Fed. R. Civ. P. 23(e) ............................................................................................................... passim

Fed. R. Civ. P. 25(a) ........................................................................................................................ 1

Mo. Rev. Stat. 650.058 .................................................................................................................. 25

## CONSTITUTIONAL PROVISIONS

United States Constitution ............................................................................................................. 10

## TREATISES

Newberg on Class Actions § 13:13 (5th ed.) ...................................................................17

## OTHER AUTHORITIES

*Manual for Complex Litigation* (4th ed.)........................................................15, 16, 17

## I.      INTRODUCTION

Plaintiffs Personal Representative of the Estate of Keilee Fant, Deceased,[1] Roelif Carter, Allison Nelson, Herbert Nelson Jr., Alfred Morris, Anthony Kimble, Donyale Thomas, Shameika Morris, and Ronnie Tucker ("Class Representatives" or "Plaintiffs"), on behalf of themselves and all others similarly situated, seek preliminary approval of a proposed settlement of claims (the "Settlement Agreement" or "Settlement") against Defendant City of Ferguson ("Defendant," the "City," or "Ferguson")[2] in connection with its arrest and detention practices.  Plaintiffs allege, among other things, that Defendant jailed them for nonpayment without regard for their ability to pay, issued warrants for failure to pay without probable cause that the nonpayment was willful, failed to provide counsel during debt-collection proceedings that led to imprisonment, jailed warrantless arrestees without any prospect of probable cause hearings, and kept arrestees under inhumane jail conditions, in violation of the Fourth, Sixth, Eighth, and Fourteenth Amendments.

The Settlement Agreement, if approved, will establish a cash Settlement Fund of $4,500,000.00.  After payment of attorney fees and costs,[3] Administration Costs,[4] and Class Representative Service Awards, all available funds will be distributed by check to the Settlement Classes, comprising the *Bearden* Settlement Class, the Modified *Gerstein* Settlement Class, the Warrant Settlement Class, the Post-Judgment Settlement Class, and the Jail-Conditions Settlement Class.

Plaintiffs and Class Counsel believe that the Settlement Agreement is fair, reasonable, and

---

[1] On November 9, 2023, Counsel for Plaintiff Keilee Fant filed a suggestion of Ms. Fant's death pursuant to Fed. R. Civ. P. 25(a) and moved to substitute Michael Gunn, in his capacity as personal representative of her Estate, as a plaintiff in this action.  *See* ECF No. 660.  On November 13, 2023, the Court granted the motion.  ECF No. 661.

[2] Collectively, Plaintiffs and Defendant constitute the "Parties."

[3] The Parties have agreed that Class Counsel will not seek more than one-third of the amount of the Settlement Fund in fees and costs.

[4] All capitalized terms have the same meaning as used in the Settlement Agreement, attached hereto as Exhibit 1.

adequate.  Plaintiffs respectfully request that this Court preliminarily approve the Settlement Agreement and order that Notice be distributed to Eligible Persons.

## II.      BACKGROUND AND PROCEDURAL HISTORY

### A.      Litigation of the Case

Plaintiffs filed this lawsuit on February 8, 2015, bringing six counts against Defendant in connection with its debt-collection and jailing practices.  *See* ECF No. 1 ¶¶ 233–45.  Defendant filed a motion to dismiss (ECF No. 8), which the Court granted in part (ECF No. 19) before granting Plaintiffs' motion to reconsider (ECF No. 27).

On April 13, 2016, Plaintiffs filed the First Amended Class Action Complaint, which is the operative complaint, including all six claims in the original complaint and adding a seventh.  *See* First Am. Compl., ECF No. 53 ¶¶ 233–46.  Plaintiffs alleged that Defendant violated their constitutional rights by jailing them for their inability to pay (Count One), denying them effective assistance of counsel (Count Two), detaining them indefinitely and arbitrarily (Count Three), exposing them to deplorable jail conditions (Count Four), imposing unduly harsh and punitive restrictions on them as government debtors (Count Five), seeking and executing invalid warrants for their arrest (Count Six), and detaining them unreasonably after warrantless arrests without a neutral judicial finding of probable cause (Count Seven).  *Id.*  Defendant has denied and continues to deny these allegations.  *See* Answer to First Am. Compl., ECF No. 56; *see also* Settlement Agreement.

In April 2016, Defendant filed its second motion to dismiss, seeking to dismiss all claims except Count Four on the grounds that Plaintiffs' alleged injuries were not attributable to Defendant.  ECF No. 58.  The Court denied the motion.  ECF No. 79.

In September 2017, Defendant filed its third motion to dismiss, seeking to dismiss all claims except Count Four, again on the grounds that the "real party in interest" was the Ferguson

Municipal Court and that the Municipal Court was an arm of the state.  ECF No. 151 at 1, 12–17. This Court denied the motion.  ECF No. 173 at 2.

Defendant sought interlocutory appeal on the alleged ground that the district court had issued a denial of sovereign immunity that was immediately appealable under the "collateral-order" exception to the final-judgment rule.  ECF No. 174.  Defendant also moved conditionally for the Eighth Circuit to remand with instructions to dismiss for failure to join the Ferguson Municipal Court as a "required" party under Federal Rule of Civil Procedure 19.   Def.'s Conditional Mot. Remand, *Fant et al. v. City of Ferguson*, No. 18-1472 (8th Cir. July 26, 2018).[5] Plaintiffs moved to dismiss Defendant's interlocutory appeal for lack of jurisdiction, arguing that, because Defendant had not asserted its own immunity from suit but had only asserted the immunity of the Municipal Court, there was no denial of sovereign immunity to review.  Pls.' Am. Mot. Dismiss Appeal, *Fant et al. v. City of Ferguson*, No. 18-1472 (8th Cir. Mar. 23, 2018).  Plaintiffs also opposed Defendant's conditional Rule 19 motion.  The Eighth Circuit ultimately dismissed Defendant's appeal for lack of jurisdiction and denied Defendant's conditional Rule 19 motion. *Fant v. City of Ferguson*, 913 F.3d 757, 759 (8th Cir. 2019).

In March 2019, Defendant filed its fourth motion to dismiss.  Def.'s Mot. Dismiss for Failure to Join an Indispensable Party Under Rule 19, ECF No. 223.  Again, Defendant argued that, aside from Count Four, Plaintiffs sought relief from the Ferguson Municipal Court rather than Defendant, *id.* at 1, and that the Municipal Court was an arm of the state immune from suit.  *Id.* at 2.  This Court denied the motion.  ECF No. 261 at 2.

