**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL GUNN, Personal Representative of the Estate of KEILEE FANT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF FERGUSON, MISSOURI,<br><br>Defendant. | Case No. 4-15-CV-00253-AGF |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**<u>ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS</u>**

## I.      INTRODUCTION

Plaintiffs Personal Representative of the Estate of Keilee Fant, Deceased,[1] Roelif Carter, Allison Nelson, Herbert Nelson Jr., Alfred Morris, Anthony Kimble, Donyale Thomas, Shameika Morris, and Ronnie Tucker ("Class Representatives" or "Plaintiffs"), on behalf of themselves and all others similarly situated, submit this memorandum in support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.  The settlement reached with the City of Ferguson, Missouri ("Defendant," the "City," or "Ferguson")[2] in this case is the result of extensive investigation, work, and negotiation.  It achieves monetary relief for Class Members and should be approved.  Pursuant to the Court's Preliminary Approval Order (ECF No. 675), Plaintiffs request an award of attorneys' fees and costs in the amount of $1,499,850 and Service Awards of up to $10,000 for each of the Class Representatives.  The requested attorneys' fees and costs represent 33.33% of the $4,500,000.00 cash Settlement Fund.  In light of the work performed by Class Counsel[3] for Plaintiffs and the substantial time, effort, and personal sacrifice of the Class Representatives, the attorneys' fees and costs, and Service Awards sought in this Motion are reasonable.  For all of the reasons set forth herein, Plaintiffs request that the Court grant these awards.

---

[1] On November 9, 2023, Class Counsel filed a suggestion of Ms. Fant's death pursuant to Fed. R. Civ. P. 25(a) and moved to substitute Michael Gunn, in his capacity as personal representative of her Estate, as a plaintiff in this action.  *See* ECF No. 660.  On November 13, 2023, the Court granted the motion.  ECF No. 661.

[2] Collectively, Plaintiffs and Defendant constitute the "Parties."

[3] On June 9, 2022, the Court appointed Blake Strode of ArchCity Defenders; Angela Daker and Frank Hogue of White & Case LLP; Marco Lopez of Civil Rights Corps; and Brendan Roediger of SLU Law Clinic, as Class Counsel for the classes the Court certified in the same order.  ECF No. 519.  On December 9, 2022, the Court additionally approved Maureen Hanlon of ArchCity Defenders as Class Counsel.  ECF No. 566.

## II.    BACKGROUND

### A.  Litigation of the Case

Class Counsel have devoted substantial time and resources to investigating, litigating, and resolving this case.  *See* Declaration of Maureen Hanlon ("Hanlon Decl."), attached hereto as Exhibit 1, at ¶¶ 4–27.  Plaintiffs initiated this lawsuit on February 8, 2015, when they filed the Class Action Complaint ("Complaint") bringing six claims against Defendant in connection with its debt-collection and jailing practices.  See ECF No. 1 ¶¶ 233–45.  In drafting the Complaint, Class Counsel engaged in extensive review of the operative case law, investigation of the practices of Defendant, and evaluation and individual representation of potential class representatives. Hanlon Decl. ¶¶ 4–5.  The Complaint alleged that Defendant violated class members' constitutional rights by jailing them for their inability to pay (Count One), denying them effective assistance of counsel (Count Two), detaining them indefinitely and arbitrarily (Count Three), exposing them to deplorable jail conditions (Count Four), imposing unduly harsh and punitive restrictions on them as government debtors (Count Five), and seeking and executing invalid warrants for their arrest (Count Six).

Defendant filed a motion to dismiss (ECF No. 8), which the Court granted in part (ECF No. 19), but Plaintiffs successfully moved to reconsider (ECF No. 27).  On April 13, 2016, Plaintiffs filed the First Amended Class Action Complaint, which is the operative complaint, asserting all six claims in the original complaint and adding a seventh claim for detaining class members unreasonably after warrantless arrests without a neutral judicial finding of probable cause (Count Seven).  *See* First Am. Compl., ECF No. 53 ¶¶ 233–46.  On April 27, 2016, Defendant filed its Answer to the Amended Complaint (ECF No. 56), as well its second motion to dismiss (ECF No. 57), seeking to dismiss all claims except Count Four on the grounds that Plaintiffs'

alleged injuries were not attributable to Defendant.  The Court denied the motion.  ECF No. 79.

