IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |
|---|---|
| MICHAEL GUNN, Personal Representative of the Estate of KEILEE FANT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF FERGUSON, MISSOURI,<br><br>Defendant. | Case No. 4-15-CV-00253-AGF |

**SUPPLEMENTAL AFFIDAVIT OF BRYN BRIDLEY**
**ON DISTRIBUTION OF THE SETTLEMENT FUND**

I, Bryn Bridley, do hereby declare:

1. I am the Vice President of Business Development at Atticus Administration, LLC ("Atticus"), a firm providing class action and claims administration services. I have extensive experience with class action notice and claims administration. I am fully familiar with the facts contained herein based upon my personal knowledge and involvement with the above-captioned action.

2. Atticus is the Settlement Administrator for this action and is responsible for carrying out the terms of the Settlement Agreement and Releases ("Settlement Agreement") as ordered by the Court in its Order Granting Preliminary Approval of Class Action Settlement and Settlement Classes, and Permission to Disseminate Notice ("Preliminary Approval Order") entered on February 27, 2024, and the Order and Final Judgment Granting Final Approval of Class Action Settlement ("Final Approval Order") entered on June 18, 2024.

3. I submit this affidavit to provide a comprehensive summary of all notice, distribution, outreach, and residual fund activities undertaken by Atticus in connection with this settlement. This affidavit provides information regarding (i) the Notice Program, (ii) distribution of Class Member Payments across all three distributions, (iii) additional outreach efforts to Class Members, (iv) Settlement website and communications, (v) Class Members who did not receive notice, and (vi) residual funds.

## I.    NOTICE PROGRAM

**Mailed Notice**

4.     On March 12, 2024, the Notice in the form of a simple postcard was sent by U.S. first-class mail to the 15,017 Class Members for whom mailing information was available. Notice could not be mailed to 230 Class Members without addresses. The postcard Notice informed Class Members how to obtain the long form Notice.

5.     Of the 15,017 total postcard Notices mailed, 1,285 were returned to Atticus as undeliverable and without forwarding address information. One thousand two hundred eighty-five (1,285) of the undeliverable Notices were sent to a professional service for address tracing. New addresses were obtained for 390 records and were not obtained for 43 records. Notices were promptly remailed to the 390 new addresses, eighty-seven (87) of which were returned to Atticus a second time. Eight hundred fifty-two (852) Notices returned to Atticus were not traced and remailed because they were received after the Class Member response deadline. Thus, 14,035 postcards, or 93.46% of the Notices sent, were successfully mailed.

**Published Notice**

**6.**     Atticus caused Notice of the settlement to be published as a quarter-page (1/4) advertisement in the main section of the daily, regional newspaper publication, St. Louis Post-Dispatch on March 12, 2024 and four consecutive weeks in the St. Louis American.

**Digital Advertising**

7.     On March 12, 2024, Atticus initiated a two-week digital marketing campaign that strategically placed settlement-related advertisements on Facebook and Instagram that specifically targeted users in the city of St. Louis and North County, Missouri. The ads included a link to the settlement website where viewers could obtain additional information about the class action. The ads generated 36,877 impressions, which resulted in 1,019 visits to the settlement website.

## II.    DISTRIBUTION OF CLASS MEMBER PAYMENTS

**First Distribution**

8.     On August 16, 2024, Class Member Payments were sent by U.S. First-Class Mail to 15,178 Class Members. The final list was processed through the National Change of Address databank maintained by the United States Postal Service ("USPS"). This process returns current

address information for any person included in the list who has filed a change of address card with the USPS any time during the past four years.

9.      As of the date of this affidavit, for the first distribution, 3,296 checks valued at $851,394.20 had been negotiated and 11,882 payments totaling $1,969,678.80 remained uncashed.

10.     As of the date of this affidavit, 1,723 checks had been returned to Atticus as undeliverable. Six (6) of the returned payments included forwarding address information from the United States Postal Service, and the checks were promptly remailed to the forwarding addresses. One thousand seven hundred seventeen (1,717) of the remaining undeliverable records had been sent to a professional service for address tracing. Address updates were obtained for 1,467 undeliverable records and were not obtained for the remaining 203 traced records. Checks were remailed to 1,467 trace addresses, and 336 of those records were returned to Atticus again. Forty-seven records were returned after the deadline. Thus, there were 586 payments that could not be delivered to Class Members.

**Second Distribution**

11.     The second distribution was made to those Class Members who had negotiated their first-distribution payments. Each Class was compensated on a pro rata basis using the criteria applicable to that Class. For the Jailed Class, payments were based on the number of hours each Class Member spent in jail. For the Burden Class, payments were based on the number of burden hours incurred by each Class Member. For each Class, the portion of the Net Settlement Fund allocated to that Class was divided by the total number of hours for all Class Members who successfully negotiated payment, yielding a per-hour rate. Each Class Member's payment was then calculated by multiplying this per-hour rate by the Class Member's eligible hours.

12.     On January 24, 2025, Class Member Payments were sent by U.S. First-Class Mail to 3,282 Class Members. The final list was processed through the National Change of Address databank maintained by the United States Postal Service ("USPS"). This process returns current address information for any person included in the list who has filed a change of address card with the USPS any time during the past four years.

As of the date of this affidavit, for the second distribution, 2,532 checks valued at $1,709,134.26 had been negotiated and 750 payments totaling $275,765.82 remained uncashed.

