UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |
|---|---|
| MICHAEL GUNN, Personal Representative of the Estate of KEILEE FANT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF FERGUSON, MISSOURI<br><br>Defendant. | Case No. 4-15-CV-00253-AGF<br><br>(Class Action) |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR FINAL DISTRIBUTION TO PROPOSED *CY PRES* RECIPIENTS**

Plaintiffs, by and through their counsel of record and with the consent of Defendant, submit this Supplemental Brief in Support of the Motion for Final Distribution to Proposed *Cy Pres* Recipients, the Michael Brown Sr. Chosen for Change Organization and the Michael O.D. Brown – We Love Our Sons & Daughters Foundation. *See* Doc. 709, 710, 711.

**BACKGROUND**

On June 18, 2024, this Court issued the "Order and Final Judgment Granting Final Approval of Class Action Settlement." Doc. 684. For two years, Plaintiffs' Counsel worked extensively to reach Class Members and ensure that those entitled to a payment under the Settlement Agreement received it. *See* Doc. 709 (detailing rounds of disbursement and outreach efforts). After three rounds of distribution, $53,889.85 remains in the Settlement Fund. *Id.* ¶ 9. Pursuant to the Settlement Agreement, the Parties now move to distribute the remaining funds to two proposed *cy pres* recipients: the Michael Brown Sr. Chosen for Change Organization and the Michael O.D. Brown We Love Our Sons & Daughters Foundation (collectively, "the

1

Organizations" or "the Proposed Recipients"). Doc. 709 ¶ 17, Doc. 710. The Parties have previously summarized the Organizations' non-profit status, Board composition, and independent voting structures. Doc. 710. The Parties now submit this briefing on the appropriateness for *cy pres* distribution under the prevailing Eighth Circuit standards.

## **LEGAL STANDARD**

The appropriateness of distributing residual funds to a *cy pres* recipient is a two-pronged inquiry. First, the Court must determine the economic viability of further distribution to class members. *In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060, 1064 (8th Cir. 2015). If further distribution is not viable, the Court must then decide whether the Parties have identified a recipient that serves a purpose as near as possible to the legitimate objectives underlying the lawsuit. *Id.* The Eighth Circuit drew these standards in large part from Section 3.07 of the American Law Institute's *Principles of the Law of Aggregate Litigation*, which it applied to clarify the principles governing *cy pres* distributions in this Circuit. *Id.* at 1063–64.

The "economic viability" question turns primarily on whether the amount remaining in the settlement fund is too small to make individual distributions feasible, accounting for both the payments that would issue to class members and any fee assessed by the settlement administrator for further distribution. *Id.* at 1064. The "purpose" question considers whether the proposed recipient serves "a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *Id.* at 1067 (quoting *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682 (8th Cir. 2002)). The distribution must be "for the next best use" and "consistent with the nature of the underlying action[.]" *Id.* A recipient need not use the funds for the direct benefit of the class. Indirect class benefit is sufficient. *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866–67 (8th Cir. 2017). A court may

2

weigh "all considerations" in determining whether a *cy pres* recipient approximates the interests of the class members, but the Eighth Circuit has specifically considered the "geographic scope of the underlying litigation" and the injury alleged in the lawsuit. *In re BankAmerica Corp. Secs. Litig.*, 775 F.3d at 1067.

## ARGUMENT

As to the first prong, after three rounds of distributions, $53,889.85 remains in the Settlement Fund. The Parties have submitted, Doc. 709, and this Court has found, Doc. 771 at 2, that this amount is too small to make a fourth distribution economically viable. That finding properly considered not only the small payment that would issue to each Class Member but also the distribution fee the Settlement Administrator would assess. *See Caligiuri*, 855 F.3d at 866–67. The first prong is satisfied.