Defendant again sought interlocutory appeal and moved to stay the case pending that

---

[5] Defendant petitioned to have its appeal heard en banc in the first instance. Def.'s Pet. Initial Hearing En Banc, *Fant, et al. v. City of Ferguson*, No. 18-1472 (8th Cir. May 18, 2018). The Eighth Circuit denied the petition on June 22, 2018.

appeal.  ECF No. 268. This Court denied the stay on the ground that Defendant "ha[d] not raised a colorable claim of its own immunity."  ECF No. 283 at 1.  Defendant then asked the Eighth Circuit to stay the case pending appeal.  Defs.' Mot. Stay Proceedings Pending Interlocutory Appeal, *Fant et al. v. City of Ferguson*, No. 19-2939 (8th Cir. Sept. 25, 2019).  The Eighth Circuit granted Plaintiffs' motion to dismiss Defendant's second interlocutory appeal for lack of jurisdiction and denied Defendant's motion to stay as moot.  Judgment, *Fant et al. v. City of Ferguson*, No. 19-2939 (8th Cir. Oct. 10, 2019).  It also denied Defendant's motions for panel rehearing and for rehearing en banc.  Order, *Fant et al. v. City of Ferguson*, No. 19-2939 (8th Cir. Nov. 15, 2019).  The Supreme Court denied certiorari. *City of Ferguson v. Fant*, 140 S. Ct. 2515 (2020).

The Parties then engaged in extensive discovery in this matter, spanning seven years, which included conducting over fifty depositions, issuing and answering multiple Requests for Production and Sets of Interrogatories, reviewing over 800,000 pages of documents, and the production of multiple expert reports on each side, along with depositions of experts.  *See* Decl. of Angela Daker in Support of Mot. for Prelim. Approval of Class Settlement ("Decl.") ¶ 8.[6]

On November 19, 2021, Plaintiffs moved for class certification.  Mot. for Class Certification, ECF No. 425.  After full briefing and a hearing on the matter, on June 9, 2022, the Court certified five damages classes, the *Bearden* Class, the Modified *Gerstein* Class, the Jail-Conditions Class, the Warrant Class, and the Post-Judgment Class, and one prospective Class, the Modified Declaratory and Injunctive Class.  *See* Mem. and Order, ECF No. 519.  On August 19, 2022, the Court modified the certified classes by imposing an end-date of September 30, 2017 for

---

[6] A Declaration of Angela Daker in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement and Settlement Classes, and for Permission to Disseminate Notice dated January 31, 2024 is attached hereto as Exhibit 2.

four of the damages classes.  *See* Order, ECF No. 535.  On December 30, 2022, the Court modified the fifth certified damages class, the Jail-Conditions Class, to also include a class end-date of September 30, 2017.  *See* Order Amending Class Definition and Directing Notice, ECF No. 573. The five certified damages classes as modified by the Court's August 19, 2022 (ECF No. 535) and December 30, 2022 (ECF No. 573) Orders shall collectively be referred to herein as the "Certified Classes."

On August 18, 2022, following negotiation in light of reforms implemented by Defendant (including the closure of its jail), the Parties filed a joint proposed stipulated order in which Plaintiffs would voluntarily dismiss the claims of the Modified Declaratory and Injunctive Class. ECF No. 534.  On September 9, 2022, the Parties filed a joint proposed procedure for the voluntary dismissal of the Modified Declaratory and Injunctive Class.  ECF No. 538.  On September 13, 2022, the Court preliminarily approved Plaintiffs' voluntary dismissal of the claims of the Modified Declaratory and Injunctive Class.  *See* ECF No. 540.  On July 5, 2023, the Court held a hearing regarding the request to voluntarily dismiss the claims of the Modified Declaratory and Injunctive Class.  *See* Order, ECF No. 584; ECF No. 651.  On July 18, 2023, the Court granted final approval to dismiss the claims of the Modified Declaratory and Injunctive Class.  *See* ECF No. 653.

On March 13, 2023, both Parties filed for summary judgment.  ECF Nos. 585, 589. Plaintiffs moved for summary judgment on Counts One, Two, and Seven.  ECF No. 589. Defendant moved for summary judgment on all seven counts.  ECF No. 585.  On May 31, 2023, after completion of summary judgment briefing, the Parties engaged in mediation and reached a resolution.  On June 30, 2023, the Parties filed a Joint Status Report and Request for Stay, where the Parties notified the Court of the May 31 mediation and resolution and requested that all

proceedings after the July 5, 2023 hearing to dismiss the Modified and Injunctive Class Members (ECF No. 584), including a decision on summary judgment, be stayed.  They also asked the court to vacate all deadlines, including the trial date.  ECF No. 649.  The Court granted the stay.  ECF No. 650.

### B. Mediation

On May 31, 2023, the Parties engaged in a day-long mediation before Mr. Bradley A. Winters, Esq., of JAMS.  *See* Decl. ¶ 14.  Class Counsel entered the mediation fully informed of the merits of Plaintiffs' claims and were prepared to continue to litigate and try the case rather than accept any settlement that was not in the Plaintiffs' and the classes' best interests.  *Id.*  This was the parties sixth attempt at a formal mediation.  Decl. ¶¶ 12–14.  Mr. Winters actively supervised and participated in the settlement discussions to help the Parties reach an acceptable compromise.  Decl. ¶ 15.  After lengthy and hard-fought negotiations during and after the mediation, the Parties reached an agreement on all material terms, including the amount of the Settlement Fund.  Decl. ¶ 16.  The Parties negotiated the precise terms and language of the Settlement Agreement now before the Court.  *Id.*  Class Counsel believes that this Settlement Agreement offers significant benefits to all Eligible Persons and is fair, reasonable, adequate and in the best interest of the Eligible Persons.  Decl. ¶ 19.  The Parties negotiated and reached agreement regarding attorneys' fees and costs and the Service Awards only after reaching agreement on all other material terms of this Settlement.  Decl. ¶ 20.

### III. THE TERMS OF SETTLEMENT

### C. The Classes

With consent of Defendant, Plaintiffs ask the Court to modify the Certified Classes by revising the end-date, and to certify these modified classes for settlement purposes only, as follows

(collectively, the "Settlement Classes"):

>*__Bearden__* **Settlement Class**: All persons who have, at any time from February 8, 2010, through December 30, 2022, been kept in jail by the City of Ferguson for failing to pay a fine, fee, bond, surcharge, or cost, without an inquiry into their ability to pay.