In September 2017, Defendant filed its third motion to dismiss, seeking to dismiss all claims except Count Four, again on the grounds that the "real party in interest" was the Ferguson Municipal Court and that the Municipal Court was an arm of the state.  ECF No. 151 at 1, 12–17. This Court denied the motion.  ECF No. 173.  Defendant sought interlocutory appeal (ECF No. 174) and also moved conditionally for the Eighth Circuit Court of Appeals to remand with instructions to dismiss for failure to join the Ferguson Municipal Court as a "required" party under Federal Rule of Civil Procedure 19.  Def.'s Conditional Mot. Remand, *Fant et al. v. City of Ferguson*, No. 18-1472 (8th Cir. July 26, 2018).[4]  Plaintiffs moved to dismiss Defendant's interlocutory appeal for lack of jurisdiction.  Pls.' Am. Mot. Dismiss Appeal, *Fant et al. v. City of Ferguson*, No. 18-1472 (8th Cir. Mar. 23, 2018).  Plaintiffs also opposed Defendant's conditional Rule 19 motion.  Pls.' Mot. in Opp'n, *Fant et al. v. City of Ferguson*, No. 18-1472 (8th Cir. Mar. 6, 2018).  The Eighth Circuit ultimately dismissed Defendant's appeal for lack of jurisdiction and denied Defendant's conditional Rule 19 motion.  *Fant v. City of Ferguson*, 913 F.3d 757, 759 (8th Cir. 2019).

In March 2019, Defendant filed its fourth motion to dismiss.  Def.'s Mot. Dismiss for Failure to Join an Indispensable Party Under Rule 19, ECF No. 223.  This Court denied the motion. ECF No. 261 at 2.  Defendant again sought interlocutory appeal and moved to stay the case pending that appeal.  ECF No. 268.  This Court denied the stay on the ground that Defendant "ha[d] not raised a colorable claim of its own immunity." ECF No. 283 at 1.  Defendant then asked the Eighth Circuit to stay the case pending appeal.  Defs.' Mot. Stay Proceedings Pending Interlocutory

---

[4] Defendant petitioned to have its appeal heard en banc in the first instance.  Def.'s Pet. Initial Hearing En Banc, *Fant, et al. v. City of Ferguson*, No. 18-1472 (8th Cir. May 18, 2018).  The Eighth Circuit denied the petition on June 22, 2018.

Appeal, *Fant et al. v. City of Ferguson*, No. 19-2939 (8th Cir. Sept. 25, 2019).  The Eighth Circuit granted Plaintiffs' motion to dismiss Defendant's second interlocutory appeal for lack of jurisdiction and denied Defendant's motion to stay as moot.  Judgment, *Fant et al. v. City of Ferguson*, No. 19-2939 (8th Cir. Oct. 10, 2019).  It also denied Defendant's motions for panel rehearing and for rehearing en banc.  Order, *Fant et al. v. City of Ferguson*, No. 19-2939 (8th Cir. Nov. 15, 2019).  The Supreme Court denied certiorari.  *City of Ferguson v. Fant*, 140 S. Ct. 2515 (2020).  In total, in defending Defendants' various motions to dismiss and appeals alone, Plaintiffs had to file numerous substantive briefs over four years of litigation.

In addition to defending Defendants' various motions to dismiss and appeals, Plaintiffs responded to multiple discovery requests, deposed Defendant's experts, and prepared and defended named Plaintiffs at their depositions.  Hanlon Decl. ¶ 7–11.  Plaintiffs also noticed, prepared for, and conducted over fifty depositions of their own, including non-party witnesses; prepared and issued multiple sets of documents requests and interrogatories; subpoenaed records and class membership data from third party entities; reviewed over 800,000 pages of documents; retained and consulted with expert witnesses; met and conferred with defense counsel to resolve various discovery disputes; and engaged in successful motion practice to compel Defendant's production of certain documents and voluminous data.  *Id.*  Discovery was tailored to uncover all relevant practices of Defendant that could bear on class certification and the ultimate merits of the case.  *Id.* ¶ 11.

The discovery process, which accounts for a significant portion of the attorney time expended in this case, was essential to its successful litigation and settlement.  *Id.* 7–11.  Among other things, the breadth of information and testimony obtained during fact discovery regarding Defendant's practices was crucial to the preparation of Plaintiffs' Motion for Class Certification

(ECF No. 425), which was granted on June 9, 2022.  See Mem. and Order, ECF No. 519.