13.     As of the date of this affidavit, 594 checks had been returned to Atticus as undeliverable. Eighty-one (81) of the returned payments included forwarding address information

AFFIDAVIT OF BRYN BRIDLEY ON DISTRIBUTION OF THE SETTLEMENT FUND

from the United States Postal Service, and the checks were promptly remailed to the forwarding addresses. Five hundred thirteen (513) of the remaining undeliverable records had been sent to a professional service for address tracing. Address updates were obtained for 300 undeliverable records and were not obtained for the remaining 150 traced records. Checks were remailed to 300 trace addresses, and 27 of those records were returned to Atticus again. Sixty-three payments were returned to Atticus at or after the check expiration deadline. Thus, there were 240 payments that could not be delivered to Class Members. Atticus attempted to trace updated addresses for these Class Members but was unable to identify deliverable addresses, and the corresponding funds remained in the Qualified Settlement Fund.

**Third Distribution**

14.     Using the same pro rata methodology described above, each Class Member's third distribution payment was calculated based on their eligible hours.  The third distribution was made to those Class Members who had negotiated their second-distribution payments. On December 11, 2025, Class Member Payments were sent by U.S. First-Class Mail to 2,313 Class Members. The final list was processed through the National Change of Address database maintained by the United States Postal Service ("USPS"). This process returns current address information for any person included in the list who has filed a change of address card with the USPS any time during the past four years.

15.     As of the date of this affidavit, for the third distribution, 1,648 checks valued at $204,704.89 had been negotiated and 665 payments totaling $51,256.77 remained uncashed.

16.     One hundred eighty (180) checks had been returned to Atticus as undeliverable. Five of the returned payments included forwarding address information from the United States Postal Service, and the checks were promptly remailed to the forwarding addresses. One hundred seventy-five (175) of the remaining undeliverable records had been sent to a professional service for address tracing. Address updates were obtained for 112 undeliverable records and were not obtained for the remaining 58 traced records. Checks were remailed to 112 trace addresses. Five payments were returned to Atticus at or after the check expiration deadline. Thus, there were 63 payments that could not be delivered to Class Members.

## III.  ADDITIONAL OUTREACH EFFORTS

17.     In compliance with the Final Approval Order (¶ 10), which directed Plaintiffs' counsel to promptly confer with the Settlement Administrator regarding procedures to follow up

regarding any checks that have not been cashed within 30 days of distribution, the following additional outreach efforts were undertaken:

18.    Atticus identified and provided Class Counsel with contact information, including 22 email addresses and 136 telephone numbers, for Class Members with uncashed payments. Class Counsel confirmed that they conducted an internal mailing and attempted to call Class Members who had not cashed their checks.

19.    Additionally, Atticus identified 107 Class Members with awards above $1,000.00, totaling approximately $217,190.37 in uncashed funds, and coordinated with Class Counsel regarding targeted outreach to those individuals.

## IV.    SETTLEMENT WEBSITE AND TOLL-FREE NUMBER

**20.**    Atticus has maintained the URL www.FergusonClassAction.com for this action. The website was launched on February 6, 2024. The website has remained fully operational since its inception and continues to remain accessible today. The site has received 7,321 visits since being published.

**21.**    Atticus maintained the toll-free telephone number 1-888-380-2225 and the email address FergusonClassAction@atticusadmin.com since March 12, 2024. The toll-free number is answered by live customer service specialists during normal business hours. Class Members who call after hours are provided the option to leave a voicemail message and receive a callback from a customer service specialist the following business day. The introductory message on the line also directs callers to the settlement website URL for additional settlement information. The toll-free line remains active and accessible today and has received a total of 2,264 calls to date. The email address remains active today and has received a total of 482 emails to date.

## V. CLASS MEMBERS WHO DID NOT RECEIVE NOTICE

22.    Of the total Class Member records, 230 Class Members did not have mailing addresses on file and could not be located through skip-tracing; accordingly, these individuals were not sent Postcard Notice.

23.    Across all three distributions, Atticus undertook address tracing and remailing efforts for all undeliverable payments. After exhausting all tracing efforts, a total of 586 first-distribution payments, 240 second-distribution payments, and 63 third-distribution payments could not be delivered to Class Members despite multiple attempts.

AFFIDAVIT OF BRYN BRIDLEY ON DISTRIBUTION OF THE SETTLEMENT FUND

## V.    RESIDUAL FUNDS

**24.**    Pursuant to §§ 12.1–12.4 of the Settlement Agreement, upon the extended expiration date all remaining amounts from unclaimed Class Member Payments after each applicable check expiration date ("Residual Funds") shall be redistributed pro rata to those Class Members who received and claimed Class Member Payments, to the extent feasible and practical in light of the costs of administering such subsequent payments, or, if such further distributions are not economically feasible, shall be distributed to a *cy pres* recipient approved by the Court. See Settlement Agreement §§ 12.2–12.3.

**25.**    As of the date of this affidavit, the balance remaining in the Qualified Settlement Fund is $53,889.85. On November 25, 2025, one additional Class Member was paid a supplemental amount of $2,635.82, which is not included in the distribution figures set forth above. Three distributions have been completed from the Net Settlement Fund (as defined in § 2.36 of the Settlement Agreement), and Atticus has exhausted all reasonable efforts to locate and distribute funds to Class Members. Conducting one or more additional distributions would entail further printing, mailing, address-tracing, tax-reporting, and re-issuance costs and, given the portion of the prior distributions that went uncashed, would likely consume a disproportionate share of the remaining funds relative to the amounts that would reach Class Members. Accordingly, Atticus respectfully submits that further individual distributions are not economically feasible and that the remaining Residual Funds, net of final taxes and administrative expenses, should be distributed to a *cy pres* recipient as approved by the Court, consistent with Settlement Agreement §§ 12.2–12.3 and the Final Approval Order ¶ 11.

**I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct. This Affidavit was executed on the 6th day of July 2026 in St. Paul, Minnesota.**



Bryn Bridley

AFFIDAVIT OF BRYN BRIDLEY ON DISTRIBUTION OF THE SETTLEMENT FUND