The Court must next decide, in light of "all considerations," whether the Proposed Recipients approximate the interests pursued by the Classes. *See In re BankAmerica Corp. Secs. Litig.*, 775 F.3d at 1067. Courts within this Circuit recognize that this inquiry becomes more challenging, though not impossible, when there is "no organization that specifically assists" community members in the identical way the class was harmed or when the class members' common trait is not one served by any single non-profit organization. *See Allicks v. Omni Specialty Packaging, LLC*, No. 4:19-cv-1038-DGK, 2024 WL 218127, at *2 (W.D. Mo. Jan. 19, 2024); *Anderson v. Travelex Ins. Servs. Inc.*, No. 8:18-cv-362, 2023 WL 2844212, at *3 (D. Neb. Mar. 15, 2023) ("The Court is hard-pressed to think of any charitable organization specifically devoted to helping people who've made insurably expensive travel plans."). Plaintiffs submit this is such a case. Outside of Plaintiffs Counsels' own firms (ArchCity Defenders and SLU Law Legal Clinics), both of which have strong focus on aiding indigent persons whose rights were

3

violated by municipal practices in North St. Louis County, Plaintiffs are not aware of any other organizations with missions that so specifically serve the objectives of the lawsuit or the interests of Class Members and those similarly situated.

In such cases, courts are not bound to the precise claims in the litigation and may look to the broader harm and underlying cause of the harm that class members faced. *Allicks*, 2024 WL 218127, at *2. In *Allicks*, the court found no organization serving the narrow interests of "purchasers of tractor fluids or lubricants" but approved a recipient that would address the lawsuit's underlying objective of "assist[ing] consumers and address[ing] deceptive practices." *Id*. In *Anderson*, the court approved *cy pres* recipients serving consumer protection generally and "humanitarian assistance oversea[s], [which] presumably [is] of some appeal to those with an interest in international travel." 2023 WL 2844212, at *3. In *Caligiuri*, the Eighth Circuit affirmed a *cy pres* distribution to the Electronic Frontier Foundation, "a global nonprofit whose mission is to defend consumer civil liberties in the digital world," in a consumer action over software download insurance. 855 F.3d at 867 (citation omitted). And in *Pearlstone v. Wal-Mart Stores, Inc.*, the court found the interests of a consumer class alleging that Walmart failed to fully refund sales taxes were approximated by legal services organizations with broad "mission[s] of promoting access to justice" for "low-income individuals and families." No. 4:17-cv-2856-HEA, 2023 WL 2864607, at *2 (E.D. Mo. Apr. 7, 2023).

Just as a humanitarian aid organization approximates the interests of a class of travelers, and a legal aid organization approximates the interests of a consumer class, the Proposed Recipients approximate the interests of the Classes and are consistent with the nature of the lawsuit.

The death of Michael Brown prompted a wave of new scrutiny of the detention and

adjudication practices in North County municipalities, and Ferguson in particular, and was the spark behind this litigation. Doc. 709 ¶ 17. *See Ferguson, Missouri, agrees to pay $4.5 million to settle 'debtors' prison' lawsuit*, NBC News (Feb. 29, 2024, 8:22 AM), https://www.nbcnews.com/news/crime-courts/ferguson-missouri-agrees-pay-45-million-settle-debtors-prison-lawsuit-rcna141117 (noting the lawsuit challenged the municipal court and jailing practices that came under public scrutiny following Michael Brown's death). *See also* Harvey, McAnnar, Voss, et al., *ArchCity Defenders: Municipal Courts White Paper* (2014). The resulting Department of Justice investigation identified abuses by the Ferguson jail and municipal courts that injured Class Members.  U.S. Dep't of Justice, Civil Rights Division, *Investigation of the Ferguson Police Department* (Mar. 4, 2015).

The Organizations grew out of that same moment, and their similar missions of supporting individuals and families harmed by carceral practices demonstrate their shared interests with the Classes. *See About Us*, Chosen for Change, https://www.chosenforchange.org/about (last accessed August 6, 2026). *See also About*, Michael O.D. Brown We Love Our Sons & Daughters Found., https://michaelodbrown.org/about/ (last accessed August 6, 2026).

The geographic fit is exact. *See In re BankAmerica Corp. Secs. Litig.*, 775 F.3d at 1067. The Eighth Circuit has twice faulted *cy pres* awards for geographic mismatch, rejecting distributions from nationwide classes to purely local recipients. *Id.* (local legal services organization was not the "next best" recipient for a nationwide securities class). *See also In re Airline Ticket Comm'n Antitrust Litig.*, 268 F.3d 619, 625–26 (8th Cir. 2001) (reversing distribution of nationwide antitrust settlement funds to local Minnesota organizations). This case presents the opposite posture. The Classes are defined by their contact with a single municipality,

5

and the Organizations direct their work at that same community.