>>**Modified *Gerstein* Settlement Class** (a subclass of the *Bearden* Settlement Class): All persons who have, at any time from February 8, 2010, through December 30, 2022, been held in jail by the City of Ferguson after a warrantless arrest with no finding of probable cause by a neutral magistrate for their arrest and continued detention.

>>**Warrant Settlement Class** (a subclass of the *Bearden* Settlement Class): All persons who have, at any time from February 8, 2010, through December 30, 2022, been held in jail by the City of Ferguson after being arrested on a warrant issued by the City.

>>**Post-Judgment Settlement Class** (a subclass of the *Bearden* Settlement Class): All persons who have, at any time from February 8, 2010, through December 30, 2022, been jailed by the City of Ferguson because of their non-payment in connection with a prior judgment.

>**Jail-Conditions Settlement Class**: All persons who, at any time since February 8, 2010, through December 30, 2022, were held in the City of Ferguson jail.

Settlement Agreement ¶ 3.[7]

### D. Benefits to the Classes

#### 1. Monetary Benefits

The Settlement Agreement provides that Defendant shall establish a cash Settlement Fund of $4,500,000.00.  The Settlement Fund shall be used to pay any Eligible Person who does not opt out of the Settlement ("Class Member") their respective Class Member Payments after deductions for (a) Court-approved attorneys' fees and costs awarded to Class Counsel, (b) Settlement Administration Costs, and (c) Court-approved Service Awards to the Class Representatives. Settlement Agreement ¶ 6.1; Decl. ¶ 22.

---

[7] In the event that the Settlement Agreement is not approved by the Court, the class relief set forth in the Settlement Agreement is changed in any material way, or the Settlement Agreement is terminated, the proposed modifications to the Certified Classes shall become null and void and have no further force and effect whatsoever, unless otherwise agreed to by the Parties, and the Parties shall be restored without prejudice to their respective positions as if the Settlement and application for its approval had not been made.  Settlement Agreement ¶ 3.

After these deductions, approximately \$2,452,196.61 (6/7 of the remaining Settlement Fund)[8] shall be allocated to the *Bearden* Settlement Class (which, by definition, includes all members of its subclasses) (the "*Bearden* Settlement Class Fund") and approximately \$408,699.43 (1/7 of the remaining Settlement Fund) shall be allocated to the Jail-Conditions Settlement Class (the "Jail-Conditions Settlement Class Fund.").[9]  Decl. ¶ 23.

1.  The *Bearden* Settlement Class Fund—The *Bearden* Settlement Class Fund will be distributed on a dollar-per-hour-jailed basis to the members of the *Bearden* Settlement Class using the following calculations: (a) the total *Bearden* Settlement Class Fund will be divided by the total number of hours of imprisonment for the *Bearden* Settlement Class during the Class Period, as calculated by Plaintiffs' expert, Dr. Stephen Demuth, to reach a standard hourly *Bearden* Settlement Class Member recovery rate; (b) then, for each individual in the *Bearden* Settlement Class, their total number of qualifying hours for the *Bearden* Settlement Class will be multiplied by the standard hourly *Bearden* Settlement Class Member recovery rate to reach an initial recovery payment.  This results in a *Bearden* Settlement Class Member Payment.  Decl. ¶ 24.

2.  The Jail-Conditions Settlement Class Fund—The Jail-Conditions Settlement Class Fund will be distributed on a dollar-per-hour-jailed basis to the members of the Jail-Conditions Settlement Class using the following calculations: (a) the total Jail-Conditions Settlement Class Fund will be divided by the total number of hours of

---

[8] The *Bearden* Settlement Class is based on Plaintiffs' counts 1, 2, 3, 5, 6, and 7.  *See generally,* First Am. Compl., ECF No. 53.

[9] These numbers are approximate, as the Settlement Administration Costs are yet to be borne and as such estimates were used for these calculations.

imprisonment for the Jail-Conditions Settlement Class during the Class Period, as calculated by Plaintiffs' expert, Dr. Stephen Demuth, to reach a standard hourly Jail-Conditions Settlement Class Member recovery rate; (b) then, for each individual in the Jail-Conditions Settlement Class, their total number of qualifying hours for the Jail-Conditions Settlement Class will be multiplied by the standard hourly Jail-Conditions Settlement Class Member recovery rate to reach an initial recovery payment.  This results in a Jail-Conditions Settlement Class Member Payment.  Decl. ¶ 25.

A Class Member may qualify for a *Bearden* Settlement Class Member Payment, a Jail-Conditions Settlement Class Member Payment, or both payments.  The total of the *Bearden* Settlement Class Member Payment and/or Jail-Conditions Settlement Class Member Payment due to each Class Member is the total Class Member Payment.  Payments will be mailed automatically to Class Members.  Once the time period for cashing initial Class Member Payments has passed, the remainder of the Settlement Funds will be distributed on a *pro rata* basis, using the same methodology as the first distribution, to Class Members who claimed their initial distribution.  Decl. ¶ 26.

The Settlement Agreement also sets out a specific procedure for disposition of any residual funds, including procedures for a secondary distribution and/or a proposed *cy pres* recipient to be approved by the Court.  Settlement Agreement ¶¶ 12.1–12.5.  In no event shall any portion of the Settlement Fund revert to Defendant.  *Id.* ¶ 6.4.

### E.  Class Member Releases

In exchange for the benefits conferred by the Settlement Agreement, the Releasing Parties shall automatically be deemed to have fully and irrevocably released and forever discharged the Released Parties of and from any and all liabilities, rights, claims, actions, causes of action,

demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, that result from, arise out of, are based upon, the conduct, omissions, duties or matters during the Class Period that were or could have been alleged in the Action.  Settlement Agreement ¶ 13.1.  The release is appropriately tailored, in that it applies to claims arising from, or based upon, the facts and allegations set forth in the operative Complaint.

### F.  Notice and Settlement Administration

Subject to Court approval, the Settlement Administrator is Atticus Administration LLC (the "Settlement Administrator"), which the Parties have retained to handle Notice and administration of the Settlement, after soliciting bids from multiple administrators, based on overall cost and value to the Settlement Classes.  Decl. ¶ 29.  Under the Parties' supervision, the Settlement Administrator will issue Notice, receive exclusion requests and any objections to the Settlement, respond to inquiries, issue settlement checks, and conduct other activities relating to Notice and the administration of the Settlement Agreement.  *See* Settlement Agreement ¶¶ 9.1–9.3.  As set forth in detail in ¶ 10 of the Settlement Agreement, the Notice shall conform to all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and any other applicable law, and shall otherwise be in the manner and form approved by the Court.  Subject to Court approval, Notice will be accomplished as set forth in the Settlement Agreement.  *See id.* ¶ 10.