On March 13, 2023, Plaintiffs moved for and fully briefed summary judgment.  ECF Nos. 589–94, 640–48; Hanlon Decl. ¶ 13.  The discovery taken in the case was crucial to supporting Plaintiffs' Motion for Summary Judgment as to The City's Liability on Counts One, Two, and Seven.  Hanlon Decl. ¶ 11.  Plaintiffs also opposed Defendant's Motion for Summary Judgment. ECF Nos. 616–619, 624–625; Hanlon Decl. ¶ 13.  To fully brief these dispositive motions, Plaintiffs put forward over one hundred pages of facts relying on over 200 exhibits.  See ECFS Nos. 591–92; 617–18.  The detailed factual record developed in discovery led to the Parties reaching the proposed settlement.

**B. Mediation**

On May 31, 2023, the Parties engaged in a day-long mediation before Mr. Bradley A. Winters, Esq., of JAMS.  *See* Hanlon Decl. ¶ 14.  Class Counsel entered the mediation fully informed of the merits of Plaintiffs' claims and were prepared to continue to litigate and try the case rather than accept any settlement that was not in the Plaintiffs' and the classes' best interests. *Id.*  This was the Parties' sixth attempt at a formal mediation.  *Id.*  Mr. Winters actively supervised and participated in the settlement discussions to help the Parties reach an acceptable compromise. *Id.*  After lengthy and hard-fought negotiations during and after the mediation, the Parties reached an agreement on all material terms, including the amount of the Settlement Fund.  *Id.*  The Parties negotiated the precise terms and language of the Settlement Agreement now before the Court.  *Id.* ¶ 15.  Class Counsel believes that this Settlement Agreement offers significant benefits to all Class Members and is fair, reasonable, adequate and in the best interest of the Class Members.  *Id.* ¶ 14.

Among other factors leading to settlement were the extensive work performed by Class Counsel, and the credible threat of success at the impending November 2023 trial based on

Counsel's collective trial experience. *Id.* Class Counsel prepared the first draft of the Settlement Agreement, and the Parties then negotiated the precise terms and language of the Agreement. *Id.* ¶ 15. Following further intensive negotiation and the exchange of numerous draft agreements between the Parties, Class Counsel ultimately was able to reach a Settlement Agreement that provides substantial monetary compensation while avoiding the risks and delay of further litigation. *Id.* The Parties selected Atticus Administration ("Atticus") as a third-party class settlement administrator, and Class Counsel have been actively involved in supervising and managing all aspects of Atticus's administration of the notice program. *Id.* at ¶ 16.

## III.   ARGUMENT

### A.  Legal Standard

The Federal Rules of Civil Procedure provide that in a certified class action, the Court may award reasonable attorneys' fees "that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  In this Circuit, there are two methods commonly used for calculating an attorneys' fee award in a class action settlement: the lodestar method and the "percentage of the recovery" method. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244–45 (8th Cir. 1996).  "It is well established in this circuit that a district court may use the 'percentage of the fund' methodology to evaluate attorney fees in a common-fund settlement[.]" *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999).  Indeed, "where attorney fees and class members' benefits are distributed from one fund, a percentage-of-the-benefit method may be preferable to the lodestar method for determining reasonable fees." *West v. PSS World Med., Inc.*, 2014 WL 1648741, at *1 (E.D. Mo. Apr. 24, 2014)[5]; *see also Johnston*, 83 F.3d at 245 ("[T]he [Third Circuit]

---

[5] None of the funds available to Settlement Class Members will revert to Ferguson under the Settlement Agreement, "avoid[ing] the claims-rate problem that has troubled some courts and caused them to abandon the percentage-of-the-fund method for calculating fees." *Id.* at *5 n.1.

Task Force recommended that the percentage of the benefit method be employed in common fund situations." (citing *Court Awarded Attorney Fees*, Report of the Third Circuit Task Force (Arthur R. Miller, Reporter), 108 F.R.D. 237 (1985))); *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) ("In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" (quoting *Petrovic*, 200 F.3d at 1157)); *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 736 F. Supp. 1007, 1008–09 (E.D. Mo. 1990) (percentage of fund "is a more appropriate and efficient means of calculating an attorneys' fee award" than lodestar method); *Barfield v. Sho-Me Power Elec. Co-op.*, 2015 WL 3460346, at *3 (W.D. Mo. June 1, 2015) (same); *Wiles v. Southwestern Bell Tel. Co.*, 2011 WL 2416291, at *4 (W.D. Mo. June 9, 2011) (same).  Courts may, but are not required to, use the lodestar method to crosscheck the fairness of a percentage award.  *See Petrovic*, 200 F.3d at 1157.