Many Class Members lived in Ferguson or traveled through it from nearby North St. Louis County neighborhoods. While the Organizations serve the broader St. Louis region, they unmistakably orient toward individuals and families in North St. Louis City and County. The We Love Our Sons & Daughters' Scholarship Program provides financial support for higher education and training to students at select local schools, most of which are located in North St. Louis County and City. *Memorial Scholarship*, Michael O.D. Brown We Love Our Sons & Daughters Found., https://michaelodbrown.org/programs/memorial-scholarship/ (last accessed Aug. 6, 2026). Chosen for Change hosts free community justice events in North St. Louis County, such as the "Community Forum: What Does Justice Look Like To You?" panel and community discussion held on August 7, 2026. *Events Calendar*, Chosen for Change, https://www.chosenforchange.org/events-calendar (last accessed August 6, 2026).

The Organizations' programming also serves interests as near as possible to those of the Class Members. *See In re BankAmerica Corp. Secs. Litig.*, 775 F.3d at 1067. At its core, this lawsuit was about impoverished people jailed under unconstitutional conditions until family members could produce enough cash to buy their freedom or until the City, through an arbitrary process, released them. Doc. 53, First Amended Complaint, ¶ 1. Each Class Representative's experience in Ferguson, and vulnerability to the City's unconstitutional practices, was made far worse by limited access to financial, family, and community support. *See id.* ¶¶ 29, 32–38 (Keilee Fant), 45–51, 55, 58 (Roelif Carter), 64, 66–68 (Allison Nelson), 77–81, 86–87 (Herbert Nelson), 91, 96 (Alfred Morris), 101, 106 (Anthony Kimble), 117, 119–123 (Donyale Thomas), 129–30, 133 (Shameika Morris), 142–43, 149 (Ronnie Tucker), 177–78. That vulnerability had a profound impact on Class Members' "lives, on their jobs, on their families" that "increase[d]

6

with each day . . . in confinement." Doc. 687 at 25:1–3. The Organizations both expressly and implicitly recognize their role in filling those gaps to offer resources that create more vibrant communities and reduce reliance on policing, ticketing, and incarceration. We Love Our Sons & Daughters "advocates for justice" and works to "reduce the rates of recidivism by improving communications between socio-economically challenged communities and law enforcement" and to "build self-efficacy and capacity of children . . . by strengthening academic, social-emotional learning and life skills necessary for positive, healthy youth development." *About*, Michael O.D. Brown We Love Our Sons & Daughters Found., https://michaelodbrown.org/about/ (last accessed August 6, 2026). Its programming, including therapeutic programming, strengthens families by "develop[ing] skills, build[ing] assets, and increas[ing] opportunity available for financial literacy, economic empowerment, and education." *Id.* Chosen for Change focuses on family well-being and mentorship, including in moments of profound grief and loss, and among their clients are families whose loss stems from an interaction with municipal policing. *Michael and Cal Brown's Chosen for Change Helps Others Dealing with Grief*, Nine PBS, https://www.youtube.com/watch?v=1dHUX2EvK9Q&t=140s.

## CONCLUSION

Plaintiffs respectfully request that this Court grant the Unopposed Motion for Final Distribution to the Proposed *Cy Pres* Recipients.

Dated: August 12, 2026

Respectfully submitted,

/s/ Brianna Coppersmith
Brianna Coppersmith, #75515MO
Blake A. Strode, #68422MO
Maureen G. Hanlon, MBE #70990MO
ArchCity Defenders, Inc.

7

5939 Goodfellow Blvd.
Saint Louis, MO 63147
Tel: (314) 891-5663
Fax: (314) 925-1307
bcoppersmith@archcitydefenders.org
bstrode@archcitydefenders.org
mhanlon@archcitydefenders.org

/s/ Brendan Roediger
Brendan Roediger, #60585MO
6334 Waterman Avenue
St. Louis, MO 63130
Tel: (314) 749-0242
brendan@bdrlawstl.com

WHITE & CASE LLP

/s/ Angela Daker
Angela Daker (pro hac vice)
200 S. Biscayne Boulevard, Suite 4900
Miami, FL 33131
Tel: 305-371-2700
adaker@whitecase.com

Chloe R. Edmonds (pro hac vice)
1221 Avenue of the Americas
New York, NY 10020
Tel: 212-819-7570
chloe.edmonds@whitecase.com

Frank Hogue (pro hac vice)
701 13th Street NW, #600
Washington, D.C. 20005
Tel: 202-626-3600
fhogue@whitecase.com


Counsel for Plaintiffs

8