The Notice shall include, among other information: a description of the material terms of the Settlement; a date by which any Eligible Person may exclude themself from or "opt-out" of the Settlement; a date by which any Eligible Person may object to the Settlement; the location and date of the Final Approval Hearing; and the address of the Settlement Website at which any

Eligible Person may access the Settlement Agreement and other related documents and information.  Settlement Agreement ¶ 10.1.  Class Counsel and Defendant shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court.

The Settlement Administrator, in consultation with the parties, will provide notice to members of the *Bearden* Settlement Class and Jail-Conditions Settlement Class in three different ways: (a) Postcard Notice, (b) Long Form Notice with greater detail than the Postcard Notice, and (c) Publication Notice.  Settlement Agreement ¶ 10.3.  The details of these notices are included in the Settlement Agreement.  *See id.* ¶ 10; Exhibits C, D, and E.

The Postcard Notice shall be mailed to any Eligible Person by first class United States mail to the best available mailing addresses.  Settlement Agreement ¶ 10.5.  The Parties shall provide the Settlement Administrator with last known mailing addresses for these members.  *Id.*  The Settlement Administrator shall run the names and addresses through the National Change of Address Registry and update as appropriate.  *Id.*  Additionally, the Settlement Administrator shall use standard skip tracing devices to obtain forwarding address information and, if the skip tracing yields a different forwarding address, shall mail the Postcard Notice to that forwarding address.  *Id.*  If a mailed Postcard Notice is returned with new forwarding address information, the Settlement Administrator shall re-mail the Postcard Notice to the new forwarding address.  *Id.*  The Postcard Notice shall inform Eligible Persons how they may request a copy of the Long Form Notice.  *Id.*

The Publication Notice shall consist of a Publication Notice published in Missouri to apprise Eligible Persons of the Settlement, including print publication in a local newspaper, and a digital media campaign.  Settlement Agreement ¶ 10.7.  The Publication Notice shall inform

Eligible Persons how they may request a copy of the Long Form Notice.  *Id.*

The Settlement Administrator shall also, by the terms of the Settlement Agreement, maintain a database showing mail addresses to which each Notice was sent and any Notices that were not delivered.  Settlement Agreement ¶ 10.9.  In addition to the affidavit by the Settlement Administrator in advance of the Final Approval Hearing and in support of the motion for Final Approval, the Settlement Administrator shall provide a summary report of the Notice Program to the Parties not less than three (3) days prior to the Final Approval Hearing.  *Id.*  Finally, the database maintained by the Settlement Administrator regarding the Notices shall be available to the Parties and the Court upon request.  *Id.*

Defendant will comply with the notice requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.  Settlement Agreement ¶ 15.1.

In addition to these forms of notice provided by the Settlement Administrator, Plaintiffs' Counsel will work to publicize details about the Settlement and connect Eligible Persons with the Settlement Administrator through social media posts and advertisements, stories in the local media, and engaging local non-profits that serve a large percentage of Eligible Persons.  Decl. ¶ 40.

### G.  Opt-Outs and Objections

The Notice will advise any Eligible Person of their right to opt out of the Settlement. Settlement Agreement ¶ 10.2.  Any Eligible Person may opt out of the Settlement by mailing an Opt-Out Request to the Settlement Administrator during the Opt-Out Period.  *Id.* ¶ 5.1.  Any Eligible Person may also object to the Settlement.  *Id.* ¶ 5.3.  Written objections should include (i) the name of the civil action: *Fant et al. v. City of Ferguson*, Case No. 4:15-cv-00253-AGF; (ii) state all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (iii) confirm whether the objector or any counsel for the objector

intends to personally appear and/or testify at the Final Approval Hearing; (iv) contain the objector's full name, address, and telephone number; (v) contain the objector's signature (an attorney's signature is not sufficient); and (vi) be filed with the Court and served upon Class Counsel and counsel for the City of Ferguson no later than sixty (60) days before the Final Approval Hearing. *Id.*

Within 14 days of the entry of an Order of Preliminary Approval of Settlement, Notice will be provided to the Eligible Persons. Settlement Agreement ¶ 4.1. The Notice Program shall be completed no later than 60 days before the Final Approval Hearing. *Id.* ¶ 10.8. The Opt-Out Period shall be extended for a period of 15 days for any Eligible Person who is re-mailed a Postcard Notice to a new forwarding address. *Id.* ¶ 10.6.

No later than 60 days prior to the Final Approval Hearing, all objections and opt-outs must be filed with the Court and served upon Class Counsel and counsel for Defendant. Settlement Agreement. ¶ 5.3. Any written objections shall be filed with the Court no fewer than 10 days before the Final Approval Hearing. *Id.* ¶ 5.4. No later than 45 days before the Final Approval Hearing Plaintiffs shall file the Motion for Final Approval of the Settlement. *Id.* ¶ 7.1. Also no later than 45 days before the Final Approval Hearing Class Counsel shall file their application for attorneys' fees and costs, as well as for the Service Awards for the Class Representatives. *Id.* ¶ 11.2. No later than 14 days in advance of the Final Approval Hearing, Class Counsel will submit to the Court a Notice of Class Action Opt-Outs, attaching an affidavit from the Settlement Administrator, confirming that the Notice program was completed, and providing the names of any Eligible Person who timely and properly opted out. *Id.* ¶ 9.2.8.

## H. Attorneys' Fees and Service Awards

Class Counsel have not been paid for their extensive efforts or reimbursed for costs incurred. Despite the fact that the Settlement Agreement provides that Class Counsel may petition

for attorneys' fees of up to 33.33% and then additional reimbursement of reasonable litigation costs, Class Counsel will limit its petition for an award of total attorneys' fees and costs to 33.33%. Settlement Agreement ¶ 11.1.  Such award is subject to this Court's approval and will serve to compensate for the time, risk, and expense Class Counsel incurred pursuing claims on behalf of the classes.  *Id.* ¶¶ 11.2, 11.4.  Defendant agrees not to oppose this application.  *Id.* ¶ 11.1.  Any approved award of attorneys' fees and costs shall be payable solely out of the Settlement Fund, prior to the distribution to the Class Members.  *Id.*

Class Counsel will also petition the Court for, and Defendant agrees not to oppose, approval of Service Awards to each of the Class Representatives in an amount not to exceed the amount of $10,000.00 each for their lengthy service on behalf of this class.  Settlement Agreement ¶ 11.4.  The Service Award shall be paid to each of the Class Representatives in addition to the Class Representative's Class Member Payment.  *Id.*

The Parties negotiated and reached agreement regarding attorneys' fees and costs and the Service Awards only after reaching agreement on all other material terms of this Settlement. Settlement Agreement ¶ 11.6.