### B.  The Fee Requested is a Reasonable Percentage of the Fund.

Under the percentage-of-the-fund method, fees are based on a percentage of the gross value of the common fund.  *West*, 2014 WL 1648741, at *1 ("It is appropriate to apply a reasonable percentage to the gross settlement fund.").  Plaintiffs seek a fees and costs award of $1,499,850, which is equal to 33.33% of "the full value of the benefit to each absentee member" obtained through the "entire judgment fund."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980).

The request of 33.33% of the gross settlement amount here is reasonable and well within the range typically approved by courts in this Circuit.  "[C]ourts in this circuit . . . have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund."  *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 WL 5547159, at *1 (N.D. Iowa Nov. 9, 2011) (awarding 36.04% of $18.5 million common fund, plus over $900,000 in expenses).  Indeed, awards of

33.33% of the fund are common.  *See, e.g.*, *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017)

("[C]ourts have frequently awarded attorneys' fees ranging up to 36% in class actions."); *In re*

*U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming award of 36% of $3.5 million

fund, plus $40,000 for expenses); *In re Charter Commc'ns, Inc., Sec. Litig.*, 2005 WL 4045741, at

*21 (E.D. Mo. June 30, 2005) ("33% remains the fee most frequently requested."); *West*, 2014 WL

1648741, at *1 (fee award of 33% of fund was reasonable); *Wiles*, 2011 WL 2416291, at *4–5

(same); *Barfield*, 2015 WL 3460346, at *4 (same).[6]  *See also* Hanlon Decl. ¶¶ 19, 25.

### C.  The *Johnson* Factors Support the Reasonableness of the Fee Request.

The reasonableness of the fee award requested here is supported by the "*Johnson*" factors,

which are approved in the Eighth Circuit.  *See Barfield*, 2015 WL 3460346, at *5 (The Eighth

Circuit "has approved consideration of the twelve factors set forth in *Johnson v. Georgia Highway*

*Express*, 488 F.2d 714, 719-20 (5th Cir. 1974).").  The *Johnson* factors include:

> (1) The time and labor required; (2) the novelty and difficulty of the questions; (3) the skill
> requisite to perform the legal service properly; (4) the attorney's preclusion of other
> employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is
> fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8)
> the amount involved and the results obtained; (9) the experience, reputation, and ability of
> the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar cases.

*Id.* at *5 (quoting *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 944 n.3 (8th Cir. 2007)).  Not

every factor applies, and the Court has discretion regarding which factors it considers and the

---

[6] *See also, e.g.*, *Cromeans v. Morgan, Keegan & Co., Inc.*, 2015 WL 5785576, at *3 (W.D. Mo.
Sept. 16, 2015), *report and recommendation adopted*, 2015 WL 5785508 (W.D. Mo. Oct. 2, 2015)
(awarding 33% of gross settlement fund in attorneys' fees); *Sanderson v. Unilever Supply Chain,
Inc.*, 2011 WL 6369395, at *2–3 (W.D. Mo. Dec. 19, 2011) (awarding 33.78% of settlement fund);
*Ray v. Lundstrom*, 2012 WL 5458425 (D. Neb. Nov. 8, 2012) (awarding one-third of $3.1 million
fund, plus approximately $77,900 in expenses); *Brehm v. Engle*, 2011 U.S. Dist. LEXIS 35127, at
*6 (D. Neb. Mar. 30, 2011) (awarding one-third of $340,000 settlement fund in fees, plus
approximately $45,000 in expenses); *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 571 (S.D. Iowa
2011) (awarding 33% of settlement).

relative weight given to each.  *See In re Xcel*, 364 F. Supp. 2d at 993 (citing *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993), which notes that "rarely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation" (citation omitted)); *see also Yarrington v. Solvay Pharmaceuticals, Inc*., 697 F. Supp. 2d 1057, 1062 (D. Minn. 2010) ("[N]ot all of the individual factors will apply in every case, affording the Court wide discretion in the weight to assign each factor.").  Here, the most salient factors support the requested fee award.