## IV.    ARGUMENT

### A.    Preliminary approval of the Settlement is appropriate.

#### 1.    Legal standard.

"The law strongly favors settlements.  Courts should hospitably receive them." *Liddell by Liddell v. Bd. of Educ. of City of St. Louis*, 126 F.3d 1049, 1056 (8th Cir. 1997) (quoting *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990)). "The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013).  "Class actions, in

14

general, 'place an enormous burden of costs and expense upon [ ] parties.'" *Marshall v. Nat'l Football League*, 787 F.3d 502, 512 (8th Cir. 2015) (quoting *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 535 (8th Cir. 1975)).  Settlement avoids protracted litigation and conserves resources. *See In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (expense of continued litigation "weigh[s] in favor of" approving settlement).

   At the preliminary-approval stage, the Court should "make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms . . . ." MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004) (hereafter "*Manual*").  Given that "[a] strong public policy favors agreements . . . courts should approach them with a presumption in their favor." *Little Rock School Dist.*, 921 F.2d at 1388; *accord Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148–49 (8th Cir. 1999) ("[J]udges should not substitute their own judgment as to optimal settlement terms for the judgments of the litigants and their counsel." (internal quotation marks omitted)).  The Eighth Circuit "begin[s] with the guiding principle that 'a class action settlement is a private contract negotiated between the parties.'" *Marshall*, 787 F.3d at 509 (quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005)).  "The court's role in reviewing a negotiated class settlement is 'to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned.'" *Id.* (quoting *In re Wireless*, 396 F.3d at 934).  A settlement agreement is "presumptively valid," *In re Uponor*, 716 F.3d at 1063, especially where "the settlement was reached through mediation with a third-party neutral, and only after substantial discovery had taken place." *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 943 (D. Minn. 2016).

   Under Federal Rule of Civil Procedure 23(e), in deciding whether to approve a class action settlement, the Court should consider whether:

(A) the class representative and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Other factors courts consider are "defendant's financial condition," *Risch v. Natoli Eng'g Co., LLC*, No. 4:11CV1621 AGF, 2012 WL 3242099 (E.D. Mo. Aug. 7, 2012) (quoting *In re Wireless*, 396 F.3d at 932–33), "the existence of fraud or collusion behind the settlement," "the stage of the proceedings and the amount of discovery completed," and "the opinions of the class counsel, class representatives, and absent class members," *Albright v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, No. 4:11CV01691 AGF, 2013 WL 4855308, at *3 (E.D. Mo. Sept. 11, 2013). "The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Marshall*, 787 F.3d at 508 (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)).

Approval of a class action settlement involves a two-step process. The court first makes a preliminary fairness evaluation. *Manual* § 21.633. If the preliminary evaluation does not disclose grounds to doubt fairness or other obvious deficiencies, and appears to fall "within the range of possible approval," the court directs that notice be given to class members and sets a fairness

hearing, at which arguments and evidence may be presented in support of or against the settlement. *See Manual* § 21.633; *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *see also In re Uponor* 716 F.3d at 1061 (describing the process of preliminary approval, notice, and a fairness hearing).   The notice should tell class members how to make their views known to the court. *Manual* § 21.633.   Under this framework, "the goal of preliminary approval is for a court to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness.   Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase." NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2011) (citing cases).[10]   Stated another way, preliminary approval is a "determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n - E. Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

Here, the Class Members were adequately represented by the Class Representatives—who do not have any conflicts with the Class Members—and by experienced Class Counsel.   The settlement negotiations occurred at arm's length before an experienced mediator and after the close of discovery, class certification, significant motions practice, and trial preparation.   The recovery to the Class Members is within ranges approved in similar class actions, particularly in light of the substantial risks of trial and the costs associated with further litigation.   And the Settlement treats Class Members equitably relative to each other.   Therefore, the proposed Settlement satisfies the standards for preliminary approval and warrants the dissemination of Notice apprising any Eligible Person of their opportunity to participate in the Settlement, or to opt out of or object to the

---

[10] At the conclusion of the Notice period, and after any objections have been resolved, the Court will address whether final approval is warranted.

Settlement.

**2.      The Settlement is fair.**

First, the Settlement Agreement is the product of arm's length negotiations between the Parties spanning several years,[11] culminating in the most recent mediations before Mr. Bradley A. Winters, Esq., of JAMS and the successful mediation on May 31, 2023 (the "May 31 Mediation") during which the parties reached an agreement in principle.  Decl. ¶¶ 14–16.  During the mediation, Mr. Winters actively supervised and participated in the settlement discussions to help the Parties reach an acceptable compromise.  Decl. ¶ 15.  The Parties then spent additional months working out the fine details of the agreement in principle that was reached during mediation.  Decl. ¶ 20. The active assistance of a neutral mediator is a strong indicator of a lack of collusion.  *See DeBoer v. Mellon Mortg. Co*., 64 F.3d 1171, 1178 (8th Cir. 1995) ("It also warrants mention that a Magistrate Judge presided over the settlement negotiations and that the district court had prior experience with this type of litigation.  Such multiple layers of scrutiny further militate in favor of the settlement and against [objectors'] claims of collusion."); *Claxton v. Kum & Go, L.C.*, No. 6:14-CV-03385-MDH, 2015 WL 3648776, at *6 (W.D. Mo. June 11, 2015) (approving settlement as "a product of extensive negotiation conducted over a period of several months and requiring the services of a mediator").

Second, the Class Members were adequately represented by Class Representatives and experienced Class Counsel, who are well-informed about the merits and risks of the case and who litigated zealously on behalf of the Class Members.  *See* Fed. R. Civ. P. 23(e)(2)(A); *see also* Class Certification Order, ECF No. 519 at 44 ("As noted above, the City does not challenge the adequacy

---

[11] The Parties engaged in mediation on several occasions over the course of the litigation, including on: April 21, 2016; April 27, 2017; June 19, 2018; July 13, 2018; and October 27, 2022. Decl. ¶ 12.

of the class representatives or class counsel, and the Court finds based on the record and the conduct of counsel and parties throughout this litigation that the class representatives' interests are aligned with those of the putative classes and that their attorneys are competent to prosecute the action.").