### 1.  Class Counsel Achieved an Excellent Recovery for the Classes.

The settlement is excellent for the Classes, particularly in light of the significant risks of litigation.  The settlement allocates the $4,500,000 cash Settlement Fund as follows: approximately $2,452,196.61 to the *Bearden* Settlement Class[7] (which, by definition, includes all members of its subclasses) (the "*Bearden* Settlement Class Fund") and approximately $408,699.43 to the Jail-Conditions Settlement Class (the "Jail-Conditions Settlement Class Fund.").[8]  *See* Mem. in Supp. of Pls.' Mot. for Prelim. Approval of Class Settlement, ECF No. 669 at 8.  The majority of the settlement is allocated to the *Bearden* Settlement Class, with the approximately $2,452,196.61 for the *Bearden* Settlement Class to be distributed among *Bearden* Settlement Class Members in proportion to the number of hours each *Bearden* Settlement Class Member spent allegedly unconstitutionally detained by Ferguson.  *See id.* at 8.  As the 11,792 *Bearden* Settlement Class

---

[7] The *Bearden* Settlement Class is based on Plaintiffs' counts 1, 2, 3, 5, 6, and 7.  *See generally*, First Am. Compl., ECF No. 53.

[8] These numbers are approximate, as the Settlement Administration Costs are yet to be borne and as such estimates were used for these calculations.

Members were jailed for a total of 476,119 hours, the settlement provides for a recovery of between $5.91 and $39.37 per hour[9], depending on the response rate.

With respect to the Jail-Conditions Settlement Class, the approximately $408,699.43 of the Settlement Fund allocated to the Jail-Conditions Settlement Class will be distributed among Jail-Conditions Settlement Class Members in proportion to the number of hours each Jail-Conditions Settlement Class Member spent allegedly unconstitutionally detained by Ferguson.  *See id.* at 8. As the 13,938 Jail-Conditions Settlement Class Members were jailed for a total of 541,155 hours, and most of the Jail-Conditions Settlement Class Members are also *Bearden* Settlement Class Members, the settlement provides for a likely recovery of between $141 and $944 for each 24-hour period spent in the City's jail.

Class Counsel achieved a highly favorable result for the Classes, particularly when taking into account the complex questions of constitutional law involved, the uncertainty of trial, and the hurdles caused by the limits of Ferguson's liability insurance coverage (and the risk that the liability insurance coverage would be found not to apply to the claims raised in this litigation at all), which would have delayed recovery even if Plaintiffs had prevailed in full at trial.  The Settlement Fund amount is substantial in the aggregate and will provide significant cash benefits to Settlement Class Members.

### 2.   The Contingent Nature of the Case Supports the Fee Request.

In evaluating the *Johnson* factors, courts must take into consideration the contingent nature of any attorneys' fee award, because "[a]ccess to the courts would be difficult to achieve without compensating attorneys for that risk" of uncertainty.  *In re Abrams & Abrams, P.A.*, 605 F.3d 238,

---

[9] $5.91 per hour assumes 100% of Class Members claim their portion of the Settlement Fund, and $39.37 per hour assumes 15% of Class Members claim their portion of the Settlement Fund.

246 (4th Cir. 2010).  "Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees."  *Yarrington*, 697 F. Supp. 2d at 1062 (quoting *In re Xcel*, 364 F. Supp. 2d at 994).  "The risk of non-payment must be judged as of the inception of the action and not through the rosy lens of hindsight."  *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liab. Litig.*, 553 F. Supp. 2d 442, 478 (E.D. Pa. 2008).  "A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high."  *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007).  The risk of no recovery factors into undesirability, and is considered in light of, among other things, the risk of obtaining class certification and establishing liability at trial.  *Bredbenner v. Liberty Travel, Inc.*, at *20 (D.N.J. Apr. 8, 2011).[10]  Here, Class Counsel faced numerous issues and defenses making liability (and consequent payment) uncertain including the possibility of Defendant's motion for summary judgment being granted in part or full, loss at trial on some or all claims, a subsequent appellate ruling reversing success at trial, and uncertainty about whether Defendant could be compelled to pay a trial judgment if it lacked the funds to do so.  The case was prosecuted entirely on a contingent basis, entailing substantial risk that the litigation would yield little or no recovery or compensation.  *See* Hanlon Decl. ¶ 17.