The Class Representatives are adequate representatives because they entirely share their classmates' interests in establishing the illegality of Defendant's policies and practices concerning post-arrest procedures and debt collection.  Decl. ¶ 35.  Their injuries arise from policies to which all Class Members were subjected, and their legal challenges to Defendant's policies are shared among the members of the Settlement Classes.  There are no known material conflicts of interest as to this case among Class Members, all of whom have a similar interest in vindicating their constitutional rights.  *Id*.

Furthermore, Class Counsel are "qualified, experienced and generally able to conduct the proposed litigation."  *Van Orden v. Meyers*, No. 4:19-cv-00971 (AGF), 2011 U.S. Dist. LEXIS 113478, at *27 (E.D. Mo. Sept. 30, 2011) (internal citations omitted) (quoting *Wetzel v. Liberty Mutual Ins. Co*., 508 F.2d 239, 247 (3d Cir. 1975)).  Plaintiffs are represented by counsel from Civil Rights Corps, ArchCity Defenders, Saint Louis University School of Law Legal Clinics, and White & Case LLP.  Each organization has experience litigating complex class action matters in federal court and extensive knowledge of both the details of post-arrest wealth-based detention schemes and the relevant constitutional law.  Decl. ¶ 33.  Counsel for Plaintiffs have also led other materially similar class actions resulting in systemic reforms of wealth-based detention schemes across the country.  *Id*.  The interests of the Class Members are thus fairly and adequately protected by the Class Representatives and their attorneys.

Third, there is no question that discovery in this case is "to a point at which an informed

assessment of its merits and the probable future course of the litigation can be made." *E.E.O.C. v. McDonnell Douglas Corp.*, 894 F. Supp. 1329, 1334 (E.D. Mo. 1995).   The Parties conducted discovery, including over 50 depositions, issuing and answering multiple Requests for Production and Sets of Interrogatories, reviewing over 800,000 pages of documents and voluminous data, and the production of multiple expert reports on each side along with depositions of experts.  Decl. ¶ 8. At the conclusion of the mediation, the only outstanding item was the updating of jailing and payment data to accommodate the extension of the Class Period to December 30, 2022.  The Parties have since worked with an electronic jail records vendor, Omnigo Systems, who provided services to the City of St. Ann Jail (where Defendant was housing arrestees after its own jail closed), and have obtained this data.  Decl. ¶ 17.  Plaintiffs also had their expert, Dr. Stephen Demuth, review the data received from Omnigo Systems to identify Eligible Persons and the number of hours of incarceration which qualify for class relief.  Decl. ¶ 17.

Fourth, the terms of the proposed award of attorneys' fees and costs and Service Awards are also fair and demonstrate that the Settlement is the product of arm's length negotiation.  These terms were negotiated only after the Parties reached agreement on all other material terms of the Settlement.  Settlement Agreement ¶ 11.6.  The Settlement Agreement allows Class Counsel to file a separate motion seeking approval of an award of attorneys' fees not to exceed 33.33% of the Settlement Fund, as well as reasonable litigation costs.  *Id.* ¶ 11.1.  Class Counsel has agreed to seek approval of attorneys' fees and costs not to exceed 33.33% of the Settlement Fund.  Decl. ¶ 31.  The Settlement Agreement also contemplates a Service Award of up to $10,000 for each Class Representative.  Settlement Agreement ¶ 11.4.  Class Members will have an opportunity to review these requests and challenge them at the Final Approval Hearing.  *Id.* ¶ 14.1.  Importantly, the Court's failure to approve, in whole or in part, any award of attorneys' fees or the requested

Service Awards "shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination." *Id.* ¶ 11.5.

### 3. The Settlement is adequate.

As the Eighth Circuit has explained, "[t]he single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Marshall*, 787 F.3d at 508 (quoting *Van Horn*, 840 F.2d at 607); *see also* Fed. R. Civ. P. 23(e)(2)(C). The Settlement here provides for substantial monetary relief of $4,500,000.00 to the Class Members.

This amounts to a sizeable recovery in a constitutional class action. This is particularly true in an area of the law with very few damages class actions. One of Plaintiffs' Counsel, ArchCity Defenders, has settled comparative class actions approved by other courts in the Eastern District for $4,750,000 (*Jenkins et al. v. Jennings*), $3,250,000 (*Webb et al. v. City of Maplewood*), and $3,125,000 (*Thomas et al. v. City of St. Ann*). *See* Order Granting Final Approval of Class Action Settlement, *Jenkins et al. v. Jennings*, No. 4:15-cv-00252 (E.D. Mo. Dec. 14, 2016), ECF No. 40; Mem. and Order Granting Final Approval of Class Action Settlement, *Webb et al. v. City of Maplewood*, No. 4:16-cv-01703 (E.D. Mo. Apr. 5, 2023), ECF No. 273; Order Granting Prelim. Approval of Class Action Settlement, *Thomas v. City of St. Ann*, No. 4:16-cv-01302 (E.D. Mo. Oct. 17, 2023), ECF No. 302. Another one of Plaintiffs' Counsel, Civil Rights Corps, settled a damages case for $14,300,000, approximately three times the Settlement Fund, against a county in Tennessee with more than 19 times the population of the City of Ferguson. *See* Order Granting Final Approval of Class Settlement and Plan of Allocation, Granting Mots. for Attorney's Fees, Granting Permanent Inj., and Dismissing Case, *Rodriguez et al. v. Providence Cmty. Corr., Inc. et al.*, No. 3:15-CV-01048 (M.D. Tenn. July 5, 2018), ECF No. 228.

By contrast, the risks of continued litigation are substantial. Plaintiffs are pursuing class

claims for Fourth, Sixth, Eighth, and Fourteenth Amendment violations under Section 1983. While Plaintiffs believe that they would ultimately prevail on those claims, they are cognizant that continued litigation entails non-trivial legal risks. Plaintiffs face risks that summary judgment could be granted against them, that they will not prevail at trial, or that Defendant would successfully appeal a trial judgment. Defendant is represented by able counsel who would present a vigorous defense. And, even if Plaintiffs were to prevail on liability, a jury might not award Plaintiffs and the Eligible Persons the full amount of requested compensatory damages. Given the risks Plaintiffs would face at trial, in the eyes of Plaintiffs and their counsel, the proposed Settlement Agreement provides Eligible Persons with an opportunity to obtain significant relief at this stage in the litigation, while abrogating the risks that might prevent them from obtaining relief should the litigation continue.