---

[10] There are ample examples of situations in which attorneys in complex litigation "have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."  *In re Xcel*, 364 F. Supp. 2d at 994 (citing *Glover v. Standard Fed. Bank*, 283 F.3d 953 (8th Cir. 2002) (reversing class certification)).  *See, e.g.*, *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437-38 (8th Cir. 1999) (affirming dismissal without leave to replead); *Vaszlavik v. Storage Tech Corp.*, 2000 U.S. Dist. LEXIS 21140, at *11 (D. Colo. Mar. 9, 2000) (case undesirable "given the risk of no recovery and the uncertainty of the governing law").  Even in this case, Plaintiffs faced risks that summary judgment could be granted against them on all or some of their claims, that they would not prevail at trial, or that the City would appeal a trial judgment favorable to Plaintiffs.

### 3.  The Factual and Legal Issues in this Action are Complex.

Plaintiffs allege class claims for violation of the Fourth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  *See* First Am. Compl., ECF No. 53.  Defendant has denied and continues to deny all liability.  *See* Answer to First Am. Compl., ECF No. 56; *see also* Settlement Agreement.  The claims are complex in terms of subject matter and legal issues resulting from, among other things, still developing precedent as to similar class-wide damages claims.  Moreover, Defendant raised issues of sovereign immunity, resulting in an interlocutory appeal to the Eighth Circuit that ultimately affirmed Plaintiffs' position.

Further, Defendant vigorously contested whether the action satisfied the elements of Rule 23 and could be tried on a class-wide basis, necessitating voluminous discovery, expert work, and lengthy class certification briefing and oral argument.  The time and effort required to prosecute the claims and bring this litigation to settlement on a class-wide basis has been considerable, involving over 26,126.3 collective hours of legal service by Class Counsel[11]—as of the date of this filing—all before the motion practice, preparation, and execution of a lengthy jury trial.  Hanlon Decl. ¶ 24.

### 4.  Counsel for All Parties are Skilled Practitioners in Complex Litigation.

The quality and skill of Class Counsel's work prosecuting this challenging litigation also warrants approval of the requested fee.  Complex litigation and class actions require skill sets and experience needed to perform the legal service properly.  As set out in the Motion for Class Certification, Plaintiffs' counsel are highly experienced litigators in complex, class-action litigation and are recognized for their high-quality work and skill.  *See* ECF. Nos. 427-111, 427-

---

[11] All co-counsel produced hours for which there is documentation and took efforts to reduce duplication of hours.

112, 427-113, and 427-114 (declarations of Class Counsel and firm resumes); *see also* Hanlon Decl. ¶¶ 2, 22.  Counsel brought their exceptional abilities to bear on behalf of the Settlement Class, both in developing the factual record in the case, as well as in the quality of their legal research, writing, and argumentation in, among other things, successfully opposing Defendant's motions to dismiss and Defendant's motion to exclude Plaintiffs' expert, achieving class certification of five damages classes, responding to Defendant's Rule 23(f) petitions for leave to appeal to the Eighth Circuit, and opposing Defendant's motion for summary judgment.  In addition, Class Counsel persuasively briefed the issues before the Eighth Circuit during Defendant's interlocutory appeal of this Court's denial of its motion to dismiss.  Moreover, Class Counsel brought their tenacity and skill to bear at the negotiating table, ultimately resulting in an exceptional settlement for the Classes.  *See* Hanlon Decl. ¶¶ 14–15.  Plaintiffs faced well-qualified opposing counsel from a reputable municipal defense law firm who pressed defenses on their client's behalf.  *See*, *e.g.*, *Bredbenner*, 2011 WL 13447, at *20 (performance and quality of opposing counsel considered in measuring the skill and efficiency of class counsel).  "Class counsel's success in bringing this litigation to a conclusion prior to trial is another indication of the skill and efficiency of the attorneys involved."  *Id.*  Accordingly, this factor supports approval of the requested fee award.

### 5.  The Requested Award is Consistent with Awards in Similar Cases and is Below Plaintiffs' Counsel's Lodestar.

As discussed above, the requested award is reasonable and consistent with the range of awards approved by other courts in similar litigation.  In addition, the requested award is lower than Plaintiffs' Counsel's lodestar.  *See Petrovic*, 200 F.3d at 1157 (explaining that courts may, but are not required to, use the lodestar method to cross-check the fairness of a percentage award).  Even applying a lower-than-average hourly rate of $300, the 26,126.3 hours of attorney time