As in many cases, "[t]he possibility of a large monetary recovery through future litigation is highly speculative, and any such recovery would occur only after considerable additional delay." *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 570 (S.D. Iowa 2011). "The very purpose of compromise is to avoid the delay and expense of . . . a trial . . . . Accordingly, while it is incumbent on the district court to determine the propriety of the settlement, it need not resolve all of the underlying disputes . . . and the value of the settlement need not be determined with absolute precision." *DeBoer*, 64 F.3d at 1178 (internal quotations and citations omitted); *see also In re Zurn Pex Plumbing*, 2013 WL 716088, at *6 (noting that the court "does not have the responsibility of trying the case or ruling on the merits of the matters resolved by agreement . . . . Rather, the very purpose of compromise is to avoid the delay and expense of such a trial" (quoting *White v. Nat'l Football League*, 822 F. Supp. 1389, 1417 (D. Minn. 1993))).

The Parties naturally dispute the strength of Plaintiffs' case, and the Settlement Agreement

reflects the Parties' compromise, weighing the likelihood of various potential outcomes.  This case carries significant risks for all Parties and would consume a great deal of time and expense if litigated to the end.  In light of the risk and delay of litigation, weighed against the substantial benefits the Settlement will provide to Class Members, the proposed resolution is a fair, reasonable, and adequate compromise and should be preliminarily approved.  The Settlement "brings real and immediate benefits to the settlement class while they may well not get anything if the case were to go forward or, if they did receive some benefits, may well not receive anything until years into the future after millions of dollars have been spent."  *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. MDL 1559 4:03-MD-015, 2004 WL 3671053, at *10–11 (W.D. Mo. Apr. 20, 2004).  "It is the surety of settlement that makes it a favored policy in dispute resolution as compared to unknown dangers and unforeseen hazards of litigation." *Id.*  (citing *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 701 (E.D. Mo. 2002)).  *See also In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. at 701 (noting that "it has been held proper to take the bird in the hand instead of a prospective flock in the bush" (internal citation omitted)); *Albright*, 2013 WL 4855308, at *3 ("If the case were to proceed, the resulting motion practice, trial and appeals, could have been lengthy, involved, and expensive, presenting a substantial risk that Plaintiffs and the Settlement Classes would not ultimately prevail on their claim . . . .  [T]he Settlement Agreement eliminates a substantial risk that the Class Members would walk away 'empty-handed.'").

In sum, the Settlement Agreement substantially fulfills the objectives of this action and provides real relief to Class Members expeditiously, without the cost, risk, or delay of further litigation.

### 4.   The allocation of the Settlement is fair and reasonable.

The allocation of the Settlement—both among the Settlement Classes and among Class

Members—is fair and reasonable, and treats "class members equitably relative to each other." *See* Fed. R. Civ. P. 23(e)(2)(D).  Under the Settlement Agreement, as set forth above in Section III.D, approximately $2,452,196.61 (6/7 of the remaining Settlement Fund after deductions) shall be allocated to the *Bearden* Settlement Class Fund and approximately $408,699.43 (1/7 of the remaining Settlement Fund after deductions) shall be allocated to the Jail-Conditions Settlement Class Fund.  Decl. ¶ 23.

The majority of the Settlement is allocated to the *Bearden* Settlement Class Fund, which will be distributed among *Bearden* Settlement Class Members in proportion to the number of hours each *Bearden* Settlement Class Member spent detained by Ferguson.   The Jail-Conditions Settlement Class Fund will be distributed among Jail-Conditions Settlement Class Members in proportion to the number of hours each Jail-Conditions Settlement Class Member spent detained by Ferguson.  The majority of the Class Members will draw from both funds.  For a member of both the *Bearden* Settlement Class and the Jail-Conditions Settlement Class, the Settlement Agreement will result in a recovery between $5.91 and $39.37 per hour, depending on the response rate.[12]  Even assuming a proportionally high rate of claims, Class Counsel expects a member of both the *Bearden* Settlement Class and the Jail-Conditions Settlement Class will receive approximately $425 for each 24-hour period spent in Ferguson's jail.  Decl. ¶ 28.

This monetary recovery for Class Members is comparable (and indeed, in most cases exceeds) that approved by the Eastern District of Missouri in similar actions.  *See* Final Approval of Class Action Settlement, *Webb v. City of Maplewood*, Case No. 4:16-cv-01703-CDP (E.D. Mo. Feb. 17, 2023), ECF No. 273 (granting final approval of a $3,250,000 settlement for similar claims

---

[12] $5.91 per hour assumes 100% of Class Members claim their portion of the Settlement Fund, and $39.37 per hour assumes 15% of Class Members claim their portion of the Settlement Fund.

against the City of Maplewood, Missouri); Order Granting Prelim. Approval of Class Action Settlement, *Thomas v. City of St. Ann*, Case No. 4:16-cv-01302 (E.D. Mo. Oct. 17, 2023), ECF No. 302 (granting preliminary approval for a $3,125,000 settlement for similar claims against the City of St. Ann, Missouri); Order Granting Prelim. Approval of Class Action Settlement, *Baker et al v. City of Florissant*, Case No. 4:16-cv-01693-RHH (E.D. Mo. Jan. 2, 2024), ECF No. 289 (granting preliminary approval for a $2,890,000 settlement for similar claims against the City of Florissant, Missouri).

This is also comparable to recovery for detention in other types of claims or areas.  Mo. Rev. Stat. 650.058 (setting maximum recovery rate of $100 per day, or $4.167 per hour, for restitution in innocence cases); *see Donovan v. St. Joseph Cnty. Sheriff*, Case No. 3:11-CV-133-TLS, 2015 WL 7738035, at *9 (N.D. Ind. Dec. 1, 2015) (surveying *Gerstein* over-detention cases to find a range of comparable jury verdicts and settlements ranging from $1.00 per hour of over detention to $75.00 per hour of over detention, with $32.50 per hour of over-detention as the average).

The proposed method of distributing relief to the Class Members is also effective.  *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).  The Parties have agreed upon an experienced Settlement Administrator to administer the Settlement.  *See* Settlement Agreement ¶ 2.2.  Members of the five Settlement Classes—the *Bearden* Settlement Class (including as subclasses the Modified *Gerstein*, Warrant, and Post-Judgment Settlement Classes) and the Jail-Conditions Settlement Class—will automatically be mailed checks by the Settlement Administrator.  Decl. ¶ 30.  Within 120 days after the date the Settlement Administrator distributes the first payment to Class Members, any remaining amounts resulting from unclaimed funds shall be distributed on a pro rata basis to the Class Members who received and claimed Settlement Class Member Payments, to the extent

feasible and practical in light of the costs of administering such subsequent payments, unless the amounts involved are too small to make individual distributions economically feasible or other specific reasons exist that would make such further distributions impossible or unfair.  Settlement Agreement ¶ 12.2.  Should such a second distribution be made, Class Members who claimed the first distribution will receive a second distribution.  *Id*.  In the event that the costs of preparing, transmitting and administering such pro rata payments to Class Members are not economically feasible, or other specific reasons exist that would make such further distributions impossible or unfair, or if such a pro rata distribution is made and Residual Funds still remain, Class Counsel may seek the Court's approval to distribute the Residual Funds to a *cy pres* recipient.  *Id.* ¶ 12.3.  Defendant reserves the right to object to or otherwise challenge or oppose any motion or other request by Class Counsel for court approval to distribute Residual Funds to a *cy pres* recipient.  *Id*.