13

expended in this case on behalf of Plaintiffs and the Classes amounts to a lodestar of $7,837,890. Hanlon Decl. ¶ 25.[12]  The resulting multiplier is 0.11, which represents a *negative multiplier*.  *Id.* Courts within the Eighth Circuit have approved lodestar multipliers well over one.  *See, e.g.*, *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019) (approving award representing a lodestar multiplier of 5.3); *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017) (approving award representing a lodestar multiplier of 2.7); *Huyer*, 849 F.3d at 399 (approving award representing a lodestar multiplier of 1.82); *Del Toro v. Centene Management Company, LLC*, 2021 WL 1784368, at *3 (E.D. Mo. May 5, 2021) (approving award representing a lodestar multiplier of 2.73).  The fees requested here are well below the range typically awarded and are fair and reasonable.

### 6.   The Reaction of Class Members Demonstrates that Class Counsel Achieved a Favorable Outcome.

Notice of the proposed Settlement Agreement and the rights of Settlement Class Members to opt-out of or object to the Settlement Agreement and to the requested attorneys' fees and costs was sent to 15,017 Settlement Class Members on March 12, 2024.  In addition, notice was provided through publication notice in the *St. Louis American* beginning on March 14, 2024 for four consecutive weeks, in the *Post Dispatch* on March 12, 2024, and through social media advertisements.  No Settlement Class Members opted out of the settlement or objected to it by the deadline for doing so.  The lack of Class Members choosing to opt-out and/or object demonstrates that Class Counsel achieved a favorable outcome.

---

[12] "[A] court performing a lodestar cross check need not scrutinize each time entry; reliance on representation by class counsel as to total hours may be sufficient." *In re NuvaRing Products Liab. Litig.*, 2014 WL 7271959, at *4 (E.D. Mo. Dec. 18, 2014) (citing *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 867 (E.D. La. 2007) (quoting Vaughn R. Walker & Ben Horwich, *The Ethical Imperative of a Lodestar Cross–Check: Judging Misgivings About "Reasonable Percentage" Fees in Common Fund Cases*, 18 Geo. J. Legal Ethics 1453, 1463–64 (2005))).  Should the Court wish to undertake a full lodestar cross-check, Class Counsel will provide more detail upon request.

### D.  Class Counsel Should Be Awarded Costs.

Reasonable and necessary expenses also have been advanced to prosecute this litigation in the amount of $645,796.19.  Hanlon Decl. ¶ 26.  "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *Yarrington*, 697 F. Supp. 2d at 1067 (quoting *In re Media Vision Tech. Sec. Litig.*, 913 F.Supp. 1362, 1366 (N.D.Cal.1996) (citing *Mills v. Elec. Auto–Lite Co.*, 396 U.S. 375, 391–92 (1970))).  The requested costs must be relevant to the litigation and reasonable in amount.  *Id.*  The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are the type typically billed by attorneys to paying clients in the marketplace.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (allowing recovery of "out-of-pocket expenses that 'would normally be charged to a fee paying client'") (citing *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n. 7 (9th Cir. 1986), *reh'g denied and opinion amended*, 808 F.2d 1373 (9th Cir.1987)).

Here, Class Counsel seeks reimbursement of costs and expenses totaling $645,796.19.  While the great majority of these costs are discovery and expert witness-related, expenses also include legal research, court reporters, and some travel and meals.

| | |
|---|---|
| Arch City Defenders: | $3,797.19 |
| White & Case LLP: | $640,513.74 |
| Civil Rights Corps: | $1,485.26 |
| SLU: | $0.00 |

*See also* Hanlon Decl. ¶ 24.  These are the type of expenses routinely charged to hourly clients and, therefore, the full requested amount should be reimbursed.  *See Yarrington*, 697 F. Supp. 2d at 1067 (approving request where "the costs incurred included filing fees; expenses

associated with the research, preparation, filing, and responding to the pleadings in this matter; costs associated with copying, uploading, and analyzing documents; fees and expenses for experts; and mediation fees. . . . All of these costs and expenses were advanced by Settlement Class Counsel with no guarantee they would ultimately be recovered, and most were 'hard' costs paid out of pocket to third-party vendors, court reporters, and experts."); *West*, 2014 WL 1649741, at *1 (finding costs including mediation expenditures, travel, expert fees, and depositions were reasonable and granting requested award).