   5.   **Counsel and Parties believe that the Settlement is fair and reasonable.**

   "The views of the parties to the settlement must also be considered" as well as the judgments of experienced class counsel.  *DeBoer*, 64 F.3d at 1178.  Courts give "'great weight' to these views and may 'rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement.'"  *In re Zurn Pex Plumbing*, 2013 WL 716088, at *6 (quoting *Welsch v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987) (citations omitted).  The terms of the Settlement here were reached by arm's length negotiations among multiple attorneys familiar with the legal and factual issues of the case and well-versed in similar class litigation.

   The Parties and their respective counsel, having taken the risks and benefits into consideration, agree that the Settlement Agreement provides fair and substantial relief to all Class Members.  Decl. ¶ 18.  The amount of the Settlement Fund was reached by negotiation, after the Parties considered settlements reached and judgments awarded in similar cases, the costs and risks attendant to continued litigation, and the available funds and likely insurance coverage of the

Defendant.[13]  *Id.* ¶¶ 14–16, 18–20.  The proposed Settlement provides fair and substantial relief, given the significant challenges and risks associated with pursuing such claims through trial and potential appeal.

**B.  The Court should approve the proposed form and method of Notice.**

       **1.  The proposed Notice provides for the best notice practicable under the circumstances.**

Under Rule 23(e), the Court must direct notice in a reasonable manner to class members who would be bound by the proposed class settlement.  "Notice of a settlement proposal need only be as directed by the district court . . . and reasonable enough to satisfy due process."  *DeBoer*, 64 F.3d at 1176.  The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 2004 WL 3671053, at *8 (quoting *Petrovic*, 200 F.3d at 1153)).  "There is no one 'right way' to provide notice as contemplated under Rule 23(e)."  *Id.*

Here, as described in the Settlement Agreement, the Parties propose that Notice be provided by Postcard Notice, Long Form Notice, and Publication Notice.  Settlement Agreement ¶¶ 10.1–10.9.  The Postcard Notice will be mailed to all Eligible Persons.  Decl. ¶ 39.  The Long Form Notice will be posted on the Settlement Website and shall be available to Eligible Persons by mail on request made to the Settlement Administrator.  *Id.*  Publication Notice shall be effectuated through print publication in a local Missouri newspaper, a digital social media advertising campaign, and traditional advertising campaigns on billboard and radio.  *Id.*  The Parties believe that they possess all data necessary to effectuate this settlement.  If additional data

---

[13] There is substantial risk that Defendant may ultimately be without coverage for the claims in this case were it to proceed to trial.  Specifically, Defendant's coverage is at issue in a currently pending appeal of the Circuit Court of St. Louis County's grant of summary judgment in favor of the insurer.

is needed for the purpose of providing Notice to the Eligible Persons, however, the Parties will cooperate to obtain such records.  Settlement Agreement ¶ 8.1.

### 2. The proposed form of Notice adequately informs Eligible Persons of their rights.

Any notice provided to Eligible Persons should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members.  *See* Fed. R. Civ. P. 23(c)(2).

The proposed Notice here describes the material terms of the Settlement; the relief it will provide; the date, time and place of the Final Approval Hearing; procedures and deadlines for opting out or objecting; and an explanation that if any Eligible Person does not opt out, he or she will become a Class Member and be bound by any final judgment in this case, including a release of claims.  *See* Settlement Agreement ¶ 10; Exhibits C, D, and E.  The proposed Notice also advises Eligible Persons that Plaintiffs' counsel have pursued the lawsuit on a contingent basis and have not received payment of fees or any reimbursement of their out-of-pocket costs.  *Id.*  The proposed notice further advises Eligible Persons that Plaintiffs' counsel will apply to the Court for an award of fees and costs, and for Service Awards to the Class Representatives.  *Id.*  The form of Notice proposed therefore complies with the requirements of Fed. R. Civ. P. 23(c)(2), and due process.

The Notice is accurate and informs Eligible Persons of the material terms of the Settlement and their rights pertaining to it.  The Court should therefore approve the proposed Notice and direct that Notice be disseminated as proposed by the Parties.

## V.   CONCLUSION

For the reasons stated above, Plaintiffs request that the Court: (1) preliminarily approve the

Parties' proposed class action Settlement; (2) approve the proposed Notice and direct that it should

issue; (3) set the date and time of a Final Approval Hearing; and (4) grant such other relief as the

Court deems necessary and appropriate.

Dated:  January 31, 2024

**WHITE & CASE LLP**

By: */s/ Angela Daker*
Angela Daker (*pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Phone: 305-371-2700
Email: adaker@whitecase.com

Ross E. Elfand (*pro hac vice*)
Iva Popa (*pro hac vice*)
Paula C. Kates (*pro hac vice*)
Luke J. Miller (*pro hac vice*)
Chloe R. Edmonds (*pro hac vice*)
Fabiola Alvelais Aldana (*pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Phone: 212-819-7670
Email: relfand@whitecase.com

Frank Hogue (*pro hac vice*)
701 13th Street NW, #600
Washington, D.C. 20005
Phone: 202-626-3600
Email: fhogue@whitecase.com

—and—

**ARCHCITY DEFENDERS**

Maureen Hanlon, #70990MO
Blake A. Strode, #68422MO
440 N. 4th Street, Suite 390
Saint Louis, MO 63102
Phone: 855-724-2489
Email: mhanlon@archcitydefenders.org

—and—

**CIVIL RIGHTS CORPS**

Marco Lopez (*pro hac vice*)
1601 Connecticut Avenue NW, Suite 800
Washington, DC 20009
Phone: 202-844-4975
Email: marco@civilrightscorps.org

—and—

**SLU LAW CLINIC**

Brendan Roediger, #6287213IL
100 N. Tucker Blvd.
Saint Louis, MO 63101
Phone: 314-977-2778
Email: brendan.roediger@slu.edu

*Attorneys for Plaintiffs*