### E.  The Class Representatives' Service Awards Should be Approved.

Plaintiffs seek service awards up to the amount of $10,000 to each of Plaintiffs Personal Representative of the Estate of Keilee Fant, Deceased, Roelif Carter, Allison Nelson, Herbert Nelson Jr., Alfred Morris, Anthony Kimble, Donyale Thomas, Shameika Morris, and Ronnie Tucker, for their service in representing and zealously advocating on behalf of Class Members. As an initial matter, public policy favors the service awards requested here.  Service awards "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (quoting *Yarrington*, 697 F. Supp. 2d at 1068); *see also Custom Hair Designs by Sandy, LLC v. Cent. Payment Co., LLC*, 2022 WL 3445763, at *1 (D. Neb. Aug. 17, 2022) ("Service awards to representative plaintiffs encourage members of a class to become class representatives and reward individual efforts taken on behalf of a class.").

In determining an appropriate service award, this Court should consider: "(1) actions the plaintiffs took to protect the class's interests, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing litigation." *Caligiuri*, 855 F.3d at 867 (citing *In re U.S. Bancorp Litig.*, 291 F.3d at 1038).   Class

Representatives here worked with counsel to provide information regarding their experiences and claims, including conducting searches of personal records.  Hanlon Decl. ¶ 28.  They also expended significant time responding to Defendant's interrogatory requests, preparing for deposition, sitting for their depositions, and preparing for trial.  *Id.*  These efforts were essential to obtaining class certification and provided substantial benefit to the Classes.  Moreover, in challenging a municipality's arrest and detention procedures, Class Representatives incurred personal risk, including reputational risk, in publicly lending their names to this lawsuit, opening themselves up to scrutiny and attention from both the public and the media.  *Id.*  Class Representatives were particularly diligent in actively participating in this litigation over almost nine years.

The personal risks and sacrifices undertaken by Plaintiffs in bringing their case, the substantial time they invested in the case, and their critical contributions to the outstanding results for the Classes, all support approval of the requested Service Awards.  The requested service awards are a tiny fraction of the amount obtained for the Classes and are well within the range found reasonable by courts in this Circuit.  *See, e.g.*, *Caligiuri*, 855 F.3d at 867 ("[C]ourts in this circuit regularly grant service awards of $10,000 or greater."); *Custom Hair Designs by Sandy, LLC*, 2022 WL 3445763, at *6 (awarding $15,000 service awards to each of the Class Representatives in light of the "substantial work on behalf of the Class and the risks they took in bringing suit").

## IV.    CONCLUSION

For the reasons discussed above, the Court should approve Plaintiffs' request for $1,499,850 in attorneys' fees and costs, and service awards of up to $10,000 for each of Class Representatives: Personal Representative of the Estate of Keilee Fant, Deceased, Roelif Carter, Allison Nelson,

Herbert Nelson Jr., Alfred Morris, Anthony Kimble, Donyale Thomas, Shameika Morris, and Ronnie Tucker.

Dated: May 13, 2024                                    Respectfully submitted,

**WHITE & CASE LLP**

By: /s/ *Angela Daker*
Angela Daker (*pro hac vice*)
200 S. Biscayne Boulevard, Suite 4900
Miami, FL 33131
Phone: 305-371-2700
Email: adaker@whitecase.com

Ross E. Elfand (*pro hac vice*)
Iva Popa (*pro hac vice*)
Paula C. Kates (*pro hac vice*)
Kathryn Hong (*pro hac vice*)
Luke J. Miller (*pro hac vice*)
Chloe R. Edmonds (*pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Phone: 212-819-7670
Email: relfand@whitecase.com

Frank Hogue (*pro hac vice*)
701 13th Street NW, #600
Washington, D.C. 20005
Phone: 202-626-3600
Email: fhogue@whitecase.com

—and—

**ARCHCITY DEFENDERS**

Maureen Hanlon, #70990MO
Blake A. Strode, #68422MO
440 N. 4th Street, Suite 390
Saint Louis, MO 63102
Phone: 855-724-2489
Email: mhanlon@archcitydefenders.org

—and—

**CIVIL RIGHTS CORPS**

Marco Lopez (*pro hac vice*)
1601 Connecticut Avenue NW, Suite 800
Washington, DC 20009
Phone: 202-844-4975
Email: marco@civilrightscorps.org

—and—

**SLU LAW CLINIC**

Brendan Roediger, #6287213IL
100 N. Tucker Blvd.
Saint Louis, MO 63101
Phone: 314-977-2778
Email: brendan.roediger@slu.edu

*Attorneys for Plaintiffs*